UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE:  TELEXFREE SECURITIES LITIGATION | ]<br>]   MDL No.  4:14-md-2566-TSH<br>] |
| This Document Relates To: | ]<br>] |
| All Actions | ] |

**MOTION OF THE UNITED STATES (DEPARTMENT OF JUSTICE) FOR LEAVE TO INTERVENE AND FOR A STAY OF DISCOVERY PENDING RESOLUTION OF PARALLEL CRIMINAL PROCEEDINGS, AND MEMORANDUM IN SUPPORT**

**INTRODUCTION**

The U.S. Department of Justice ("government") respectfully moves to intervene for the limited purpose of moving to stay discovery proceedings in this case pending resolution of a parallel criminal case targeting the same misconduct alleged here.

Over a year ago, the government began investigating TelexFree, Inc., and related entities ("TelexFree") on the suspicion that TelexFree was a massive, global pyramid scheme that had victimized thousands of mostly working-class investors domestically and worldwide.  Events came to a head in April 2014:  in a surprise move, TelexFree filed for bankruptcy, on the heels of which the Massachusetts Securities Division filed suit, the U.S. Securities & Exchange Commission ("SEC") moved to freeze assets and filed suit, and the government executed a series of search warrants, including at TelexFree's Marlborough headquarters.  A few weeks, later, the government charged TelexFree's owners, Carlos Wanzeler and James Merrill, by complaint (and later indicted both men in July 2014).

The class actions weren't far behind.  Beginning in about May 2014, private civil actions were filed in various jurisdictions nationwide, purporting to represent classes of investors victimized by TelexFree's pyramid scheme.  The allegations in these cases – most recently

summarized in the amended complaint filed on November 23, 2014 – are based on the identical misconduct alleged in the government's indictment and in the SEC's civil enforcement action. In turn, whenever discovery begins in this action, it will tread the identical terrain covered in the government's criminal investigation and anticipated at trial.

Consequently, discovery in this action (but not other motion practice) should be stayed pending resolution of the criminal case, because allowing it to proceed in tandem with the criminal action would create a variety of problems. Courts routinely acknowledge this by staying civil actions that are based on the same facts as parallel criminal proceedings. *See, e.g., United States v. One 1964 Cadillac Coupe DeVille*, 41 F.R.D. 352, 353 (S.D.N.Y. 1966) ("Where both civil and criminal proceedings arise out of the same or related transactions the government is ordinarily entitled to a stay of all discovery in the civil case until disposition of the criminal matter."); *United States v. Mellon Bank, N. A.*, 545 F.2d 869, 872-873 (3rd Cir. 1976) (making same point).

*First*, without a stay, Merrill and Wanzeler,[1] who are charged both in the criminal action and here, would use civil discovery to impair the proper administration of the criminal case. "A litigant should not be allowed to make use of the liberal discovery procedures applicable to a civil suit as a dodge to avoid the restrictions on criminal discovery." *Gov. of Fed. Reserve v. Pharaon*, 140 F.R.D. 634, 639 (S.D.N.Y. 1991)). This is not a theoretical problem. For example, depositions and interrogatories targeting the key percipient witnesses in both matters would utterly nullify the *Jencks* Act and most other criminal discovery rules. That discovery would also prematurely and broadly disclose the essentials of the government's case-in-chief (allowing the defense to tailor defenses to fit the anticipated proof), and it would needlessly

---

[1] Wanzeler is currently a fugitive living in Brazil. He has not appeared in the criminal matter.

harass and intimidate the witnesses themselves, who are civilians. "If a grand jury indicts a party for conduct that is the subject of a civil action, as they have in the instant matter, the court is obligated to prevent that criminal defendant from 'using parallel civil proceedings to gain premature access to evidence and information pertinent to the criminal case.'" *Javier H. v. Garcia-Botello*, 218 F.R.D. 72, 74-75 (W.D.N.Y. 2003) (staying discovery in parallel civil action because likely to allow defendants access to broader discovery and prejudice criminal proceeding).

*Second*, on a related note, a stay of discovery would avoid forcing witnesses in the civil action either to submit to depositions or assert a Fifth Amendment privilege. The plaintiffs have sued about 37 individuals and entities, that is, basically everyone who had anything to do with TelexFree over the last three years. But the government's criminal investigation is ongoing and so, consequently, discovery in the civil action implicates most or all of any additional persons or entities the government might consider targets. The government is not prepared to publish a list of possible targets, and it is unclear how parties and related witnesses in this action can assess whether to agree to be deposed or to answer interrogatories. *See, e.g., Ashworth v. Albers Medical, Inc.*, 229 F.R.D. 527, 532 (S.D.W. Va. 2005) ("Additionally, it is highly conceivable that discovery [in the civil action] may touch on the Fifth Amendment rights of witnesses who are not parties to the civil action but who may be targets of the criminal investigation. This factor also favors a stay.")[2]

*Third*, the apparent victims of the TelexFree scam deserve a prosecution of its perpetrators unaffected by whatever might happen during civil discovery focused on the identical

---

[2] *See also, e.g., In re Adelphia Communs. Secs. Litig.*, 2003 WL 22358819, at *15 (E.D. Pa. May 14, 2003) (stay would promote efficiency because it would avoid forcing court to address 5th Amendment privilege issues during civil discovery); *SEC v. Dresser Industr., Inc.*, 628 F.2d 1368, 1375-76 (D.C. Cir. 1980) ("strongest case" for deferring civil proceedings is instances implicating Fifth Amendment rights of defending parties).

events. All putative class members are putative victims in the criminal case[3] and – at least as to TelexFree, related entities, and their owners, James Merrill and Carlos Wanzeler – the government has possession of all relevant assets, which at last count amounted to about $190,000,000 in cash and property. Numerous courts cite the public's interest in having criminal cases resolved without interference from parallel civil proceedings, and that interest is paramount when the criminal case is an effort to vindicate the rights of – literally – thousands of fraud victims in dozens of countries.

*Fourth*, in the same vein, deference to the criminal case would create genuine efficiencies. Realistically, the criminal case will be resolved before this one, and a conviction in that case would have an estoppel effect. *See, e.g., Emich Motors Corp. v. Gen. Motors Corp.*, 340 U.S. 558, 568-69 (1951) ("It is well established that a prior criminal conviction may work an estoppel in favor of the government in a subsequent civil proceeding."). Similarly, a conviction in the criminal case would further the civil plaintiffs' case against the banks and services that worked with TelexFree and, at a minimum, greatly simplify the issues to be resolved here.[4] A stay would also save the parties substantial litigation costs.[5]

*Fifth*, if the Court is inclined to grant a stay, that stay should be complete, not partial. As noted above, the government's criminal investigation is ongoing. Factually speaking, it is

---

[3] *See, e.g., Amended Compl.* at 94-95 (Docket # 22) (allegations in support of class action designation).

[4] *See, e.g., In re Grand Jury Proceedings (Williams)*, 995 F.2d 1013, 1018 n.11 (11th Cir. 1993) ("Although stays delay civil proceedings, they may prove useful as the criminal process may determine and narrow the remaining civil issues."); *Texaco, Inc. v. Borda*, 383 F.2d 607, 609 (3rd Cir. 1967) (affirming stay of civil action in part because "the trial of the criminal case [might] reduce the scope of discovery in the civil action . . . [a]nd . . . perhaps might also simplify the issues"); *Brock v. Tolkow*, 109 F.R.D. 116, 120 (E.D.N.Y. 1985) ("[T]he resolution of the criminal case might reduce the scope of discovery in the civil case or otherwise simplify the issues.").

[5] Several individual defendants in this action, including Merrill and Wanzeler, have expressed real concerns about the cost of defending the enforcement proceedings arising from TelexFree's collapse.

impossible to "disentangle" one particular category of defendants in this action from another, since all of them interacted with TelexFree. TelexFree itself – now run by a bankruptcy trustee – has essentially admitted in its answer to the SEC's civil enforcement complaint that TelexFree was a fraud. Similarly, while a partial stay might work in theory, the practice would be messier. For example, as limited discovery progressed under a partial stay, the government would be forced to monitor those proceedings and potentially to lodge specific objections prematurely revealing some aspect of its case or investigation. Ongoing ancillary litigation on the scope of discovery would also negate the efficiencies a stay otherwise provides. *See, e.g., Bridgeport Harbour Place I, LLC v. Ganim*, 269 F.Supp.2d 6, 11 (D. Conn. 2002) (opting for full stay of civil proceedings, instead of partial, pending resolution of criminal case).

As Judge Gorton concluded in the parallel civil enforcement action filed by the SEC, a stay of civil discovery pending resolution of the criminal case against TelexFree's principals is in the public interest, will preserve the rights of all parties, will not prejudice the plaintiffs, and is the more efficient use of judicial and litigant resources. *See SEC v TelexFree, Inc.*, et al., No. 14-CV-1185-NMG (order dated Oct. 8, 2014; docket # 275).

## BACKGROUND

In or about June 2013, the government began investigating TelexFree, James Merrill and Carlos Wanzeler on the suspicion that TelexFree was a pyramid scheme. TelexFree sold a real product – an Internet-based telephone service – but operated on a "multi-level marketing" sales model that paid the company's agents a substantial return without requiring actual product sales. As a result, it appeared that the company derived most of its revenue from people "buying in" as company promoters. TelexFree then used this money to meet its commission and bonus

obligations to its growing pool of pre-existing promoters. Meanwhile, in or about January 2014 the SEC also opened an investigation of TelexFree.

The government's investigation proceeded quietly until Monday, April 14, 2014. On that day, TelexFree filed for bankruptcy protection in the District of Nevada. On April 15, 2014, fearing destruction of evidence, the government executed search warrants at TelexFree's headquarters in Marlborough, Massachusetts, and at two businesses housing TelexFree's corporate servers. As to the SEC, it filed a complaint and motion for a temporary restraining order to freeze assets belonging to TelexFree, Merrill and Wanzeler and other principals, and several of TelexFree's most successful promoters. (Later that day, Wanzeler fled to Canada and from there to Brazil.)

The government did not file criminal charges until May 9, 2014, when Merrill was arrested on a complaint charging him and Wanzeler with conspiracy to commit wire fraud. About two months later, on July 23, 2014, a grand jury sitting in Worcester, Massachusetts, indicted Merrill and Wanzeler on one count of conspiracy to commit wire fraud and eight counts of substantive wire fraud, all arising from their role in organizing and running TelexFree between about Feburary 2012 and April 2014, a period during which they took in hundreds of millions of dollars from thousands of TelexFree promoters.

On the private side, it appears that the first civil action filed in response to TelexFree's collapse and government enforcement activity was *Waldemara Martin,* et al*. v. TelexFree, Inc.,* et al., No. 2:14-bk-12524 (Bankr. D. Nev. May 3, 2014), later transferred to the District of Massachusetts. Other actions soon followed, filed in this district as well as the Southern District of Florida, the Eastern District of North Carolina, and the Northern District of Georgia. Eventually, the Judicial Panel on Multidistrict Litigation, by order of October 21, 2014,

consolidated these cases in this district. Soon thereafter, on November 23, 2014, the plaintiffs filed an amended, consolidated complaint.[7]

The government's indictment is narrower than the consolidated complaint: while the government indicted only Merrill and Wanzeler, who ran the company, the plaintiffs to this action sued Merrill and Wanzeler, Steven Labriola (another TelexFree executive), Joseph Craft (TelexFree's outside accountant), certain successful TelexFree promoters, the TelexFree entities and, on a negligence theory, various banks and other professionals who did business with TelexFree. The criminal case and this action, however, rest on identical facts, that is, the same alleged misconduct (operation of TelexFree as a pyramid scheme that lured in investors), involving the same actors, in the same time frame (the span of TelexFree's U.S.- based business), and so both rely on the same witnesses, the same documentary evidence, and the same financial data underlying TelexFree's compensation system.

## ARGUMENT

**I. THE COURT SHOULD ALLOW THE GOVERNMENT TO INTERVENE FOR THE LIMITED PURPOSE OF MOVING FOR A STAY**

Under Rule 24(a) (2) of the Federal Rules of Civil Procedure, anyone may intervene as of right when the applicant "claims an interest relating to the property or transaction which is the subject of the action" and the applicant is so situated that "disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest . . . ." *See also*

---

[7] The filing may have been premature. *See Response of Certain Defendants to Plaintiffs' Motion for Appointment of Interim Lead Class Counsel* (Docket # 59). In any event, the consolidated complaint generally reflects the types of claims made in the various underlying actions.

*Intl. Paper Co. v. Inhabitants of Jay, Maine,* 887 F.2d 338, 342 (1st Cir. 1989) (discussing standard).[8]

The government has a direct and substantial interest in the subject matter of this litigation, which is the same subject matter as that underlying the government's prosecution in *United States v. James Merrill & Carlos Wanzeler*, No. 14-CR-40028-TSH. "Courts that have addressed a motion to intervene for the limited purpose of seeking a stay in a civil action filed on behalf of the United States have allowed intervention where the civil action shares the same common questions of fact as a parallel criminal proceeding." *Ashworth v. Albers Medical, Inc.*, 229 F.R.D. 527, 529 (S.D.W. Va. 2005) (citations omitted). Specifically, the government has a "discernible interest in intervening in order to prevent discovery in a civil case from being used to circumvent the more limited scope of discovery in the criminal matter." *SEC v. Chestman*, 861 F.2d 49, 50 (2nd Cir. 1988) (denying appeal of district court order that allowed intervention and stayed civil enforcement action in favor of criminal case).[9] Without intervention the government cannot protect its interest in the criminal prosecution, because it cannot weigh in on whether civil discovery should proceed. No current party to the civil action is in a position to do so either.

The Court can also permit intervention "when an applicant's claim or defense and the main action have a question of law or fact in common." Fed. R. Civ. P. 24(b)(2). To intervene

---

[8] "Thus, a party seeking intervention of right under Rule 24(a)(2) must demonstrate three things: 1) that it has a direct and substantial interest in the subject matter of the litigation; 2) that its ability to protect the interest may be impaired if it is not allowed to intervene; and 3) that its interest will not be adequately represented by an existing party. *See, e.g., Keith v. Daley*, 764 F.2d 1265, 1268 (7th Cir. 1984)." *Id*.

[9] *See also, e.g., SEC v. Downe*, 1993 WL 22126, at *11 (S.D.N.Y. 1993) ("It is well established that the United States Attorney may intervene in a federal civil action to seek a stay of discovery when there is a parallel criminal proceeding, which is anticipated or already underway, that involves common questions of law or fact." (citations omitted)).

under this section, the government must establish that there is a common question, an independent ground for jurisdiction, and a timely motion. If these conditions are met, the district court has the discretion to allow intervention, and should consider whether intervention will unduly delay or prejudice adjudicating the civil case and whether the interests of the intervener are already adequately represented by the existing parties. *See id.; see also, e.g., In re Acushnet River & New Bedford Harbor Proceedings*, 712 F.Supp.2d 1019, 1023 (D. Mass. 1989) (discussing standard); *Bureerong v. Uvawas*, 167 F.R.D. 83, 85-86 (C.D. Cal. 1996) (permitting government to intervene under Rule 24(b)(2) and staying civil discovery pending resolution of criminal case).

Because civil discovery may, as a practical matter, impair the government's ability to protect its interests in the enforcement of federal criminal law, the government respectfully seeks leave to intervene for the purpose of arguing for a stay.

## II. THE COURT SHOULD TEMPORARILY STAY DISCOVERY TO PROTECT THE INTEGRITY OF THE CRIMINAL ACTION

It is "clearly within the power of the district court to balance 'competing interests' and decide that judicial economy would best be served by a stay of civil proceedings." *Mellon Bank,* 545 F.2d at 872-873 (affirming stay); *see also Microfinancial, Inc. v. Premier Holidays Intl., Inc.*, 385 F.3d 72, 77 (1st Cir. 2004) ("It is apodictic" that federal courts have the inherent power to stay civil proceedings in deference to criminal matters).

Courts generally consider certain factors when deciding whether to stay a civil case pending resolution of a criminal matter, including (a) the extent to which the civil and criminal cases overlap; (b) the public interest; (c) any potential prejudice to the civil parties if that matter is stayed; (d) the court's interest in managing dockets and resources; and (e) the current status of

the criminal case.[10] In *Microfinancial*, a case in which the district court denied defendants' motion to stay a civil trial because of a rumored grand jury investigation, the First Circuit articulated the relevant factors similarly, though some were specific to that case: whether delay would prejudice the civil litigants; potential prejudice to the party that is the defendant in both the civil and criminal matters (defendant had moved for the stay); impact on judicial resources; interests of any third parties; the public interest; the status of the two matters; and whether the litigants are acting in good faith. *See* 385 F.3d at 78.

### A. This Action Should be Stayed Because of the Near Total Overlap of Facts and Evidence

"[T]he most important factor [in ruling on a motion to stay civil proceedings because of a pending criminal case] is the degree to which the civil issues overlap with the criminal issues." *SEC v. Nicholas*, 569 F.Supp.2d 1065, 1070 (C.D. Cal. 2008) (allowing intervention and staying civil enforcement action pending resolution of criminal case; citations omitted); *see also, e.g.*, *In re Adelphia Comm. Sec. Litig.*, 2003 WL 22358819, *6-7 (E.D. Pa. May 13, 2003) (same, staying consolidated class actions).

As noted above, while the government and the various civil plaintiffs filed suit at different times, the substance of the criminal case and these private actions is identical: all are predicated on the allegation that TelexFree was a pyramid scheme and that its principals deceived the investing public as to the true nature of the enterprise. To this the private plaintiffs add the conduct of certain TelexFree promoters and of banks and other professionals who did business with TelexFree.

---

[10] *See, e.g., Keating v. Office of Thrift Superv.*, 45 F.3d 322, 324–25 (9th Cir. 1995); *Chao v. Fleming*, 498 F.Supp.2d 1034, 1041 (W.D. Mich. 2007); *Ashworth v. Albers Medical, Inc.*, 229 F.R.D. 527, 530-31 (S.D.W. Va. 2005); *In re Adelphia Comm. Sec. Litig.*, 2003 WL 22358819, *7 (E.D. Pa. May 13, 2003); *SEC v. HealthSouth Corp.*, 261 F.Supp.2d 1298, 1326 (N.D. Ala. 2003); *Javier H. v. Garcia-Botello*, 218 F.R.D. 72, 74 (W.D.N.Y. 2003); *Walsh Sec. v. Cristo Prop. Mgt.*, 7 F.Supp.2d 523, 526-27 (D.N.J. 1998).

Consequently, the criminal action and this action will rely on identical witnesses and physical evidence.  In both matters a group of TelexFree executives, outside consultants, and bank personnel will be central witnesses; the same TelexFree financial data, housed on the same company servers, will be used by lay and expert witnesses to argue whether TelexFree did indeed operate as a pyramid scheme; the same financial and business records, obtained from the same banks and professional services, will be used to canvas which financial institutions and other entities worked with TelexFree and when; and the same emails, letters, web pages, business presentations created by TelexFree executives will be used to argue misrepresentations, material omissions, and intent or lack of it.  The only variation will be that the civil plaintiffs will presumably develop evidence about the knowledge and intent of TelexFree promoters and those with whom TelexFree did business, to show that they knew the company was a pyramid scheme but nonetheless participated in and supported its activities.

> **B.** **This Action Should be Stayed Because the Public Interest Weighs in Favor of Unimpeded Resolution of the Criminal Case**

Dozens of courts have recognized that the interests of justice weigh in favor of staying parallel civil proceedings because those proceedings can impede the criminal case.  "Where both civil and criminal proceedings arise out of the same or related transactions the government is ordinarily entitled to a stay of all discovery in the civil case until disposition of the criminal matter."  *One 1964 Cadillac Coupe DeVille*, 41 F.R.D. at 353.  Courts routinely stay civil proceedings in these circumstances.  *See, e.g.*, *In re Adelphia Communs. Secs. Litig.*, 2003 WL 22358819 at *2-8 (staying consolidated securities class actions pending resolution of criminal case).[11]  Moreover, courts equally frequently stay civil actions filed by the SEC when criminal

---

[11] *See also, e.g., Chao v. Fleming*, 498 F. Supp. 2d 1034, 1037-41 (W.D. Mich. 2007) (granting stay; "the case for a stay is strongest where the defendant has already been indicted"); *Belford Strategic Invest. Fund v. United States*, 2005 WL 3278597, *1-5 (N.D. Cal. Nov. 7, 2005) (staying civil discovery in action against IRS pending

cases are pending, even though SEC enforcement is, if anything, more in the public interest than private litigation.[12] And – as many of these courts have noted – the substantial overlap of facts and evidence makes the public's interest in a stay even stronger.[13]

The reasons for the long-standing policy of deferring to criminal proceedings when civil and criminal matters overlap stem directly from the procedural differences between civil and criminal proceedings. As the Fifth Circuit explained in *Campbell v. Eastland*, which is often cited in this area,

> The very fact that there is a clear distinction between civil and criminal actions requires a government policy determination of priority: which case should be tried first. <u>Administrative policy gives priority to the public interest in law enforcement. This seems so necessary and wise that a trial judge should give substantial weight to it in balancing the policy against the right of a civil litigant to a reasonably prompt determination of his civil claims or liabilities</u>.

307 F.2d 478, 487 (5th Cir. 1962) (emphasis added). As *Campbell* shows, courts have recognized for at least 50 years that priority should be given to the "public interest in law enforcement." *See also United States v. Hugo Key & Son, Inc.*, 672 F. Supp. 656, 685 (D.R.I.

---

resolution of criminal tax prosecution); *Ashworth*, 229 F.R.D. at 530-33 (staying civil discovery pending resolution of criminal case against pharmaceutical product manufacturers); *Maloney v. Gordon*, 328 F.Supp.2d 508, 513 (D. Del. 2004) (staying civil discovery; "[t]he public's interest in the integrity of the criminal case is entitled to precedence over the civil litigant"); *Javier H. v. Garcia-Botello*, 218 F.R.D. 72, 74-75 (W.D.N.Y. 2003) (staying civil discovery because likely to allow defendants access to broader discovery and prejudice criminal proceeding); *United States v. Hugo Key & Son, Inc.*, 672 F. Supp. 656, 65-59 (D.R.I. 1987) (staying civil action in favor of environmental criminal proceeding). *See also, e.g., In re SK Foods, L.P.*, 2010 WL 5136189, *2-3 (E.D. Cal. Dec. 10, 2010) (reversing Bankruptcy Court order denying stay, and staying bankruptcy matter pending resolution of parallel criminal action against head of company).

[12] *See, e.g., SEC. v. Purchasers of Secs. In Global Industr., Inc.,* 2012 WL 5505738, *3-6 (S.D.N.Y. Nov. 9, 2012) (granting intervention and stay of SEC action); *SEC v. Gordon*, 2009 WL 2252119, *3-6 (N.D. Okl. July 28, 2009) (same); *SEC v. Ott*, 2006 U.S. Dist. Lexis 86541, *6-10 (D.N.J. Nov. 29, 2006) (same, though apparently unopposed); *Nicholas*, 569 F.Supp.2d at 1070 (same); *SEC v. Beacon Hill Asset Management LLC*, 2003 WL 554618, at *1 (S.D.N.Y. Feb. 27, 2003) (same); *In re Worldcom, Inc., Sec. Litig.*, 2002 WL 31729501, *3-10 (S.D.N.Y. Dec. 5, 2002) (same); *SEC v. Downe*, 1993 WL 22126, *12-14 (S.D.N.Y. Jan. 26, 1993) (same).

[13] *See, e.g., United States v. Mellon Bank, N.A.,* 545 F.2d 869 (3rd Cir.1976); *Ashworth*, 229 F.R.D. at 530-31; *SEC v. Healthsouth Corp.*, 261 F.Supp.2d 1298, 1326 (N.D. Ala. 2003); *United States v. Assets of Shane Co.*, 147 F.R.D. 99, 101 (M.D.N.C. 1993).

1987) (citing "public interest" in law enforcement); *In re Ivan F. Boesky Securities Litig.*, 128 F.R.D. 47, 49 (S.D.N.Y. 1989) ("the *public interest* in the criminal case is entitled to precedence over the civil litigant" (emphasis in original)).

Here, the public unquestionably has a tremendous interest in "law enforcement," that is, in the government prosecuting TelexFree's principals for fraud without needless interference or variables. TelexFree had approximately *785,000* investors worldwide. Even at this early stage, thousands of alleged victims have submitted to the government information and requests for restitution. The government has seized about $190,000,000 in cash and assets from TelexFree and its owners. If the government proves that Merrill and Wanzeler committed fraud, these assets will directly compensate thousands of victims worldwide. The criminal case – even a complex one with substantial discovery – will move faster than the civil case, and the public has a right to that resolution unaffected by collateral events here.

As with all criminal cases, the case against Merrill and Wanzeler will operate under a specific set of discovery and procedural rules honed over centuries to balance state and personal interests. But that balance is upended, and so the public's and victims' rights impacted, if the defendant is able to use civil discovery to evade the criminal rules. *See, e.g., Beacon Hill Asset Management LLC*, 2003 WL 554618 at *1 ("the principal concern with respect to prejudicing the government's criminal investigation is that its targets might abuse civil discovery to circumvent limitations on discovery in criminal cases"). Or, as one court has articulated it,

> It is well established that a litigant should not be allowed to make use of the liberal discovery procedures applicable to a civil suit to avoid the restrictions on criminal discovery and, thereby, obtain documents [and testimony] he might otherwise not be entitled to for use in his criminal suit.

*Founding Church of Scientology v. Kelley*, 77 F.R.D. 378, 380 (D.D.C. 1977) (citations omitted); *see also Pharaon*, 140 F.R.D. at 639 ("A litigant should not be allowed to make use of the

liberal discovery procedures applicable to a civil suit as a dodge to avoid the restrictions on criminal discovery.").[14]

Other courts have even deemed it "abusive" to use civil discovery to circumvent criminal discovery rules. *See, e.g., United States v. Phillips*, 580 F. Supp. 517, 520 (N.D. Ill. 1984) (granting stay; "[t]his abusive tactic is an improper circumvention of the restrictions of the criminal discovery rules."); *Beacon Hill Asset Management LLC*, 2003 WL 554618 at *1 (granting stay; "principal concern" in allowing civil discovery "is that its targets might abuse civil discovery to circumvent limitations on discovery in criminal cases").

A quick survey of criminal discovery procedures shows how parallel civil discovery effectively nullifies the criminal rules. For example, the *Jencks* Act says that in criminal cases the statements of a government witness – such as grand jury testimony or testimony taken by the SEC – cannot be the subject of subpoenas, discovery, or inspection until that witness has testified on direct examination. Rule 16 then specifically carves out *Jencks* material, warning that the rule does not "authorize the discovery . . . of statements made by government witnesses or prospective government witnesses except as provided in 18 U.S.C. § 3500 [the *Jencks* Act]." Fed. R. Crim. P. 16 (a)(2). The public policy favoring the *Jencks* Act is so strong that – beyond

---

[14] *See also, e.g., Mellon Bank,* 545 F.2d at 872-873 (affirming stay; noting that "the similarity of the issues [in the civil and criminal matters] left open the possibility that [the target] might improperly exploit civil discovery for the advancement of his criminal case"); *In re Eisenberg*, 654 F.2d 1107, 1113-14 (5th Cir. 1981) (observing that allowing civil discovery to proceed would make litigant "the beneficiary of materials otherwise unavailable under the criminal rules . . . thus nullifying in effect the criminal discovery limitations"); *Ashworth*, 229 F.R.D. at 530-33 (granting stay; government entitled to intervene to prevent civil discovery from being used to circumvent scope of criminal discovery); *Ott,* 2006 U.S. Dist. LEXIS 86541, at *3-10 (same); *United States v. GAF Financial Servs.*, 335 F.Supp.2d 1371, 1373 (S.D. Fla. 2004) (civil forfeiture stayed pursuant to 18 U.S.C. § 981(g)); *Downe*, 1993 WL 22126, at *12–14 (staying securities action); *In re Ivan F. Boesky Secs. Litig.*, 128 F.R.D. at 49-50 (same); *Hugo Key & Son,* 672 F. Supp. at 657-59 (staying civil action in favor of environmental criminal investigation); *Founding Church of Scientology,* 77 F.R.D. at 380-81 (blocking interrogatories in favor of ongoing grand jury investigation); *SEC v. Control Metals Corp.*, 57 F.R.D. 56, 57-58 (S.D.N.Y. 1972) (staying depositions of four grand jury witnesses).

the statute and the federal rules – it is *legal error* for a trial court to order the government to disclose *Jencks* material before the statute requires.[15]

The potential mischief doesn't end there.  For example, Merrill and Wanzeler have no right to know what a witness said in the grand jury unless that witness will testify for the government at trial (or the witness said something exculpatory) – and by extension no right to know what witnesses the government is likely to call at trial or the essentials of the government's case.  But if civil discovery proceeds, Merrill's and Wanzeler's counsel could simply depose various fact witnesses, ask them if they testified before the grand jury and, if they did, force them to reveal the substance of their testimony.  Counsel could then (a) flesh out the government's anticipated case, (b) make a concerted effort to create the appearance of inconsistencies with former grand jury testimony a witness revealed, and (c) interrogate the witness about his background or other activities in an effort to gather up impeachment material for use later in front of a jury.[16]

The same risk appends to interrogatories and document requests targeting these witnesses.  *See, e.g., Bridgeport Harbour Place*, 269 F.Supp.2d at 10 (granting stay because civil discovery would allow defendants to obtain FBI 302s, recordings and logs from ongoing criminal proceeding); *Founding Church of Scientology,* 77 F.R.D. at 380-81 (blocking interrogatories in favor of ongoing grand jury investigation).

---

[15] *See, e.g., In re United States,* 834 F.2d 283, 287 (2nd Cir. 1987) (district courts lack power to order early *Jencks* disclosure); *United States v. Taylor*, 802 F.2d 1108, 1117-18 (9th Cir. 1986) (same); *United States v. Ordaz-Gallardo*, 520 F.Supp.2d 516, 524 (S.D.N.Y. 2007) ("District courts lack the authority to compel early disclosure of *Jencks* Act material.").

[16] *Cf., e.g., In re Worldcom,* 2002 WL 31729501 at *9 (granting stay; citing "U.S. Attorney's significant interest in preserving the usefulness of cooperating defendants as government witnesses"); *Downe*, 1993 WL 22126, at *13 ("[W]here a party or witness in a civil case is cooperating with a grand jury investigation relating to the subject matter of the civil suit, there is a compelling reason to stay discovery of the civil case pending resolution of the criminal investigation.").

Finally, the risk of witness harassment and intimidation is real: in the interest of prosecuting crime, the grand jury required testimony from various people. They may also be called to testify at a future trial. They should not *also* be subjected to hostile depositions and interrogatories along the way – conducted by lawyers motivated to "mark them up" before they later testify before a jury – when it can probably be avoided entirely by first resolving the criminal case. *See, e.g., SEC. v. Nicholas*, 569 F.Supp.2d 1065, 1071-72 (C.D. Cal. 2008) (granting intervention and staying civil enforcement action; noting that criminal discovery rules are narrower than civil ones because they are designed, *inter alia*, to protect witnesses from "harassment and intimidation"). And, as noted above, various witnesses may also have 5th Amendment concerns, forcing them to testify in depositions or claim privilege, a claim that could later be used against them on the civil side.

### C. Because the Civil and Criminal Cases are Based on the Same Facts, and the Civil Case has Many Parties, any Stay of Discovery Should Cover All Discovery Instead of Proceeding by Category or Request by Request

In the context of motions to stay civil proceedings, courts sometimes seek to avoid a "blanket" stay of discovery, favoring a more specific approach. *See, e.g., Beacon Hill Asset Management LLC*, 2003 WL 554618 at *2; *SEC v. Doody*, 186 F.Supp.2d 379, 382 (S.D.N.Y. 2002). Because of the near-total overlap of underlying facts in this case, the government respectfully suggests that a complete stay is simpler, more efficient, and so more beneficial for the litigants and the Court. At a minimum, discovery involving TelexFree, Merrill, Wanzeler, Labriola, Craft, TelexFree's former lawyers and certain other witnesses would implicate the government's interests in the criminal case. But even beyond this core group, the government's criminal investigation is ongoing and it is factually impossible to "disentangle" one particular category of defendant in this action from another.

Proceeding with discovery in some categories but not others – or, alternatively, simply ruling on a stay each time a specific deposition notice, set of interrogatories or document request is served – would also inevitably result in piecemeal litigation. There are dozens of parties to this case, plus the U.S. Attorney's Office as intervenor. Reviewing disputes about whether discovery falls within a barred category, or whether a specific discovery request should be subject to a stay under current law, would waste time and unnecessarily drain the litigants' and the Court's resources. *See, e.g., Ashworth,* 229 F.R.D. at 532 (rejecting request for partial, instead of complete, stay of civil discovery); *Bridgeport Harbour Place*, 269 F.Supp.2d at 11 (same, opting for complete stay). *Downe*, 1993 WL 22126 at *14 (opting for complete stay, to avoid "unfairness" to certain civil defendants and "duplication of effort").

>   **D.      No Defendant in This Case Will Be Prejudiced by a Stay and the Judicial Efficiencies are Clear**

A stay would not prejudice any party, including the plaintiffs. Far from it: as to the defendants, a stay would allow them to avoid substantial discovery costs. As to the plaintiffs, to establish cognizable prejudice from a stay, they must show more than "simply a delay in [their] right to expeditiously pursue [their] claim." *In re Adelphia Commun. Sec. Litig.*, 2003 WL 22358819 at *4 (rejecting various claims of prejudice by plaintiffs in consolidated securities actions; citation omitted); *see also, e.g., Walsh Secs., Inc. v. Cristo Prop. Mgmt., Ltd.*, 7 F.Supp.2d 523, 528 (D.N.J. 1998). The criminal case will resolve faster than the civil case and, if there is a conviction, it will more rapidly vindicate the alleged victims' interests and have an estoppel effect here.

Also, a stay creates no risk of, for example, destruction of evidence or dissipation of funds. The government has seized all of TelexFree's and its principals' U.S. accounts (while the Brazilian government has seized all of the corresponding Brazilian accounts); the trustee now

17

administering TelexFree's affairs is steadily attempting to identify remaining assets, including potential clawback litigation; and there is little risk of dissipation by the financial institutions and professional services named as defendants.

Finally, a stay would not prevent any defendant in this case from pursuing a motion to dismiss the consolidated actions.  Thus, if some defendant is improperly implicated in this case, the stay would not prevent him or her from seeking relief.

As to the Court itself, judicial efficiency seems to support the stay, a conclusion also reached by Judge Gorton when he stayed the SEC's civil enforcement action against TelexFree. As Judge Cote noted in the *Worldcom* securities litigation,

> The Court shares with all parties an interest in the efficient resolution of the instant actions.  Nonetheless, a concern for judicial efficiency does not necessarily militate against the granting of a stay. . . .  <u>The conviction of a civil defendant as a result of the entry of a plea or following a trial can contribute significantly to the narrowing of issues in dispute in the overlapping civil cases and promote settlement of civil litigation not only by that defendant but also by co-defendants who do not face criminal charges</u>. *See Rosenthal v. Giuliani,* 2001 WL 121944, *2 (S.D.N.Y. Feb. 9, 2001) ("[A] stay in the action will streamline later civil discovery since transcripts from the criminal case will be available to the civil parties.").

*In re Worldcom*, 2002 WL 31729501 at *8 (emphasis added; citations omitted) (finding stay "particularly compelling" in light of factual overlap and U.S. Attorney's Office's request).  A stay would allow not just the litigants, but the Court, to avoid needless work, without prejudice to any party or to the overall public interest in justice being served.

## **CONCLUSION**

For the foregoing reasons, the government respectfully moves for permission to intervene in this case, and for a stay of discovery pending resolution of the parallel criminal proceedings.

Respectfully submitted,

Carmen M. Ortiz
United States Attorney


By:     /s/ *Andrew Lelling*
        Cory S. Flashner
        Andrew E. Lelling
        Assistant U.S. Attorneys

Date:   December 12, 2014


## **CERTIFICATE OF SERVICE**

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing, and paper copies will be sent to those indicated as non-registered participants, on December 12, 2014.

         /s/ *Andrew Lelling*
        Andrew E. Lelling