UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: TELEXFREE SECURITIES LITIGATION<br><br>This Document Relates To:<br><br>All Actions | MDL No. 4:14-md-2566-TSH |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS GERALD P. NEHRA, GERALD P. NEHRA ATTORNEY AT LAW, PLLC, RICHARD WAAK, RICHARD WAAK ATTORNEY AT LAW, PLLC AND LAW OFFICES OF NEHRA AND WAAK**

# TABLE OF CONTENTS

**Page**

BACKGROUND ............................................................................................................... 2

ARGUMENT .................................................................................................................... 4

    I.      Nehra and Waak Owed No Duty of Care to the Plaintiffs as Non-Clients, Necessitating Dismissal of Plaintiffs' Claims Sounding in Negligence. ................ 4

    II.     Because Nehra Merely Provided Legal Services of a Limited Nature to TelexFree, Neither He Nor Waak are "Controlling Persons" or "Agents Who Materially Aid[ed]" Any Sale of Securities under Section 410(b). ............ 12

    III.    Providing Legal Advice to TelexFree Does Not Render Nehra an "Operator" of or "Participant" in a Multi-Level Distribution Company under M.G.L. c. 93, § 69. ...................................................................................... 19

    IV.    Plaintiffs Have Not Alleged the Basic Elements of Their Fraud Claim. .............. 20

    V.     Plaintiffs Have Failed to Plead All Fraud-Based Claims with the Requisite Particularity under Rule 9(b). ............................................................................. 24

          A.      Plaintiffs' Failure to Allege Sufficient Facts Regarding the Content of Nehra's Alleged Misrepresentation, His Knowledge Of Its Falsity, or His Intent to Deceive Plaintiffs Further Defeats Their Fraud Claim. ..................................................................................... 26

          B.      Plaintiffs' Aiding and Abetting Claims Cannot Lie Absent Reasonable Reliance, Foreseeable Reliance, or Knowledge of Falsity. ................................................................................................... 28

          C.      Plaintiffs' Civil Conspiracy Claim Also Fails. ......................................... 29

CONCLUSION ................................................................................................................ 30

i

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Ackerman v. Schwartz*,
  733 F. Supp. 1231 (N.D. Ind. 1989), *aff'd in part and rev'd in part on other grounds*,
  947 F.2d 841 (7th Cir. 1991) ........................................................................................16, 18

*Aetna Cas. Sur. Co. v. P&B Autobody*,
  43 F.3d 1546 (1st Cir. 1994).........................................................................................29

*Aldridge v. A.T. Cross Corp.*,
  284 F.3d 72 (1st Cir. 2002)........................................................................................13, 14

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).......................................................................................................22

*Austin v. Bradley, Barry & Tarlow, P.C.*,
  836 F. Supp. 36 (D. Mass. 1993) ...............................................................................5, 29

*Baker, Watts & Co. v. Miles & Stockbridge*,
  620 A.2d 356 (Md. Ct. Spec. App. 1993), *superseded on other grounds by rule, see*
  *Benway v. Md. Port Admin.*, 989 A.2d 1239 (2010)....................................................16

*Bamberg v. SG Cowen*,
  236 F. Supp. 2d 79 (D. Mass. 2002) .............................................................................28

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)...................................................................................................21, 22

*Bennett v. Durham*,
  683 F.3d 734 (6th Cir. 2012) .................................................................................14, 15, 17

*CFT Seaside Inv. Ltd. P'ship v. Hammet*,
  868 F. Supp. 836 (D.S.C. 1994)...............................................................................17, 18

*Cooperman v. Individual, Inc.*,
  171 F.3d 43 (1st Cir. 1999)............................................................................................22

*DaRoza v. Arter*,
  416 Mass. 377 (1993) .........................................................................................5, 6, 7, 10, 11

*DeVaux v. Am. Home Assurance Co.*,
  387 Mass. 814 (1983) ..........................................................................................5, 6, 8, 10

*Dolan v. Hickey*,
  385 Mass. 234 (1982) ......................................................................................................7

*Doyle v. Hasbro, Inc.*,
    103 F.3d 186 (1st Cir. 1996) ...................................................................................21

*Flaherty v. Baybank Merrimack Valley, N.A.*,
    808 F. Supp. 55 (D. Mass. 1992) .................................................................21, 23, 24

*Go–Best Assets Ltd. v. Citizens Bank of Mass.*,
    463 Mass. 50 (2012) .................................................................................................28

*Greebel v. FTP Software, Inc.*,
    194 F.3d 185 (1st Cir. 1999) ...................................................................................25

*Hayduk v. Lanna*,
    775 F.2d 441 (1st Cir. 1985) .............................................................................25, 30

*Hill v. Gozani*,
    638 F.3d 40 (1st Cir. 2011) ...............................................................................25, 26

*In re Sonus Networks, Inc. Secs. Litig.*,
    No. 04–10294, 2006 WL 1308165 (D. Mass. May 10, 2006) .................................24

*In re Tyco Int'l, Ltd.*,
    No. 04-CV-1336, 2007 WL 1687775 (D.N.H. June 11, 2007)................................25

*Int'l Strategies Grp., Ltd. v. Greenberg Traurig, LLP*,
    482 F.3d 1 (1st Cir. 2007).............................................6, 7, 8, 9, 10, 11, 30

*Katz v. Pershing, LLC*,
    806 F. Supp. 2d 452 (D. Mass. 2011) .....................................................................20

*Kirchoff v. Selby*,
    703 N.E.2d 644 (Ind. 1998) .............................................................................15, 17

*Klein v. Boyd*,
    949 F. Supp. 280 (E.D. Pa. 1996) .....................................................................15, 18

*Kurker v. Hill*,
    44 Mass. App. Ct. 184 (1998).................................................................................30

*Lamare v. Basbanes*,
    418 Mass. 274 (1994) ...........................................................................................7, 11

*Lu v. Menino*,
    No. 14-13053, 2015 WL 1132926 (D. Mass. Mar. 10, 2015) ................................21

*Maldonado v. Fontanes*,
    568 F.3d 263 (1st Cir. 2009)...................................................................................21

iii

*Maldonado v. Dominguez,*
    137 F.3d 1 (1st Cir. 1998) ..................................................................................28

*Malonis v. Harrington,*
    442 Mass. 692 (2004) ......................................................................................20

*Manchester Mfg. Acquisitions, Inc. v. Sears, Roebuck & Co.,*
    802 F. Supp. 595 (D.N.H. 1992)........................................................................26

*Masingill v. EMC Corp.,*
    449 Mass. 532 (2007) ......................................................................................21

*Miller v. Mooney,*
    431 Mass. 57 (2000) ......................................................................................5, 6

*N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale,*
    567 F.3d 8 (1st Cir. 2009)................................................................................24

*One Nat'l Bank v. Antonellis,*
    80 F.3d 606 (1st Cir. 1996)....................................................................4, 5, 7, 11

*Page v. Frazier,*
    388 Mass. 55 (1983) ............................................................................5, 7, 11

*Payton v. Abbott Labs,*
    512 F. Supp. 1031 (D. Mass. 1981) ..................................................................30

*Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.,*
    632 F.3d 762 (1st Cir. 2011)............................................................................21

*Rendler v. Markos,*
    453 N.W.2d 202 (Wis. Ct. App. 1990) ....................................................16, 17, 18

*Resnick v. Wyman-Gordon Co.,*
    28 Mass. L. Rptr. 27,
    2010 WL 5783065, at *6-7 (Mass. Super. Dec. 28, 2010) (dismissing claim for unjust
    enrichment) ..................................................................................................20

*Robertson v. Gaston Snow & Ely Bartlett,*
    404 Mass. 515 (1989) ....................................................................5, 6, 7, 11, 23

*Royal Bus. Grp., Inc. v. Realist, Inc.,*
    933 F.2d 1056 (1st Cir. 1991)..........................................................................21

*S.E.C. v. Patel,*
    No. 07-CV-39, 2008 WL 782483 (D.N.H. Mar. 24, 2008) ....................................25

*Schlecht v. Smith*,
   No. 92-30099, 1994 WL 621594 (D. Mass. Nov. 7, 1994) ...................................................23

*Schwan's Sales Enterprises, Inc. v. Commerce Bank & Trust Co.*,
   397 F. Supp. 2d 189 (D. Mass. 2005) ...................................................29

*Sgarzi v. Sharkansky, LLP*,
   No. 13-03951, 2014 WL 2504537 (Mass. Super. Feb. 11, 2014)...........................................29

*Sheinkopf v. Stone*,
   927 F.2d 1259 (1st Cir. 1991) ...................................................6, 10, 13

*Spinner v. Nutt*,
   417 Mass. 549 (1994) ...................................................5, 24, 28

*Suna v. Bailey Corp.*,
   107 F.3d 64 (1st Cir. 1997) ...................................................28

*Symmons v. O'Keefe*,
   419 Mass. 288 (1995) ...................................................9

*Taylor v. Airco, Inc.*
   503 F. Supp. 2d 432 (D. Mass. 2007) ...................................................30

*Tocco v. Richman Greer Prof'l Assoc.*,
   553 F. App'x 473 (6th Cir. 2013) ...................................................9, 11, 24

## STATUTES

Massachusetts Securities Act, Chapter 93 and Chapter 93A ...........................................................1

Uniform Securities Act of 1956 ...................................................13

## OTHER AUTHORITIES

533-71. Likewise, *Plaintiffs fail to allege that either of them ever watched the Internet
   video depicting Nehra's remarks* ...................................................23

2013 TelexFree "Super Weekend" ...................................................26

Fed. R. Civ. P. 8(a)(2)...................................................21

Founders," Nehra " ...................................................10

July 2013 "Super Weekend," ...................................................23

Nehra's "Super Weekend"...................................................27

Rule 3:07...................................................24

v

**Rule 9(b)**............................................................................................................24, 25, 26, 28, 30

Super Weekend," Nehra "..................................................................................................26

TelexFree "Super Weekend"............................................................................................22

## **INTRODUCTION**

Defendants Gerald P. Nehra, Richard W. Waak, Gerald P. Nehra Attorney at Law, Richard W. Waak Attorney at Law, and the Law Offices of Nehra and Waak (collectively "Nehra and Waak") move to dismiss Plaintiffs' Second Consolidated Amended Complaint (the "Amended Complaint").   Despite over one thousand paragraphs and 191 pages, Plaintiffs' Amended Complaint fails as to Nehra and Waak in one critical respect.   Nowhere in the Amended Complaint is there any allegation that Nehra and Waak ever had an attorney-client relationship with the Plaintiffs.   To the contrary, the only such relationship that ever existed was with TelexFree.   This simple fact is fatal to Plaintiffs' claims sounding in malpractice and negligence.   Moreover, while Plaintiffs cite to the reference to Nehra as counsel for TelexFree for a period of time on the TelexFree website, and also cite to a single presentation that Nehra made in California in July 2013, they do not plead anywhere in their prolix Amended Complaint that either Plaintiff attended that presentation or relied upon any statements made by Nehra at any time.   This failure is fatal to Plaintiffs' fraud and misrepresentation claims.   Likewise, there are no facts plead with the particularity required to support the claim that any statement made by Nehra was fraudulent at the time it was made, nor is there any allegation that Nehra or Waak acted in any capacity other than as an attorney for TelexFree.   There is no allegation that Nehra or Waak was a participant, investor, shareholder, promoter, officer or director in the business, or any allegation that either Nehra or Waak received any payments other than very modest fees for legal services.   Absent these facts, the claims sounding in fraud, Massachusetts Securities Act, Chapter 93 and Chapter 93A also fail.

In short, because Nehra and Waak acted solely in the capacity as counsel for TelexFree for a brief period of time, and there is no allegation that they acted as counsel for the Plaintiffs,

or that Plaintiffs relied upon any specific statement made by Nehra or Waak at any time, all of the claims asserted in the Amended Complaint fail and must be dismissed.

## **BACKGROUND**

Gerald P. Nehra is an attorney licensed in Michigan, New York and Colorado.  He formerly served as the Director of the Legal Division for Amway Corporation, and also worked as counsel for the Fuller Brush Company, Church & Dwight Co., Inc. and IBM before becoming a private practitioner advising companies regarding direct selling and multi-level marketing issues.  Am. Complaint ¶ 405 n. 39.  Mr. Nehra has been advising multi-level marketing companies for over three decades.  *Id.*  Richard Waak is an attorney licensed in Michigan and also was employed at Amway, as well as other direct sales companies before opening his own practice.  *Id.*  Both attorneys advise clients regarding the appropriate way to establish and run compliant multi-level marketing businesses.  *Id.*

While the Plaintiffs allege that Nehra and Waak acted as counsel to TelexFree, they make no allegations whatsoever regarding any activities by either Nehra or Waak related to TelexFree prior to July 2013.  Noticeably absent from the Amended Complaint is any allegation regarding when either attorney was retained by the company.  This omission does not appear to be a mistake.  Specifically, while the Amended Complaint acknowledges that changes were suggested to the TelexFree business model during 2013 to make it compliant with the relevant laws and to address the issues that plagued the company in Brazil, the Amended Complaint attributes these suggested changes to another attorney, Jeffrey Babener, but not to Nehra or Waak.  Amended Complaint ¶¶ 147, 457.  However, the Amended Complaint fails to identify exactly when the specific changes were suggested.  By failing to do so, the Amended Complaint fails to provide the specific facts necessary to support any inference that the alleged statements by Nehra in July 2013 were not based upon his reasonable belief at that time.  There is no allegation in the

Amended Complaint that Nehra ever made any statements to anyone about TelexFree's business or its business model prior to July 2013.  Moreover, there is no allegation that Waak ever made any statement about TelexFree at any time.  Thus, while the Amended Complaint alleges that Nehra somehow "blessed" TelexFree's "business model" in July 2013, there is no allegation anywhere in the Amended Complaint specifically stating exactly what business model was being "blessed" on that date.  *See* Amended Complaint ¶¶ 146, 393, 416 (mentioning TelexFree's "business model" but not specifying which business model is being discussed).  Instead, the Amended Complaint seeks to suggest, without actually alleging, that Nehra somehow opined on TelexFree's historical business model or business prior to that date, as opposed to commenting on a business model that he had suggested would be compliant, and the business model he understood at the time would be implemented by management moving forward *after* July 2013.

        The Amended Complaint does confirm a few simple and dispositive facts.  Neither Nehra nor Waak was involved in any way in the founding of TelexFree, nor were they ever employees, officers, directors, shareholders or direct participants in the business.  They never became part of the sales chain, nor did they ever purchase an interest in the business.  They never purchased product.  No payments of any kind were made to them other than very modest legal fees.  They never acted as counsel for either Plaintiff.  The only role they ever had was as an outside attorneys for the company, and never for any individual participant, including the Plaintiffs.  Any suggestion in the Amended Complaint that Nehra advised the company how to operate illegally as opposed to advising how to implement a compliant business model is completely unsupported with any specific facts.  Regardless, the claims must be dismissed under settled law limiting the liability of an attorney with admittedly no attorney-client relationship with the Plaintiffs.

## ARGUMENT

### I.     Nehra and Waak Owed No Duty of Care to the Plaintiffs as Non-Clients, Necessitating Dismissal of Plaintiffs' Claims Sounding in Negligence.

In support of their professional negligence claim (Sixth Claim for Relief), Plaintiffs allege that Nehra and Waak "breached the duty of care they owed to Plaintiffs and the Putative Class" by "negligently misstating and omitting relevant information" and "fail[ing] to adequately provide even minimally acceptable legal counsel." Amended Complaint ¶¶ 418, 1055. Underpinning their negligent misrepresentation claim (Seventh Claim for Relief) is Plaintiffs' further allegation that Nehra and Waak "failed to exercise proper due diligence in the discharge of their investigatory duties as … attorneys of TelexFree, and knew or should have known Plaintiffs and the Putative Class would have relied upon their expertise and misrepresentations." Amended Complaint ¶ 1064. Both negligence-based claims are founded on the mistaken assertion that Nehra and Waak "owed Plaintiffs and the Putative Class a duty to act with reasonable care and to exercise the ordinary skill and ability commonly exercised by such professionals." Amended Complaint ¶ 1056. But Plaintiffs' own allegations regarding Nehra and Waak's role as "attorneys of TelexFree" lay bare the impossibility and fallacy of their claims. Because, admittedly, no attorney-client relationship existed between the Plaintiffs and either Nehra or Waak, neither attorney owed Plaintiffs any such duty of care. Consequently, both negligence claims fail. Moreover, to the extent Plaintiffs allege that Nehra and Waak committed a stand-alone violation of M.G.L. c. 93A (Second Claim for Relief) during the course of their legal representation of TelexFree (as opposed to their claim of a *per se* violation under M.G.L. c. 93, § 69), that claim also fails in the absence of an attorney-client relationship.

To sustain a claim of professional negligence, Plaintiffs must plead sufficient facts to establish that Nehra and Waak owed Plaintiffs a duty of care. *One Nat'l Bank v. Antonellis*, 80

F.3d 606, 609 (1st Cir. 1996) (applying Massachusetts law); *Spinner v. Nutt*, 417 Mass. 549, 552 (1994).  Whether or not such a duty exists is a question of law.  *One Nat'l Bank*, 80 F.3d at 609; *DaRoza v. Arter*, 416 Mass. 377, 381 (1993).  In Massachusetts, the class of plaintiffs who may bring a professional negligence claim against an attorney is, generally, limited to those individuals or entities who were clients of the attorney.  *Miller v. Mooney*, 431 Mass. 57, 60-61 (2000) ("The duty of care owed by an attorney arises from an attorney-client relationship."); *DeVaux v. Am. Home Assurance Co.*, 387 Mass. 814, 817 (1983) ("It is the general rule that an attorney's liability for malpractice is limited to some duty owed to a client. … Where there is no attorney/client relationship there is no breach or dereliction of duty and therefore no liability."); *Robertson v. Gaston Snow & Ely Bartlett*, 404 Mass. 515, 524 n.5 (1989) ("[A]ttorneys serving as counsel to a corporation owe a duty to act according to the interests of the corporation and not in the interests of non-client stockholder, director, officer, employee, or other representative of the corporation.").

Plaintiffs' claim for negligent misrepresentation must also be predicated on establishing either the existence of an attorney-client relationship or the creation of a duty of care through an attorney's knowledge of a specific non-client's reasonable reliance on his legal representations. *See Page v. Frazier*, 388 Mass. 55, 61-66 (1983) (bank's attorney could not be liable to mortgagors for negligent misrepresentation where no attorney-client relationship existed between the parties); *Austin v. Bradley, Barry & Tarlow, P.C.*, 836 F. Supp. 36, 38, 40-41 (D. Mass. 1993) (rejecting negligent misrepresentation claim where plaintiffs failed to demonstrate privity between the parties or defendant attorney's actual knowledge of each specific plaintiff's reliance).  Additionally, where a plaintiff's M.G.L. c. 93A claim alleges unfair or deceptive acts

during the course of the defendant's "legal representation of the plaintiff," proof of "an attorney-client relationship … is critical." *Robertson,* 404 Mass. at 527.

Plaintiffs must ordinarily show the existence of an attorney-client relationship by an express contract. *See Miller*, 431 Mass. at 61. Alternatively, such a relationship may be implied where "(1) a person seeks advice or assistance from an attorney, (2) the advice or assistance sought pertains to matters within the attorney's professional competence, and (3) the attorney expressly or impliedly agrees to give or actually gives the advice or assistance." *DeVaux*, 387 Mass. at 817-18 (internal quotations omitted). Courts interpreting the *DeVaux* test have understood the first element to require "concrete communication by the plaintiff requesting that the attorney represent him, or explicitly seeking *individualized* legal advisement." *Int'l Strategies Grp., Ltd. v. Greenberg Traurig, LLP*, 482 F.3d 1, 8 (1st Cir. 2007) (emphasis added); *see also Sheinkopf v. Stone*, 927 F.2d 1259, 1266-68 (1st Cir. 1991) (no implied relationship where investor in joint venture managed by defendant attorney "never explicitly requested [the attorney] or [the law firm] to represent him, never sought any legal advice from them, and was never billed for services"); *DaRoza*, 416 Mass. at 382 & n.6 (attorney-client relationship cannot be implied "as a result of unilateral action by the attorney"). The third element may only be established by "proof of detrimental reliance," which means that the person seeking legal services reasonably relies on the attorney to provide those services and the attorney, aware of such specific reliance by a specific individual, does nothing to negate it. *DeVaux*, 387 Mass. at 818. The individual's belief that an attorney-client relationship exists must be (1) "objectively reasonable under the totality of the circumstances" and (2) the attorney must be aware of the belief. *Sheinkopf*, 927 F.2d at 1265 ("[T]he law requires more than an individual's subjective, unspoken belief that the person with whom he is dealing, who happens to be *a* lawyer, has

become *his* lawyer."); *Dolan v. Hickey*, 385 Mass. 234, 236 (1982) ("The possibility that the [mortgagors] nevertheless trusted [the mortgagee's attorney], and relied on his expertise in permitting him to draft the documents, does not establish a relationship of confidence.").  Here, there is certainly no express contract with either plaintiff.  Moreover, there is no allegation that either Plaintiff had any communication whatsoever with either Nehra or Waak.  Clearly, no attorney-client relationship existed.

Furthermore, where an attorney's duties to his actual client would arguably conflict with some alleged duty to a non-client, Massachusetts law creates an absolute bar on enforcing liability to third parties -- "the court *will not* impose a duty of reasonable care on an attorney" in these circumstances.  *Lamare v. Basbanes*, 418 Mass. 274, 276 (1994) (emphasis added); *see also DaRoza*, 416 Mass. at 383-84; *Robertson*, 404 Mass. at 524-25.  The *mere potential* of a conflict is sufficient to defeat a non-client's negligence claim.  *See One Nat'l Bank*, 80 F.3d at 609; *see also Page*, 388 Mass. at 63 (attorney for mortgagee who negligently certified a real estate title owed no duty to the borrower where the *potential* for title defects created hypothetical conflicts of interest between mortgagee and borrower).  Whether a potential conflict exists turns, in part, on whether the attorney's duty of confidentiality to the client conflicts with the alleged duty to the non-client.  *One Nat'l Bank*, 80 F.3d at 610-11 (no duty to the non-client plaintiff arose from foreseeable reliance because the attorney owed a conflicting duty of confidentiality to the client not to disclose the information at issue to the plaintiff).

In *Int'l Strategies Grp., Ltd. v. Greenberg Traurig, LLP*, for example, the plaintiff alleged that it invested several million dollars in an investment program later exposed as a Ponzi scheme, run by a corporation that misappropriated large sums for the personal use of its operators.  482 F.3d at 4.  A number of fraudulent transfers were made into a bank account of the corporation's

7

outside legal counsel. *Id.* at 4-5. Soon after the plaintiff learned of the transfers and began investigating further, the corporation's CEO and outside legal counsel represented to plaintiff that the corporation, too, was a victim of the fraudulent scheme and intended to initiate litigation against the offenders. *Id.* at 5. The attorney promised that the corporation would take all necessary steps, including litigation, to recover the missing funds and warned plaintiff that any independent action by the plaintiff against the corporation would jeopardize the recovery. *Id.* Neither the misappropriated funds nor the promised litigation ever materialized, and the plaintiff eventually brought negligence, misrepresentation, and unfair trade practices claims against the attorney, alleging that these statements led it to believe that the corporation's attorney would also represent plaintiff and that an attorney-client relationship had been formed. *Id.* at 5-6. Affirming the district court judgment, the First Circuit held that no express attorney-client relationship existed where there was no allegation of a retainer agreement or contract for legal services, nor of any bills issued or paid for such services between plaintiff and defendant attorney. *Id.* at 7. Nor had an implied attorney-client relationship been created, since there was no allegation that plaintiff "explicitly request[ed] legal representation" from the corporation's attorney, "nor did it seek advice regarding its own legal position vis-à-vis the entities implicated in the fraud," as required under the first prong of the *DeVaux* test. *Id.* at 9-10. Analyzing the third prong, the First Circuit held that plaintiff's reliance on the attorney's claim that the corporation would represent plaintiff's interests in its fund recovery efforts was not reasonable where the attorney also made clear that he was representing the corporation's interests, and plaintiff suspected the corporation's malfeasance and threatened to take action on a number of occasions, thereby indicating that plaintiff was aware that its interests were not fully aligned with the corporation's. *Id.* at 12. The "foreseeable reliance" exception to the attorney-client relationship requirement

8

was also inapplicable in *Int'l Strategies Grp., Ltd.* because, as investors in the corporation's scheme, plaintiff and the corporation were potentially adverse parties.  *Id.* at 13.  Indeed, the plaintiff became aware of an actual conflict of interest with the corporation when it began investigating the fraudulent transfers.  *Id.*  Imposing on the attorney a duty to plaintiff would create a conflict with his existing duty to his actual client.  *Id.*  Absent any duty of care owed to plaintiff as a non-client, the First Circuit held in the attorney's favor on plaintiff's professional negligence, negligent misrepresentation, and Chapter 93A claims.  *Id.*  *See also Tocco v. Richman Greer Prof'l Assoc.*, 553 F. App'x 473, 475-77 (6th Cir. 2013) (applying Michigan law and affirming dismissal of plaintiff's claims for negligence, misrepresentation and fraud in connection with representation of operator of Ponzi scheme).

A ready analogy is presented by the allegations in the Amended Complaint, which similarly completely undermine and gut the proposition that Nehra or Waak ever provided legal representation to Plaintiffs.  Plaintiffs, as investors in TelexFree's scheme, do not allege that they obtained a retainer agreement authorizing Nehra or Waak to be their attorney, or that they were ever billed for services rendered by Nehra or Waak.  *See also Symmons v. O'Keefe*, 419 Mass. 288, 299-300 (1995) (no attorney-client relationship between firm and plaintiffs where, among other factors, no fee arrangement was discussed, no retainer was paid, and no bill was sent to plaintiffs for such services).  Indeed, Plaintiffs admit throughout the Amended Complaint that they were a third party to the attorney-client relationship between Nehra and TelexFree.  *See, e.g.*, Amended Complaint ¶ 404 (Nehra and Waak "each provided legal services to TelexFree"), ¶ 1064 (Nehra and Waak "failed to exercise proper due diligence in the discharge of their investigatory duties as … attorneys of TelexFree").  Thus, no express attorney-client relationship between Nehra or Waak and the Plaintiffs has been alleged.

19649807v.3

The Amended Complaint likewise falls short of pleading the existence of an implied attorney-client relationship for the reasons outlined by the First Circuit in *Int'l Strategies Grp., Ltd.* Plaintiffs have failed to allege that they "explicitly request[ed] legal representation" from Nehra or Waak. *Int'l Strategies Grp., Ltd.*, 482 F.3d at 9-10. They do not claim to have sought out any legal advice at all, let alone advice concerning their own "individualized" legal positions vis-à-vis TelexFree (as opposed to TelexFree's position vis-à-vis a government investigation). *Id.* Instead, Plaintiffs allege that "at the request of TelexFree and [its] Founders," Nehra "publicly opined" at a July 2013 event about the legality of TelexFree's business model. Amended Complaint ¶¶ 393, 423, 559. Approximately one week after the event, TelexFree allegedly posted a video on its website of that presentation. Amended Complaint ¶¶ 556, 559. Despite Plaintiffs' claim that Nehra's public statements "constituted legal advice" to the Plaintiffs, Massachusetts law is clear that an attorney-client relationship cannot be implied "as a result of unilateral action by the attorney." *See DaRoza*, 416 Mass. at 382 & n.6.

The third prong of the *DeVaux* test, which requires an attorney's agreement to provide (or actual provision of) individualized legal assistance to plaintiffs, is similarly unsatisfied by allegations that Nehra, as TelexFree's counsel, made public remarks to a large group of unknown event attendees. *See DeVaux*, 387 Mass. at 818. Nor have Plaintiffs plead facts to plausibly suggest that either (1) their alleged reliance on Nehra's statements was "objectively reasonable under the circumstances" or (2) Nehra had actual knowledge of Plaintiffs' reliance. *See Sheinkopf*, 927 F.2d at 1265. Like the defendant attorney in *Int'l Strategies Grp., Ltd.*, both Nehra and TelexFree made clear -- and Plaintiffs admit in the Amended Complaint -- that Nehra was at all times acting on behalf of TelexFree. *See, e.g.*, Amended Complaint ¶ 559. Further, Plaintiffs allege that "at the time of the 'Super Weekend,' TelexFree's Brazilian bank accounts

had been frozen and all of TelexFree's Brazilian recruiting and payments had been suspended by court order" due to its business activities.  *Id.* at ¶ 422.  The "Brazilian shut down" was widely publicized on the Internet, discussed by TelexFree itself in its own web videos, and allegedly addressed by Nehra during his "Super Weekend" remarks.  *Id.* at ¶¶ 136, 422, 445, 645-46. Plaintiffs' claims thus establish that they had clear grounds for suspicion of TelexFree's business activities at the time of Nehra's July 2013 remarks.  As a result, they have plead themselves out of a claim that they reasonably relied upon Nehra to provide them with legal advice, given his position as counsel for TelexFree.  *See Int'l Strategies Grp., Ltd.*, 482 F.3d at 12.

The obvious potential for a conflict of interest between TelexFree and the investors further prohibits the recognition of a duty of care between Nehra and Plaintiffs due to a claim of "foreseeable reliance."  *Lamare*, 418 Mass. at 276; *DaRoza*, 416 Mass. at 383-84; *Robertson*, 404 Mass. at 524-25.  Plaintiffs allege that at the time Nehra made the identified representations on behalf of TelexFree, he had "actual personal knowledge of TelexFree's product and business model" and "knew that TelexFree was a pyramid scheme."[1]  Amended Complaint ¶¶ 302, 415. As detailed above, TelexFree's legal issues were public knowledge and Plaintiffs also had reason to suspect that their individual interests did not fully align with TelexFree's.  Imposing on Nehra a duty of care to Plaintiffs would, therefore, unquestionably conflict with his existing duty to his actual client, TelexFree.  *See Int'l Strategies Grp., Ltd.*, 482 F.3d at 13; *see also One Nat'l Bank*, 80 F.3d at 609-11; *Page*, 388 Mass. at 63; *Tocco*, 553 F. App'x. at 475 ("Indeed, 'placement of trust, confidence and reliance … is unreasonable if the interests of the client and non-client are … even *potentially* adverse.'").

---

[1] As will be discussed *infra*, Plaintiffs deliberately ignore pleading with specificity which "business model" Nehra was referencing in his remarks.  Moreover, there are no allegations that Waak ever made any statements whatsoever. As such, absent an attorney-client relationship, there are no other claims against Waak.

Plaintiffs have not, because they cannot, plead any facts that suggest either Nehra or Waak owed Plaintiffs a duty of care pursuant to an attorney-client relationship or claim of foreseeable reliance. Because Plaintiffs' professional negligence, negligent misrepresentation, and stand-alone M.G.L. c. 93A claims are premised on such an alleged duty, those claims must be dismissed.

**II.   Because Nehra Merely Provided Legal Services of a Limited Nature to TelexFree, Neither He Nor Waak are "Controlling Persons" or "Agents Who Materially Aid[ed]" Any Sale of Securities under Section 410(b).**

Plaintiffs allege that Nehra and Waak are liable under M.G.L. c. 110A, § 410(b) (Eighth Claim for Relief) as "controlling persons" and "agents who materially aided in the sales of [] fraudulent securities" by TelexFree. Amended Complaint ¶¶ 1072, 1073. These conclusory claims are utterly unsupported by the allegations of the Amended Complaint, which confirm instead that Nehra merely served as outside legal counsel to TelexFree on the limited topic of compliance with multi-level marketing regulations and provided advice regarding the legality of TelexFree's revised business model. A substantial body of case law confirms that such conduct by attorneys does not qualify them as "controlling persons" or "agents" who may be held vicariously liable for a client's unlawful sale of securities.

M.G.L. c. 110A, § 410(b), Massachusetts' "blue sky" law, enumerates a limited group of persons who may be vicariously liable for another person's violation of securities laws:

Every person who [1] *directly or indirectly controls a seller* liable under subsection (a), [2] every partner, officer, or director of such a seller, every person occupying a similar status or performing similar functions, [3] every employee of such a seller who materially aids in the sale, and [4] every broker-dealer or *agent who materially aids in the sale* are also liable jointly and severally with and to the same extent as the seller, unless the non-seller who is so liable sustains the burden of proof that he did not know, and in exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist.

12

M.G.L. c.110A, § 410(b) (emphasis added).  This provision emulates the Uniform Securities Act of 1956, which has been adopted in whole or in part by a significant majority of other states.

In order to allege "control" over a seller, Plaintiffs must plead facts to show that Nehra and Waak (1) had the power to direct the management, policies, and operations of TelexFree, and (2) actually exercised such control.  *Aldridge v. A.T. Cross Corp.*, 284 F.3d 72, 85 (1st Cir. 2002).  An indication of "some potential ability to control" is insufficient; rather, a plaintiff must plead specific facts showing that the alleged "control person" "actively participat[es] in the decision-making" of the corporation.  *Id.*  (holding that the power of trust defendants to elect two-thirds of the directors was not sufficient to establish controlling person liability because they did not have "direct control over the management and operations of the company") (citing *Sheinkopf v. Stone*, 927 F.2d 1259, 1270 (1st Cir. 1991) ("For [the defendant] to be liable ... there must be 'significantly probative' evidence that the [defendant] exercised, directly or indirectly, meaningful hegemony over the ... venture ....")).

The Amended Complaint alleges no facts from which one could conclude that Nehra or Waak "controlled" TelexFree, or that they acted in any capacity beyond that of outside counsel providing legal advice of a limited nature for a brief period of time.  *See, e.g.*, Amended Complaint ¶ 404 (Nehra and Waak "provided legal services to TelexFree"), ¶ 416 (Nehra "gave his professional opinion" regarding "TelexFree's business model and operation"), ¶ 424 ("Nehra's statements and opinions provided legal representations …"), ¶ 535 (Nehra and Waak "were obligated to advise their clients on how to comply with the law …").  Neither Nehra nor Waak was involved in any way in the founding of TelexFree, nor were they ever employees, officers, directors, or direct participants in the business.  *See* Amended Complaint ¶¶ 46-64 (identifying TelexFree's Founders, Principals, Executive Officers and Top Level Promoters).

13

They were not part of the sales chain, nor did they ever purchase an interest in the business or share in the profits generated by the business.  Amended Complaint ¶ 562 (alleging only that Nehra "received fees" for his advice regarding TelexFree's legal compliance).  Plaintiffs' allegations confirm that "TelexFree's [F]ounders and [P]rincipals, [E]xecutive [O]fficers and [T]op [L]evel [P]romoters controlled the activities and operations of TelexFree."  Amended Complaint ¶ 7.  As "Licensed Professionals," Nehra and Waak are merely alleged to have provided "substantial assistance" by rendering legal services to TelexFree.  *Id.* at ¶¶ 7, 565.  That Nehra allegedly attended meetings and teleconferences with TelexFree's Founders, Principals, and Executive Officers "to discuss TelexFree's product, business model, and operations" and "had access to and input into TelexFree's documents," *see* Amended Complaint ¶ 546, is fully consistent with his role as outside legal counsel.  Such allegations provide no support for a "controlling person" theory.  *See Bennett v. Durham*, 683 F.3d 734, 738 (6th Cir. 2012) (plaintiff's allegation that the seller's officers and directors "relied completely" on attorney's work and would have "structured [their] sales operation in any way [attorney] advised," suggested only that seller's "*actual* partners, officers and directors relied heavily on their attorney, not that [the attorney] was the one calling the shots").  Moreover, Plaintiffs do not allege that Nehra possessed any influence beyond the limited legal compliance issues that he was retained to address, let alone that he exercised control over the general management and operations of the company.  *See Aldridge*, 284 F.3d at 85.  In short, the Amended Complaint utterly fails to substantiate its conclusory claim that Nehra and Waak "had the power and authority to influence and control, and influenced and controlled, the decision-making and activities of TelexFree."  *See* Amended Complaint ¶ 1070.

14

"Agent" is a defined term under the Massachusetts statute, and has a significantly narrower meaning thereunder than its common law counterpart.  It means "any individual other than a broker-dealer who represents a broker-dealer or issuer *in effecting or attempting to effect purchases or sales of securities*."  M.G.L. c.110A, § 401(b) (emphasis added).  Numerous state and federal courts interpreting parallel "blue sky" laws have determined that this definition of "agent" "does not include attorneys who merely provide legal services, draft documents for use in the purchase or sale of securities, or engage in their profession's traditional advisory functions." *Kirchoff v. Selby*, 703 N.E.2d 644, 651-52 (Ind. 1998); *see also, e.g., Klein v. Boyd*, 949 F. Supp. 280, 283-84 (E.D. Pa. 1996) (applying Massachusetts law, holding that law firm that prepared disclosure documentation for and provided legal advice to alleged sellers did not act as an "agent" who "effected or attempted to effect the sale of securities" under § 410(b)); *Bennett*, 683 F.3d at 735 (holding that Kentucky's similar "blue sky" law does not "impose liability on an attorney who performs traditional legal services for a company offering its securities for sale to the public").  An attorney performing ordinary legal work "is not hired to ['effect,' *i.e.*, to] 'carry out' or 'bring about' the sale of securities; the attorney's job is to ensure that any such sale, should the client choose to pursue it, complies with the law." *Bennett*, 683 F.3d at 738.  Legal representation of a seller that culminates in the sale of securities is not enough. *Id.*  Rather, to rise to the level of "effecting" the purchase or sale of securities, "the attorney must actively assist in offering securities for sale, solicit offers to buy, or actually perform the sale." *Kirchoff*, 703 N.E.2d at 652; *Bennett*, 683 F.3d at 738-39 (statutory definition of "agent" requires that attorney represent the seller "'in effecting or attempting to effect' the sale, meaning that 'carrying out or bringing about the sale must be the job the client hires the attorney to perform'").

15

Even an attorney's preparation or presentation of a legal opinion discussing the potential benefits of a securities transaction, and which will be used by the seller to solicit purchasers, falls short of "effecting or attempting to effect" a sale. *See, e.g., Ackerman v. Schwartz*, 733 F. Supp. 1231, 1252 (N.D. Ind. 1989), *aff'd in part and rev'd in part on other grounds*, 947 F.2d 841 (7th Cir. 1991); *Rendler v. Markos*, 453 N.W.2d 202, 206-07 (Wis. Ct. App. 1990). In *Ackerman*, for example, the attorney defendant represented promoters of a tax shelter program that promised substantial tax benefits and profits. *Id.* at 1234-35. The attorney prepared an opinion letter that purported to recite "facts" that the investors argued made the transaction look legitimate. *Id.* at 1235-37. The attorney also implied that he had conducted an independent investigation of certain matters, thus providing additional credibility and authenticity to the tax shelter. *Id.* at 1242. Nevertheless, the district court concluded that the attorney was not an "agent" who materially aided in a sale pursuant to the Indiana Securities Act. *Id.* at 1252. The attorney did not fall within the meaning of "effects or attempts to effect purchases and sales of the securities" because "[n]o evidence suggests that [the attorney] or his firm personally and actively employed the opinion letter to solicit investors …. Liability under the Indiana Securities Act requires something more than the drafting of an opinion letter." *Id. See also Baker, Watts & Co. v. Miles & Stockbridge*, 620 A.2d 356, 368 (Md. Ct. Spec. App. 1993) ("[T]o be considered an "agent" an attorney must act in a manner that goes beyond legal representation. … To ['effect'] the purchase or sale of securities, the attorney must actively assist in offering securities for sale, solicit offers to buy, or actually perform the sale."), *superseded on other grounds by rule, see Benway v. Md. Port Admin.*, 989 A.2d 1239, 1245 (2010).

Similarly, in *Rendler v. Markos*, plaintiff investors alleged that defendant attorneys were "agents" under Wisconsin's Uniform Securities Act that materially aided the sellers of limited

16

partnership interests by preparing a false and misleading private placement memorandum, and by drafting other documents and advertising used to sell the interests.  453 N.W.2d at 206.  The court found these allegations insufficient to establish that attorneys were "agents" of the sellers, holding that "[t]he definition [of 'agent'] covers persons who assist directly in offering securities for sale, soliciting offers to buy, or performing the sale. … It is not intended to cover professionals such as attorneys engaging in their traditional advisory functions."  *Id.*  *See also CFT Seaside Inv. Ltd. P'ship v. Hammer*, 868 F. Supp. 836, 843-44 (D.S.C. 1994) (attorneys who issued opinion letter addressed to plaintiff investors, drafted private placement memorandum, and verbally expressed legal opinion to plaintiff investor during a telephone conversation were not "agents" under South Carolina's securities law because they did not "assist directly" in offering, soliciting, or performing sale of securities).

The deficiencies in Plaintiffs' attempt to plead "controlling person" liability against Nehra and Waak equally undermine their theory that the attorneys are "agents" of TelexFree, as defined by M.G.L. c. 110A, § 401(b) and interpreted by case law.  The Amended Complaint alleges that TelexFree retained Nehra and Waak as outside counsel to provide legal advice and articulate a legal opinion on the limited question of whether its business model complied with applicable securities and marketing laws.  *See, e.g.*, Amended Complaint ¶¶ 404, 416, 424, 535.  As such, Nehra and Waak were not hired to "effect," *i.e.*, to "carry out" or "bring about" the purchase or sale of AdCentral memberships to promoters.  *See* M.G.L. c.110A, § 401(b); *Bennett*, 683 F.3d at 738.  Plaintiffs do not claim that either attorney was involved in offering the memberships for sale, soliciting potential new members, or actually performing sales.  *See, e.g., Kirchoff*, 703 N.E.2d at 652.  Indeed, Plaintiffs' allegations fall well short of the cases cited herein, in which attorneys have far more directly participated in such activities by drafting

offering documents and other materials advertising the sale of securities, or provided written legal opinions used by sellers to induce a group of potential purchasers to buy securities, without meeting the definition of "agent" under Massachusetts' and other states' "blue sky" laws. *See, e.g., Ackerman*, 733 F. Supp. at 1252; *Klein*, 949 F. Supp. at 283-84; *CFT Seaside Inv. Ltd. P'ship*, 868 F. Supp. at 843-44; *Rendler*, 453 N.W.2d at 206-07.

Plaintiffs do not allege that Nehra prepared any documents used in the sale of AdCentral memberships. *See* Amended Complaint ¶¶ 428-31, 562 (alleging, at most, that Nehra advised TelexFree to "refer[] to members of the putative class as 'Associates,' 'Members,' and 'Promoters'" in the promoter contract). Nor do Plaintiffs claim that Nehra drafted a written legal opinion for TelexFree to distribute to potential purchasers. As detailed above, such conduct would fall within the "traditional advisory functions" of a securities attorney. But the Amended Complaint alleges that Nehra's conduct was even further removed from any sale of securities. Nehra merely (1) advised TelexFree regarding regulatory compliance issues presented by its business model and (2) provided a verbal opinion about the legality of TelexFree's business model (but not the merits or terms of any particular investment) on one occasion -- in remarks at a July 2013 event, *see* Amended Complaint ¶¶ 393, 423, 559, which were recorded and included in a video TelexFree posted to its website after the event. Amended Complaint ¶¶ 556, 559. These actions were well within Nehra's advisory duties as TelexFree's legal counsel in the area of multi-level marketing and securities laws. *See, e.g., CFT Seaside Inv. Ltd. P'ship*, 868 F. Supp. at 843-44. Absent any allegation that Nehra actively solicited investors, assisted in offering the AdCentral membership kits for sale, or actually participated in any sale transaction, Plaintiffs have failed to plausibly allege that either Nehra or Waak is a statutory "agent" of TelexFree subject to vicarious liability under M.G.L. c.110A, § 410(b).

III.     **Providing Legal Advice to TelexFree Does Not Render Nehra an "Operator" of or "Participant" in a Multi-Level Distribution Company under M.G.L. c. 93, § 69.**

Plaintiffs allege generally that "[t]he Operational Defendants were engaged in acts in violation of" M.G.L. c. 93, § 69 (First Claim for Relief).  Amended Complaint ¶ 1005.  The Amended Complaint lumps Nehra and Waak into the category of "Operational Defendants" on the grounds that they -- along with other professional service providers -- served as "agents, servants, authorized representatives, co-conspirators or employees of TelexFree."   Amended Complaint ¶ 43.  Section 69, however, does not create liability for such a broad class of secondary actors.  It instead sets forth a set of obligations and prohibitions applicable to (1) the "multi-level distribution company" and (2) "participants in [the company's] marketing program." Section 69(d), for example, states:

> No multi-level distribution company or participant in its marketing program shall: (1) operate or, directly or indirectly, participate in the operation of any multi-level marketing program wherein the financial gains to the participants are primarily dependent upon the continued, successive recruitment of other participants and where retail sales are not required as a condition precedent to realization of such financial gains; (2) offer to pay, pay or authorize the payment of any finder's fee, bonus, refund, override, commission, cross-commission, dividend or other consideration to any participants in a multi-level marketing program solely for the solicitation or recruitment of other participants therein; (3) offer to pay, pay or authorize the payment of any finder's fee, bonus, refund, override, commission, cross-commission, dividend or other consideration to any participants in a multi-level marketing program in connection with the sale of any product or service unless such participant performs a bona fide and essential supervisory, distributive, selling or soliciting function in the sale or delivery of such product or services to the ultimate consumer ….
> For the reasons detailed in Section II, *supra*, establishing that Nehra and Waak are not

liable as "controlling persons" that directed the management and operations of TelexFree and its marketing program, nor as "agents" that "assisted directly" in offering AdCentral membership kits for sale, soliciting new members, or conducting the purchase or sale of memberships, Plaintiffs have similarly failed to plausibly allege that Nehra and Waak are "participants" in the TelexFree marketing scheme.  Section 69(a) describes a number of activities that "participants"

in a multi-level marketing program may perform, such as participating in the distribution chain for goods or services offered by the company (including purchasing and re-selling such products); recruiting new participants; paying or receiving commissions, bonuses, or finders' fees as a result of the sale of such goods or the recruitment of additional participants; and executing a contract of participation in the marketing program.  The Amended Complaint alleges only that TelexFree retained Nehra and Waak as outside counsel to provide legal advice and articulate a legal opinion on the limited question of whether the revised business model that they understood was being implemented complied with securities and marketing laws.  *See, e.g.,* Amended Complaint ¶¶ 404, 416, 424, 535.  Nehra was not hired to "participate" in the marketing, solicitation, purchase, or sale of AdCentral memberships to promoters, nor is there any allegation that he did so.  Plaintiffs do not claim that either Nehra or Waak was involved in the product distribution chain or recruited new members.  Nor do they allege that Nehra was offered or received any commissions, bonuses, or compensation beyond legal fees commensurate with the legal services rendered.[2]  Further, there is certainly no allegation that either attorney executed a membership participation contract.  Plaintiffs' claims grounded on M.G.L. c.93, § 69 and M.G.L. c.93A, § 2 (as a *per se* violation pursuant to § 69) must, therefore, be dismissed.

## IV.   Plaintiffs Have Not Alleged the Basic Elements of Their Fraud Claim.

The Amended Complaint alleges that the "Operational Defendants" "intentionally or recklessly ma[d]e false representations and omissions of material fact to Plaintiffs" in order to "obtain and/or wrongfully appropriate and convert money from Plaintiffs."  Amended Complaint

---

[2] Because there is no allegation that Nehra or Waak received payments other than for legal fees, Plaintiffs' claim for "unjust enrichment" (Fourth Claim for Relief) must also fail.  *See, e.g., Malonis v. Harrington*, 442 Mass. 692, 697 (2004) (attorney is entitled to the fair and reasonable value of the legal services provided).  Moreover, because there is no allegation that Plaintiffs paid these fees, as opposed to TelexFree as the client, any claim for unjust enrichment is specious and subject to dismissal.  *See Katz v. Pershing, LLC*, 806 F. Supp. 2d 452, 460 (D. Mass. 2011) (plaintiff must show that "she has conferred a specific benefit on" the defendant to state a claim for unjust enrichment); *Resnick v. Wyman-Gordon Co.*, 28 Mass. L. Rptr. 27, 2010 WL 5783065, at *6-7 (Mass. Super. Dec. 28, 2010) (dismissing claim for unjust enrichment).

¶ 1082.  To state a claim against Nehra for fraud under Massachusetts law, Plaintiffs must allege that: (1) Nehra made a false representation of material fact; (2) Nehra knew that the representation was false at the time he made it; (3) Nehra made the false statement with the intent to deceive Plaintiffs and induce them to act thereon; (4) Plaintiffs reasonably relied on Nehra's statements in making the decision to purchase AdCentral membership kits; and (5) Plaintiffs were injured as a result of their reliance.  *Masingill v. EMC Corp.*, 449 Mass. 532, 540-41 (2007); *Doyle v. Hasbro, Inc.*, 103 F.3d 186, 193 (1st Cir. 1996); *Lu v. Menino*, No. 14-13053, 2015 WL 1132926, at *12 (D. Mass. Mar. 10, 2015).  With regard to the element of reliance, Plaintiffs must plead both that they actually relied on Nehra's statements, and that such reliance was reasonable.  *Masingell*, 449 Mass. at 540-41.  To the extent Plaintiffs base their fraud claim against Nehra on a "failure to disclose" theory, Nehra's liability necessarily depends on whether he owed a duty to the Plaintiffs.  See *Flaherty v. Baybank Merrimack Valley, N.A.*, 808 F. Supp. 55, 60-61 (D. Mass. 1992); *Royal Bus. Grp., Inc. v. Realist, Inc.*, 933 F.2d 1056, 1064 (1st Cir. 1991) (under Massachusetts law, "there can be no actionable claim of fraud for failure to disclose in the absence of a duty to disclose").

Of course, as with all ten claims in the Amended Complaint, Plaintiffs must at a minimum allege facts in support of each legal element of fraud in order to plead "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); Fed. R. Civ. P. 8(a)(2).  A mere recital of the legal elements supported only by conclusory statements is not sufficient to state a cause of action.  *Id.* at 555.  "[C]ourts increasingly insist that more specific facts be alleged where an allegation is conclusory."  *Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*, 632 F.3d 762, 773 (1st Cir. 2011) (citing *Maldonado v. Fontanes*, 568 F.3d 263, 266, 274 (1st

21

Cir. 2009)).  Even at the motion to dismiss stage, "'naked assertion[s]' devoid of 'further factual enhancement'" are not entitled to a presumption of truth.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557).  "[I]t is only when ... conclusions are logically compelled, or at least supported, by the stated facts, that is, when the suggested inference rises to what experience indicates is an acceptable level of probability, that 'conclusions' become 'facts' for pleading purposes." *Cooperman v. Individual, Inc.*, 171 F.3d 43, 47–48 (1st Cir. 1999). Here, again, Plaintiffs have failed to plead each element of their claim.

With regard to Nehra, specifically, Plaintiffs identify only a single occasion on which Nehra made an alleged misrepresentation of fact -- the TelexFree "Super Weekend" event held July 26-27, 2013.  Amended Complaint ¶¶ 146, 290, 421.  Nehra's remarks at this event were allegedly recorded and included in a video TelexFree posted to its website on August 2, 2013. Amended Complaint ¶ 556.  The Amended Complaint alleges that, during the course of his remarks, Nehra "informed the putative class that he had 'vetted' and 'bless[ed]' TelexFree's business model and operation." Amended Complaint ¶ 416.  He allegedly told the attendees that TelexFree's business plan "is legally designed … you are on very solid legal ground" because TelexFree "pays ONLY on the sale of its VOIP long distance product."  ¶¶ 393, 423, 556. Plaintiffs further allege that Nehra "advised attendees that the shutdown in Brazil would not affect TelexFree's operations in the U.S."  Amended Complaint ¶ 422.  In addition to this speech, Plaintiffs also appear to claim that Nehra is liable for fraudulent omission because he "failed, refused and neglected to advise prospective TelexFree Promoters, the putative class members, that their participation in TF presented a risk, including the risk of participating in an

unlawful scheme, or that his advice was, in fact, against their own interests." Amended Complaint ¶ 551.[3]

As detailed further below, several of the required elements of common law fraud are absent from Plaintiffs' allegations. Most notably, however -- and immediately fatal to their fraud claim -- is the fact that Plaintiffs do not allege anywhere in their nearly 200-page Amended Complaint that either one of them heard Nehra's alleged false statements before purchasing AdCentral membership kits, let alone that they relied on Nehra's statements in making their individual decisions to become Promoters. In their allegations regarding Nehra's appearance at the July 2013 "Super Weekend," Plaintiffs state that "[h]e informed the putative class" that he had "vetted" and "blessed" TelexFree's business model, but *they never allege that either Plaintiff attended the event or was present when Nehra made these statements*. *See* Amended Complaint ¶¶ 421-26, 533-71. Likewise, *Plaintiffs fail to allege that either of them ever watched the Internet video depicting Nehra's remarks* from the "Super Weekend." *See id.* Further, the Amended Complaint contains no allegation that Plaintiffs relied on Nehra's statements, specifically, in making their decisions to purchase membership interests. The absence of any allegation that Plaintiffs themselves heard Nehra's alleged misstatements undermines any possible inference of their actual reliance. *See, e.g., Flaherty*, 808 F. Supp. at 67 (rejecting fraud claim where plaintiffs failed to show that they actually received promotional materials containing defendants' allegedly false representations). Moreover, even if the Amended Complaint plead some facts to show the Plaintiffs' heard Nehra's statements, such reliance in the absence of an express or implied attorney-client relationship would be unreasonable as a matter of law. *See, e.g., Robertson*, 404 Mass. at 523-25; *see also Schlecht v. Smith*, No. 92-30099, 1994 WL

---

[3] As noted previously, Plaintiffs do not identify a single statement ever made by Waak at any time.

621594, at 5-8 (D. Mass. Nov. 7, 1994) ("courts have viewed such reliance on legal counsel representing an adverse party in a business transaction to be, as a matter of law, unreasonable").

To the extent Plaintiffs' allegation that Nehra "failed, refused and neglected to advise prospective TelexFree Promoters, the putative class members, that their participation in TelexFree presented a risk" implicates a claim for fraudulent omission, that claim cannot lie where Nehra owed no duty to Plaintiffs pursuant to either an attorney-client relationship or theory of "foreseeable reliance," as discussed in Section I, *supra*.  *See Flaherty*, 808 F. Supp. at 60-61 (fraud allegations based on attorneys' failure to disclose material facts could not lie where attorneys owed no duty to plaintiffs and plaintiffs' reliance was *per se* unreasonable due to conflicts of interest between themselves and attorneys' clients); *Spinner*, 417 Mass. at 554 (citing S.J.C. Rule 3:07, Canon 4, DR 4-101 (attorney must preserve confidences and secrets gained in the course of representing a client)); *Tocco*, 553 F. App'x at 476-77 (claim of "silent fraud" against attorney fails because there was no duty and any reliance unreasonable as a matter of law).  Plaintiffs' failure to plead either actual or reasonable reliance on Nehra's alleged misrepresentations or omissions thus dooms their fraud claim.

**V.      Plaintiffs Have Failed to Plead All Fraud-Based
         Claims with the Requisite Particularity under Rule 9(b).**

Plaintiffs' remaining claims sound distinctly in fraud, and thus must be pled with particularly, pursuant to Rule 9(b).  *See In re Sonus Networks, Inc. Secs. Litig.*, No. 04–10294, 2006 WL 1308165, at *5 (D. Mass. May 10, 2006) (claims sounding in fraud subject to Rule 9(b)); *N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale*, 567 F.3d 8, 13-14 (1st Cir. 2009).  These claims include: Fraud (Ninth Claim for Relief), Tortious Aiding and Abetting (Tenth Claim for Relief), Aiding and Abetting Violations of M.G.L. c. 93, § 69 and M.G.L. c. 93A (Third Claim for Relief), and Civil Conspiracy (Fifth Claim for Relief).  *See, e.g., N. Am.*

*Catholic Educ. Programming Found.*, 567 F.3d at 15 ("[T]he case law here and in other circuits reads Rule 9(b) expansively to cover associated claims where the core allegations effectively charge fraud.").  Each of these claims is grounded in the Amended Complaint's allegations regarding TelexFree's allegedly fraudulent marketing scheme.  *See* Amended Complaint ¶ 1082, ¶ 1094 (defendants "provided substantial assistance or encouragement … and did so with unlawful intent and knowledge that such parties were perpetuating an illegal Pyramid Scheme"), ¶ 1026 (same), ¶ 1050 (defendants "for an unlawful purpose and using unlawful means, with the intent of so combining, unlawfully defrauded Plaintiffs and the Putative Class our of funds").

Rule 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b).  To survive a motion to dismiss, the plaintiff must specify the "time, place, and content" of each statement alleged to have been false or misleading, along with the reasons why the statement is misleading. *Hill v. Gozani*, 638 F.3d 40, 55 (1st Cir. 2011); *Hayduk v. Lanna*, 775 F.2d 441, 444 (1st Cir. 1985).  Furthermore, when a cause of action sounding in fraud is based on "information and belief," Rule 9(b) requires the plaintiff to plead sufficient supporting facts to permit a conclusion that the alleged belief is reasonable.  *In re Tyco Int'l, Ltd.*, No. 04-CV-1336, 2007 WL 1687775, at *5 (D.N.H. June 11, 2007).  "This holds true even when the fraud relates to matters peculiarly within the knowledge of the opposing party." *Hayduk*, 775 F.2d at 444 (internal quotation marks and citations omitted).  In addition, "general averments of the defendants' knowledge of material falsity will not suffice." *S.E.C. v. Patel*, No. 07-CV-39, 2008 WL 782483, at *5 (D.N.H. Mar. 24, 2008).  Each alleged act or omission must "state with particularity [the] facts giving rise to a strong inference that the defendant acted with the required state of mind."  *See Greebel v. FTP Software, Inc.*, 194 F.3d 185, 193-94, 196-97 (1st Cir. 1999) (scienter allegations "must be

judged under the 'strong inference' standard at the motion to dismiss stage").  "[W]here ... 'multiple defendants are involved, each defendant's role in the fraud must be particularized.'" *Manchester Mfg. Acquisitions, Inc. v. Sears, Roebuck & Co.*, 802 F. Supp. 595, 600 (D.N.H. 1992).

### A.   Plaintiffs' Failure to Allege Sufficient Facts Regarding the Content of Nehra's Alleged Misrepresentation, His Knowledge Of Its Falsity, or His Intent to Deceive Plaintiffs Further Defeats Their Fraud Claim.

As set forth in Section IV, *supra*, Plaintiffs allege that Nehra made a false representation of material fact during remarks he made to the attendees of the July 2013 TelexFree "Super Weekend" event.  Amended Complaint ¶¶ 146, 290, 421.  However, their sparse allegations regarding the contents and context of Nehra's statements fail to support any inference that the alleged statements were not based upon his reasonable belief at that time.  The Amended Complaint alleges that in mid-2013, an attorney advised TelexFree that it should make a number of suggested changes to its business model in order to become compliant with relevant marketing and securities laws and to address the issues that plagued the company in Brazil.  Amended Complaint ¶¶ 147, 457.  Plaintiffs, on information and belief, attribute that advice to Jeffrey Babener of Babener & Associates.  *Id.*  Regardless of the source, Plaintiffs' allegations confirm that intra-company reforms were being contemplated and discussed at the time that Nehra spoke at the "Super Weekend."  Plaintiffs allege that at the "Super Weekend," Nehra "informed the putative class that he had 'vetted' and 'bless[ed]' TelexFree's business model and operation." Amended Complaint ¶ 416.  However, the Amended Complaint fails to identify exactly what business model -- historical, reformed, or other -- was being "blessed."  As such, Plaintiffs have failed to allege with the particularity required by Rule 9(b) *why* Nehra's alleged statements constituted a "false material representation."  *See, e.g., Hill*, 638 F.3d at 55 (Rule 9(b) requires specific facts demonstrating why a statement is false).

26

To give rise to a "strong inference" that Nehra knew his statements were false at the time he made them, Plaintiffs must allege facts showing that Nehra had intended to "bless" TelexFree's historical business model prior to July 2013, as opposed to a business model that he (or another attorney) had suggested would be compliant, and which he understood at the time would be implemented by TelexFree's management moving forward after July 2013.  They have not done so.  Indeed, when examined in combination with the *BehindMLM.com* article that purports to extensively quote Nehra's "Super Weekend" comments (attached to the Amended Complaint in Exhibit 4), Plaintiffs' allegations support an inference that Nehra was speaking about a reformed business model, thus undermining any allegation of an intent to defraud. According to the Amended Complaint, Nehra explained that his examination of TelexFree's business plan confirmed that the company is on "solid legal ground" because it "pays ONLY on the sale of its VOIP long distance product."   Amended Complaint ¶¶ 393, 423, 556.  That TelexFree had a "real product" was the program's "special ingredient."  Amended Complaint ¶ 556.  According to the web article relied upon by Plaintiffs, Nehra's "blessing" was, in fact, conditional.  He reportedly stated: "I can legally bless and defend your compensation plan if and only if it leads to its intended resolve.  When you place ads … [y]ou're trying to get customers! When you are rewarded … [y]ou're rewarded for putting more customers on the books." (Docket No. 144, pp. 78-79).  The article also reports that Nehra compared TelexFree's business model to that of another company whose compensation plan the FTC upheld where representatives received payment only for product sales by themselves or their recruits.  *Id.* at p. 78.  These statements are utterly illogical in the context of TelexFree's pre-July 2013 model and were directly contradicted by the contents of TelexFree's website, which allegedly had previously advertised the promise of compensation merely for recruiting new members.

Amended Complaint ¶ 27.  Plaintiffs' allegations thus fail to support a "strong inference" that Nehra knew his statements were false when he made them.  *See, e.g., Suna v. Bailey Corp.*, 107 F.3d 64, 68 (1st Cir. 1997) (plaintiff must allege specific facts supporting a strong inference of an intent to defraud); *Maldonado v. Dominguez*, 137 F.3d 1, 12 n.9 (1st Cir. 1998) (allegations undermined any inference of scienter).

      **B.**    **Plaintiffs' Aiding and Abetting Claims Cannot Lie Absent Reasonable Reliance, Foreseeable Reliance, or Knowledge of Falsity.**

Plaintiffs bring two "aiding and abetting" causes of action against Nehra and Waak: First, they allege that Nehra and Waak aided and abetted other defendants' primary violations of M.G.L. c. 93, § 69 and M.G.L. c. 93A (Third Claim for Relief) by "provid[ing] substantial assistance and/or encouragement to the other Defendants" in committing those violations. Amended Complaint ¶ 1032.  Second, they allege that Nehra and Waak committed "tortious aiding and abetting" (Tenth Claim for Relief) by similarly providing "substantial assistance or encouragement" to other defendants in committing the remaining primary causes of action. Amended Complaint ¶ 1094.  As with all claims discussed thus far, Plaintiffs base their allegations that Nehra provided "substantial assistance" to TelexFree's pyramid scheme on Nehra's provision of legal services to TelexFree.  See, e.g., Amended Complaint ¶ 1034 (c)-(d), ¶ 1096 (c)-(d).

Under Massachusetts law, liability for aiding and abetting a tort attaches where: (1) the defendant actively participates or provides substantial assistance or encouragement to the other party; and (2) the defendant has unlawful intent, i.e., knowledge that the other party is breaching a duty and the intent to assist that party's actions.  *Go–Best Assets Ltd. v. Citizens Bank of Mass.*, 463 Mass. 50, 64 (2012); *Spinner*, 417 Mass. at 556.  A claim of aiding and abetting must meet the heightened pleading requirements of  Rule 9(b).  *Bamberg v. SG Cowen*, 236 F. Supp. 2d 79,

91 (D. Mass. 2002).  With regard to an attorney's provision of legal services to an allegedly wrongdoing client, silence or inaction in the face of a client's tortious conduct does not give rise to liability in the absence of any separate duty owed to the plaintiffs.  *Austin v. Bradley Barry & Tarlow, P.C.*, 836 F. Supp. 36, 38–40 (D. Mass. 1993) (no aiding and abetting liability for attorneys for failing to disclose to investors what they knew about client's insolvency since they owed no duty to investors); *see also Schwan's Sales Enterprises, Inc. v. Commerce Bank & Trust Co.*, 397 F. Supp. 2d 189, 199 (D. Mass. 2005).  Nor can an attorney be said to aid and abet a wrongdoer client simply because the attorney continues to represent the client. "[S]ubstantial assistance means something more than merely providing routine professional services that aid the tortfeasor in remaining in business, but do not proximately cause the plaintiffs' harm." *Sgarzi v. Sharkansky, LLP*, No. 13-03951, 2014 WL 2504537, at *3 (Mass. Super. Feb. 11, 2014).  Any claim that Nehra and Waak aided and abetted TelexFree's scheme by failing to warn Plaintiffs of any risk must fail because, as extensively detailed in Section I, Nehra and Waak owed no duty to the Plaintiffs.  *See Austin*, 836 F. Supp. at 38-40.  Moreover, receiving a fee for legal services is not enough to suggest that an attorney personally benefitted from the scheme, since that kind of economic motivation is too minimal to demonstrate that the defendant's silence was "designed intentionally to aid the primary fraud." *Austin*, 836 F. Supp. at 40.   Plaintiffs' claims thus fall far short of alleging that Nehra and Waak aided and abetted any primary violation alleged in the Amended Complaint.

###### C.     Plaintiffs' Civil Conspiracy Claim Also Fails.

To state a claim for civil conspiracy, Plaintiffs must allege, "first, a common design or an agreement, although not necessarily express, between two or more persons to do a wrongful act and, second, proof of some tortious act in furtherance of the agreement. *Aetna Cas. Sur. Co. v. P&B Autobody*, 43 F.3d 1546, 1564 (1st Cir. 1994).  To state a claim, plaintiff must plead

29

specific facts demonstrating "a common plan to commit a tortious act where the participants know of the plan and its purpose and take affirmative steps to encourage the achievement of the result." *Kurker v. Hill*, 44 Mass. App. Ct. 184, 189 (1998).  In order to justify liability under this theory, a defendant's own conduct must, therefore, be tortious.  *Payton v. Abbott Labs*, 512 F. Supp. 1031, 1035 (D. Mass. 1981).  Since these claims are grounded in fraud, Plaintiffs must also meet the heightened pleading requirements of Rule 9(b).  *Hayduk*, 775 F.2d at 443-44.

As a preliminary matter, plaintiffs cannot effect an end-run around the lack of an attorney-client relationship by alleging a "conspiracy" between an attorney and his client.  *Int'l Strategies Grp., Ltd. v. Greenberg Traurig, LLP*, 482 F.3d  at 8.  Moreover, plaintiffs have failed to plead facts with sufficient particularity to show that Nehra knowingly and intentionally acted in concert with TelexFree to commit any unlawful act.  Critically, Plaintiffs have not alleged facts supporting a "strong inference" that Nehra and any other defendant agreed on a common plan to commit a tortious act.  Plaintiffs alleged that TelexFree hired Nehra for the lawful purpose of providing legal advice regarding the company's compliance with marketing and securities laws.  Any suggestion in the Amended Complaint that Nehra advised the company how to operate illegally as opposed to advising how to be compliant is completely unsupported with any specific facts.  Likewise, Plaintiffs have not pled facts with sufficient particularity to show that Nehra knew any statements he made were false at the time he made them.  *See Taylor v. Airco, Inc.* 503 F. Supp. 2d 432, 448 (D. Mass. 2007).  Without facts evidencing a "common tortious plan" or any affirmative step taken by Nehra to achieve such a plan, Plaintiffs' civil conspiracy claim against Nehra cannot lie.

## CONCLUSION

For the forgoing reasons, Nehra and Waak respectfully request that the Amended Complaint be dismissed with prejudice.

Respectfully submitted,

GERALD P. NEHRA, RICHARD W.
WAAK, AND LAW OFFICES OF
NEHRA AND WAAK

By their attorneys,

/s/ *Christopher F. Robertson*
Christopher F. Robertson (BBO No. 642094)
Katherine R. Moskop (BBO No. 685666)
Seyfarth Shaw LLP
World Trade Center East
Two Seaport Lane, Suite 300
Boston, MA 02210
Telephone: (617) 946-4800
Facsimile: (617) 946-4801
Dated: June 1, 2015
crobertson@seyfarth.com
kmoskop@seyfarth.com

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on June 1, 2015.

/s/ *Christopher F. Robertson*
Christopher F. Robertson

31

19649807v.3