**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

_____
                                              )
**In re:**                                    )
                                              )
**TELEXFREE SECURITIES LITIGATION**  )   MDL No. 4:14-md-02566-TSH
                                              )
                                              )
                                              )
_____ )


# MEMORANDUM AND ORDER ON MOTION TO DISMISS BY DEFENDANTS BASE COMMERCE, LLC., D/B/A, PHOENIX PAYMENTS, LLC., AND JOHN HUGHES (Document # 164).

**January 29, 2019**

**HILLMAN, D.J.**

## Introduction

Base Commerce, LLC., D/B/A Phoenix Payments, LLC ("BASE"), and John Hughes ("Hughes"), two defendants in the TelexFree multidistrict securities litigation, move to dismiss all counts against them in the Second Consolidated Amended Complaint ("SCAC") pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(2), 12(b)(6) and (9)(b). TelexFree, Inc. ("TelexFree") was a pyramid scheme that operated from February 2012 to April 2014, and involved approximately two million participants worldwide, nearly a million of whom suffered a net financial loss. Several plaintiffs filed actions in federal district courts across the United States seeking to recover their losses against dozens of defendants, ranging from financial service providers, payment processing companies, (such as Base and Hughes) and the principles of the fraudulent scheme. As the actions involved common questions of fact, the Judicial Panel on Multidistrict Litigation joined the actions into a

multi-district litigation, and ordered transfer of all actions to the District of Massachusetts for coordinated or consolidated pretrial proceedings.

**Background**

Base provided payment processing services to TelexFree from April 2013 until December 31, 2013. During this time the Defendant Hughes was Base Commerce's President, and principal contact with TelexFree. Hughes advised TelexFree on its financial operations, worked with overseas banks and processors in an effort to establish TelexFrees' business off-shore, and linked TelexFree with other domestic payment processors in order to keep TelexFree operational during a period of time when fears of governmental regulatory action was imminent. In addition, Base Commerce and Hughes intervened in a dispute between TelexFree and GPG, another Defendant and payment processor, in order to insure a continued cash flow to TelexFree. Base Commerce was compensated for these services in excess of two and half million dollars.

The SCAC alleges that these services were provided with full knowledge that TelexFree was a pyramid scheme. The SCAC also alleges that Hughes was aware that TelexFree's predecessor corporation (Common Cents Communication, Inc.) had been accused of being a Ponzi scheme (SCAC ¶ 899). In August of 2013 Hughes wrote the following email to Defendant Merrill, Wanzeler, Craft, and GPF that:

"[we] have an MLM with a huge amount of negative news and serious accusations, hence banks and processors are running away based on what the FTC, Treasury Department, FDIC, and Justice Department have done to them lately to include suing them (sic) fining them and freezing those settlement funds." (SCAC¶ 907).

In September of 2013 Hughes wrote, "if, God forbid, TelexFree came under a publicized FTC investigation, there would be an indeterminate wave of charge backs (sic)" (SCAC ¶ 915). In

August 2013 when it appeared that no United States bank or payment processor would accept TelexFree's business Hughes linked up TelexFree with Advantage Payments and IPS to keep TelexFree afloat. Advantage Payments and IPS are also payment processing companies and are Defendants in this lawsuit.

The SCAC seeks recovery against Base and Hughes for aiding and abetting in violation of M.G.L. Ch 93 § 12 and 69 and M.G.L. Ch 93A § 2A and 11 (Third Claim for Relief), Unjust Enrichment (Fourth Claim for Relief), Conspiracy (Fifth Claim for Relief), Tortious Aiding and Abetting (Tenth Claim for Relief).

The Defendants have moved to dismiss the counts against them alleging that this Court lacks subject matter jurisdiction because the Plaintiffs have not alleged sufficient injury-in-fact, to confer Article III standing. Specifically, they argue that the Plaintiffs have not alleged how much money they invested, withdrew, or when they invested. The Defendants also claim that this Court lacks personal jurisdiction over Base and Hughes because both are Arizona residents and neither has had sufficient contacts with Massachusetts to satisfy the Massachusetts Long Arm Statute and the Due Process Cause of the Constitution. Finally, the Defendants allege that the SCAC fails to state a claim for relief under Fed. R. Civ. P. 12(b)(6).

## Discussion

*Subject Matter Jurisdiction*

The Defendants claim that this Court lacks subject matter jurisdiction because they have not alleged an injury in fact sufficient to confer Article III standing. The SCAC establishes that the Plaintiffs are seeking to represent the class of person who purchased TelexFree packages and

suffered a "net loss". The complaint does not state how much money was invested, how much was withdrawn or when the money was invested.

The SCAC sufficiently alleges that Plaintiffs Rita D. Dos Santos and Celio Da Silva invested funds in TelexFree and were swindled when TelexFree converted those funds which went to various Defendants. The Plaintiffs allege that the financial services providers such as Base and Hughes aided and abetted TelexFree and the so called "Operational Defendants" by knowingly providing substantial assistance in accepting, processing, and misappropriating the funds that they invested into TelexFree. Those allegations are sufficient to establish subject matter jurisdiction.

*Personal Jurisdiction*

Base and Hughes assert that this court also lacks personal jurisdiction over Base defendants because they are Arizona residents and that neither has had sufficient contacts with Massachusetts to satisfy the Massachusetts long arm statute or the due process clause of the United States Constitution.

While courts have held that the MDL statute, 28 U.S.C. § 1407, "authoriz[es] the federal courts to exercise nationwide personal jurisdiction," it is also well established that "[i]n an MDL case, personal jurisdiction ***is derived from the transferor court***." *In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 145, 163 (2d Cir.1987); *In re WellNx Mktg. & Sales Practices Litig.*, No. 07-MD-1861, 2010 WL 3652457, at *1 (D. Mass. Sept. 15, 2010) (emphasis added); *see also In re FMC Corp. Patent Litig.*, 422 F.Supp. 1163, 1165 (J.P.M.L.1976) ("Transfers under Section 1407 are simply not encumbered by considerations of in personam jurisdiction and venue.... Following a transfer, the transferee judge has all the jurisdiction and powers over pretrial

proceedings in the actions transferred to him that the transferor judge would have had in the absence of transfer.")

Base and Hughes were served and named in a putative class action filed in the District of Arizona (Docket 2:15-cv-01906-NVW) which was served on them and transferred to this court on October 20, 2015 pursuant to 28 U.S.C. § 1407 as a part of the present MDL. Base and Hughes both admit to being residents of the State of Arizona and thus both are subject to the jurisdiction of the Arizona transferor court. They provide no basis in law for their assertion that the Plaintiffs filing and serving them on a duplicate of the Third Consolidated Amended Complaint in the District of Arizona "somehow waived Plaintiffs argument that § 1407 confers Nationwide personal jurisdiction." Accordingly, this court has personal jurisdiction over Base and Hughes for all pre-trial purposes.

*Failure to state a claim for relief*

To withstand a Rule 12(b)(6) motion to dismiss, a complaint must allege a claim that plausibly entitles the plaintiff to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). Plausibility does not require probability but "it asks for more than a sheer possibility the defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citing *Twombly*, 550 U.S. at 556). "If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." *Rodriguez–Reyes v. Molina–Rodriguez*, 711 F.3d 49, 53 (1st Cir. 2013) (quoting *SEC v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010) (en banc )). "[A] conclusory allegation … does not supply facts adequate to show illegality [whereas] [a]n allegation … much like a naked assertion … gets the complaint close to stating a

claim, but without some further factual enhancement it stops short of the line between possibility and plausibility of entitlement to relief." *Twombly*, 550 U.S. at 557.

Rule 9(b) imposes a heightened pleading standard for claims based on fraud. When an aiding and abetting claim sounds in fraud, it must be plead with particularity as set forth in Rule 9(b). *In re State Street Cases*, 2013 WL 5508151 at *16 (D. Mass. Aug. 21, 2013).

*Third Claim for Relief: Aiding and Abetting General Laws Chapter 93§12 and 69 and Chapter 93A §2 and 11*.

With respect to the issue of whether a Cause of Action exists for aiding and abetting M.G.L. C.93 § 12 and 69, and M.G.L. C. 93A § 2 and 11, there are a limited number of cases in this district where courts have discussed whether aiding and abetting a violation of these statutes states a claim for relief. *See Green v. Parts Distribution Xpress, Inc.,* 2011 WL 5928580 at *4 (D. Mass. Nov. 29, 2011) ("[A] non-party to an employment relationship can be held liable under chapter 93 A for aiding and abetting the wrongdoing of a party to an employment relationship . . ."); *Professional Services Grp., Inc. v. Town of Rockland,* 515 F. Supp. 2nd 179, 192 (2007) ("Aiding and abetting a breach of fiduciary duty may provide the basis for a Chapter 93A violation"). But see *Reynolds v. City Exp., Inc.,* 2014 WL 1758301 (Mass. App. Div. Jan. 8, 2014) (declining to extend the holding in *Green).* The court in *Green* did not devote much attention to the theory of an aiding and abetting claim under C. 93A, but spoke at length about a statutory aiding and abetting claim under M.G.L. C. 149. Similarly, the *Reynolds* court was not deciding whether a party could aid and abet a C. 93A claim, but whether a party could aid and abet statutory violations of M.G.L. C 149 and 151B pertaining to labor and discrimination respectively. That court held one could not aid and abet C. 149 and 151B violations because the

6

legislature "could have specifically provided for aiding and abetting liability in G.L.C. 149 § 148B and chose not to." *Reynolds Supra* at *8.

Chapter 93A, which is based upon the Federal Trade Commission Act (15 U.S.C. 45(a)(1)), also does not specifically mention a separate aiding and abetting cause of action. "A defendant acting with knowledge of deception who either directly participates in that deception or has the authority to control the deceptive practice of another, but allows the deception to proceed, engages, *through its own actions*, in a deceptive act or practice that causes harm to consumers." *FTC v. LeadClick Media, LLC*, 838 F3d. 158, 170 (2d. Cir. 2016) (emphasis in original). The Supreme Court has held that imposing private civil liability on individuals who aid and abet violations of the 1934 Securities Exchange Act is unreasonable unless specifically enumerated in the act. See *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164 (1994), holding that if a statue does not explicitly provide for aiding and abetting liability under the act, any argument that extrapolates private aiding and abetting liability from the phrase "directly or indirectly" in the text is flawed. *Id*. at 176 (adding that "Congress knew how to impose aiding and abetting liability when it chose to do so.").

In this case, Chapters 93 and 93A do not explicitly enumerate private "aiding and abetting" liability. Second, the cases where courts in this district have held that parties may incur liability under Chapters 93 and 93A specifically refer to the "breach of fiduciary duty", and not Section 69, which covers illegal Multi-Level Distribution Company actions. Accordingly, I find that there is no separate Cause of Action under the facts of this case for Aiding and Abetting M.G.L. C. 93 § 12 and 69, and C. 93A § 2 and 11 and grant Defendants' Motion as to the Third Claim for Relief.

*The Fourth Claim for Relief: Unjust Enrichment*

The Fourth Claim for Relief of the SCAC alleges that "Plaintiffs and the putative class conferred a benefit upon the defendants by furnishing funds, directly or indirectly to defendants who accepted them without protest and retained and benefited from them." (SCAC at ¶1038). The Complaint does not break down the allegations against specific payment processors, and instead makes omnibus allegations, such as " . . . each of the defendants chose to enhance fees for providing services to TelexFree's suspicious and unlawful enterprise." (SCAC ¶ 326), "TelexFree could not have successfully carried out its lawful enterprise or shelter it's [sic] ill-gotten gains without the integral assistance of . . . payment processing service companies." (SCAC at ¶ 313).

To state a claim for unjust enrichment the Plaintiff must demonstrate:

1) a benefit conferred on the Defendant by the Plaintiff;

2) an appreciation or knowledge of the benefit by the Defendant;

3) the acceptance or retention of the benefit by the Defendant under circumstances which make acceptance or retention inequitable.

Stevens v. Thacker, 550 F2d 161, 165 (D.Mass. 2018)

The Plaintiff's claims are based upon Defendants' receipt of fees for payment processing services. It was TelexFree, not the Plaintiffs, which conferred the alleged benefit on the Defendants. See *Taylor v. Moskow*, 2013 WL 5508157 C *3 (D.Mass. 2013). Accordingly, the Plaintiffs unjust enrichment claims are dismissed.

*Fifth and Tenth Claim for Relief: Conspiracy and Tortious Aiding and Abetting*

The Plaintiffs common law aiding and abetting claim (Count 10), and the civil conspiracy claim, (Count 5), require a showing that the Defendants had actual knowledge of the underlying scheme and actively "participated, or substantially assisted" in the offense. *Go-Best Assets v. Citizens Bank,* 463 Mass 50, @64 (2012), (tortious aiding and abetting); *Kirker v. Hill,* 44 Mass. App. Ct. 184, 189 (1998) (Civil conspiracy). The Defendants claim that the SCAC does not adequately plead the actual knowledge component. The Defendants further argue that even if the Plaintiffs have sufficiently plead actual knowledge, the pleading are deficient in failing to establish that they actively participated, or substantially assisted in the fraud.

The Plaintiffs' allegations in the SCAC are sufficient to withstand the Defendant's motion on the knowledge requirement. In August of 2013, Base was instructed by Synovus (it's sponsor bank) to cease doing business with TelexFree by August 31, 2013. (SCAC ¶ 905-906). Defendant Hughes openly acknowledges the accusations in the August 28, 2013 email. Despite these clear warnings, Base applied to offshore banks on TelexFree's behalf, continued to advise TelexFree regarding payment methods and in September 2013, against Synovus's instructions, authorized $5,000,000 dollars in transfers to TelexFree. Accordingly, the Defendant's Motion is denied as to the Fifth and Tenth Claims for Relief.

## Conclusion

For the reasons set forth above the Defendant's Motion is granted as to the Third and Fourth Claims for Relief and denied as to the Fifth and Tenth Claims for Relief.

*/s/ Timothy S. Hillman*
**TIMOTHY HILLMAN**
**DISTRICT JUDGE**