UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: | ) ) ) |
| **TELEXFREE SECURITIES LITIGATION** | ) ) ) ) ) ) |

MDL No. 4:14-md-02566-TSH

**HILLMAN, D.J**.

**MEMORANDUM AND ORDER ON DEFENDANT PRICEWATERHOUSE COOPER'S MOTION TO DISMISS (Document # 170)**

**January 29, 2019**

**Introduction**

Pricewaterhouse Cooper's LLP ("PWC"), is a Defendant in the TelexFree multi-district securities litigation. They move to dismiss the First, Second, Third, Fourth, Fifth, Sixth, Seventh, and Ninth, Claims for Relief against them in the Plaintiff's Second Consolidated Amended Complaint (SCAC) pursuant to Fed. R. Civ. P. 12(b)(6).

TelexFree, Inc., ("TelexFree") was a pyramid scheme that operated from February 2012, to April 2014, and involved approximately two million participants world-wide, nearly one million of whom suffered a net financial loss. Several Plaintiffs filed actions in federal district courts across the United States seeking to recover their losses against dozens of defendants, ranging from banks, payment processing companies, the principals of the fraudulent scheme, attorneys and accountants, such as PWC. Because the actions involved common questions of fact, the Judicial Panel on Multi-District Litigation joined the actions into a Multi-District Litigation and

ordered a transfer of actions to the District of Massachusetts for coordinated or consolidated pre-trial proceedings.

## Background

In January of 2014 TelexFree hired PWC to perform accounting services for them. The complaint is silent about exactly which services PWC performed other than "negligently" providing advice relative to TelexFree's 1099 forms, and in responding to an inquiry by the Massachusetts Securities Division. The complaint is also spare in its references to PWC, assigning only 17 paragraphs to discussing PWC's role in the events that have given rise to the lawsuit. Specifically, the Plaintiffs allege that in January of 2014 TelexFree retained PWC to "provide tax and financial consultation, including assistance with the development of International tax structures," and that PWC allegedly provided "accounting and consulting services". (SCAC ¶577 and 578)

The complaint alleges that PWC "advised TelexFree to prepare and issue IRS Form 1099." (SCAC ¶579). Noteably there are no allegations about what advice PWC gave TelexFree, whether that advice was erroneous, or whether the Plaintiffs relied on PWC's advice about these forms. The complaint further alleges that PWC assisted TelexFree "in responding the Massachusetts Securities Division's information requests" (SCAC ¶584).

## Discussion

To withstand a Rule 12(b)(6) motion to dismiss, a complaint must allege a claim that plausibly entitles the plaintiff to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Plausibility does not require probability but "it asks for more than a sheer possibility the defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citing *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955). "If the factual

allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." *Rodriguez–Reyes v. Molina–Rodriguez*, 711 F.3d 49, 53 (1st Cir. 2013) (quoting *SEC v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010) (en banc )). "[A] conclusory allegation …does not supply facts adequate to show illegality [whereas] [a]n allegation …much like a naked assertion … gets the complaint close to stating a claim, but without some further factual enhancement it stops short of the line between possibility and plausibility of entitlement to relief." *Twombly*, 550 U.S. at 557. Rule 9(b) imposes a heightened pleading standard for claims based on fraud. When an aiding and abetting claim sounds in fraud, it must be plead with particularity as set forth in Rule 9(b). (*In re State Street Cases*, 2013 WL 550815 @ 16.

*First Claim for Relief: General Laws Chapter 93, §12 and 69*

The Plaintiff has included PWC in the SCAC as a group that they have styled as "Operational Defendants." The Operational Defendants are defined in the SCAC as founders and principals, executive officers, top level promoters, and associated individuals. Those associated individuals include among others the so called "Licensed Professionals", which includes attorneys, and accountants, including PWC. These "Operational Defendants" are alleged to have violated G.L. C. 93 §12 and 69, but there are no allegations in the SCAC identifying any conduct of PWC which is violative of these statutes.

PWC argues that §69 of C.93 does not create liability for such a broad class of what are secondary actors because §69(d) states, "no multi-level distribution company or *participant* in its marketing program shall . . ." The Defendants claim that there is no evidence that they "participated" in the multi-level marketing program. Section 69A of C.93 describes the activities that "participants may perform, such as participating in the distribution chain for goods or

services offered by the company, recruiting new participants, paying or receiving commissions, bonuses, or finder's fee." There are no allegations in the SCAC that PWC did any of these things. Accordingly, the Defendant's Motion is granted as to the First Claim for Relief.

*Second Claim for Relief: General Laws Chapter 93A §2 and 11.*

The Plaintiffs allege that PWC violated M.G.L. C.93A by providing TelexFree with negligent tax advice relating to the forms 1099 and by negligently assisting TelexFree in responding to the Commonwealth's Security Division's information request (SCAC ¶ 577, 579, 584). However, the allegations are made without any qualifying or backup factual allegations. Further, the Defendant argues that §11 of G.L. C. 93A applies only between parties having a transactional business relationship, and that there are no allegations that such a relationship between PWC and the Plaintiffs existed. I agree (see *Cash Energy, Inc., v. Weiner* 768 F.Supp. 892, 894 D.Mass. 1991.) For the reasons set forth the Defendants Motion with respect to the Second Claim for Relief is **granted.**

*Third Claim for Relief: Aiding and Abetting General Laws Chapter 93§12 and 69 and Chapter 93A §2 and 11.*

There are a limited number of cases in this district where courts have discussed whether aiding and abetting a violation of these statutes can state a claim for relief. *See Green v. Parts Distribution Xpress, Inc.,* 2011 WL 5928580 at *4 (D. Mass. Nov. 29, 2011) ("[A] non-party to an employment relationship can be held liable under chapter 93A for aiding and abetting the wrongdoing of a party to an employment relationship . . ."); *Professional Services Grp., Inc. v. Town of Rockland,* 515 F. Supp. 2nd 179, 192 (2007) ("Aiding and abetting a breach of fiduciary duty may provide the basis for a Chapter 93A violation"). But see *Reynolds v. City Exp., Inc.,* 2014 WL 1758301 (Mass. App. Div. Jan. 8, 2014) (declining to extend the holding in *Green* that provides a statutory aiding and abetting cause of action under M.G.L. c. 149 separate from the

common law claim).  The court in *Green* did not devote much discussion to the theory of an aiding and abetting claim under c. 93A, but spoke at length of a statutory aiding and abetting claim under M.G.L. C. 149.  Similarly, the *Reynolds* court was not deciding whether a party could aid and abet a Chapter 93A claim, but whether a party could aid and abet statutory violations of M.G.L. C. 149 and 151B pertaining to labor and discrimination respectively.  That court held one could not aid and abet Chapter 149 and 151B violations because the legislature "could have specifically provided for aiding and abetting liability in G.L. C. 149 § 148B and chose not to."  Reynolds Supra at *8.

Chapter 93A, is based upon the Federal Trade Commission Act (15 U.S.C. 45(a)(1)), which does not recognize a separate aiding and abetting cause of action.  "A defendant acting with knowledge of deception who either directly participates in that deception or has the authority to control the deceptive practice of another, but allows the deception to proceed, engages, *through its own actions*, in a deceptive act or practice that causes harm to consumers."  *FTC v. LeadClick Media, LLC*, 838 F3d. 158, 170 (2d. Cir. 2016) (emphasis in original) (declining to discuss the possibility of inserting aiding and abetting liability under the FTCA).

The Supreme Court has held that imposing private civil liability on individuals who aid and abet violations of the 1934 Securities Exchange Act is unreasonable unless specifically enumerated in the act.  See *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164 (1994) holding that if a statue does not explicitly provide for aiding and abetting liability under the act, any argument that extrapolates private aiding and abetting liability from the phrase "directly or indirectly" in the text is flawed.  *Id*. at 176 (adding that "Congress knew how to impose aiding and abetting liability when it chose to do so."). Accordingly, I find that there is no separate cause of action under the facts of this case for aiding
5

and abetting M.G.L, C93 §12 and 69, and C93A §2 and 11 and grant Defendant's Motion as to the count.

*Fourth Claim for Relief: Unjust Enrichment*

Count IV of the SCAC alleges that "Plaintiffs and the putative class conferred a benefit upon the defendants by furnishing funds, directly or indirectly to defendants, who accepted them without protest and retained and benefited from them." (SCAC at ¶1038). The Plaintiffs go on to allege that the Defendant was unjustly enriched. The Complaint does not break down the allegations against specific defendants, and instead makes omnibus allegations.

To state a claim for unjust enrichment the Plaintiff must demonstrate:

> 1) a benefit conferred on the Defendant by the Plaintiff;
>
> 2) an appreciation or knowledge of the benefit by the Defendant;
>
> 3) the acceptance or retention of the benefit by the Defendant under circumstances which make acceptance or retention inequitable.

*Stevens v. Thacker,* 550 F.2nd 161, 165, (D. Mass. 2018).

The Plaintiffs' claims are based Defendant's receipt of fees for accounting services. It was TelexFree, not the Plaintiffs, which conferred the alleged benefit on PWC. Therefore, only TelexFree would have standing to assert a claim relating to the alleged benefit. *See Taylor v. Moskow,* 2013 WL 5508157 at *3 (D. Mass. October 1, 2013). Accordingly, the Plaintiffs unjust enrichment claims must be dismissed.

*Fifth Claim for Relief: Civil Conspiracy and Tenth Claim for Relief: Tortious aiding and abetting*

The Plaintiffs' common law aiding and abetting claims (Tenth Claim for Relief), and the civil conspiracy claim (Fifth Claim for Relief), require a showing that the Defendants had actual knowledge of the underlying scheme and actively "participated, or substantially assisted" in the

offense. *Go Best Assets v. Citizens Bank,* 463 Mass 50, 64 (2012) (tortious aiding and abetting); *Kirker v. Hill.* 44 Mass. App. Ct. 184, 189 (1998) Civil conspiracy. The Defendants claim that the SCAC does not adequately plead the actual knowledge component, and that even if the Plaintiffs have sufficiently plead actual knowledge, the pleading are deficient in failing the establish that they actively participated, or substantially assisted in the fraud.

The Plaintiff's allegations in the SCAC are insufficient to withstand the Defendant's motion on the knowledge requirement. There are no allegations in the SCAC that satisfy the knowledge requirement and the substantial assistance requirement for the Fifth and Tenth Claim for Relief. Accordingly, the Motion is granted as to the Fifth & Tenth Claims for Relief.

*Sixth Claim for Relief: Profession negligence*

The Defendants argue that the Plaintiffs have not "plead sufficient facts to establish that PWC owed the Plaintiffs a duty of care." *One National Bank v. Antonellis,* 80 F3rd 606, 609 (1st Cir. 1996). The Plaintiffs acknowledge that a duty of care arises from the accountant client relationship and is necessary in order to state a malpractice claim, *Max-Planck-Gesellschafat Zur Foerderung Der Wissenschaften E. V. v. Wolf, Greenfield, and Sacks, PC.,* 736 F 2nd 353, 359, (D.Mass. 2010). I agree with the Defendant that under the facts that this case as plead, the Plaintiffs have not established that there was a duty of care owed to them under either an actual or implied accountant-client relationship. I grant the Defendants' Motion as the Sixth Claim for Relief.

*Seventh Claims for Relief: Negligent Misrepresentation*

"Too sustain a claim of misrepresentation, a Plaintiff must show a false statement of material facts made to induce the Plaintiff to act, together with reliance on the false statement by the Plaintiff to the Plaintiff's determent . . . the speaker need not know that the 'statement is false if

7

the truth is reasonable susceptible of actual knowledge, or otherwise expressed, if through a modicum of diligence, accurate facts are available to the speaker.'" *Rogatkin Ex. Rel. Rogatkin v. Raleigh America, Inc.*, 69 F. Sup. 294, 301 Citing from *Zimmerman v. Kent, 3*1 Mass.App.Ct. 72, 77 (1991). The Plaintiffs have plead no facts that establish these elements and accordingly the Defendant's Motion is granted as to the Seventh Claim for Relief.

*Ninth Claim for Relief: Fraud*

In order to state a claim for fraud the Plaintiff must allege:

(1) that the Defendant made a false representation of a material fact;
(2) the Defendant had actual knowledge that the misrepresentation was false;
(3) the Defendant made the false representation with intent to deceive the Plaintiff and to induce him or her to thereon;
(4) the Plaintiff reasonably relied on the false representation;
(5) the Plaintiff suffered harm as a result of the reliance.

*Masingill v EMC Corp.,* 870 Northeast 2nd 81 (Mass. 2007). *Doyle v. Hasbro, Inc.*, 103 F. 3rd 186, 193 1st Cir. 1996. Paragraph 1083 of the SCAC makes the generic allegations against the Operational Defendants for fraudulent misrepresentations as; providing false and misleading information on the nature of TelexFree business operation, misrepresenting financial statements, providing false and misleading information on the value of the ad central package, providing false and misleading information on the method and source from which income was derived, providing false and misleading information on the legality of TelexFree's business model, providing false and misleading information on the sustainability of the returns of the promoter, providing false and misleading information regarding the investigation into Brazil and the subsequent closure of TelexFree's Brazilain operations, knowingly participating in false and deceptive information televised over the internet and other media, failing to comply with federal and state laws, and setting up TelexFree's computer servers in a foreign country with the intent to avoid prosecution and legal process.

Since the Plaintiffs ninth claim for relief sounds directly in fraud it must be plead with particular clarity pursuant to Fed.R.Civ.P. 9(b). The only specific examples of PWC's fraudulent conduct are: PWC negligently provided accounting and consulting services to TelexFree (SCAC ¶577) and that PWC was retained several months after the Brazilain operation was shut down. The Complaint also alleges that PWC counselled TelexFree to issue fraudulent 1099 forms. These allegations do not contain the specificity referred by Rule 9 (b) and accordingly, the Defendant's Motion is granted as to the Ninth Claim for Relief.

## Conclusion

For the reasons stated above, the Defendnat's Motion to Dismiss all counts against it is **<u>granted.</u>**

/s/ *Timothy S. Hillman*
**TIMOTHY S. HILLMAN
DISTRICT JUDGE**