**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| In re:<br><br>**TELEXFREE SECURITIES LITIGATION** | MDL No. 4:14-md-02566-TSH |

## MEMORANDUM and ORDER ON DEFENDANT FIDELITY COOPERATIVE BANK AND JOHN F. MERRILL'S MOTION TO DISMISS

**January 29, 2019**

**HILLMAN, D.J.**

### Introduction

Fidelity Cooperative Bank ("Fidelity Bank") and its President John F. Merrill ("Merrill") are defendants in the TelexFree Multi-District Securities Litigation. They move to dismiss the Third, Fourth, Fifth, and Tenth Claims for Relief against them in the Second Consolidated Amended Complaint. (SCAC) Pursuant to Fed. R. Civ. P. Rule 12(b)(6).[1]

TelexFree, Inc. ("TelexFree") was a pyramid scheme that operated from February 2012 until April 2014. It involved approximately 2 million participants worldwide, nearly one million of whom suffered financial loss. Several Plaintiffs filed actions in district courts across the United States seeking to recover their losses against dozens of defendants, ranging from financial service providers, including banks (such as Fidelity Bank, the moving party), payment processing

---

[1] The third claim for relief alleges aiding and abetting in violation of M.G.L. c. 93A, §§ 12 & 69 and c. 93A §§2(a) & 11. The Fourth claim for relief alleges unjust enrichment. The Fifth claim for relief alleges civil conspiracy and the Tenth claim for relief alleges tortious aiding and abetting.

companies, and the principals of the fraudulent scheme employed by, or otherwise involved with TelexFree. As the actions involved common questions of fact, the judicial panel on Multi-District Litigation joined the actions into a Multi-District Litigation in order to transfer all actions to the District of Massachusetts for coordinated or consolidated pre-trial proceedings.

## Background

The SCAC alleges that between August and September of 2013, TelexFree opened three accounts in Fidelity Bank with deposits totaling in excess of 10 million dollars. Fidelity continued to accept deposits from TelexFree until December 26, 2013. The CEO of Fidelity Bank, the defendant John Merrill is the brother of principal defendant James Merrill, one of the founders of the TelexFree pyramid scheme. The complaint alleges that this familial relationship made "Fidelity Bank privy to information regarding TelexFree and its "suspicious, tortious, or unlawful conduct." (SCAC ¶ 809). The complaint also alleges that Fidelity Bank's regulatory compliance officer performed an investigation of TelexFree prior to agreeing to accept TelexFree as a customer on or about August of 2013. (SCAC ¶ 813).

An investigation was initiated by the Massachusetts Secretary of the Commonwealth against the bank on April 30, 2014 regarding the relationship of the bank with TelexFree. "That investigation resulted in the entry of a consent decree dated September 22, 2014, whereby Fidelity Bank agreed to establish an escrow fund of 3.5 million dollars for victims of the scheme." (SCAC ¶ 817). Because of this and other "red flags" the bank hired an outside consultant to advise them on the proper way to proceed in future dealings. "The outside consultant advised Fidelity Bank of his conclusions that TelexFree was a high risk customer based on its account balance and its extensive wire transfers, and that TelexFree's accounts would 'would require the appropriate monitoring level for a high risk customer.'" SCAC (¶

820). Based on that communication Fidelity determined to close TelexFree's accounts, however several critical weeks elapsed before the closure took place. Further, after receipt of the outside consultant's report the bank transferred over 10 million dollars into personal accounts, including 3.5 million dollar transfer by the defendant Wanzler to a Singapore account on December 30, 2013.

## Discussion

To withstand a Rule 12(b)(6) motion to dismiss, a complaint must allege a claim that plausibly entitles the plaintiff to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Plausibility does not require probability but "it asks for more than a sheer possibility the defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citing *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955). "If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." *Rodriguez–Reyes v. Molina–Rodriguez*, 711 F.3d 49, 53 (1st Cir. 2013) (quoting *SEC v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010) (en banc )). "[A] conclusory allegation …does not supply facts adequate to show illegality [whereas] [a]n allegation …much like a naked assertion … gets the complaint close to stating a claim, but without some further factual enhancement it stops short of the line between possibility and plausibility of entitlement to relief." *Twombly*, 550 U.S. at 557. Rule 9(b) imposes a heightened pleading standard for claims based on fraud. When an aiding and abetting claim sounds in fraud, it must be plead with particularity as set forth in Rule 9(b). (In re State Street Cases, 2013 WL 550815 @ 16.

Fidelity argues that under Massachusetts law, a bank cannot be held liable for a fraud committed by one of its customers where the bank simply provided ordinary deposit services,

3

even if those services were used in connection with an alleged fraud. They cite as authority for this proposition, *Goldbest Assets LTD., v. Citizens Bank of Mass, 463 Mass. 50 (2012)*. That case holds that a bank may be liable to a third party who was victimized by a fraud perpetrated by a bank customer only where the bank has actual knowledge of the customers wrongdoing and actively participates or provides substantial assistance in the fraud. The defendants further argue that the plaintiffs' allegations in its SCAC are conclusory and fail to allege that the bank had actual knowledge of the defendant's fraudulent conduct. They also argue that being the brother of a person who commits fraud is not enough to subject a person to legal liability; that the Plaintiff's claim for aiding and abetting M.G.L. C. 93 and Chapter 93A should be dismissed because the Plaintiffs were not engaged in trade or commerce, that there is no cause of action for aiding and abetting Chapter 93 and 93A violations; and that the Plaintiffs cannot adequately allege an unjust enrichment claim against Fidelity Bank. Merrill argues that the Plaintiffs have failed to allege specific facts sufficient to establish his personal liability.

*Third Claim for Relief: Aiding and Abetting GLC 93 § 12 and 69 & C93A § 2(a) and 11.*

With respect to the issue of whether a Cause of Action exists for aiding and abetting M.G.L. C.93 § 12 and 69, and M.G.L. C. 93A § 2 and 11, there are a limited number of cases in this district where courts have discussed whether aiding and abetting a violation of these statutes states a claim for relief. *See Green v. Parts Distribution Xpress, Inc.,* 2011 WL 5928580 at *4 (D. Mass. Nov. 29, 2011) ("[A] non-party to an employment relationship can be held liable under chapter 93 A for aiding and abetting the wrongdoing of a party to an employment relationship . . ."); *Professional Services Grp., Inc. v. Town of Rockland,* 515 F. Supp. 2nd 179, 192 (2007) ("Aiding and abetting a breach of fiduciary duty may provide the basis for a Chapter 93A violation"). But see *Reynolds v. City Exp., Inc.,* 2014 WL 1758301 (Mass. App. Div. Jan. 8,

2014) (declining to extend the holding in *Green)*. The court in *Green* did not devote much attention to the theory of an aiding and abetting claim under C. 93A, but spoke at length of a statutory aiding and abetting claim under M.G.L. C. 149. Similarly, the *Reynolds* court was not deciding whether a party could aid and abet a C. 93A claim, but whether a party could aid and abet statutory violations of M.G.L. C 149 and 151B pertaining to labor and discrimination respectively. That court held one could not aid and abet C. 149 and 151B violations because the legislature "could have specifically provided for aiding and abetting liability in G.L.C. 149 § 148B and chose not to." Reynolds Supra at *8.

Chapter 93A, which is based upon the Federal Trade Commission Act (15 U.S.C. 45(a)(1)), also does not recognize a separate aiding and abetting cause of action. "A defendant acting with knowledge of deception who either directly participates in that deception or has the authority to control the deceptive practice of another, but allows the deception to proceed, engages, *through its own actions*, in a deceptive act or practice that causes harm to consumers." *FTC v. LeadClick Media, LLC*, 838 F3d. 158, 170 (2d. Cir. 2016) (emphasis in original) (decling to discuss the possibility of inserting aiding and abetting liability under the FTCA to the defendant).

The Supreme Court has held that imposing private civil liability on individuals who aid and abet violations of the 1934 Securities Exchange Act is unreasonable unless specifically enumerated in the act. See *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164 (1994), holding that if a statue does not explicitly provide for aiding and abetting liability under the act, any argument that extrapolates private aiding and abetting liability from the phrase "directly or indirectly" in the text is flawed. *Id*. at 176 (adding that "Congress knew how to impose aiding and abetting liability when it chose to do so.").

5

In this case, Chapters 93 and 93A do not explicitly enumerate private "aiding and abetting" liability. Second, the cases where courts in this district have held that parties may incur liability under Chapters 93 and 93A specifically refer to the "breach of fiduciary duty", and not Section 69, which covers illegal Multi-Level Distribution Company ("MLM") actions. Accordingly, I find that there is no separate Cause of Action under the facts of this case for aiding and abetting M.G.L. C. 93 § 12 and 69, and C. 93A § 2 and 11 and grant Defendant's Motion as to the Third Claim for Relief.

*The Fourth Claim for Relief: Unjust Enrichment*

The Fourth Claim for Relief of the SCAC alleges that "Plaintiffs and the putative class conferred a benefit upon the defendants by furnishing funds, directly or indirectly to defendants who accepted them without protest and retained and benefited from them." (SCAC at ¶1038). The Complaint does not break down the allegations against specific financial service providers, and instead makes omnibus allegations, such as " . . . each of the defendants chose to enhance fees for providing services to TelexFree's suspicious and unlawful enterprise." (SCAC ¶ 326), "TelexFree could not have successfully carried out its lawful enterprise or shelter it's [sic] ill-gotten gains without the integral assistance of . . . financial institutions." (SCAC at ¶ 313).

To state a claim for unjust enrichment the Plaintiff must demonstrate:

> 1) a benefit conferred on the Defendant by the Plaintiff;
>
> 2) an appreciation or knowledge of the benefit by the Defendant;
>
> 3) the acceptance or retention of the benefit by the Defendant under circumstances which make acceptance or retention inequitable.

*Stevens v. Thacker, 550 F.2nd 161, 165, (D. Mass. 2018).*

The Plaintiffs' claims are based upon Fidelity's receipt of fees for wire transfers and interest supposedly received on funds held in TelexFree deposit accounts. The complaint is devoid of

any allegation that the fees, interest, and charges received by Fidelity were anything more than payments for banking services, and thus Plaintiffs have failed to allege that they were "unjust." *See McLane, Graf Raulerson and Middleton, P.C. v. Grady* 214 WL 2504540, @ *4, Mass. Sup. Ct. (2014).

*Assuming arguendo* that these fees were for something other than banking services, it was TelexFree, not the Plaintiffs, which conferred the alleged benefit on the banks. Therefore, only TelexFree would have standing to assert a claim relating to the alleged benefit. *See Taylor v. Moskow,* 2013 WL 5508157 at *3 (D. Mass. October 1, 2013). Accordingly, the Plaintiffs unjust enrichment claims must be dismissed.

*Fifth and Tenth Claims for Relief: Civil Conspiracy and Tortious Aiding and Abetting*

The Plaintiffs aiding and abetting claims (Counts 3 and 10), and the civil conspiracy claim, (Count 5), require a showing that the bank had actual knowledge of the underlying scheme and actively "participated, or substantially assisted" in the offense. *Goldbest, 463 Mass at 64* (tortious aiding and abetting); *Kirker v. Hill 44 Mass. App. Ct. 184, 189 (1998)* (civil conspiracy). The Defendants claim that the SCAC does not adequately plead the actual knowledge component and that the consent order that Fidelity entered into with the Massachusetts Security Division does not act to supply the actual knowledge requirement. The Defendants further argue that even if the Plaintiffs have sufficiently plead actual knowledge, the pleadings fail to establish that Fidelity actively participated, or substantially assisted in the fraud.

The Plaintiff's allegations in the SCAC are sufficient to withstand the Defendant's motion on the knowledge requirement. They allege that Fidelity opened three accounts with deposits in excess of 10 million dollars, in August/September of 2013. On December 3, 2013, Fidelity gave notice to TelexFree that it would be freezing its accounts based on purported illegal activities, yet

7

they continued to service the funds until December 31, 2013.  Further the investigation by the Massachusetts Securities Division establishes that Fidelity's account opening process in 2013 was inadequate and insufficient.   These allegations serve, for the purposes of Rule 12(b)(6) to establish the knowledge requirement and the substantial assistance requirement for the Fifth and Tenth Claim for Relief.  The Court will allow these counts to move into discovery.

I also find that, for the reasons, set forth above that the Merrill's individual liability has been sufficiently established to survive a Fed. R.. Civ. P. 12(b)(6) challenge for the Fifth and Tenth Claim for Relief.

## Conclusion

For the reasons set forth above, the Defendant's Motion is **granted**, as to the Plaintiff's Third and Fourth Claims for Relief and **denied** as to the Fifth and Tenth Claims for Relief.

/s/ *Timothy S. Hillman*
**TIMOTHY S. HILLMAN**
**DISTRICT JUDGE**