UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| **In re:** | ) ) ) | |
| **TELEXFREE SECURITIES LITIGATION** | ) ) ) ) ) ) | MDL No. 4:14-md-02566-TSH |

# MEMORANDUM AND ORDER ON DEFENDANT BANK OF AMERICA and TD BANK, N.A.'S MOTIONS TO DISMISS (Document No. 183 & 166)

**January 29, 2019**

**HILLMAN, D.J.**

## Introduction

Bank of America, N.A. ("BANA") and TD Bank, N.A. ("TD Bank"), two defendants in the TelexFree multi-district securities litigation, move to dismiss all counts against them in the Second Consolidated Amended Complaint ("SCAC") pursuant to Fed. R. Civ. P. 12(b)(6). TelexFree, Inc. ("TelexFree") was a pyramid scheme that operated from February 2012 to April 2014, and involved approximately two million participants worldwide, nearly a million of whom suffered a net financial loss. Several plaintiffs filed actions in federal district courts across the United States seeking to recover their losses against dozens of defendants, ranging from financial service providers, including banks (such as BANA and TD Bank), payment processing companies, and the principals of the fraudulent scheme employed by or otherwise involved with TelexFree. As the actions involved common questions of fact, the Judicial Panel on Multi-district Litigation joined the actions into a multidistrict litigation, and ordered transfer of all actions to the District of Massachusetts for coordinated or consolidated pretrial proceedings.

**Background**

BANA and TD Bank are identified in the SCAC as banks that maintained accounts for TelexFree and were publicly identified as TelexFree's bankers. Both banks received deposits from victims of the pyramid scheme into accounts operated by TelexFree, and made transfers and payments, some of which were to other individual defendants based on instructions of TelexFree and its agents. The SCAC seeks recovery for aiding and abetting in violation of Mass. Gen. L. ch. 93 §§ 12 and 69 and ch. 93A §§ 2(a) and 11 (Count III), unjust enrichment (Count IV), and tortious aiding and abetting (Count X).

The SCAC makes general allegations against all bank defendants and thereafter makes more detailed allegations against each individually named bank. As general averments, Plaintiffs allege that the defendant banks received significant funds from TelexFree and other defendants to provide banking services, maintain accounts, and receive and execute transfers for the benefit of TelexFree. (¶ 711). They further allege that the defendant banks profited from these relationships and that despite a federal regulatory duty to be watchful for the existence of "red flags" surrounding TelexFree, they allowed the pyramid scheme to utilize their services including:

- Processing and opening depository accounts;

- Receiving payments made by promoters of TelexFree to become members of the program;

- Maintaining depository accounts containing funds paid by promoters to TelexFree;

- Making payments to certain promoters as part of TelexFree's investment;

- Transferring funds paid by promoters of TelexFree among TelexFree entities, defendant founders' personal accounts, foreign companies, and shell companies; and

- Allowing TelexFree to use the banks' name in their promotional materials thereby lending TelexFree the use of their reputation and credibility.

With respect to the individual averments against BANA and TD Bank, the SCAC alleges that BANA failed to comply with due diligence requirements and was aware of the pyramid scheme nature of TelexFree's business. (¶ 738). The complaint further alleges that BANA was specifically named in TelexFree's "sign-up procedures" and that TelexFree urged recruits to make walk-in deposits at a specific BANA branch in Massachusetts. Moreover, TelexFree purportedly urged recruits to transfer their membership to a "corporate" shell account at BANA under the name TelexFree, LLC. BANA allowed TelexFree to use its name in promotional material as the holder of TelexFree's accounts which "lent an aura of legitimacy and credibility to TelexFree business operations thru TelexFree's connections to a large and well-established financial institution." (SCAC ¶ 743).

The SCAC also alleges that BANA provided credit to TelexFree through credit cards. BANA received over 1,100 deposits totaling in excess of $12,000,000.00, and because of the aforementioned allegations BANA possessed actual knowledge that TelexFree was engaged in a pyramid scheme, yet continued to provide credit despite its knowledge of illegal conduct.

The Plaintiffs make similar allegations with respect to TD Bank. In addition to those listed above, they allege TD Bank provided substantial and active assistance to an earlier unrelated Ponzi scheme, which resulted in regulatory sanctions. To that end, Plaintiffs argue TD Bank should have been aware that TelexFree's activities similarly constituted an illegal Ponzi scheme.

The Plaintiffs' specific allegations as to BANA and TD Bank are very similar. They allege that TelexFree maintained depository accounts with both banks, and that both banks were named in TelexFree's sign-up procedures, which were available on-line for member convenience. Plaintiffs also allege that TelexFree promoters directed the transfer of membership fees to corporate accounts held at both banks. Further, both banks permitted TelexFree to identify them as a holder of its

3

accounts thereby lending an aura of legitimacy and credibility to TelexFree's business. Finally, the SCAC alleges that large sums of money went through both banks and that they turned a blind eye to clear signals that an illegal Ponzi scheme was taking place.

**Discussion**

To withstand a Rule 12(b)(6) motion to dismiss, a complaint must allege a claim that plausibly entitles the plaintiff to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). Plausibility does not require probability but "it asks for more than a sheer possibility the defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citing *Twombly*, 550 U.S. at 556). "If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." *Rodriguez–Reyes v. Molina–Rodriguez*, 711 F.3d 49, 53 (1st Cir. 2013) (quoting *SEC v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010) (en banc )). "[A] conclusory allegation … does not supply facts adequate to show illegality [whereas] [a]n allegation … much like a naked assertion … gets the complaint close to stating a claim, but without some further factual enhancement it stops short of the line between possibility and plausibility of entitlement to relief." *Twombly*, 550 U.S. at 557.

Rule 9(b) imposes a heightened pleading standard for claims based on fraud. When an aiding and abetting claim sounds in fraud, it must be plead with particularity as set forth in Rule 9(b). *In re State Street Cases*, 2013 WL 5508151 at *16 (D. Mass. Aug. 21, 2013).

*Third Claim for Relief: Aiding and Abetting General Laws Chapter 93§12 and 69 and Chapter 93A §2 and 11.*

With respect to the issue of whether a Cause of Action exists for aiding and abetting M.G.L. C.93 § 12 and 69, and M.G.L. C. 93A § 2 and 11, there are a limited number of cases in this district where courts have discussed whether aiding and abetting a violation of these statutes

4

states a claim for relief. *See Green v. Parts Distribution Xpress, Inc.,* 2011 WL 5928580 at *4 (D. Mass. Nov. 29, 2011) ("[A] non-party to an employment relationship can be held liable under chapter 93 A for aiding and abetting the wrongdoing of a party to an employment relationship . . ."); *Professional Services Grp., Inc. v. Town of Rockland,* 515 F. Supp. 2nd 179, 192 (2007) ("Aiding and abetting a breach of fiduciary duty may provide the basis for a Chapter 93A violation"). But see *Reynolds v. City Exp., Inc.,* 2014 WL 1758301 (Mass. App. Div. Jan. 8, 2014) (declining to extend the holding in *Green).* The court in *Green* did not devote much attention to the theory of an aiding and abetting claim under C. 93A, but spoke at length of a statutory aiding and abetting claim under M.G.L. C. 149. Similarly, the *Reynolds* court was not deciding whether a party could aid and abet a C. 93A claim, but whether a party could aid and abet statutory violations of M.G.L. C 149 and 151B pertaining to labor and discrimination respectively. That court held one could not aid and abet C. 149 and 151B violations because the legislature "could have specifically provided for aiding and abetting liability in G.L.C. 149 § 148B and chose not to." Reynolds Supra at *8.

Chapter 93A, which is based upon the Federal Trade Commission Act (15 U.S.C. 45(a)(1)), also does not recognize a separate aiding and abetting cause of action. "A defendant acting with knowledge of deception who either directly participates in that deception or has the authority to control the deceptive practice of another, but allows the deception to proceed, engages, *through its own actions*, in a deceptive act or practice that causes harm to consumers." *FTC v. LeadClick Media, LLC*, 838 F3d. 158, 170 (2d. Cir. 2016) (emphasis in original) (decling to discuss the possibility of inserting aiding and abetting liability under the FTCA to the defendant).

The Supreme Court has held that imposing private civil liability on individuals who aid and abet violations of the 1934 Securities Exchange Act is unreasonable unless specifically enumerated

5

in the act. See *Central Bank of Denver, N.A. v. First Interstate Bank of Denver*, *N.A.*, 511 U.S. 164 (1994), holding that if a statue does not explicitly provide for aiding and abetting liability under the act, any argument that extrapolates private aiding and abetting liability from the phrase "directly or indirectly" in the text is flawed. *Id.* at 176 (adding that "Congress knew how to impose aiding and abetting liability when it chose to do so.").

In this case, Chapters 93 and 93A do not explicitly enumerate private "aiding and abetting" liability. Second, the cases where courts in this district have held that parties may incur liability under Chapters 93 and 93A specifically refer to the "breach of fiduciary duty", and not Section 69, which covers illegal Multi-Level Distribution Company ("MLM") actions. Accordingly, I find that there is no separate Cause of Action under the facts of this case for aiding and abetting M.G.L. C. 93 § 12 and 69, and C. 93A § 2 and 11 and grant Defendant's Motion as to the Third Claim for Relief.

*Fourth Claim for Relief: Unjust Enrichment*

Count IV of the SCAC alleges that "Plaintiffs and the putative class conferred a benefit upon the defendants by furnishing funds, directly or indirectly to defendants, who accepted them without protest and retained and benefited from them." (SCAC at ¶1038). The Plaintiffs go on to allege that the Defendants, with specific regard to the financial service providers, were unjustly enriched The Complaint does not break down the allegations against specific financial service providers, and instead makes omnibus allegations, such as " . . . each of the defendants chose to enhance fees for providing services to TelexFree's suspicious and unlawful enterprise." (SCAC ¶ 326), "TelexFree could not have successfully carried out its lawful enterprise or shelter it's [sic] ill-gotten gains without the integral assistance of . . . financial institutions." (SCAC at ¶ 313).

To state a claim for unjust enrichment the Plaintiff must demonstrate:

6

> 1) a benefit conferred on the Defendant by the Plaintiff;
>
> 2) an appreciation or knowledge of the benefit by the Defendant;
>
> 3) the acceptance or retention of the benefit by the Defendant under circumstances which make acceptance or retention inequitable.

*Stevens v. Thacker,* 550 F.2nd 161, 165, (D. Mass. 2018).

The Plaintiffs' claims are based upon BANA and TD Banks' receipt of fees for wire transfers and interest supposedly received on funds held in TelexFree deposit accounts. The complaint is devoid of any allegation that the fees, interest, and charges received by BANA and TD Bank were anything more than payments for banking services, and thus Plaintiffs have failed to allege that they were "unjust." *See McLane, Graf Raulerson and Middleton, P.C. v. Grady* 214 WL 2504540, @ *4, Mass. Sup. Ct. (2014).

*Assuming arguendo* that these fees were for something other than banking services, it was TelexFree, not the Plaintiffs, which conferred the alleged benefit on the banks. Therefore, only TelexFree would have standing to assert a claim relating to the alleged benefit. *See Taylor v. Moskow,* 2013 WL 5508157 at *3 (D. Mass. October 1, 2013). Accordingly, the Plaintiffs unjust enrichment claims must be dismissed.

*Tenth Claim For Relief: Tortious Aiding and Abetting*

To state a claim for tortious aiding and abetting, a plaintiff must show that (1) the primary actor committed a wrongful act that causes injury; (2) the aider and abettor was aware of his role in the overall wrongful activity when he provided the assistance; and (3) the aider and abettor knowingly and substantially assisted the primary actor's wrongful act. *Id*. at *22 (citing *In re Sharp Int'l Corp.*, 403 F.3d 43, 49–53 (2d Cir. 2005); *accord Arcidi v. Nat'l Ass'n of Gov't Employees, Inc.*, 447 Mass. 616, 623–24 (2006)).

*1. Knowing and Actual Assistance*

The primary tort elements of the aiding and abetting allegation is not disputed by the Defendants. The parties agree that TelexFree established an illegal Ponzi scheme and thus committed a relevant underlying tort. Any analysis of the claims contained in the SCAC begins by examining the allegation that the Defendants either actively participated in and/or substantially assisted in TelexFree's tortious and fraudulent scheme. Participation that is not active, (i.e. passive) does not constitute aiding and abetting"). Similarly, mere assistance, less than substantial, also fails to meet the relevant threshold.

Our Court in *In re State Street Cases* outlined why passive assistance and inaction does not rise to the level of substantial assistance. Specifically, in State Street, a fraudster used bank accounts in the execution of a fraudulent scheme. The Court found that:

> The mere settling of a transaction or providing of a platform, without more, cannot sustain a charge of substantial assistance. Although conventional banking services made it easier to effectuate [a] fraudulent scheme, there was no showing of substantial assistance . . . [although] . . . participants in the . . . scheme used [bank] accounts . . . to perpetrate it . . . . These allegations are precisely the sort of passive assistance and inaction that, without more, does not rise to the level of substantial assistance."

*In Re State Street cases*, 2013 WL 550815 @*23.

The Plaintiffs further allege that TelexFree had a nearly continuous banking relationship with BANA and TD Bank during the period in which TelexFree concocted and executed their fraudulent scheme. While BANA demonstrated that TelexFree's accounts were closed by May 2013, (which the Plaintiffs have disputed), the length of time BANA provided banking services is essentially irrelevant. Absent any showing of active participation in, or substantial assistance in furthering the underlying tort, the mere provision of banking services, as in *State Street* and *Go-Best*, cannot actively or substantially assist a fraud.

The Plaintiffs also plead that TelexFree affiliates urged recruits to make deposits at a specific branch of BANA. This Court recognizes that deposits are a normal business activity, and to the extent that BANA participated, it acted in a passive nature by receiving the deposits. Plaintiffs go on to allege that TelexFree transferred approximately $30 million from operating accounts to principals, officers and affiliates with the "necessary assistance of" the banking Defendants. (SCAC at 153). Notwithstanding the fact that the pleadings fail to specify which funds were transferred from which accounts to which principals, offices, and affiliates, and by which financial service provider, this pleading fails at a more basic level. Specifically, it does not allege any activity that goes beyond the provision of routine banking services in effecting transfers and making payments. The Plaintiffs allege $865 million in TelexFree transactions with the financial service providers (SCAC at 440). Even assuming some were made through BANA or TD Bank there are no allegations that such transactions fell outside the provision of ordinary banking services.

The Plaintiffs also argue that the association of TelexFree with BANA and TD Bank lent credibility to the scheme that assisted TelexFree in perpetrating the underlying fraud, (SCAC at 290, 740-43). For example, paragraph 290 of the SCAC suggests that "Telex Free was also publicly tied to Bank of America and TD Bank." While the Court can envisage scenarios in which the active endorsement of one business by another might provide a shield of respectability behind which a fraud could be better concealed, a close reading of the pleadings does not identify any factual allegation that suggests such an endorsement. The extent of the association between BANA, TD Bank, and TelexFree outlined by the Plaintiffs is that TelexFree publicly identified them as one of their banks and instructed participants to make deposits into their accounts. While TelexFree was obviously the agent of these activities, in an effort to flip the agency and create an

active role for BANA, the Plaintiffs allege that BANA and TD Bank allowed TelexFree to name them as their banker and provided permission to tell their victims to deposit funds at Bank of America. Given that it is entirely normal for a business to identify their bankers and to tell their customers how and where to make payments, the Plaintiffs are simply pointing to passive activity which is at the heart of routine banking services. [1]

### 2. *Actual knowledge*

As evidence of actual knowledge, Plaintiffs plead that financial service providers, which presumably includes BANA and TD Bank, had access to TelexFree's promotional literature and TelexFree's contact with their members (including the victims of the scheme). (SCAC 187-88, 337-38). Although BANA argues the Plaintiffs have failed to show that such an allegation is true, the Court gives deference to the factual assertions of the non-moving party. However, the Plaintiffs argue that financial service providers, including BANA and TD Bank should have concluded from review of those documents that TelexFree's scheme was facially tortious. An argument that a bank should have recognized a fraud is insufficient to meet the actual knowledge requirement. "The fact that a bank *should have* recognized fraud does not mean that it had *actual knowledge* of fraud." An aiding and abetting claim demands a showing of 'actual knowledge' of the underlying wrongdoing. *Cahaly v. Benistar Prop. Exch. Trust,* 451 Mass. 343, 355 (2008).

The Plaintiffs' also argue that members of TelexFree's scheme had predominantly "foreign" surnames and that this was grounds on which the Defendants should have reasonably suspected a fraud. (SCAC at 698). Setting aside the xenophobic implications, TelexFree claims to be in the

---

[1] The allegations (SCAC at 499) that Defendant Merrill received $3,136,200 on 12/26/13 and 12/27/13 from "one of the named" financial service providers comes close to the specificity required under Rule 9(b). However, absent factual allegations that BANA caused such payments to be made, or took any active role in the decision to channel funds to Merrill, this is simply another case of a bank providing an ordinary banking services by making a payment to an executive.

business of Voice over internet telephony, a technology that allows international calls be made cheaply, and which was heavily marketed in Brazil and American Brazilian communities. If such a company was legitimate the majority of their customers would be drawn from immigrant communities.

Lacking any plausibly articulated pleading that BANA and TD Bank had actual knowledge of the underlying tort during the period in which they served as TelexFree's bankers the aiding and abetting counts must be dismissed. In addition, and independently, the failure to plead facts from which the Court might plausibly infer that BANA actively participated or substantially assisted TelexFree's fraud, also requires that the aiding and abetting counts be dismissed.

## Conclusion

For the reasons set forth above, the Defendant Bank of America and TD Bank's Motion to Dismiss (documents 183 and 166) are *__granted__*.

**SO ORDERED.**

                                          */s/ Timothy S. Hillman*
                                          **TIMOTHY S. HILLMAN**
                                          **DISTRICT JUDGE**