UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re:<br><br>**TELEXFREE SECURITIES LITIGATION** | )<br>)<br>)<br>)   MDL No. 4:14-md-02566-TSH<br>)<br>)<br>)<br>) |

**MEMORANDUM AND ORDER ON DEFENDANT WELLS FARGO, N.A.'S MOTIONS TO DISMISS (Document No. 171)**

**February 5, 2019**

**HILLMAN, D.J.**

### Introduction

Wells Fargo, N.A. ("Wells Fargo") a defendant in the TelexFree multi-district securities litigation, move to dismiss all counts against them in the Second Consolidated Amended Complaint ("SCAC") pursuant to Fed. R. Civ. P. 12(b)(6). TelexFree, Inc. ("TelexFree") was a pyramid scheme that operated from February 2012 to April 2014, and involved approximately two million participants worldwide, nearly a million of whom suffered a net financial loss. Several plaintiffs filed actions in federal district courts across the United States seeking to recover their losses against dozens of defendants, ranging from financial service providers, including banks (such as Wells Fargo), payment processing companies, and the principals of the fraudulent scheme employed by or otherwise involved with TelexFree. As the actions involved common questions of fact, the Judicial Panel on Multi-district Litigation joined the actions into a multidistrict litigation, ordered transfer of all actions to the District of Massachusetts for coordinated or consolidated pretrial proceedings.

**Background**

Wells Fargo is identified in the SCAC as a bank that maintained accounts for TelexFree and "provided banking services, maintained accounts, and received and executed transfers of funds from or for the benefit of TelexFree" (SCAC ¶84). The only other specific reference to Wells Fargo in the SCAC is ¶713 which alleges "Wells Fargo also maintained accounts on behalf of TelexFree and processed transactions amounting to tens of millions of dollars for TelexFree." The Plaintiff seeks recovery against Wells Fargo for aiding and abetting in violation of Mass. Gen. L. ch. 93 §§ 12 and 69 and ch. 93A §§ 2(a) and 11 (Count III), unjust enrichment (Count IV), and tortious aiding and abetting (Count X).

The SCAC also makes general allegations against all bank defendants. As general averments, Plaintiffs allege that the defendant banks received significant funds from TelexFree and other defendants to provide banking services, maintain accounts, and receive and execute transfers for the benefit of TelexFree. (¶ 711). They further allege that the defendant banks profited from these relationships and that despite a federal regulatory duty to be watchful for the existence of "red flags" surrounding TelexFree, they allowed the pyramid scheme to utilize their services including:

- Processing and opening depository accounts;

- Receiving payments made by promoters of TelexFree to become members of the program;

- Maintaining depository accounts containing funds paid by promoters to TelexFree;

- Making payments to certain promoters as part of TelexFree's investment;

- Transferring funds paid by promoters of TelexFree among TelexFree entities, defendant founders' personal accounts, foreign companies, and shell companies; and

- Allowing TelexFree to use the banks' name in their promotional materials thereby lending TelexFree the use of their reputation and credibility.

**Discussion**

To withstand a Rule 12(b)(6) motion to dismiss, a complaint must allege a claim that plausibly entitles the plaintiff to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). Plausibility does not require probability but "it asks for more than a sheer possibility the defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citing *Twombly*, 550 U.S. at 556). "If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." *Rodriguez–Reyes v. Molina–Rodriguez*, 711 F.3d 49, 53 (1st Cir. 2013) (quoting *SEC v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010) (en banc )). "[A] conclusory allegation … does not supply facts adequate to show illegality [whereas] [a]n allegation … much like a naked assertion … gets the complaint close to stating a claim, but without some further factual enhancement it stops short of the line between possibility and plausibility of entitlement to relief." *Twombly*, 550 U.S. at 557.

Rule 9(b) imposes a heightened pleading standard for claims based on fraud. When an aiding and abetting claim sounds in fraud, it must be plead with particularity as set forth in Rule 9(b). *In re State Street Cases*, 2013 WL 5508151 at *16 (D. Mass. Aug. 21, 2013).

*Third Claim for Relief: Aiding and Abetting General Laws Chapter 93§12 and 69 and Chapter 93A §2 and 11.*

With respect to the issue of whether a Cause of Action exists for aiding and abetting M.G.L. C.93 § 12 and 69, and M.G.L. C. 93A § 2 and 11, there are a limited number of cases in this district where courts have discussed whether aiding and abetting a violation of these statutes states a claim for relief. *See Green v. Parts Distribution Xpress, Inc.,* 2011 WL 5928580 at *4 (D. Mass. Nov. 29, 2011) ("[A] non-party to an employment relationship can be held liable under chapter 93 A for aiding and abetting the wrongdoing of a party to an employment

relationship . . ."); *Professional Services Grp., Inc. v. Town of Rockland,* 515 F. Supp. 2nd 179, 192 (2007) ("Aiding and abetting a breach of fiduciary duty may provide the basis for a Chapter 93A violation"). But see *Reynolds v. City Exp., Inc.,* 2014 WL 1758301 (Mass. App. Div. Jan. 8, 2014) (declining to extend the holding in *Green).* The court in *Green* did not devote much attention to the theory of an aiding and abetting claim under C. 93A, but spoke at length of a statutory aiding and abetting claim under M.G.L. C. 149. Similarly, the *Reynolds* court was not deciding whether a party could aid and abet a C. 93A claim, but whether a party could aid and abet statutory violations of M.G.L. C 149 and 151B pertaining to labor and discrimination respectively. That court held one could not aid and abet C. 149 and 151B violations because the legislature "could have specifically provided for aiding and abetting liability in G.L.C. 149 § 148B and chose not to." Reynolds Supra at *8.

Chapter 93A, which is based upon the Federal Trade Commission Act (15 U.S.C. 45(a)(1)), also does not recognize a separate aiding and abetting cause of action. "A defendant acting with knowledge of deception who either directly participates in that deception or has the authority to control the deceptive practice of another, but allows the deception to proceed, engages, *through its own actions*, in a deceptive act or practice that causes harm to consumers." *FTC v. LeadClick Media, LLC*, 838 F3d. 158, 170 (2d. Cir. 2016) (emphasis in original) (decling to discuss the possibility of inserting aiding and abetting liability under the FTCA to the defendant).

The Supreme Court has held that imposing private civil liability on individuals who aid and abet violations of the 1934 Securities Exchange Act is unreasonable unless specifically enumerated in the act. See *Central Bank of Denver, N.A. v. First Interstate Bank of Denver*, *N.A.*, 511 U.S. 164 (1994), holding that if a statue does not explicitly provide for aiding and abetting liability under the act, any argument that extrapolates private aiding and abetting liability from the phrase

4

"directly or indirectly" in the text is flawed. *Id*. at 176 (adding that "Congress knew how to impose aiding and abetting liability when it chose to do so.").

In this case, Chapters 93 and 93A do not explicitly enumerate private "aiding and abetting" liability. Second, the cases where courts in this district have held that parties may incur liability under Chapters 93 and 93A specifically refer to the "breach of fiduciary duty", and not Section 69, which covers illegal Multi-Level Distribution Company ("MLM") actions. Accordingly, I find that there is no separate Cause of Action under the facts of this case for aiding and abetting M.G.L. C. 93 § 12 and 69, and C. 93A § 2 and 11 and grant Defendant's Motion as to the Third Claim for Relief.

*Fourth Claim for Relief: Unjust Enrichment*

Count IV of the SCAC alleges that "Plaintiffs and the putative class conferred a benefit upon the defendants by furnishing funds, directly or indirectly to defendants, who accepted them without protest and retained and benefited from them." (SCAC at ¶1038). The Plaintiffs go on to allege that the Defendant, with specific regard to the financial service providers, was unjustly enriched. The Complaint does not break down the allegations against specific financial service providers, and instead makes omnibus allegations, such as " . . . each of the defendants chose to enhance fees for providing services to TelexFree's suspicious and unlawful enterprise." (SCAC ¶ 326), "TelexFree could not have successfully carried out its lawful enterprise or shelter it's [sic] ill-gotten gains without the integral assistance of . . . financial institutions." (SCAC at ¶ 313).

To state a claim for unjust enrichment the Plaintiff must demonstrate:

> 1) a benefit conferred on the Defendant by the Plaintiff;
> 2) an appreciation or knowledge of the benefit by the Defendant;
> 3) the acceptance or retention of the benefit by the Defendant under circumstances which make acceptance or retention inequitable.

*Stevens v. Thacker, 550 F.2nd 161, 165, (D. Mass. 2018).*

The Plaintiffs' claims are based upon Wells Fargos' receipt of fees for wire transfers and interest supposedly received on funds held in TelexFree deposit accounts. The complaint is devoid of any allegation that the fees, interest, and charges received by Wells Fargo were anything more than payments for banking services, and thus Plaintiffs have failed to allege that they were "unjust." *See McLane, Graf Raulerson and Middleton, P.C. v. Grady* 214 WL 2504540, @ *4, Mass. Sup. Ct. (2014).

*Assuming arguendo* that these fees were for something other than banking services, it was TelexFree, not the Plaintiffs, which conferred the alleged benefit on the banks. Therefore, only TelexFree would have standing to assert a claim relating to the alleged benefit. *See Taylor v. Moskow,* 2013 WL 5508157 at *3 (D. Mass. October 1, 2013). Accordingly, the Plaintiffs unjust enrichment claims must be dismissed.

*Tenth Claim For Relief: Tortious Aiding and Abetting*

To state a claim for tortious aiding and abetting, a plaintiff must show that (1) the primary actor committed a wrongful act that causes injury; (2) the aider and abettor was aware of his role in the overall wrongful activity when he provided the assistance; and (3) the aider and abettor knowingly and substantially assisted the primary actor's wrongful act. *Id*. at *22 (citing *In re Sharp Int'l Corp.*, 403 F.3d 43, 49–53 (2d Cir. 2005); *accord Arcidi v. Nat'l Ass'n of Gov't Employees, Inc.*, 447 Mass. 616, 623–24 (2006)).

*1. Knowing and Actual Assistance*

The primary tort elements of the aiding and abetting allegation is not disputed by the Defendant. The parties agree that TelexFree established an illegal Ponzi scheme and thus committed a relevant underlying tort. Any analysis of the claims contained in the SCAC begins

by examining the allegation that the Defendants either actively participated in and/or substantially assisted in TelexFree's tortious and fraudulent scheme. Participation that is not active, (i.e. passive) does not constitute aiding and abetting"). Similarly, mere assistance, less than substantial, also fails to meet the relevant threshold.

Our Court in *In re State Street Cases* outlined why passive assistance and inaction does not rise to the level of substantial assistance. Specifically, in State Street, a fraudster used bank accounts in the execution of a fraudulent scheme. The Court found that:

> The mere settling of a transaction or providing of a platform, without more, cannot sustain a charge of substantial assistance. Although conventional banking services made it easier to effectuate [a] fraudulent scheme, there was no showing of substantial assistance . . . [although] . . . participants in the . . . scheme used [bank] accounts . . . to perpetrate it . . . . These allegations are precisely the sort of passive assistance and inaction that, without more, does not rise to the level of substantial assistance."

*In Re State Street cases*, 2013 WL 550815 @*23.

Absent any showing of active participation in, or substantial assistance in furthering the underlying tort, the mere provision of banking services, as in *State Street* cannot actively or substantially assist a fraud.

*2. Actual knowledge*

As evidence of actual knowledge, Plaintiffs plead that financial service providers, which presumably includes Wells Fargo, had access to TelexFree's promotional literature and TelexFree's contact with their members (including the victims of the scheme). (SCAC 187-88, 337-38). The Court gives deference to the factual assertions of the non-moving party. However, the Plaintiffs argue that financial service providers, including Wells Fargo should have concluded from review of those documents that TelexFree's scheme was facially tortious. An argument that a bank should have recognized a fraud is insufficient to meet the actual knowledge requirement. "The fact that a bank *should have* recognized fraud does not mean that it had *actual knowledge* of

7

fraud." An aiding and abetting claim demands a showing of 'actual knowledge' of the underlying wrongdoing. *Cahaly v. Benistar Prop. Exch. Trust,* 451 Mass. 343, 355 (2008).

The Plaintiffs' also argue that members of TelexFree's scheme had predominantly "foreign" surnames and that this was grounds on which the Defendants should have reasonably suspected a fraud. (SCAC at 698). Setting aside the xenophobic implications, TelexFree claimed to be in the business of Voice over Internet Telephony, a technology that allows international calls be made cheaply, and which was heavily marketed in Brazil and American Brazilian communities. If such a company was legitimate the majority of their customers would be drawn from immigrant communities.

Lacking any plausibly articulated pleading that Wells Fargo had actual knowledge of the underlying tort during the period in which they served as TelexFree's bankers the aiding and abetting counts must be dismissed.

**Conclusion**

For the reasons set forth above, the Defendant Wells Fargo's Motion to Dismiss (documents 171) are ***granted***.

**SO ORDERED.**

                                                    */s/ Timothy S. Hillman*
                                                  **TIMOTHY S. HILLMAN**
                                                  **DISTRICT JUDGE**