UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: TELEXFREE SECURITIES LITIGATION<br><br>This document relates to:<br><br>All Cases | CIVIL ACTION NO. 4:14-MD-02566-TSH |

**MEMORANDUM OF WELLS FARGO ADVISORS, LLC
IN SUPPORT OF FIRST MOTION TO COMPEL**

This putative class action stems from the TelexFree pyramid and Ponzi scheme that unraveled in the spring of 2014. Plaintiffs claim that Defendant Wells Fargo Advisors, LLC ("WFA") tortiously aided and abetted the scheme's perpetrators. WFA, *which never opened or maintained any accounts for TelexFree*, vigorously denies Plaintiffs' allegations. Through discovery, WFA has sought to understand the supposed evidentiary basis for Plaintiffs' allegations against WFA. In addition, WFA has sought discovery about the Plaintiffs identified in the various complaints and listed in Plaintiffs' own Rule 26 disclosures to evaluate whether there is any basis for certification of a class here, given that the TelexFree scheme depended on friends, family members, and promoters recruiting one another through one-on-one pitches or oral presentations and that some participants did not incur any losses.  Plaintiffs' discovery "responses" fail to provide any information about many of the named Plaintiffs or about the basis for those Plaintiffs' particular claims against WFA. They also fail to comply with even the most basic obligations imposed by Federal Rules of Civil Procedure 26, 33, and 34.

Plaintiffs' various complaints and Rule 26 disclosures identified seventy individual Plaintiffs, all of whom are potential class representatives and who would have discoverable information relevant in this action. WFA sought discovery from each of these individuals, and

Plaintiffs have never objected to providing it—but almost six years into this litigation and with discovery set to close on February 28, 2020, Plaintiffs have provided *no discovery responses whatsoever* for sixty-five of the seventy Plaintiffs identified in their various Complaints and in their Initial Disclosures, for five of the six Plaintiffs named in the proposed Fifth Consolidated Amended Complaint, and for three of the six Plaintiffs named in the "corrected" version of that Complaint.[1] Moreover, every single document Plaintiffs have produced has been previously produced by other defendants or third parties like the TelexFree bankruptcy trustee or the Department of Justice. Not a single document in Plaintiffs' production originated from the Plaintiffs.

Inexplicably and inexcusably, Plaintiffs also unilaterally reworded WFA's document requests, responded to those requests out of order, failed to verify their interrogatory responses, ignored portions of WFA's interrogatories and document requests, raised baseless objections, and failed to supply any privilege log. When WFA raised these and other concerns with Plaintiffs' lead counsel and repeatedly proposed dates to meet and confer, Plaintiffs' lead counsel ignored or brushed off the WFA's counsel for over three weeks.

The deadline for completing fact discovery is less than two months away, and WFA stands ready to contest class certification and otherwise proceed with litigating this case, but it needs access to the information and documents that it has requested—and is entitled to receive—from

---

[1] The number of Plaintiffs and people with information about Plaintiffs' claims has been a moving target throughout this litigation. For example, of the five Plaintiffs named in the Fourth Consolidated Amended Complaint, only one is listed as a named Plaintiff in the Proposed Fifth Consolidated Amended Complaint. The "Corrected" Proposed Fifth Consolidated Amended Complaint then names six Plaintiffs—three of whom appeared in the Fourth Consolidated Amended Complaint and three of whom appeared in the Proposed Fifth Consolidated Amended Complaint. Plaintiffs have also filed documents in this action indicating that other individuals—besides those named in their various complaints or identified in their Rule 26 disclosures—are Plaintiffs. In November 2019, for example, Plaintiffs' lead counsel filed a motion for preliminary approval of settlement on behalf of a "Plaintiff" named Tyzza Hartman. (Dkt. 762 and 763.) But Ms. Hartman has not appeared as a Plaintiff in any prior complaint or filing in this action. Nor did she appear on Plaintiffs' Initial Disclosures.

Plaintiffs. Accordingly, pursuant to Federal Rule 37 and Local Rule 37.1, WFA requests that this Court enter an order compelling Plaintiffs to respond fully to WFA's interrogatories, overruling their baseless objections to WFA's discovery requests, and requiring Plaintiffs to provide all information and documents WFA seeks. WFA also seeks an award of its attorneys' fees incurred in preparing and prosecuting this motion.

## BACKGROUND

WFA served its First Interrogatories to Plaintiffs (the "Interrogatories") and First Document Requests to Plaintiffs (the "Document Requests" and, together with the Interrogatories, the "Discovery Requests") on October 16, 2019,[2] not long after the Court's entry of a scheduling order establishing a discovery deadline of February 28, 2020. These were the first discovery requests served by any party, and WFA served them promptly to ensure that it could obtain the information it needed to defend itself under the Court's schedule. Eleven weeks later, Plaintiffs still have not provide meaningful interrogatory responses, and they have yet to produce a single document regarding their involvement with TelexFree.

*Plaintiffs fail to respond timely*

Plaintiffs failed to respond to the Discovery Requests by the deadline of November 18, 2019. Instead, the day after expiration of the response deadline, Plaintiffs' counsel purported to grant themselves two additional weeks to provide responses without seeking WFA's input or the Court's permission.[3]

---

[2] WFA's Interrogatories and Document Requests are attached as Exhibits A and B to WFA's Motion to Compel. Plaintiffs' Responses (which reword and re-order some of the requests and questions) are attached as Exhibits C and D to the Motion to Compel.
[3] Email correspondence between Plaintiffs' Counsel Robert Bonsignore and WFA Counsel Adam Doerr dated November 19-20, 2019 (attached hereto as Exhibit 1 to this Memorandum).

*Plaintiffs serve inadequate, incomplete responses*

Plaintiffs eventually served inadequate and incomplete responses on December 4, 2019. Most importantly, as noted in the introduction, Plaintiffs provided no responses for the vast majority of the Plaintiffs identified in their Rule 26 disclosures.[4] Plaintiffs also failed to provide complete responses to straightforward questions about the Plaintiffs' identities and claims. None of the responses are verified as Federal Rule 33(b)(5) requires. The responses to WFA's Document Requests similarly violated black letter requirements of Federal Rules 26 and 34—including the requirement that Plaintiffs say whether they are withholding any documents on the basis of their objections, provide a privilege log, and provide documents in their "possession, custody, or control" (not simply those in their "possession"). The responses to the Document Requests also improperly reworded and confusingly reordered some of WFA's requests.

*Plaintiffs fail to meet & confer to address deficiencies*

WFA identified these and other concerns in a letter to Plaintiffs' lead counsel on December 11, 2019 and invited Plaintiffs to meet and confer on December 12, 13, or 16.[5] Plaintiffs' counsel responded by email the same day, unprofessionally characterizing the letter as "largely unintelligible and inaccurate" and ignoring most of the concerns raised, but representing that Plaintiffs would "promptly supplement to the extent we are able to understand the request to supplement" and produce all unprivileged documents "we have."[6] Plaintiffs, however, did not accept WFA's invitation to meet and confer or propose alternative dates.

---

[4] Plaintiffs' Rule 26(a)(1) Initial Disclosures are attached as Exhibit 2 to this Memorandum.
[5] Letter from WFA Counsel Robert Fuller to Mr. Bonsignore dated December 11, 2019 (attached as Exhibit 3).
[6] Email from Mr. Bonsignore to Mr. Fuller dated December 11, 2019 (attached as Exhibit 4).

*Plaintiffs fail to produce any documents involving Plaintiffs*

On December 13, Plaintiffs produced approximately 78,000 documents to WFA. Not a single one of the documents was created by or originally transmitted to any of the Plaintiffs in this action. Instead, each of the 78,000 documents came from other defendants or other third party sources like the TelexFree bankruptcy trustee or the Department of Justice.[7]

*Plaintiffs do not respond to repeated efforts to address issues*

Three days later, on December 16, counsel for WFA followed up by email, requesting that Plaintiffs commit to resolving the deficiencies in Plaintiffs' discovery responses by December 20.[8] WFA's email again invited Plaintiffs to meet and confer the week of December 16 and asked Plaintiffs to propose convenient dates. Plaintiffs' counsel ignored WFA's December 16 email until December 23, when they indicated that Plaintiffs would be willing to meet and confer with counsel for WFA but did not propose any dates.[9] Counsel for WFA immediately responded to Plaintiffs' email and suggested that the parties meet and confer on December 30 or 31.[10] Counsel for Plaintiffs did not respond to confirm either of those dates or propose alternatives. Instead, on January 1, 2020, Plaintiffs' counsel proposed in a letter to WFA's attorneys that the parties meet and confer on January 3, 2020. [11] Though January 3rd was well outside the deadline for Plaintiffs to agree to meet and confer as set forth in Local Rule 37.1, WFA's counsel offered to be available anytime that day. [12] Plaintiffs' counsel never responded with a time to talk.

---

[7] To the extent these documents were obtained by subpoena pursuant to Rule 45, WFA should not have needed to make document requests to receive them. *See* FRCP 45, 2013 Advisory Committee Note ("The party serving the subpoena should in any event make reasonable provision for prompt access [to received materials.")

[8] Email from WFA Counsel Fitz Barringer to Mr. Bonsignore dated December 16, 2019 (attached as Exhibit 5).

[9] Email correspondence between Plaintiffs' Counsel Alex Wall and WFA Counsel Mr. Fuller and Mr. Barringer dated December 23, 2019 (attached as Exhibit 6).

[10] *Id.*

[11] Email and correspondence exchanged between Mr. Fuller and Mr. Bonsignore dated January 1-3, 2020 (attached as Exhibit 7).

[12] *Id.*

## **ARGUMENT**

Five and half years into this litigation, the Plaintiffs have provided almost no information regarding their claims. The Fourth Consolidated Amended Complaint contains 1,270 numbered paragraphs,[13] only five of which concern the Plaintiffs. The information alleged as to each Plaintiff is essentially identical: "[name] is an individual who resides in [place]" who "tendered funds for a TelexFree Membership" or "tendered funds to another Participant." None of the Plaintiffs—in any of the seven or eight complaints they have filed—has said how much he or she paid to TelexFree, how and why they decided to participate, who they paid and when, whether they sold or attempted to sell TelexFree's VOIP service, whether they recruited other participants to join TelexFree, or other critical information about their claims or their involvement with TelexFree.

More recently, in their Initial Disclosures, Plaintiffs again failed to provide even the most basic information about their claims. Notwithstanding the Rule 26 requirement to provide a "computation of each category of damages claimed," and to make available documents "on which each computation is based, including materials bearing on the nature and extent of injuries suffered," Plaintiffs did not provide *any* disclosure or documents on their alleged damages.

Finally, Plaintiffs have not provided any of this information in responses to WFA's document requests and interrogatories, which sought once again to obtain information regarding their alleged damages and involvement in TelexFree. This is not too much to ask of individuals and counsel seeking to lead a class that they claim numbers in the hundreds of thousands, with hundreds of millions or billions in damages. Yet the minimal interrogatory responses they provided only addressed five individual Plaintiffs—four of whom Plaintiffs' counsel now appears to be attempting to drop by amendment. As for documents regarding Plaintiffs, there have been *none*.

---

[13] Plaintiffs' proposed "Corrected" Fifth Consolidated Amended Complaint is significantly longer—with 2,241 number paragraphs and 420 pages—yet contains only minimal additional information regarding Plaintiffs.

Plaintiffs have produced tens of thousands of documents from other sources, mostly gathered by the TelexFree bankruptcy trustee, but they have not produced a single document regarding any Plaintiffs' involvement in TelexFree or his or her alleged damages. Accordingly, WFA has been forced to file this motion to require Plaintiffs to produce documents and respond fully to interrogatories regarding their claims.

### A.  All Identified Plaintiffs Must Respond to Discovery.

Most of the Plaintiffs have failed to respond to *any* of WFA's Interrogatories or Document Requests. Accordingly, WFA seeks an order from the Court compelling a response from all Plaintiffs. In its Discovery Requests, WFA defined the term "Plaintiffs" to mean "all current or former named Plaintiffs" in the *In re TelexFree Securities Litigation* and the "actions listed in paragraph 3 of the MDL Case Management Order No. 4." This definition of "Plaintiffs" encompasses seventy individuals, nineteen of whom are identified in Plaintiffs' Rule 26 Disclosures.[14] Even in their untimely discovery responses, Plaintiffs never objected to this definition.

It is axiomatic that every Plaintiff must respond to discovery, and their failure to object has waived any right of Plaintiffs to contend otherwise in this action. More generally, by failing timely to respond to WFA's discovery requests (instead granting themselves a unilateral two-week extension the day after the discovery responses were due), Plaintiffs have waived all objections to the discovery requests. *See* Federal Rule 33(b)(4); Local Rule 33.1(c)(1) ("Any ground [for objecting to an interrogatory] not stated in an objection within the time provided by the Federal Rules of Civil Procedure, or any extensions thereof, shall be deemed waived."); Local Rule 34.1(c)(1) (same for objections to document requests); *Williams v. Gillette Co.*, 2004 WL 717173,

---

[14] *See* Ex. 3 at attachment labeled "TelexFree Plaintiffs"; Ex. 2 at 2-7.

at *2 (D. Conn. Mar. 24, 2004) ("'A party which fails to object to a discovery request waives any objections it might otherwise have made.'" (quoting *Kimbro v. I.C. Sys., Inc.*, 2002 WL 1816820, at *1 (D. Conn. July 22, 2002))).

**B. Plaintiffs' Interrogatory Responses are Deficient in Additional Respects.**

For five of the seventy "Plaintiffs"—just one of whom is named as a Plaintiff in the proposed Fifth Consolidated Amended Complaint and three of whom are named as Plaintiffs in the proposed "Corrected" Fifth Consolidated Amended Complaint—Plaintiffs have provided partial, incomplete, and unverified interrogatory responses, as follows.

*Plaintiffs' Identities and Damages* – Interrogatories 1-3 seek information about the identity of the Plaintiffs, damages allegedly suffered by each, and Plaintiffs' TelexFree-related transactions.[15] Even the five Plaintiffs for whom some responses have been provided have failed to provide most of the information requested, which is indisputably relevant and discoverable.

The five Plaintiffs' responses to Interrogatory 2, concerning damages, are equally deficient. Plaintiffs object to the request to provide a description of their alleged damages, claiming that the request is confusing; seeks mental impressions, legal opinions, trial strategy, or privileged information; and requires the disclosure of expert opinion. Plaintiffs then say, subject to their objections, they will rely on "TelexFree's SIG system" to establish their damages. This "answer" is non-responsive and insufficient. WFA is clearly "entitled to a clear articulation of the damages Plaintiff alleges in this case." *Automed Techs. v. Knapp Logistics & Automation, Inc.*, 382 F. Supp. 2d 1368, 1370 (N.D. Ga. 2005); *see also* Rule 26(a)(1)(A)(iii). This is particularly true where the amount, timing, or nature of the named Plaintiffs' alleged damages may be significantly different

---

[15] Here and elsewhere in this memorandum, as required by Local Rule 37.1(b), WFA summarizes, with particularity, the discovery requests and responses at issue because verbatim recitation adds substantial length and virtually all of Plaintiffs' "responses" are non-responses.

from those of other members of the putative class. *See Noller v. Grubs*, 2006 WL 8448107, at \*3 (S.D. Ind. Feb. 24, 2006) (holding that information about "whether there were damages at all" and the "degree" of any damages is "relevant in determining whether Plaintiffs' claims are 'typical'" of those of the other members of the purported class).

Interrogatory 3 asks Plaintiffs to identify all transactions they entered into concerning or related to TelexFree, including the date, amount, purpose, and format of each transaction. Plaintiffs do not object to any aspect of Interrogatory 3, but the five Plaintiffs who responded have furnished only part of the information sought. Mr. Bourguigonon's response, for example, says that he invested in TelexFree "in the months preceding TelexFree's bankruptcy filing," which fails to provide any information about the date of the transaction, his purpose for entering into it, or the format of his payment. This evasive and incomplete answer is unacceptable. The timing of each Plaintiffs' "investment" in TelexFree materially affects the issues in this action and impacts class certification. For example, a Plaintiff who "invested" before a Defendant allegedly provided assistance to TelexFree would have no claim against that Defendant.

*Plaintiff's Involvement in TelexFree* – Interrogatories 4, 6, 7, and 12 ask Plaintiffs to identify each Person who solicited or recruited them to become associated with TelexFree; to describe those recruiting efforts and conversations, including the exchange of any payments or bonuses; to identify any other individuals with knowledge of the recruiting efforts and conversations; and to describe whether each Plaintiff sold or attempted to sell any TelexFree products or services, including any efforts to sell such products or services, the date of any sales, and commissions received. Plaintiffs do not object to any of these Interrogatories, but (again) even the five who responded have failed to provide complete information.

For example, in response to Interrogatory 4, Ms. Alves, Ms. Miranda, and Ms. Silva provide the names of individuals who solicited their association with TelexFree, but omit all other requested identifying information about these individuals, such as their home and business addresses and last known employers. Mr. Bourguigon's response disclaims knowledge of the identity of the hosts of a promotional meeting he attended, but he fails to say whether another person solicited or recruited him to attend the promotional meeting.

Similarly, none of the five Plaintiffs for whom responses are provided "describe" the recruiting efforts or conversations related to their participation in TelexFree as WFA requested in Interrogatory 6. Plaintiffs provide no specific dates for their meetings. Mr. Bourguigon, Ms. Alves, Ms. Miranda, and Ms. Silva also fail to describe any solicitation communications or conversations. These are basic details that are relevant to, among other things, the typicality and commonality of the Plaintiffs' claims. *See, e.g.*, *Wesley v. Calvary Investments, LLC*, 2006 WL 2794065, at *5 (E.D. Pa. Sept. 27, 2006) ("Courts are particularly hesitant to certify class actions based primarily on oral as opposed to written communications." (citing cases)).

Plaintiffs also improperly omit information in their response to Interrogatory 7. Mr. Bourguigon and Ms. Santos claim that they "do not personally know any of the [TelexFree] promoters" but fail to respond to the portion of the Interrogatory that asks for the identity of all persons with personal knowledge of efforts to recruit Plaintiffs into TelexFree. Plaintiffs also fail to provide any identifying information for the one alleged "recruiter" Ms. Alvez, Ms. Miranda, and Ms. Silva do name—William Costa.

The responses to Interrogatory 12 are similarly deficient. Each of the responding Plaintiffs improperly limits his or her response to the sale of products. In doing so, Plaintiffs fail to state whether any Plaintiff sold TelexFree *services* or *attempted to sell* any TelexFree products or

services. In this and all other instances, WFA is entitled to a complete answer to its questions. *Xinrong Zhuang v. Saquet*, 2013 WL 6410355, at *1 (D. Mass. Dec. 6, 2013) (explaining that Rule 33(b) requires in "no uncertain terms" that a party "answer each interrogatory 'separately and fully in writing under oath' and that an "'evasive or incomplete' answer to an interrogatory constitutes a failure to answer the interrogatory.").

*Plaintiffs' Allegations Against WFA* – Interrogatories 8, 9, and 10 ask Plaintiffs to state the basis for their allegations that WFA provided substantial assistance to Carlos Wanzeler or TelexFree, that WFA had actual knowledge that TelexFree was a fraudulent scheme, and that TelexFree's fraudulent scheme would have been discovered and publicly exposed at an earlier date absent WFA's alleged services, actions, or omissions. In response, Plaintiffs object based on overbreadth, vagueness, the release of mental impressions or legal strategy, privilege, and timing. Plaintiffs then summarize certain allegations in their complaint against WFA.

These objections are baseless under Local Rule 26.5(c)(8). That rule specifically provides that "[w]hen an interrogatory calls upon a party to 'state the basis' of or for a particular claim, assertion, allegation, or contention," the party shall "identify each and every document" and "each and every communication" which "form[] any part of the source of the party's information regarding the alleged facts or legal conclusions referred to in the interrogatory." The failure to include this information—or to object in any way to providing such documents or communications—is insufficient under Local Rule 26.5(c)(8). WFA is entitled to this information, and Plaintiffs should be ordered to respond fully to these interrogatories.

*Plaintiffs' Lack of Verification* – Rule 33 expressly requires that interrogatories must be "answered separately and fully in writing under oath." Fed. R. Civ. P. 33(b)(5); *see In re Neurontin Prod. Liab. Litig.*, 2011 WL 1326407, at *1 (D. Mass. Apr. 5, 2011) (dismissing claims by

plaintiffs who failed to verify interrogatory responses despite repeated efforts). The verification requirement serves the critical purpose of ensuring that the responding party attests to the truth of the responses. Fed. R. Civ. P. 26(g)(1).  The signature of the party's attorney in lieu of the party's sworn statement is not sufficient; it would undermine important discovery functions and effectively convert the attorney into a witness. *Saria v. Mass. Mut. Life Ins. Co.*, 228 F.R.D. 536, 539 (S.D. W. Va. 2005).

WFA noted the lack of a verification in its letter to Plaintiffs' counsel of December 11 but Plaintiffs have still not verified their responses. The failure to verify responses raises particular concern in case like this, where Plaintiffs' counsel is attempting to pursue claims on behalf of a large class and the specific Plaintiffs named in any particular complaint varies widely. Counsel cannot answer interrogatories; the Rules are quite explicit that the "interrogatories must be answered by the party to whom they are directed," Fed. R. Civ. P. 33(b)(1), not that party's lawyer. Without verifications, Plaintiffs have failed to satisfy this important and mandatory safeguard, and they should be compelled to provided verified responses. *See Saria*, 228 F.R.D. at 539 ("Rule 33, requiring verification and signature, is among the simplest of all the Rules of Procedure, and yet it is increasingly ignored. This court wishes to emphasize that…the discovery rules' requirements are mandatory, not optional.").

### C. Plaintiffs' Responses to WFA's Document Requests are Also Deficient in Additional Respects.

Plaintiffs' responses to WFA's Document Requests suffer from a number of glaring deficiencies.

*1. General Deficiencies.* Many of the deficiencies in Plaintiffs' responses to WFA's Document Requests exhibit grossly improper conduct, apparent carelessness, and/or an inexplicable failure to comply with basic requirements of Federal Rule 34.

In at least seven instances, Plaintiffs reword or renumber WFA's Document Requests (Requests 11, 15, 19-23). The rewording of Requests 11, 19, and 21-23 is material—significantly changing the scope and meaning of WFA's requests. Moreover, Plaintiffs have scrambled the numbering of many of WFA's Document Requests. For example, Plaintiffs numbered their response to Request 38 as Request 23 and added a Request 39. Local Rule 34.1(a)(1) requires that "[a]nswers and objections in response to requests for document production . . . shall be made in the order of the requests propounded." Plaintiffs' failure to follow this straightforward requirement has resulted in significant confusion.

Federal Rule 34(a)(1) requires the production of all responsive, non-privileged documents in Plaintiffs' "possession, custody, or control." Nevertheless, even in instances where Plaintiffs agree to provide documents "subject to" various objections, they commit to providing only documents "reasonably within their possession." (*See* Plaintiffs' Responses to Requests 1-4, 6-11, 14-18, 20, 25, 27, 31-34, 37.) This is unacceptable under Rule 34(a)(1).

In numerous responses to WFA's Document Requests, Plaintiffs object to producing documents "protected by Federal Rules of Civil Procedure 408 or 403" (*see* Responses 1-6, 14-15, 17, 19, 21-22, 24, 27, 29-31, 34-36, 38-39) or that are "subject to protection under Federal Rules of Evidence 408 or 403" (*see* Responses 12-13). Of course, there are no "Federal Rules of Civil Procedure 408 or 403," so Plaintiffs' cites to these fictional rules are meaningless and improper. And to the extent Plaintiffs intended to invoke Federal Rules of Evidence 408 and 403, as they did in their responses to Requests 12 and 13, it is well settled that "[i]nformation with th[e] scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).

Rule 34(b)(2)(C) requires that Plaintiffs state whether any responsive materials are being withheld on the basis of an objection. Plaintiffs object to each of WFA's 38 document requests but

typically fail to explain whether they are withholding any documents on the basis of their objections. Rule 34(b)(2)(C) requires such clarification to "end confusion" over "whether any relevant and responsible information has been withheld on the basis of the objections." *See Scranton Prods., Inc. v. Bobrick Washroom Equip., Inc.*, 190 F. Supp. 3d 419, 437 (M.D. Pa. 2016).

Finally, in many instances, Plaintiffs assert that WFA's requests seek privileged documents protected from production. (See Responses 1-22, 24-27, 29, 31, 34, and 37.) In such instances, Federal Rule 26(b)(5)(A) requires parties claiming privilege to describe the documents, communications, or tangible things not produced or disclosed. Fed. R. Civ. P. 26(b)(5). This description permits the requesting party to "assess the claim" of privilege. Plaintiffs here have not provided (or offered to provide) such descriptions, which are typically furnished in a privilege log.[16]

None of Plaintiffs' objections have any validity, with the possible exception of privilege claims that WFA cannot evaluate in the absence of a privilege log. Accordingly, WFA asks that the Court order Plaintiffs to produce all unprivileged documents requested and to provide a privilege log so WFA can evaluate the claims of privilege.

 *2. Failure to Produce Plaintiffs' Own Documents.* Plaintiffs' attempt to hold back materials they judge to be protected or privileged under the Federal Rules of Evidence, failure to clarify

---

[16] If a party claims a document is privileged, the burden lies with that party to (i) expressly make the claim and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed, and do so in a manner that, without revealing information itself privileged or protected will enable other parties to assess the claim. *In re Intuniv Antitrust Litig.*, 2018 WL 6492747, at *2 (D. Mass. Dec. 10, 2018). Thus, a privilege log must provide "'[a description of] the subject of the communication sufficient to show why the privilege applies, as well as [the issue to which] it pertains.'" *In re Oxbow Carbon LLC Unitholder Litig.*, 2017 WL 959396 at *5 (Del. Ch. Mar. 13, 2017) (quoting *Unisuper Ltd. v. News Corp.*, C.A. No. 1699-N, slip op. at 2 (Del. Ch. Mar. 9, 2006) (alternations in original)); *see also Echavarria v. Roach*, 2018 WL 6788525, at *2 (D. Mass. Dec. 26, 2018) (explaining that a party's privilege log must "do the best that he reasonably can to describe the materials to which his [privilege] claim adheres"). And it "must show sufficient facts as to bring the identified and described document within the narrow confines of the privilege." *Id.*; *see also Klig v. Deloitte LLP*, 2010 WL 3489735 (Del. Ch. Sept. 7, 2010).

whether documents are being withheld, and failure to provide a privilege log are particularly problematic because Plaintiffs may be improperly withholding hundreds of thousands of documents responsive to WFA's discovery requests.

Many of WFA's requests for production specifically targeted documents that Plaintiffs would have created or received as part of their interactions with TelexFree or WFA—documents relating to Plaintiffs' interactions with TelexFree or WFA that are highly relevant to Plaintiffs' claims and potential class certification efforts.[17] Plaintiffs surely have documents responsive to these requests. In their Initial Disclosures, Plaintiffs claim to be in possession of email and text communications from TelexFree and its representatives, as sought in Requests 17 and 29, and materials related to their investments in TelexFree, as sought in Requests 15, 18, 19, and 30.[18] At the March 20, 2019 Scheduling Conference, Plaintiffs' lead counsel represented to the Court that he had a "three-inch volume with papers spilling out of it" full of "questionnaires [from Plaintiffs]." (Dkt. 715 at 12-13.) Just a few days ago, in a December 27, 2019, filing Plaintiffs represented to the Court that they "were able to accumulate documents through members of the putative class and other informal means." (Dkt. 822.) And in his December 11, 2019, email to counsel for WFA, Plaintiffs' lead counsel represented that Plaintiffs document production would be "comprised of millions of documents."[19]

---

[17] Request 5, for example, sought documents constituting, relating to, concerning, or evidencing communications between WFA and Plaintiffs (or any member of the proposed class) and TelexFree. And Request 15 sought documents relating to or concerning each Plaintiff's involvement with, participation in, or receipt or payment of funds concerning TelexFree. Many other Document Requests sought similar materials. WFA made requests for documents relating to transactions handled by WFA originating with or traceable to Plaintiffs (Request 8), supporting any Plaintiff's (or any member of the proposed class's) damages (ROG 9), or related to every person that a Plaintiff solicited or recruited to be associated with TelexFree (Request 16). WFA also sought documents and communications involving any Plaintiff related to TelexFree (Request 17), agreements between Plaintiffs and TelexFree (Request 18), documents related to TelexFree-related transactions (Request 19), documents related to each Plaintiff's alleged damages in the TelexFree scheme (Request 20), and communications with any WFA employee (Request 29) or any TelexFree employee, promoter, or associated person (Request 30).
[18] Ex. 2 at 72-73..
[19] Ex. 4.

Yet to date Plaintiffs have produced no documents showing interactions with TelexFree, no communications between Plaintiffs and TelexFree or WFA, none of the questionnaires referenced by Plaintiffs' counsel, or anything else whatsoever from the named Plaintiffs or putative class members. Put another way, in response to the eleven Document Requests specifically targeting documents related to Plaintiffs' interactions with WFA, TelexFree, or the TelexFree scheme, Plaintiffs have produced *no documents* at all. WFA is entitled to these documents and to a log identifying any documents withheld on privilege grounds.

Each Plaintiff has an obligation to search for and provide documents responsive to each of WFA's discovery requests. *Chemence Med. Prods., Inc. v. Quinn*, 2015 WL 12555857, at *2 (N.D. Ga. Feb. 10, 2015) ("[P]laintiffs do have an obligation to search for and produce all responsive documents. To the extent that no search has been undertaken on emails outside those set to or from the defendant, the plaintiffs should endeavor to complete this search and turn over all responsive documents immediately."); *Richard Green (Fine Paintings) v. McClendon*, 262 F.R.D. 284, 290 (S.D.N.Y. 2009) ("Attorneys must take responsibility for ensuring that their clients conduct a comprehensive and appropriate document search."). The fact that Plaintiffs have produced no documents at all in response to WFA's Plaintiff-specific requests strongly suggests that Plaintiffs have not fulfilled their search and production obligations. If Plaintiffs have searched for and are actually withholding documents on the basis of their objections, WFA is entitled to understand what is being withheld, and why. Plaintiffs, of course, cannot use boilerplate objections or privilege claims to withhold relevant facts from WFA. *See Diaz v. Devlin*, 327 F.R.D. 26, 29 (D. Mass. 2018) (Hillman, J.) (explaining that facts are "not protected from disclosure by the work-product doctrine" and that a "party should not be allowed to conceal critical, non-privileged,

discoverable information simply by attempting to hide behind the work product doctrine" (alternations omitted)).

*3. Baseless Objections.* Aside from these general issues with Plaintiffs' responses to WFA's Document Requests, many of Plaintiffs' particular responses also raise improper and baseless objections.

Request 5 seeks documents showing communications between WFA and Plaintiffs or any member of the proposed class regarding TelexFree. Plaintiffs raise a number of boilerplate objections to this request, including that the documents (i) are already in WFA's possession, (ii) are irrelevant and (potentially) inadmissible, and (iii) may be privileged. These boilerplate objections are improper under the Federal Rule 34(b)(2)(B). *See* 2015 Advisory Committee Note to Federal Rule 34 (explaining the requirement "that objections to Rule 34 requests be stated with specificity"). And, in any event, Request 5 seeks materials highly relevant to Plaintiffs' tortious aiding and abetting claim, and it is proper for WFA to request these materials from Plaintiffs because WFA does not know of any such documents and is entitled to find out for certain whether any exist (and obtain copies). To the extent Plaintiffs contend that documents covered by Request 5 are privileged, Plaintiffs must provide a privilege log. Fed. R. Civ. P. 26(b)(5)(A).

Request 12 seeks documents showing settlements or understandings with any other person pursuant to which any Plaintiff or member of the proposed class has or will receive funds or other relief regarding TelexFree. Plaintiffs contend that this request is overly broad, is unduly burdensome, and seeks privileged materials.[20] Plaintiffs provide no support for these objections and ignore that whatever the burden of collecting responsive documents may be, the information WFA seeks is highly relevant to Plaintiffs' tortious aiding and abetting claim, *see In re Sharp Int'l*

---

[20] Plaintiffs also object under Federal Rules of Evidence 408 and 403, but, as addressed above, whether or not a requested document is admissible as evidence is irrelevant to whether or not the document is discoverable.

*Corp.*, 403 F.3d 43, 49-53 (2d Cir. 2005) (requiring proof of injury as an element of the claim), and Plaintiffs' ability to serve as class representatives, *see Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 156 (1982) ("[A] class representative must be part of the class and possess the same interest and *suffer the same injury* as the class members." (emphasis added) (citation omitted)). These documents can also be relevant for impeachment purposes.

Request 21 also seeks damages-related materials—specifically, "[a]ll documents supporting, relating to, or concerning the alleged damages suffered by any member of the putative class." In their response, Plaintiffs inexplicably delete the phrase "member of the *putative class*," replace it with "member of the *Plaintiff*," and claim that the request is "unintelligible" before reciting a litany of other boilerplate objections. Plaintiffs cannot change the wording of WFA's discovery requests and then refuse to respond on the basis that the reworded request makes no sense.

In Request 13, WFA seeks documents constituting, concerning, or relating to testimony of any person concerning TelexFree. To prove their tortious aiding and abetting claim, Plaintiffs must show, among other things, that TelexFree engaged in tortious conduct. *In re Sharp Int'l Corp.*, 403 F.3d at 49-53. WFA is entitled to understand the full scope of existing testimony regarding TelexFree's wrongdoing. But Plaintiffs resist providing responsive documents and invoke a set of baseless boilerplate objections, including overbreadth, burdensomeness, imposition of unwarranted obligations, privilege, and documents being available from other sources.[21] Indeed, Plaintiffs have not produced or agreed to provide testimony they have referenced in filings with the Court. (*See, e.g.*, Dkt. 813 at 2 (referring to interviews of former TelexFree employees)).

---

[21] Plaintiffs also invoke Federal Rule of Civil Procedure 408 and 403—an improper objection as addressed above at 13.

- 18 -

In many instances, Plaintiffs suggest that they will meet and confer to discuss what documents they may be willing to provide. In some of these instances, WFA cannot determine whether Plaintiffs are withholding documents, or not.[22] In other instances, WFA strongly suspects Plaintiffs are "hiding the ball." But in all instances, their offer to meet and confer is meaningless because Plaintiffs have resisted all attempts by WFA to set up a teleconference to discuss their discovery responses.

**E. WFA Is Entitled to its Costs and Fees.**

When a party from whom discovery is sought fails to adequately respond to interrogatories or requests for production and fails to timely meet and confer with the party propounding discovery or resolve the deficiencies in its discovery responses, Federal Rule 37 and Local Rule 37.1 authorize the party seeking discovery to file a motion to compel and obtain the costs incurred in filing such a motion. *See Applewood Props., Inc. v. Signature Bldg. Sys., Inc.*, 2011 WL 1155478, at *1-2 (D. Mass. Mar. 24, 2011) (Hillman, Mag. J.) (explaining that the Court awarded "attorney's fees and other costs and expenses relating to [the moving party's] motion to compel" *Buchanan v. RPM Advantage, Inc.*, 2010 WL 1410533, at *2 (D. Mass. Mar. 30, 2010) (Hillman, Mag. J.) (awarding the costs of prosecuting a motion for sanctions against party that "demonstrate[d] a cavalier disregard of the Rules of Court and [discovery] Order").

This is a particularly appropriate case for such an award because Plaintiffs' counsel have egregiously failed to comply with their obligations under the Federal Rules. They have re-ordered and re-worded discovery requests, asserted boilerplate and frivolous objections, failed to produce

---

[22] For example, Plaintiffs have agreed, subject to numerous boilerplate objections, to produce documents responsive to Requests 4, 7, 8, 9, 20, 29 (mis-numbered as response 31), 31 (mis-numbered as response 32), and 33 (mis-numbered as response 35). Many of Plaintiffs objections are baseless and/or improper. And WFA cannot determine whether Plaintiffs are withholding documents responsive to Request 34, which they have renumbered as Request 36. WFA reserves the right to further contest Plaintiffs' objections to these requests once Plaintiffs complete their document production, provide the required privilege log, and/or clarify whether any documents are being withheld on the basis of their objections.

any of their own documents, and entirely failed to provide responses at all for most of the individuals named as Plaintiffs in one or more complaints, or for most of the nineteen individuals identified as Plaintiffs in their Rule 26 disclosures. To compound these deficiencies, it is impossible in many instances to determine what documents are being withheld by Plaintiffs' counsel—and they have wholly failed to comply with their obligations under the Local Rules to meet and confer with WFA's counsel.

## **CONCLUSION**

For the reasons stated herein, WFA asks that the Court Order Plaintiffs to provide complete and proper responses to WFA's Interrogatories; to produce all unprivileged documents responsive to WFA's Document Requests in Plaintiff's possession, custody, or control so that WFA may obtain complete the discovery to which it is entitled prior to the February 28, 2020 deadline for completing fact discovery; and to provide a full and complete privilege log. WFA further asks that the Court award WFA its costs and attorneys' fees incurred in preparing and prosecuting its motion to compel.

This 3rd day of January 2020.

/s/ Robert W. Fuller
Robert W. Fuller
Adam Doerr
Fitz E. Barringer *(PHV Motion Pending)*

**Robinson, Bradshaw & Hinson, P.A.**
101 N. Tryon St., Ste. 1900
Charlotte, North Carolina 28246
Telephone:    704.377.2536

rfuller@robinsonbradshaw.com
adoerr@robinsonbradshaw.com
fbarringer@robinsonbradshaw.com

Paul Samson

RIEMER & BRAUNSTEIN, LLP
Three Center Plasa, 6th Floor
Boston, MA 02108

(617) 523-9000
pasamson@riemerlaw.com

*Attorneys for Wells Fargo Advisors, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I, Robert W. Fuller, hereby certify that a true and correct copy of the foregoing Memorandum filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that paper copies will be sent by first-class mail to those indicated as non-registered participants, if any, on January 3, 2020.

This 3rd day of January 2020.

/s/ Robert W. Fuller
Robert W. Fuller