## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **IN RE: TELEXFREE SECURITIES LITIGATION** | **MDL No. 4:14-md-2566-TSH** |
| | **(Leave to file granted 2/26/20)** |
| **This Document Relates To:** **ALL CASES** | |

## OMNIBUS REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFFS' MOTIONS TO AMEND AND/OR TO RECONSIDER

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ......................................................................... 2

I.   DEFENDANTS HAVE FAILED TO PRESENT ANY VALID OR FACTUALLY
     ACCURATE REASON TO STRIKE EITHER FILED COMPLAINT ........................... 9

   A.   This Court's September 23, 2019 Scheduling Order Provides
        Sufficient Basis To Support Allowance Of The 5th CAC. ............................ 10

   B.   Plaintiffs' Corrected 5th CAC Was Properly Filed And Only Streamlines
        This Litigation.......................................................................................... 11

II.  PLAINTIFFS' MOTIONS FOR LEAVE TO AMEND AND/OR RECONSIDER
     WERE NOT UNDULY DELAYED AND DO NOT PREJUDICE DEFENDANTS ..... 13

   A.   Defendants' Claims of Undue Delay Are Invalid Because
        Plaintiffs' Amended Pleading And Supporting Motions Were
        Timely Filed Within The Deadline for Amendment...................................... 14

   B.   Defendants Have Not Established Any Delay Sufficient
        To Preclude Amendment. ........................................................................... 16

   C.   Defendants Have Failed To Present Any Cognizable Prejudice From
        Inclusion Of The New Compelling Facts Sufficient To Preclude Amendment. ........... 24

III. THE DISMISSED DEFENDANTS HAVE PRESENTED NO VALID GROUNDS
     TO DENY PARTIAL RECONSIDERATION OF THE MTD ORDERS. ..................... 29

   A.   The Dismissed Defendants Have Not Refuted That Reconsideration Is Merited. ........ 29

   B.   The New Evidence Addresses Each Issue Identified In The MTD Orders. .................. 32

        1.   The 5th CAC's new facts state an overwhelming claim for tortious aiding
             and abetting and/or civil conspiracy against the Dismissed Bank Defendants. ..... 33

        2.   The new facts in the 5th CAC state an overwhelming claim for tortious aiding
             and abetting and civil conspiracy against MLM A Team Defendant PwC............ 37

CONCLUSION................................................................................................... 38

# TABLE OF AUTHORITIES

**Cases**                                                                            **Page(s)**

*Acosta-Mestre v. Hilton Int'l of Puerto Rico, Inc.*, 156 F.3d 49 (1st Cir. 1998) ......................... 26

*Admiral Ins. Co. v. Abshire*, 574 F.3d 267 (5th Cir. 2009) ......................................................... 16

*Adrian v. Mesirow Fin. Structured Settlements, LLC*,
    647 F. Supp. 2d 126 (D.P.R. 2009) .................................................................................. 26, 28

*Cahaly v. Benistar Prop. Exch. Trust Co., Inc.*, 451 Mass. 343 (2008) ....................................... 34

*Carmona v. Toledo*, 215 F.3d 124 (1st Cir. 2000) ................................................................. 17, 20

*CP Sols. PTE, Ltd. v. Gen. Elec. Co.*, 237 F.R.D. 534 (D. Conn. 2006) ............................... 19, 27

*Crawford v. Lexington-Fayette Urban County Gov't*, CV 06-299-JBC,
    2008 WL 11345937 (E.D. Ky. May 28, 2008) ........................................................................ 16

*Daniels v. Loizzo*, 174 F.R.D. 295 (S.D.N.Y. 1997) .................................................................... 17

*Davis v. Lehane*, 89 F. Supp. 2d 142 (D. Mass. 2000) ................................................................ 30

*Douglas v. York County*, 360 F.3d 286 (1st Cir. 2004) ............................................................... 30

*E. Food Services, Inc. v. Pontifical Catholic Univ. Services Ass'n, Inc.*,
    357 F.3d 1 (1st Cir. 2004) ....................................................................................................... 32

*Foman v. Davis*, 371 U.S. 178 (1962) ..................................................................................... 9, 29

*Ford v. Burke*, 529 F. Supp. 373 (N.D. N.Y. 1982) ..................................................................... 31

*Fulghum v. Embarq Corp.*, 07-2602-EFM, 2009 WL 3122500
    (D. Kan. Sept. 24, 2009) ......................................................................................................... 15

*Glassman v. Computervision Corp.*, 90 F.3d 617 (1st Cir.1996) ................................................. 14

*Go-Best Assets, Ltd. v. Citizens Bank of Massachusetts*,
    972 N.E.2d 426, 432-33, 438 (Mass. 2012) ........................................................................... 34

*Greene v. Union Mut. Life Ins. Co. of Am.*, 764 F.2d 19 (1st Cir. 1985) ..................................... 30

*Gregory v. FedEx Ground Package Sys., Inc.*, 2:10CV630,
    2012 WL 2396873 (E.D. Va. May 9, 2012), *report and
    recommendation adopted sub nom. Gregory v. Fedex Ground Packaging Sys. Inc.*,
    2:10CV630, 2012 WL 2396861 (E.D. Va. June 25, 2012) ...................................................... 16

*Hayes v. New England Millwork Distributors, Inc.*, 602 F.2d 15 (1st Cir.1979) ........................ 15

*Higgins v. Town of Concord*, 16-CV-10641-DLC,
  2017 WL 10088366 (D. Mass. May 23, 2017) ......................................................... 28

*Hilbert v. Sun Life Assur. Co. of Canada*, No. CIV-10-214-FHS,
  2011 WL 3111873 (E.D. Okla. July 26, 2011) ......................................................... 10

*In re A123 Sys., Inc. Sec. Litig.*, 930 F. Supp. 2d 278 (D. Mass. 2013) ....................................... 32

*In re Agent Orange Prod. Liab. Litig.*, 597 F. Supp. 740 (E.D.N.Y. 1984),
  *aff'd*, 818 F.2d 145 (2d Cir. 1987) ......................................................... 16

*In re State St. Cases*, CIV. A. 12-11770-NMG, 2013 WL 5508151
  (D. Mass. Aug. 21, 2013), *report and recommendation adopted in part, rejected in part*,
  CIV.A. 12-11770-NMG, 2013 WL 5508349 (D. Mass. Sept. 27, 2013) ............................... 33

*In re Tri-State Water Rights Litig.*, 3:07-MD-01 (PAM/JRK),
  2010 WL 11586590 (M.D. Fla. July 21, 2010) ......................................................... 16

*J.S. McCarthy, Co., Inc. v. Brausse Diecutting & Converting Equip., Inc.*,
  226 F.R.D. 14 (D. Me. 2005) ......................................................... 31

*Kent v. California Dept. of Consumer Affairs*, 2:09-CV-02905 KJM,
  2011 WL 2580382 (E.D. Cal. June 28, 2011), *report and recommendation adopted in part*, CIV-S-09-02905 KJM, 2011 WL 4543087 (E.D. Cal. Sept. 26, 2011)...................... 16

*Klunder v. Brown Univ.*, 778 F.3d 24 (1st Cir. 2015)................................................. 24

*Kolling v. American Power Conversion Corp.*, 347 F.3d 11 (1st Cir. 2003) ................................. 9

*Marie v. Allied Home Mortgage Corp.*, 402 F.3d 1 (1st Cir. 2005) ............................................. 30

*Moore v. U.S./U.S. Dept. of Agriculture Forest Serv.*, 864 F. Supp. 163 (D. Colo. 1994)........... 17

*Moroughan v. County of Suffolk*, 99 F. Supp. 3d 317 (E.D.N.Y. 2015).......................... 15, 22, 27

*North Am. Catholic Educ. Programming Found., Inc. v. Cardinale*,
  567 F.3d 8 (1st Cir. 2009).......................................................................... 31

*Palm Beach Vacation Owners Ass'n, Inc. v. EscapesA, Inc.*,
  CIV.A. 12-00027-KD-B, 2012 WL 2368335 (S.D. Ala. June 21, 2012) ............................... 15

*Palmer v. Champion Mortg.*, 465 F.3d 24 (1st Cir. 2006)............................................ 30

*Premo v. Family Dollar Stores of Mass., Inc.*, 13-11279-TSH,
  2014 WL 1330911 (D. Mass. Mar. 28, 2014)................................................... 25

*Topolski v. Chris Leef Gen. Agency Inc.*, No. 11-2495-JTM-KMH,
2012 WL 3889100 (D. Kan. Sept. 7, 2012) ............................................................... 15

*Torres-Alamo v. Puerto Rico*, 502 F.3d 20 (1st Cir. 2007) ........................................... 29

*U.S. Bank Nat. Ass'n v. James*, 680 F. Supp. 2d 259 (D. Me. 2010) ........................... 28

*U.S. ex rel. Baker v. Cmty. Health Sys., Inc.,* CIV. 05-279 WJ/WDS,
2011 WL 2609851 (D.N.M. May 25, 2011) ...................................................... 27, 31

*United States ex rel. Maritime Admin. v. Cont'l Ill. Nat'l Bank & Trust Co.,*
889 F.2d 1248 (2d Cir.1989) .................................................................................. 27

*Vega v. Contract Cleaning Maint.*, 03 C 9130,
2006 WL 1554383 (N.D. Ill. June 1, 2006) ............................................................ 16

**Other Authorities**

6 Fed. Prac. & Proc. Civ. § 1488 (3d ed.) ...................................................................... 26

**Rules**

Fed. R. Civ. P. 15 .......................................................................................................... 13

Fed. R. Civ. P. 15(a) ..................................................................................................... 16

Fed. R. Civ. P. 59(e) ..................................................................................................... 30

Fed. R. Civ. P. 60 .......................................................................................................... 31

Plaintiffs respectfully submit this omnibus reply memorandum of law in further support of Plaintiffs' Motion to Reconsider and to Amend (Dkt. 783) and Plaintiffs' Motion for Reconsideration of Order of Dismissal or, in the Alternative, to Conduct Jurisdictional Discovery, with respect to Defendant Global Payroll Gateway, Inc. ("GPG") (Dkt. 781) and in response to the oppositions to those Motions submitted by certain Defendants.[1]  Dkt. 835-38, 841, 843.  Plaintiffs request that this Honorable Court permit amendment of the Fourth Consolidated Amended Complaint (the "4th CAC") pursuant to this Court's September 23, 2019 Scheduling Order and Fed. R. Civ. P. 15(a), and to the extent necessary, reconsider the dismissal without express leave to amend (1) with respect to the tortious aiding and abetting and/or conspiracy claims against Defendants BANA, TD Bank, Wells Fargo Bank and PwC pursuant to Fed. R. Civ. P. 12(b)(6), and (2) with respect to Defendant GPG for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), and grant Plaintiffs leave to amend the 4th CAC to plead new facts as to these Defendants as set forth in the proposed Fifth Consolidated Amended Complaint (the "5th CAC") (Dkt. 779, 780, 790).[2]

---

[1] The opposing Defendants consist of two differently situated groups:  those retained in this action and those dismissed as a result of this Court's first-time Federal Rule of Civil Procedure 12(b) review (the "Retained Defendants" and the "Dismissed Defendants," respectively).  The Retained Defendants are ProPay, Inc. ("ProPay"), International Payout Systems, Inc. ("IPS"), Wells Fargo Advisors, LLC ("Wells Fargo Advisors"), and Fidelity Co-Operative Bank and its former President John F. Merrill ("Fidelity Bank").  The Dismissed Defendants are Defendants Bank of America, N.A. ("BANA"), TD Bank, N.A. ("TD Bank"), Wells Fargo Bank, N.A. ("Wells Fargo Bank"), PricewaterhouseCoopers, LLC ("PwC") and GPG.  BANA, Wells Fargo Bank, TD Bank and PwC are the "12(b)(6) Dismissed Defendants."  The foregoing are collectively referred to as "Defendants" or "Opposing Defendants."

[2] Leave to file a reply along with an attached proposed brief separately addressing the substantive jurisdiction-based arguments made by GPG in response to Plaintiffs' Motion to Reconsider Order or, in the Alternative, to Conduct Jurisdictional Discovery (Dkt. 781) is also being requested.

## PRELIMINARY STATEMENT

The TelexFree pyramid scheme (the "Scheme") was a complex white-collar crime that was accomplished via a labyrinth of multifaceted transactions that were carried out through continually changing accounts. The activities at issue included deceptive-by-design money laundering and layering of funds, as well as the syphoning off and transferring-out-of-reach components of that massive financial fraud. Adding to Plaintiffs' already-challenging prosecution, TelexFree's sprawling scheme spanned multiple years, was international in scope, and received sophisticated and effective assistance from its financial service providers (including insiders) and licensed professionals with well over a century of related specialization. TelexFree was entirely dependent on the provision of financial services by banks and pay processors. It is not contested that without such services TelexFree would have collapsed in short order.[3]

As expected, the unraveling of this tangle of objective evidence was detail-oriented and time-consuming. The new facts uncovered and analyzed with the aid of a critical witness – former TelexFree CPA and CFO Joseph Craft - and Plaintiffs' experts who specialize in the complicated inner machinations of banking fraud now plainly establish the culpability of each Dismissed Defendant. Each such Defendant was essential to keeping TelexFree's business

---

[3] *See* Bankr. D. Mass., Case 14-40987, Dkt. 13, ¶¶ 63-64 (TelexFree's Chief Restructuring Advisor's declaration characterizing payment processing services as "absolutely necessary" and "inextricably linked" to TelexFree's normal operations such that "[e]ven a slight delay" in those services "could have a significant and material adverse effect on the Debtors' business"); Ex. 1 ("Bonsignore Dec."), Attachment 8 ("Craft Aff.") ¶ 26 (TelexFree's CFO states that "If TelexFree had been rendered unable to carry out financial transactions by the Banks, Third Party Processors, and ISOs, it would have been forced to shut down…TelexFree would have collapsed within a time period ranging from as soon as a few weeks to no later than a couple of months"); *see also* Response to Comm. Mass. Subpoena by GPG CEO Amirie, April 3, 2014 ("They told us that if we did not allow them to continue to use our credit card processing gateway as an electronic connection to Allied Wallet, their new credit card processor, that they would be forced out of business").

operational with substantial and essential services during the critical time period after the

revelation of TelexFree as a financial fraud in early summer 2013 through its April 2014 demise.

Decisively, the new, objective evidence establishes that

1. Defendants each had actual knowledge of TelexFree's unlawful business model;[4]

2. the services Defendants provided with that actual knowledge were non-routine; and

3. without them TelexFree's financial service-sustained enterprise would have collapsed and shuttered with no ability to capture, syphon, launder and transfer victims' funds.

In filing the Motions and 5th CAC, Plaintiffs timely followed this Court's explicit

September 23, 2019 Order.  Dkt. 756.  The Opposing Defendants present no legally valid reason

to justify denying either the inclusion of the new facts uncovered or a single attempt to replead

the serious, complex and elusive financial fraud claims asserted against the Dismissed

Defendants.[5]  Defendants' primary substantive ground for opposition - delay – holds no merit for

at least three determinative reasons.  First, the facts disprove rather than support the contention

that Plaintiffs delayed in any manner.  Second, even undue delay does not overcome the liberal

allowance of amendment mandate in the absence of cognizable prejudice.  And third, no

prejudice – other than being held accountable for wrongful conduct through litigation – exists

here to defeat amendment.  Plaintiffs seek to have this case decided on its merits in the interests

---

[4] *See* 5th CAC, BANA ¶¶ 1204, 1206, 1208-09, 1211-16, 1218-24, 1226-30, 1232-34, 1236-52, 1259, 1264, 1274-86, 1291, 1298-99, 1302-03; Wells Fargo Bank ¶¶ 1536-38, 1545-56, 1577-86, 1590-95, 1599-1601, 1606, 1609, 1619, 1631, 1636, 1643, 1649, 1656, 1658-60, 1674-75; TD Bank ¶¶ 1307-10, 1315-19, 1321-27, 1329, 1331-33, 1335, 1338-44, 1347-49, 1353-59, 1361-64, 1366-67, 1374, 1376, 1381, 1385-98, 1403, 1408-09, 1417-20, 1429-37, 1445-46, 1448; PWC ¶¶ 35, 357, 531, 613, 645, 654-56, 672(d), 673-75, 724-28, 732-740, 743-45A, 827, 845, 870-79, 881-89, 892-97, 900-04, 907-09, 918, 920 1641-45, 2029.

[5] This Court has noted the difficulties inherent in asserting aiding and abetting claims in a Ponzi/pyramid scheme case, recognizing that there rarely will be direct evidence of actual knowledge. *See* Dkt. 742 at 4.

of justice,[6] while Defendants continue to focus on procedural gamesmanship, misstatements of fact, inapposite or misleading citations of law, and unfounded, pejorative personal attacks.

The Opposing Defendants, while slinging false accusations of misrepresentation at Plaintiffs and their counsel, have presented untrue facts to this Court regarding their involvement with TelexFree and its founders when moving to dismiss the claims against them. Perhaps most egregious, these facts would never have come to light absent Plaintiffs' unwavering pursuit of evidence and enlistment of experts in that effort. As but one example, BANA Counsel, Kenneth I. Schacter, emphasized at oral argument on BANA's motion to dismiss that his client maintained a mere one account for TelexFree and "was out of this by May 2013." *See* Bonsignore Dec., Attachment 6 at 87:16. The factual evidence obtained by Plaintiffs establishes that during TelexFree's multi-year run, BANA maintained over twenty-five accounts for the unlawful enterprise and its related persons and entities, many of which BANA opened in conjunction with or only after closing other accounts for the very fraud it represented to this Court it knew nothing about, including a $40,000 transaction settled on February 3, 2014.[7]

To appreciate the seriousness of the new facts presented in the 5th CAC, this Court need look no further than at the misrepresentations and outright falsities Defendants resorted to in

---

[6] The unlawful conduct driving this litigation is serious and exposes a glaring gap in our justice system. Pyramid schemes remain a burgeoning criminal industry. Despite that approximately 750,000 persons were victim to TelexFree's multibillion-dollar fraud, the U.S. Department of Justice convicted less than a handful of its perpetrators. Moreover, even though thousands of net winners made $250,000-$20 million, the bankruptcy trustee has recovered contextual pennies despite his complete control of claims and the passage of three years. The responsible Opposing Defendant entities must answer for their knowing wrongful conduct. Their victims are entitled to recoup all their economic losses plus interest. The interests of justice require nothing less.

[7] Counsel's representation is contradicted in detail in the 5th CAC. *See, e.g.*, 5th CAC, ¶¶ 1210-11, 1216-17, 1225, 1235, 1255, 1258, 1267-69, 1285, 1294-95, and 1297; *see also* Bonsignore Dec. ¶¶ 41-81 for examples of the material misrepresentations made by Dismissed Defendants at hearings before this Court.

their briefs.  Defendants advance a smear campaign, *again* resorting to half-truths, in an effort to convince this Court that Plaintiffs are responsible for the lengthy stay period (that Defendants themselves supported and/or secured) and have been dilatory in pursuing their claims and amendment.  Both contentions are unsupportable.  As this Court is well-aware, shortly after this MDL's establishment in October 2014, all discovery was stayed in March 2015 and all case-related activities were stayed a year later, prior even to the exchange of Initial Disclosures.  Dkt. 1, 111, 414.  Those stays were not lifted until January 29, 2019.  Dkt. 606.

The preparation, drafting and vetting of the 5th CAC in this sprawling, complex financial fraud was a non-stop, Herculean challenge.  Plaintiffs were also required to go beyond adding objective evidence to the 5th CAC supporting their claims and disproving the Opposing Defendants' prior positions.  Plaintiffs simultaneously worked with evidence that supported the addition of nineteen new defendants.  They also reviewed and evaluated evidence regarding over fifty other potentially liable parties, who ultimately were not named.  To suggest that Plaintiffs' Counsel unduly delayed for some undefined strategic reason ignores

- their fending off of multiple dispositive motions (Dkt. 714, 742-43, 753);

- the detailed factual content and application of fact to law in the 5th CAC;

- the entry into settlement agreements, as well as the ongoing additional negotiations and other efforts to enter into many others;

- Plaintiffs' preparation and filing of a Motion for Preliminary Approval of multiple class action settlements;

- the gathering and cementing of vital evidence (*see, e.g.*, Bonsignore Dec., Attachment 8 (Craft Aff.);

- the timely meeting of this Court's deadline to serve Requests for Production of Documents and Interrogatories *within seven days* of meeting the filing deadline for the 5th CAC and prior to the receipt of Initial Disclosures from many Defendants (service was made on each current and anticipated defendant);

- the timely meeting of this Court's deadline to serve Requests for Admission before receiving Requests for Production of Documents or Interrogatories from any Defendants and Initial Disclosures from many Defendants; and

- the timely meeting of this Court's deadline to submit trial experts (*see, e.g.*, Dkt. 869 (Prof. McCoy Reports on Dismissed Defendants BANA, TD Bank and Wells Fargo Bank (Bonsignore Dec., Attachments 9-11)).

All efforts were critical to the orderly progression of this litigation, including, but not limited to, ensuring Plaintiffs presented the factually and legally supported complaint they described during the March 20, 2019 status conference that would not waste this Court's time and resources - particularly given the prior dismissal orders. *See* Dkt. 715 ("Tr.") at 10:13-20. In the short interval between the March 2019 scheduling conference and the November 29, 2019 deadline, Plaintiffs aggressively reviewed, analyzed and gathered new evidence and consulted with their experts who identified and appreciated the nuances and significance of single entries in voluminous images of raw data. Plaintiffs also encountered, and still encounter, unexpected difficulties in obtaining evidence from a vital cooperating witness. [8]

Defendants' baseless representations that Plaintiffs' Counsel intentionally mislead this Court at that March 20, 2019 scheduling conference regarding their discovery efforts and the timing of amendment is easily dismantled. In stark contrast to the snippets advanced by Defendants, the transcript reveals that Plaintiffs' Counsel accurately described what would happen, when and why. Plaintiffs' Counsel stated that despite his express desire to file, the actual filing date was primarily dependent upon factors outside of Plaintiffs' control, *to wit*:

> we're not going to file a motion to amend the complaint until our expert is through looking at the evidence and until we have gone through the evidence that we have *and will receive* in the very near future through cooperating witnesses . . .

---

[8] While substantial critical evidence has been received from TelexFree's former CFO and CPA Joseph Craft and was included in the 5th CAC, the evidence gathering process is not complete.

Tr. at 10:6-10 (emphasis added).  The aid of Plaintiffs' expert was necessary to identify the actionable transactions and to ensure accuracy and viability.

Importantly, Lead Counsel further made explicit Plaintiffs' preference to avoid piecemeal amendments, that would predictably be subject to attack like the disingenuous claims of excessive amendment now mounted by Defendants, and directly requested the Court to advise if it would prefer the alternative piecemeal approach.[9]  Plaintiffs followed the most direct route to the filing of a comprehensive amended complaint as the difficult circumstances allowed.

Another component that Lead Counsel made explicit at that hearing as factoring into the timing of the comprehensive filing was Plaintiffs' significantly delayed receipt from bankruptcy Trustee Darr of the so-called Rule 2004 documents he received in 2015 from Defendants.  This Court had partially lifted the stay in May 2017 to allow Plaintiffs to serve a subpoena upon the Trustee to obtain those documents.  At the March 2019 hearing Lead Counsel expressly stated that although they had received certain documents in 2017, "[b]asically we got everything *but what we wanted* from the trustee."  Tr. at 9:16-17 (emphasis added).  Plaintiffs did not receive documents relating specifically to the 12(b)(6) Dismissed Defendants from the Trustee because the very Defendants now crying out delay blocked their production from 2017 until mid-October 2019 with a legally baseless motion to quash.[10]  This had the effect of voiding the order allowing

---

[9] *See* Tr. at 10:12-20 ("If we have to keep filing amended complaints every time we get new evidence, it will be endless. If we file one defendant at a time, the court will have its time wasted. So if the court would prefer a different approach, then we're here to serve your pleasure. But our preference is to do a thorough job with the evidence that we have and with the evidence that we're receiving in the near future, have the expert put together supporting affidavits and then amend the complaint in one fell swoop.").

[10] Although Plaintiffs received the Rule 2004 materials produced by GPG, they consisted of a mere twelve documents.

service of the Trustee subpoena and blocking access to documents that related to their deeply rooted and long-running involvement in TelexFree's unlawful enterprise.

The fact that the Retained Defendants have nothing to gain by opposing leave to amend cannot escape observation.  Contrary to their repeated misrepresentations, the 5th CAC makes no changes to the substantive allegations asserted against them in prior complaints.[11]  Moreover, each Retained Defendant has already lost its bid to secure a preliminary dismissal of the claims for their tortious aiding and abetting of the TelexFree Scheme.  ProPay, Fidelity Bank and Merrill even filed – and lost –motions seeking reconsideration of those dismissals.  *See* Dkt. 654, 718 (ProPay); Dkt. 657, 753 (Fidelity Bank and John Merrill).

Retained Defendant Wells Fargo Advisors seeks to resist the addition of a conspiracy claim and new allegations regarding the factually uncontestable overlap between it and Wells Fargo Bank.  It has not demonstrated any grounds to preclude those amendments.  As this Court has recognized, the elements of civil conspiracy overlap extensively with the tortious aiding and abetting claims already found to have been sufficiently pled against it.  *See* Dkt. 743; 597 at 7-8. The fact that same lawyer represents both Wells Fargo entities with no conflict - despite a certain conflict if the argument advanced in their opposition is accepted - is worth noting.  Also, the addition of allegations containing the new facts discovered about those entities' overlap does not change the liability of Wells Fargo Advisors because joint and several liability was included in the 4th CAC against it.

---

[11] *See* Bonsignore Dec., Attachment 5 (comparison of 4th CAC and 5th CAC).  Of note, the 4th CAC similarly did not alter the substantive allegations against IPS, ProPay, Fidelity Bank or Merrill from the 2nd CAC.  Also, a comparison of the 5th CAC and the Corrected 5th CAC is attached to the Bonsignore Dec. as Attachment 4 and demonstrates a lack of substantive difference relating to any Retained Defendant.  If anything, more evidence has been added.

The liberal allowance of amendment mandate and broad discretionary power to reconsider interlocutory orders eviscerates Defendants' manufactured charges of delay and prejudice.  Plaintiffs' Motions should be allowed.

## I.   DEFENDANTS HAVE FAILED TO PRESENT ANY VALID OR FACTUALLY ACCURATE REASON TO STRIKE EITHER FILED COMPLAINT

The Supreme Court's mandate that cases should be decided on their merits is well-established.  *See Foman v. Davis*, 371 U.S. 178, 182 (1962).  To adhere to that mandate and this Court's prior orders on dismissal (the "MTD Orders"), Plaintiffs put in great effort to present this Court with newly discovered evidence that remedies each deficiency identified in those orders as to the Dismissed Defendants and to advance viable claims against previously unnamed parties. Each alternative approach to the submission of the 5th CAC was evaluated and thoughtfully analyzed by a double-digit committee of highly qualified, well-respected attorneys with extensive class action litigation experience.  Defendants' twisting of those efforts through half-truths, compounded with disingenuous charges that Plaintiffs engaged in "inexplicable" actions, which Plaintiffs have previously more than described for this Court (and Defendants, *see* Dkt. 813, 822), tests the bounds of good faith advocacy.  That unsavory tactic infects Defendants' entire presentation and reduces it to what it is - a smear campaign that lacks any valid factual or legal ground.  Each of Plaintiffs' filings were proper and provide sufficient bases for this Court to effectuate the 5th CAC as the operative complaint in this MDL.[12]

---

[12] Plaintiffs acknowledge the previous dismissal of Count III (Statutory Aiding and Abetting) and Count IV (Unjust Enrichment) asserted against Defendants in prior complaints as a matter of law.  As explained in a prior filing (Dkt. 824), they were included in the 5th CAC in an abundance of caution due to a lack of a direct First Circuit opinion on point to avoid any future objection that Plaintiffs waived appeal rights as to those dismissals by filing a superseding pleading omitting them.  *See Kolling v. American Power Conversion Corp.*, 347 F.3d 11, 17 n.10 (1st Cir. 2003) (noting disagreement on and difficulty of waiver issue).

### A.     This Court's September 23, 2019 Scheduling Order Provides Sufficient Basis To Support Allowance Of The 5th CAC.

The explicit language of the Court's Scheduling Order provided that "Amended Pleadings [were] due by November 29, 2019." Dkt. 756.  It was silent as to any need for a supportive motion.  Authority exists holding that the entry of a scheduling order setting a deadline for amended pleadings, rather than for motions to amend, suffices to grant leave.  *See Hilbert v. Sun Life Assur. Co. of Canada*, No. CIV-10-214-FHS, 2011 WL 3111873, at *3 (E.D. Okla. July 26, 2011) (accepting defendant's filing of amended answer after motion to dismiss denied without obtaining leave because by entering scheduling order court in essence gave defendant leave of court to file answer out of time).

Plaintiffs' filing of the 5th CAC into the docket complied with the Scheduling Order, and, therefore, provides sufficient grounds for this Court to allow that complaint to become operative. Given the Scheduling Order's silence on motions,[13] Plaintiffs' direct filing of a related motion should be taken for what it was - a filing carried out in an abundance of caution intended to ensure compliance with that Order.  The fact that Plaintiffs also filed and served concurrent motions for leave to amend/reconsider with their amended pleading attached further establishes Plaintiffs' good faith effort to comply with all this Court's orders when directly filing, and not to circumvent or violate them as Defendants argue.[14]

---

[13] In their Joint Submission prior to that scheduling conference, Plaintiffs requested that a deadline be set for the filing of *motions* to amend.  Dkt. 668, Ex. 1.  Defendants did not include any proposal for amendments in their proposed scheduling order.  Dkt. 668, Ex. 2.  The resultant Scheduling Order did not include that language or address such motions.

[14] ProPay's assertion that Plaintiffs have not provided any explanation for their November 29, 2019 filing, as well as their filing of a corrected version, is incorrect.  As ProPay is aware from Plaintiffs' Opposition to ProPay's motion to strike (Dkt. 822), Plaintiffs have repeatedly supported in several filings since the November filing, the timeliness of their filings and the reasons for the procedures utilized.

The Dismissed Defendants' citation to a cherry-picked portion of the transcript from a hearing held in November 2015 to argue that this Court has definitively held a motion was necessary here is unavailing because of the subsequent September 2019 Order on point. *See* Dkt. 838 ("DD Br.") at 5-6. Defendants willfully ignore that the Scheduling Order was issued as a result of a different scheduling conference held over three years later in March 2019 at which amendment was discussed and entered into the electronic clerk's notes (Dkt. 687) and that the subsequent order stated only that "Amended Pleadings" were due on November 29, 2019. Similarly, the Dismissed Defendants' argument that MDL Case Management Order No. 4 supports the presence of a non-existent standing rule that required a motion here is incorrect. That CMO, which directed the filing of the 2nd CAC, did not itself require a motion prior to Plaintiffs' filing of that pleading. Dkt. 110.

### B.   Plaintiffs' Corrected 5th CAC Was Properly Filed And Only Streamlines This Litigation.

Plaintiffs filed the corrected 5th CAC as the method directed by this Court's clerk's office. Dkt. 790 (the "Corrected 5th CAC"); Bonsignore Dec. ¶ 17. The corrected pleading was filed as soon as practicable after the original filing on November 29, 2019. In context, that certain details warranting the corrected filing did not get picked up in an over 400-page fact-filled complaint is not unreasonable. The ink on the First Circuit decision which drove many revisions was not yet dry; multiple counsel and staff were involved in drafting and assembling the document; and it was filed the day after Thanksgiving. Rather than simply leave the other version on file and invite motion practice, Plaintiffs acted to preserve resources. The result of the corrected filing is that the litigation is streamlined, and potential future objections to the initial 5th CAC have been eliminated. Plaintiffs followed the instructions given to them by the clerk as to the action to be taken and even carried over the original numbers from the 5th CAC to

11

the corrected pleading for ease of reference.[15]  While Plaintiffs stand prepared to continue this

litigation under the original 5th CAC, that course of action invites additional motion practice.

    While no good cause exists to preclude or strike the corrected filing, ample cause exists

for this Court to admonish Defendants because *again* their oppositions contain extensive

misrepresentations, this time as to the adjustments made in that pleading from the original 5th

CAC. [16]  The fact is that the corrected version – filed days after the original's filing– does not

prejudice a single Opposing Defendant and streamlines this action.

    Rather than add to the litigation, the Corrected 5th CAC *removes twelve named*

*defendants*.  They were removed in light of (1) this Court's prior dismissal orders regarding

Defendants Richard Waak and Ann Genet, which Plaintiffs do not intend to appeal, (2)

bankruptcy filings by Defendants Opt 3 and Jason Borromei, and (3) the recent ruling by the

First Circuit affirming this Court's grant of summary judgment conferring upon the bankruptcy

Trustee for the TelexFree estate exclusive standing to pursue claims against the net winner

promoters of the TelexFree Scheme, six of whom were named in the complaint.  *See* Case No.

18-2001, Judgment (1st Cir. Oct. 29, 2019).  The Corrected 5th CAC also removes the dismissed

professional negligence claim, which Plaintiffs do not intend to appeal.  The Corrected 5th CAC

does not alter the nineteen new Defendants named in the original 5th CAC, seventeen of whom

are individuals employed by or principals of six already-named entities.  The 5th CAC

represented Plaintiffs' first attempt to adjust the named representatives of the putative class to

---

[15] The retention of that numbering undercuts ProPay's protestations of confusion as to which complaint is being referenced in Plaintiffs' brief, as it is a distinction without meaningful impact.

[16] As two examples, while Defendants represent that the "Corrected" complaint added a "slew" of parties, it actually deleted twelve Defendants and substituted in a mere two named plaintiffs to replace two deleted ones. Defendants also falsely represent that the corrected complaint adds in nineteen new defendants and asserts new claims for civil conspiracy against certain Defendants. DD Br. at 10; *see* Bonsignore Dec., Attachment 4 (redlined comparison of versions).

reflect the First Circuit's newly minted ruling upon the net winner standing issue.  For example, Plaintiff Igor Shikman was named as a putative class representative as he was instrumental in securing the $8 million dollar class wide attachment on then-Defendant Daniel Shoyfer.

Plaintiffs' approach to the corrected complaint has already streamlined this litigation. The following Defendants have all waived its service:  Attorney Defendants Jeffrey Babener and Babener and Associates and Operational Defendants The Sheffield Group, Inc.; Debbie (Debra) Stenmoe; Davene Peruzzini; Garvin L. DeShazer; Kenneth Lind and Michael L. Sheffield (Dkt. 847).  Dkt. 817-18; 845-50.  Defendant Katia Wanzeler has already answered it.  Dkt. 812. Thus, the appropriateness of the Corrected 5th CAC's filing is underscored by those Defendants who have chosen, and those who will chose, to focus upon moving this case forward, rather than engaging in needless and baseless motion practice.

## II.   PLAINTIFFS' MOTIONS FOR LEAVE TO AMEND AND/OR RECONSIDER WERE NOT UNDULY DELAYED AND DO NOT PREJUDICE DEFENDANTS

Defendants do not dispute that Federal Rule of Civil Procedure 15(a) instructs courts to "freely" grant leave to amend a complaint "when justice so requires."  Fed. R. Civ. P. 15.  With no true recourse available to avoid answering for the wrongful conduct revealed in the new facts uncovered, Defendants resort to distorting this case's history and mudslinging at Plaintiffs' Counsel. [17]  Those tactics are unavailing.  Defendants have identified no valid reason to deny Plaintiffs leave to amend.

---

[17] Even on the first page of their brief, the Dismissed Defendants make multiple false assertions, charging that Plaintiffs "misleadingly label a 'Fifth Consolidated Amended Complaint.'"  *See* DD Br. at 1.  As all parties are aware, the prior operative complaint filed was the 4th CAC.  Any other label for the next complaint would have been rejected by this Court and attacked by Defendants.  Also, both the Dismissed Defendants and Wells Fargo Advisors state that the Corrected 5th CAC includes a new claim for conspiracy against certain of them, as well as numerous new parties and adds new claims.  That statement is similarly incorrect.  *See*

Defendants' primary arguments against allowance of amendment are that Plaintiffs have

not been diligent in pursuing the new determinative evidence or in seeking amendment to include

them and that Defendants are "severely" prejudiced as a result.[18]  Piggybacking upon their

baseless disparagement of Plaintiffs' Counsel for directly filing the 5th CAC, Defendants further

assert that this Court should refuse amendment as punishment against Plaintiffs.  They ignore

that Defendants themselves manufactured the delays asserted or they resulted from court-ordered

stays and that, even if they are correct, Plaintiffs acted as a whole in good faith.  Defendants have

failed to present a valid basis to eradicate the Supreme Court policy-mandated liberal allowance

of amendment under Rule 15(a).  *See Glassman v. Computervision Corp.*, 90 F.3d 617, 622 (1st

Cir.1996) ("Unless there appears to be an adequate reason for the denial of leave to amend (e.g.,

undue delay, bad faith, dilatory motive, futility of amendment, prejudice), [the First Circuit] will

not affirm it.").

A.     **Defendants' Claims of Undue Delay Are Invalid Because Plaintiffs' Amended Pleading And Supporting Motions Were Timely Filed Within The Deadline for Amendment.**

Defendants' efforts to cast Plaintiffs' filings as untimely should be dismissed out of hand

because they were filed within the deadline for amendment set by this Court in its controlling

September 23, 2019 Scheduling Order.  *See* Dkt. 756.  Cases routinely have found motions

seeking leave to amend made within a scheduling order deadline to be sufficient to overcome

opposing claims of delay.  *See Topolski v. Chris Leef Gen. Agency Inc.*, 11-2495-JTM-KMH,

---

Bonsignore Dec., Attachment 4 (redlined complaint).  The claims (as opposed to the non-binding captions) against them are identical in both the 5th CAC and its corrected version.

[18] The Dismissed Defendants rely upon these same arguments in attempting to convince this Court to withhold the exercise of its indisputably broad discretion to reconsider its dismissal without leave to replead.  DD Br. at 21.  The reasons that establish their baselessness as grounds to preclude amendment apply equally to merit reconsideration and reversal.

14

2012 WL 3889100, at *2 (D. Kan. Sept. 7, 2012) ("Plaintiff's motion for leave to amend was filed within the scheduling order deadline and is therefore timely filed."); *Fulghum v. Embarq Corp.*, 07-2602-EFM, 2009 WL 3122500, at *3 (D. Kan. Sept. 24, 2009) (rejecting defendants' claim of prejudice where amendment of second amended class action complaint to increase class representatives list made within scheduling order deadline even after summary judgment motion filed); *Palm Beach Vacation Owners Ass'n, Inc. v. EscapesA, Inc.*, CIV.A. 12-00027-KD-B, 2012 WL 2368335, at *5 (S.D. Ala. June 21, 2012) (amendment allowed where plaintiffs sought to amend complaint four times and request for leave filed within scheduling order deadline); *Moroughan v. County of Suffolk*, 99 F. Supp. 3d 317, 324 (E.D.N.Y. 2015) (amendment allowed two years after deadline passed).  For that reason alone, Defendants' accusations of bad faith delay – which are false as demonstrated below – are unfounded.  Plaintiffs' filings are timely.[19]

Defendants also ignore that the electronic clerk's notes from the March 20, 2019 scheduling conference establish that the "[f]iling of a 5th Amended Complaint" was discussed and that the Court took "scheduling order deadlines under advisement" at that time.  Dkt. 687. Thus, the issue of the deadline for Plaintiffs' amended complaint was (1) taken under consideration by the Court, (2) determined in the September 23, 2019 Scheduling Order, and (3) set for November 29, 2019.

Finally, the fact that this case is a class action and also a multi-district proceeding – whose administration was impacted by the progress, or lack thereof, of related outside criminal

---

[19] Defendants rely upon consistently inapposite cases to support their argument.  For example, ProPay relies upon *Hayes v. New England Millwork Distributors, Inc.*, 602 F.2d 15 (1st Cir.1979).  Dkt. 805 ("ProPay Br.") at 5.  However, the *Hayes* court found delay considerable, and the prejudice to the opposing party "not insignificant."  *Id.* at 20.  The court also referred to the fact that discovery had already been completed and that the amended charge was "not contemplated by the original complaint."  *Id.*

and bankruptcy cases – weighs heavily in favor of amendment timeliness.  In multi-district and

other complex litigation, like the present sprawling financial fraud case, it is common for the

complaint to be amended throughout the course of such proceedings and well beyond five

times.[20]  And Rule 15(a) does not prescribe any time limit within which a party may apply to the

court for leave to amend.  Fed. R. Civ. P. 15(a).

> **B.**     **Defendants Have Not Established Any Delay Sufficient To Preclude Amendment.**

Defendants seek to prevent inclusion of the new facts by casting Plaintiffs as unduly

dilatory in not presenting the amended complaint prior to the Scheduling Order's deadline for

amendment.  There is no merit in law or fact to Defendants' argument that Plaintiffs were

required to act sooner.

As the First Circuit has held, delay that is neither intended to harass nor causes any

ascertainable prejudice is not a permissible reason, in and of itself, to disallow amendment of a

pleading.  *See Carmona v. Toledo*, 215 F.3d 124 (1st Cir. 2000); *see also Moore v. U.S./U.S.*

*Dept. of Agriculture Forest Serv.*, 864 F. Supp. 163, 166 (D. Colo. 1994) (amendment allowed

even with wholly inadequate reasons for delay absent prejudice).  Defendants do not contend that

---

[20] *See, e.g.*, *Kent v. California Dept. of Consumer Affairs*, 2:09-CV-02905 KJM, 2011 WL 2580382 (E.D. Cal. June 28, 2011), *report and recommendation adopted in part*, CIV-S-09-02905 KJM, 2011 WL 4543087 (E.D. Cal. Sept. 26, 2011) (leave granted to file **tenth** amended complaint after Rule 12(b)(6) dismissal); *Crawford v. Lexington-Fayette Urban County Gov't*, CV 06-299-JBC, 2008 WL 11345937 (E.D. Ky. May 28, 2008) (class action with **tenth** amended complaint); *In re Tri-State Water Rights Litig.*, 3:07-MD-01 (PAM/JRK), 2010 WL 11586590 (M.D. Fla. July 21, 2010) (MDL with **seventh** amended complaint); *Vega v. Contract Cleaning Maint.*, 03 C 9130, 2006 WL 1554383 (N.D. Ill. June 1, 2006) (putative class action with **seventh** amended complaint); *Gregory v. FedEx Ground Package Sys., Inc.*, 2:10CV630, 2012 WL 2396873 (E.D. Va. May 9, 2012) (**seventh** MDL amendment allowed); *In re Agent Orange Prod. Liab. Litig.*, 597 F. Supp. 740 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987) (**eighth** amended MDL complaint); *Admiral Ins. Co. v. Abshire*, 574 F.3d 267 (5th Cir.) (class action with **ninth** amended complaint), *cert. denied*, 558 U.S. 1050 (2009).

Plaintiffs delayed filing a motion to amend to harass them.  Similarly, as detailed below, there is

no cognizable prejudice claimed by Defendants that could bar amendment.  Decisively, even if

Plaintiffs are found to be responsible for any delay in their ability to seek amendment – which

the below facts make plain is not the case – allowance of amendment is nevertheless proper in

the interests of justice.  *See Daniels v. Loizzo*, 174 F.R.D. 295, 298 n.1 (S.D.N.Y. 1997) ("the

mere fact that [the plaintiff] could have moved at an earlier time to amend does not by itself

constitute an adequate basis for denying leave to amend").

That this case has not been in active litigation despite the passage of five years is

unfortunate, more so for Plaintiffs than any other party.  Yet that delay is not attributable to any

dilatory conduct on Plaintiffs' behalf, but rather to the imposed stays, roadblocks erected by

Defendants, and case management orders that took into account direct requests of the DOJ.  *See,*

*e.g.*, Dkt. 414.  Defendants' factual gymnastics are inadequate to establish undue delay by

Plaintiffs.  The following three examples highlight Defendants' serial mischaracterizations:

> ProPay asserts:
> - "*Plaintiffs* have allowed to elapse . . .  more than five years after the Judicial
>   Panel on Multidistrict Litigation transferred this MDL to the Court" and "two-
>   and-a-half years" since filing the 4th CAC before seeking amendment.  ProPay
>   Br. at 5 (emphasis added).
>
> Facts:
> - A discovery stay was in place in this case from March 10, 2015 until
>   January 29, 2019.  Dkt. 111, 606.
> - All action was stayed from March 3, 2016 until January 29, 2019.  Dkt. 414.
> - The MTD Orders were issued on or about January 29, 2019.  Dkt. 594-603,
>   611.
> - The 4th CAC was filed to avoid potential statute of limitations issues and did
>   not change any substantive allegation against any Defendant due to the
>   pending motions to dismiss filed in or about June 2015.  Dkt. 473.

The distortion in those representations is plain:  they falsely blame Plaintiffs for the extended

period lacking in case progression which was in fact due to court-ordered stays.  They further

miscast Plaintiffs as neglectful in not seeking to amend and replead their claims, prior to any determination that such claims were inadequately pled, while motions to dismiss were pending, and when Plaintiffs were expressly advised not to take any action.  *See* Dkt. 414.

Dismissed Defendants and Wells Fargo Advisors assert:
- "Plaintiffs have never issued a summons" for the 4th CAC.  DD Br. at 10 n.5; Dkt. 835 ("Wells Fargo Advisors Br.") at 7.

Facts:
- The Court order allowing filing of the 4th CAC explicitly directed that summonses shall not be issued.  Dkt. 495 (stay modified "solely to permit" filing of 4th CAC and ordering Plaintiff "shall serve no pleadings and take no other action").
- Plaintiffs explicitly highlighted to the Court at the March 20, 2019 hearing that summonses had not been issued and requested their issuance.  Tr. at p.8, ll.4-6.
- That proceeding's electronic notes indicate the issue was discussed.  Dkt. 687.
- Thereafter, Plaintiffs called the Court and requested the summonses be issued and were advised the Court had not yet issued an order.  Bonsignore Dec., ¶¶ 154-57.

Even as Defendants cast aspersions at Plaintiffs' Counsel for purportedly not doing its job of issuing summonses, they apparently have not become aware that the Administrative Procedures for Case Management/Electronic Case Files for the District of Massachusetts state that the clerk of court, not Plaintiffs, must issue a summons for an electronically filed case.[21]  Plaintiffs have repeated their request for the issuance of summons, and in anticipation of the recently canceled status conference, they filed a request in furtherance of that effort.  Dkt. 853.

Dismissed Defendants assert:
- "It also appears that Plaintiffs obtained TelexFree's files and other documents from the Bankruptcy Trustee as early as 2017. Plaintiffs make no showing here that the purportedly 'new' evidence is not cumulative of evidence they have had since early 2019, and apparently for years longer."  DD Br. at 18.

Facts:
- Plaintiffs filed a motion to allow them to serve a subpoena upon the Trustee to obtain the Rule 2004 materials on October 26, 2015.  Dkt. 310.
- Defendants filed motions to quash the court-authorized subpoena for the Rule 2004 materials relating to them specifically.  Dkt. 507, 509.
- Their motions were denied on September 23, 2019.  Dkt. 752.

---

[21] *See* http://www.mad.uscourts.gov/caseinfo/pdf/ECFadminProc.pdf at p.7 F.2.

- The Rule 2004 materials relating to each of them were not received by Plaintiffs until October 15, 2019.  Bonsignore Dec. ¶ 131

Although this Court lifted the discovery stay on January 29, 2019, Plaintiffs did not receive until October 15, 2019 documents to which they were properly entitled and had indisputably been attempting to obtain since 2015.  Plaintiffs also informed this Court at the March 2019 hearing that although they had received documents from the Trustee in 2017, "[b]asically we got everything *but what we wanted* from the trustee."  Tr. at 9:16-17 (emphasis added).  It is also significant that Plaintiffs only received Defendant-specific documents approximately 45 days before the amended pleading was due.  On that date, Plaintiffs received 98,426 new and additional pages of documents plus additional excel sheets.  If Defendants were so concerned with moving the case along and avoiding delay, they were free at any time to withdraw their objection and enable the Trustee's immediate production.  "A party that seeks discovery expeditiously is not obligated to take heroic measures to enforce his rights against a recalcitrant opponent." *Carmona*, 215 F.3d at 135 (1st Cir. 2000) (internal quote omitted).

Defendants' contention that Plaintiffs are required to demonstrate that the information received in 2019 was not entirely cumulative of the information received in 2017 is preposterous.[22]  Defendants feigned ignorance of the obvious point that Plaintiffs are not fortune tellers and could not predict the contents of those documents or any materials obtained (including Initial Disclosures) until they were actually received and reviewed does not obviate Plaintiffs' duty to review them and submit sufficiently supported and pled claims. Similarly, preposterous is

---

[22] Also, even if Plaintiffs possessed certain information previously, that is insufficient to establish a credible claim that Plaintiffs unreasonably delayed in seeking amendment.  *See CP Sols. PTE, Ltd. v. General Elec. Co.*, 237 F.R.D. 534, 537 (D. Conn. 2006) (rejecting claim that second amendment should be denied for undue delay, which was admittedly significant, because plaintiff "must have had . . . all of the information necessary to propose amendment when it filed its first amended complaint").

Defendants' apparent, yet unsupportable, belief that Plaintiffs are required to prepare a list containing each fact, the dates on which each document containing a fact was received and reviewed by a document reviewer, passed on to counsel and thereafter analyzed by merits counsel.  That plainly is not required.

Nevertheless, as to documents received from the Trustee before October 2019, most of it was data bits involving promoter transactions and complaints.  As to any relevant information obtained, considerable time was required to review, analyze and assemble the information and documents received.  Expert consultation and the input of TelexFree CFO Joseph Craft was required to identify, appreciate, consider, and place the evidence into context.

Negotiations with cooperating witnesses were time consuming, and further hampered Plaintiffs' efforts.  For instance, Joseph Craft agreed to cooperate with Plaintiffs by providing evidence to support their claims. [23]  On February 16, 2019, Plaintiffs' Counsel and Counsel for Joseph Craft executed a Confidentiality Agreement.  However, the Confidentiality Agreement mandated that Plaintiffs were precluded from admitting any document or information provided by Craft until the parties reached and executed a final settlement agreement.  Over the next several months, Counsel worked to structure a mutually agreeable final settlement agreement which accurately reflected the obligations of both parties.  This, however, was delayed by Craft's insurer, who insisted on reviewing and approving the terms.

---

[23] Defendants similar accusation that Plaintiffs lied about the timing of their receipt of information from Craft is wrong.  *See* DD Br. at 18.  Contrary to the Dismissed Defendants' contention that Plaintiffs' Counsel has been working with Craft since 2014, as detailed in the attached Bonsignore Declaration, counsel met in late 2015to discuss settlement.  Plaintiffs' Counsel was not authorized to copy the bulk of the limited documents reviewed and was only permitted to take a handful randomly copied during the interview.  Discussions sporadically continued into spring 2016 but collapsed.  In fall 2018, settlement discussions resumed.

Yet even throughout this time, Plaintiffs continued to secure from Craft information essential to the prosecution of their case.  As an offer of good faith, and until the parties executed a final settlement agreement, Craft did agree to provide limited information.  Specifically, on March 29, 2019, Craft provided an initial affidavit focusing primarily on Wells Fargo Bank, Wells Fargo Advisors and Cardenas, their interrelationship, and knowledge of and involvement in the TelexFree Scheme.  He further provided information regarding the involvement of Garvey Schubert, PwC, Babener and their members, in the TelexFree Scheme; and in particular how they worked in concert to establish oversees entities for TelexFree for the purpose of transferring victims' funds oversees and out of the reach of U.S. authorities. Plaintiffs were ultimately able to execute a Settlement Agreement with Craft on September 27, 2019.  Since that time, Plaintiffs' Counsel has been working diligently to obtain information relative to the TelexFree Scheme from Craft. However, this process has been complicated by various delays, including Craft's hospitalization, his father's death and scheduling conflicts.  Notwithstanding, Plaintiffs' Counsel have invested an extensive amount of time and conducted numerous interviews of Craft and his counsel.  During these interviews, Plaintiffs' Counsel undertook the painstaking process of gleaning from Mr. Craft information against each individual Defendant, including the Opposing Defendants.  As this Honorable Court is aware, this action arises from a massive financial fraud that occurred many years ago.  The related work requires the review and analysis of thousands of detail packed documents.  It involved numerous hours of discussions with Craft and review of an immense amount of information including statements, emails, correspondence and contracts to discover the context and relevance of the each.

Defendants' related accusation that Plaintiffs' Counsel misrepresented at the March 2019 conference the state of their efforts in investigating claims and obtaining facts and intentions as

to amendment relies upon misleading partial citations.  The following full transcript text

establishes BANA and Wells Fargo Defendants' assertions as false and misleading:

> we're not going to file a motion to amend the complaint until our expert is through
> looking at the evidence and until we have gone through the evidence that we have
> and will receive in the very near future through cooperating witnesses.
>
> And the reason for that is, it would waste the court's time. If we have to keep
> filing amended complaints every time we get new evidence, it will be endless. . . .
> our preference is to do a thorough job with the evidence that we have and with the
> evidence that we're receiving in the near future, have the expert put together
> supporting affidavits and then amend the complaint in one fell swoop.

Tr. at 10:6-20.

> I can't give you a realistic [time frame] ***because it's not up to me***. It's up to how
> fast we get the discovery from the defendants that have settled or are settling, and
> it's also up to the expert, which is an independent person who's professional and
> has other commitments, but I wouldn't think it would be six months into this. That
> would be ridiculous. Would it be a month? No. That's also just as ridiculous. So
> somewhere between the two of them.

Tr. at 11:5-12.  Defendants' attempt to use Plaintiffs' Counsels' statements at that hearing

against them ignored the truth of what was said.  It also again underscores the Defendants'

efforts are focused on gamesmanship and mudslinging, rather than the merits.

Plaintiffs' Counsel has diligently and aggressively mined electronic images as they have

come in, simultaneously worked to obtain evidence through settlement and otherwise worked

with witnesses to identify and pursue sources of information.  *See, e.g.*, *Moroughan*, 99 F. Supp.

3d at 324 (nine-month period for further investigation after initial awareness of unknown facts

reasonable before amendment).  In addition, Plaintiffs' full investigation of the additional facts

against the Dismissed Defendants under the standards set by this Court in its MTD Orders was

required to satisfy Plaintiffs' due diligence duties before bringing them back into this MDL.

That required the assistance of financial and banking experts who scrutinized the facts as they

continued to develop after the March 2019 hearing.  Those experts enabled Plaintiffs to

understand the complex regulatory duties imposed upon the financial service providers, particularly with respect to the non-routineness of the activities they performed and the reasonableness of the inferences to be drawn from the Dismissed Banks' actions.[24]  In the end, the reports prepared by Plaintiffs' primary expert, Dr. Patricia McCoy, were generated with impressive speed given the volume of information identified, processed and reviewed, and those reports provided the basis for the inclusion of many of the factual allegations in the 5th CAC. *See*, *e.g.*, Dkt. 869 (Attachments 9-11 to Bonsignore Dec.).

Plaintiffs' tireless efforts, including careful vetting, over those months resulted in securing the evidence that addresses each of the points upon which the Court based its decisions to dismiss as well as identification and support for claims against the additional culpable Defendants in the amended filing.  Plaintiffs also were compelled to review and consider information regarding over fifty other potentially liable parties who, although not ultimately named in the complaint, nevertheless required investigation.

The preparation of the 5th CAC itself was a mammoth undertaking that included hundreds of new paragraphs, most of which were carefully crafted factual presentations.  Plaintiffs timely filed the 5CAC on the day after Thanksgiving as ordered and without requesting an extension. While Defendants complain of the date, it was set by this Court, and it was Plaintiffs' Counsel and their families, whose holidays were impacted.  The suggestion of an earlier filing date ignores the realities openly placed into the record and the significant negative impact that would

---

[24] Those actions were complex and diverse.  They included, for example, the creation of multiple accounts, inter-entity transfers of victims' funds, entity-to-individual transfers, interbank transfers, overseas transfers, business to real estate laundering, account closures, the accompanying failure to freeze or seize funds and the reissuance of checks generated upon forced account closures into smaller amounts when no other bank would accept larger checks.

have resulted in piecemeal amendment involving a multitude of separate motions, which in turn would have been subject to Defendants' familiar charges of excessive amendment.

It is also noteworthy that Plaintiffs were also forced during the post-MTD Order period (after January 29, 2019) to respond to motion practice engaged in by Defendants.  Plaintiffs successfully defended against reconsideration attacks upon this Court's refusals to dismiss the tortious aiding and abetting claims by Fidelity and ProPay.  Dkt. 753, 718.  They also successfully defended against attacks upon the 4th CAC's pleading by Wells Fargo Advisors and Allied Wallet.  Dkt. No. 742; 743.  Plaintiffs attempted unsuccessfully to stave off further stays on discovery sought by Allied Wallet and Wells Fargo Advisors pending resolution of their motions.  Dkt. 670; 720.  All the while, Plaintiffs were working with settling Defendants to obtain evidence in support of their claims. *See, e.g.*, Bonsignore Dec., Attachment 8 (Craft Aff.).

A more detailed, accurate history of Plaintiffs' efforts and summaries of the issues encountered, as well as a fact-based description of this case's history, is attached hereto.  *See* Ex. 1 (Bonsignore Decl.).  Plaintiffs did not delay in pursuing the facts alleged in their 5th CAC or in presenting their motions to this Court, and Defendants' assertions to the contrary should be rejected.  Their arguments all fall far short of the showing necessary to negate the liberal policy favoring amendment and resolution of cases on their actual merits.

### C.       Defendants Have Failed To Present Any Cognizable Prejudice From Inclusion Of The New Compelling Facts Sufficient To Preclude Amendment.

No Defendant has presented a credible case that any prejudice exists that would allow denial of amendment.  *See Klunder v. Brown Univ.*, 778 F.3d 24, 35 (1st Cir. 2015) (affirming allowance of amendment due to lack of demonstrable prejudice to non-movant).  The Opposing Defendants' concern lies not with prejudice from any purported delay, but rather from being held to answer for their egregious conduct.

24

Defendants' overblown claims that they would be "severely" prejudiced in the preparation of their defense is unsupported bluster.  In trumpeting that they have not participated in the discovery proceedings to date or "other" unidentified case proceedings, they again make representations that lack factual support.  *See* DD Br. at 15.  Few other proceedings have taken place, and because of the lengthy stay, this litigation has been suspended and is in its initial stages.  "Quite appropriately the courts have not imposed any arbitrary timing restrictions on requests for leave to amend and permission has been granted under Rule 15(a) at various stages of the litigation.  These include: following discovery; after a pretrial conference; at a hearing on a motion to dismiss or for summary judgment; when the case is on the trial calendar and has been set for a hearing by the district court; at the beginning, during, and at the close of trial; after a judgment has been entered; and even on remand following an appeal."[25]  6 Fed. Prac. & Proc. Civ. § 1488 (3d ed.) (footnotes omitted).

With respect to Defendants' discovery-based arguments, although discovery has commenced, it is in its infancy and certainly is not "complete" as represented.  *See* DD Br. at 14; Bonsignore Dec. ¶¶ 149-153.  Written discovery has been propounded by Plaintiffs according to this Court's deadlines.  The few responses received are incomplete.  A handful of Defendants

---

[25] Dismissed Defendants mount a disingenuous objection to Plaintiffs' motion based upon their purported deprivation of the 14-day notice period under Mass. D. Ct. Local Rule 15.1.  That Rule specifically applies only to "New Parties," unlike those Defendants.  The fact that such Rule only applies to parties truly new to the litigation is highlighted in Rule 15.1(a) which defines such amendments in terms of when "an attorney can be expected to have become aware of the identity of the proposed new party."  Also, those Defendants do not assert that they were not aware that Plaintiffs would be filing an amended complaint with new factual allegations against them.  Although certain Defendants fault Plaintiffs for failing to confer prior to filing the Motions under Local Rule 7.1, Plaintiffs respectfully note that they were fully aware of Plaintiffs' intent to amend and also note the futility of any such conferral process, as evident from the parties' positions before this Court.  *See Premo v. Family Dollar Stores of Mass., Inc.*, 13-11279-TSH, 2014 WL 1330911, at *1 (D. Mass. Mar. 28, 2014) (Hillman, J.) (entertaining motion to amend because "striking the Plaintiff's motion on this ground would serve no useful purpose").

also served discovery prior to the expiration of the deadline.  Motions to compel have not yet

been filed by Plaintiffs because of the short time following the initial discovery due date,

Plaintiffs' continued efforts to take seriously counsels' duty to work together to minimize

discovery disputes and the negotiation of a protective order.[26]  It is worth noting that certain

Defendants have not yet produced Initial Disclosures, and no Defendant has produced documents

in response to Plaintiffs' written discovery.  Similarly, less than a handful of the First Requests

for Admissions that Plaintiffs timely served on every Defendant have been responded to by

Defendants.  No depositions have taken place.  *Compare Adrian v. Mesirow Fin. Structured*

*Settlements, LLC*, 647 F. Supp. 2d 126, 133 (D.P.R. 2009) (no prejudice because only initial

discovery commenced and defendant had ample time to expand scope of discovery to respond to

additional claims in proposed amended complaint) with *Acosta-Mestre v. Hilton Int'l of Puerto*

*Rico, Inc.*, 156 F.3d 49 (1st Cir. 1998) (upholding denial of amendment to name additional

defendant where motion filed near close of discovery, deadline extended three times, nearly all

pretrial work completed, amendment would require at least four more months of discovery and

delay trial for at least twelve months, and plaintiff did not provide any excuse for delay).

  While Defendants essentially argue that the commencement of discovery alone suffices

as prejudice, that is not an accurate statement of applicable law.  In fact, amendment is routinely

permitted after discovery has occurred in a case, even significant discovery.  *See CP Sols..*, 237

---

[26] Plaintiffs' restraint contrasts with Wells Fargo Advisors' choice to file a premature motion to compel, apparently to distract from its own discovery obligation shortfalls.  Plaintiffs responded to their Interrogatories and produced the millions of electronic images they possess – bates stamped - in thirty days; whereas Wells Fargo Advisors has not produced a single image and provided hopelessly general, boilerplate answers to interrogatories.  Yet, respectful of this Court's time and mindful of their duty to work with opposing counsel in good faith to minimize discovery disputes, Plaintiffs have not rushed to file a counter motion to compel, choosing instead to continue to meet and confer with all Defendants toward an agreed-upon protective order, alternative discovery schedule, and proposed status conference agenda.

F.R.D. at 537 (allowing second amendment where "discovery was still ongoing when plaintiff filed its motion and the scheduled trial date was approximately 10 months away"); *U.S. ex rel. Baker v. Cmty. Health Sys., Inc.*, No. CIV. 05-279 WJ/WDS, 2011 WL 2609851, at *2 (D.N.M. May 25, 2011) (motion to amend sought in advance of discovery deadline and deadline for pretrial order allowed).

The fact that amendment may require additional discovery by a newly added party is an insufficient ground to deny it. *United States ex rel. Maritime Admin. v. Cont'l Ill. Nat'l Bank & Trust Co.*, 889 F.2d 1248, 1255 (2d Cir.1989) ("the adverse party's burden of undertaking discovery, standing alone, does not suffice to warrant denial of a motion to amend a pleading"). Even where amendment may require postponement of a current discovery or trial schedule, courts refuse to close their eyes to new claims and additional culpable parties and deny leave to amend. *See Moroughan v. County of Suffolk*, 99 F. Supp. 3d 317, 324–25 (E.D.N.Y. 2015) (possibility that discovery could be extended or that certain individuals might have to be deposed again insufficiently prejudicial); *CP Sols.*, 237 F.R.D. at 537. Accordingly, the assertion that permitting amendment will require an extension of the discovery deadlines in this case is not sufficient to deny Plaintiffs' Motions. In any event, Plaintiffs' efforts to obtain discovery have met with continued resistance and may necessitate an extended discovery period regardless.[27]

Despite Wells Fargo Advisors' claims of additional discovery burdens, neither the scope nor the nature of this suit will be unacceptably altered against it if amendment is allowed.[28] The new factual allegations expand upon conduct already identified in the 4th CAC. Similarly,

---

[27] Defendants' attempts to trump up the number of complaints filed in this case as somehow prejudicing them – when they have not answered one - is disingenuous. In any event, as described above, the number is not inordinate in an MDL proceeding.

[28] Wells Fargo Advisors' personal attack upon Plaintiffs' Counsel, Attorney Bonsignore, should not be countenanced or considered.

although the 5th CAC includes Wells Fargo Advisors within the conspiracy count, that cause of action is not itself new and significantly overlaps with the tortious aiding and abetting claims that create joint liability, both of which were previously asserted against it.[29]  As such, the scope of discovery sought by Plaintiffs, as well as provided by Plaintiffs, will remain unaltered by allowance of amendment.[30]  *See Higgins v. Town of Concord*, 16-CV-10641-DLC, 2017 WL 10088366, at *2 (D. Mass. May 23, 2017) (allowing amendment, stating "[w]hile some additional discovery may be necessary, much of the discovery already done will apply with equal force to these new claims because they are closely related to the facts already alleged"); *U.S. Bank Nat. Ass'n v. James*, 680 F. Supp. 2d 259, 262 (D. Me. 2010) (allowing amendment to add two causes of action even where reach of discovery broadened).  In any event, even if the 5th CAC were to assert entirely new causes of action against any party based upon the new facts discovered, there is no grounds to deny addition at this juncture.  *Adrian*, 647 F. Supp. 2d at 133.

The essence of Defendants' claims of prejudice amount to nothing more than routine complaints relating to defending against litigation.  Such burdens are not sufficient prejudice to overcome the interests of justice served by amendment in the context of the overwhelming new factual evidence objectively establishing actual knowledge and their willful and substantial

---

[29] Despite Wells Fargo Advisors' attempt to capitalize upon the inadvertent error in omitting that count from the caption and feign ignorance that the original 5th CAC asserted that count against it, the allegations therein plainly list it as a defendant against whom that claim is asserted.  It is noteworthy that Wells Fargo Advisors opposes the correction of that caption accomplished by the Corrected 5th CAC's filing.

[30] The fact that Wells Fargo Advisors, Fidelity Bank, ProPay, and IPS had notice that Plaintiffs intended to pursue amendment weighs against prejudice.  Also, in the Joint Statement filed with Plaintiffs prior to the March 2019 scheduling conference, those parties indicated as a matter for discussion the entry of a preservation order for the Dismissed Defendants and potential defendants. Dkt. 668 at 2.

assistance in furtherance of the unlawful enterprise, including money laundering and the provision of unlawful and non-routine services.

## III.   THE DISMISSED DEFENDANTS HAVE PRESENTED NO VALID GROUNDS TO DENY PARTIAL RECONSIDERATION OF THE MTD ORDERS.

The Dismissed Defendants' attempt to convince this Court to deviate from the well-established principle applied in countless cases that a party generally should be given at least one attempt to replead claims after a Rule 12(b)(6) dismissal is unavailing. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (reversing denial of leave to amend as abuse of discretion); *Torres-Alamo v. Puerto Rico*, 502 F.3d 20, 26 (1st Cir. 2007) (reversing district court failure to allow motion to amend complaint when granting motion to dismiss as abuse of discretion). Notwithstanding Defendants' inaccurate description of the history of amendment in this case, it is not in dispute that prior to the January and February 2019 MTD Orders, no judicial evaluation of the adequacy of the pleading of the dismissed claims had ever been performed, and, therefore, Plaintiffs have never been given a single additional "bite at the apple" to restate their claims.[31] The Dismissed Defendants' arguments – all presented under an incorrect statement of the applicable standard for reconsideration – have no merit and do not justify having this Court withhold the exercise of its indisputably broad discretion to reconsider or to close its eyes to the overwhelming inculpatory facts contained in the 5th CAC.

### A.   The Dismissed Defendants Have Not Refuted That Reconsideration Is Merited.

The Dismissed Defendants erroneously claim that this Court should apply the heightened standard governing motions to reconsider a final judgment brought under Federal Rule of Civil

---

[31] It is illogical to argue that Plaintiffs could have cured the perceived pleading deficiencies identified by this Court prior to its actual identification of them.

Procedure 59(e).[32]  As detailed in Plaintiffs' opening brief, Plaintiffs' Motion is subject to the

lesser interests-of-justice standard for reconsidering interlocutory orders under Rule 54(b) and

this Court's inherent powers.  *See* Dkt. 784 ("Pl. Br.") at 11; *Douglas v. York Cnty.*, 360 F.3d

286, 290 (1st Cir. 2004); *see also Greene v. Union Mut. Life Ins. Co. of Am.*, 764 F.2d 19, 22-23

(1st Cir. 1985) (rejecting use of heavier standards for reconsideration of interlocutory order).  For

all the reasons presented herein and in Plaintiffs' opening brief, that standard overwhelmingly

supports reconsideration and allowance of amendment here.[33]

Nevertheless, in addition to the baseless delay and prejudice arguments addressed above,

which the Dismissed Defendants concede they rely upon for reconsideration (DD Br. at 21), the

Dismissed Defendants present several additional failed arguments specifically directed at

inclusion of the new facts uncovered.

First, like their incorrect statement of the reconsideration standard under Rule 59,

Defendants rely upon the inapposite standard for relief from a final order or judgment to include

---

[32] *See* DD Br. at 11 (citing *Palmer v. Champion Mortg.*, 465 F.3d 24, 29 (1st Cir. 2006) and *Marie v. Allied Home Mortgage Corp.*, 402 F.3d 1, 7 (1st Cir. 2005) (both applying Rule 59(e) and *Davis v. Lehane*, 89 F. Supp. 2d 142, 149 (D. Mass. 2000) (denied based upon thirteen-year delay between the original motion and the motion for reconsideration).

[33] In any event, even if reconsideration is limited to the Rule 59(e) three-factor test advocated by Defendants, the two relevant factors – "the discovery of new evidence not previously available" and "a clear error of law" are both easily met here.  *See* DD Br. at 12.  In evaluating the former, the fact that Defendants themselves ensured that a significant portion of the new evidence eventually obtained by Plaintiffs was not previously available merits its satisfaction, as does all Plaintiffs' diligent efforts throughout this MDL to uncover new evidence.  Likewise, the clear error of law standard is met based upon the plethora of cases holding that amendment is to be freely given, that leave to replead is the norm for first-time dismissals for failure to state a claim and that an abuse of discretion may lie for the failure to do so.  Pl. Br. at 15.  Defendants' reliance upon prior amendments in this case – which had nothing to do with a Rule 12(b)(6) review or the viability of any claims pled – do not negate those authorities.  Defendants also fail to acknowledge that Plaintiffs' hands were tied from touching the allegations against them for most of this case due to their filing of motions to dismiss in June 2015, which remained pending for nearly four years, and the various stays on discovery and proceedings.

newly discovered evidence under Rule 60.  *See* DD Br. at 16.  That Rule's inapplicability is apparent on its face, which explicitly requires that "the evidence has been discovered since the trial."[34]  *See* Fed. R. Civ. P. 60.

Second, Defendants advocate for a fantastical rule that the new facts cannot be considered because Plaintiffs "must [have been] able to plead facts sufficient to survive a motion to dismiss ***without*** access to discovery mechanisms."  *See* DD Br. at 16; *but see J.S. McCarthy, Co., Inc. v. Brausse Diecutting & Converting Equip., Inc.*, 226 F.R.D. 14, 17 (D. Me. 2005) (allowing amendment because "earlier dismissal should not bar the reassertion of the same cause of action based on newly discovered facts").  Plainly, such a rule would eviscerate the import of all rules and case law that actually allow amendment and the revision of orders (like their espoused Rule 60) based upon evidence obtained by a plaintiff in the course of formal or informal discovery.  No rule or precedent requires or otherwise suggests that a court should close its eyes to facts uncovered in the discovery process.  In fact, well-established case law makes plain that amendment is routinely allowed even after discovery has commenced and, on occasion, even after trial.  *See, e.g., U.S. ex rel. Baker*, 2011 WL 2609851, at *1  (granting leave to amend to add defendants after discovery revealed their connection and culpability); *Ford v. Burke*, 529 F. Supp. 373 (N.D.N.Y. 1982) (after trial).  Indeed, the First Circuit case relied upon by Defendants does not even support that proposition.  *See N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale*, 567 F.3d 8, 16 (1st Cir. 2009).  There, the court held it was "unwilling to assume that no amendment could rescue certain of the claims" and noted that "leave to amend

---

[34] Also like under the Rule 59(e) standard, the new evidence at issue would meet that test because Plaintiffs exercised due diligence, the evidence is not cumulative or impeaching, and it establishes viable claims against Defendants such that it would probably change the result of a trial, if one had been had.

is often given, at least for plausible claims." *Id.* Also, it is noteworthy that Plaintiffs did not receive a single shard of discovery from these Defendants prior to their Motions.

Despite the Dismissed Defendants' selective parsing of the case law for exceptions, the indisputable general rule is that a district court should normally allow a plaintiff leave to file an amended complaint to see if that plaintiff can state a cognizable cause of action, particularly in an untested complaint. *See* Pl. Br. at 15, *citing*, *inter alia*, *E. Food Services, Inc. v. Pontifical Catholic Univ. Services Ass'n, Inc.*, 357 F.3d 1, 8 (1st Cir. 2004) (leave "is often granted not only pretrial but after a dismissal for failure to state a claim where the court thinks that the case has some promise"); *In re A123 Sys., Inc. Sec. Litig.*, 930 F. Supp. 2d 278, 286-87 (D. Mass. 2013) (citation omitted) (granting "third bite at the apple" and allowing leave to re-plead class action complaint regarding knowledge of securities fraud).

Third, unable to refute that determinative authority, Defendants again resort to distortion and half-truths to make their case. Defendants tout that none of Plaintiffs' case law involved "*eight* attempts over a period of more than five years to state a viable claim." DD Br. at 14. And as this Court is aware, neither does this case. Plaintiffs have never sought to expand the allegations asserted against these Defendants from the first truly amended complaint and this Court has performed one Rule 12(b) review of those allegations. In short, viability of the claims against the Dismissed Defendants has not been the motivation for a single prior amendment.

## B. The New Evidence Addresses Each Issue Identified In The MTD Orders.

The Dismissed Defendants' argument that the new evidence would not "possibly change the outcome of the motions to dismiss" invites response. *See* DD Br. at 17. Setting aside that they invoke the incorrect Rule 60 standard to make the argument, they are substantively wrong. The newly discovered evidence further confirms that the 5th CAC states a claim against them.

**1. The 5th CAC's new facts state an overwhelming claim for tortious aiding and abetting and/or civil conspiracy against the Dismissed Bank Defendants.**

The MTD Orders' dismissal of the tortious aiding and abetting claims against BANA and

TD Bank rested upon the finding that the 2nd CAC did not allege activities performed that went

beyond the routine banking services of accepting deposits and transferring those funds to

TelexFree's principals, officers and affiliates.  Dkt. 602 at 8.  For Wells Fargo Bank, the

dismissal order found that the 2nd CAC's allegations that it maintained accounts on behalf of

TelexFree and processed transactions were similarly insufficient.  Dkt. 611 at 7.  The Orders

further cited *In re State Street Cases* for the proposition that the "mere provision of banking

services" cannot actively or substantially assist fraud."  *Id.*, *citing In re State St. Cases*, CIV. A.

12-11770-NMG, 2013 WL 5508151 at *23 (D. Mass. Aug. 21, 2013), *report and*

*recommendation adopted in part, rejected in part*, CIV.A. 12-11770-NMG, 2013 WL 5508349

(D. Mass. Sept. 27, 2013).  However, it is significant that this Court acknowledged that the court

in *In re State Street Cases* further held that allegations of "conventional banking services that

made it easier to effectuate [a] fraudulent scheme. . . are precisely the sort of passive assistance

and inaction that, *without more*, does not rise to the level of substantial assistance."  *Id.*

(emphasis added).  As briefly described herein, the allegations in the 5th CAC easily meet and

exceed that "more" standard.

The MTD Orders also found the 2nd CAC's allegations did not meet the actual knowledge

element.  This Court found they alleged only that the Dismissed Banks "should have known" of

the fraud based upon their facial review of TelexFree's promotional literature and contacts with

its members.  Dkt. 602 at 10; Dkt. 611 at 7.  Nevertheless, in rejecting Payment Processor Allied

Wallet's request for dismissal, this Court also endorsed the standard adopted in *Go Best* that

allows actual knowledge to be established by a "reasonable inference" and acknowledged that

"direct evidence of actual knowledge of a Ponzi scheme is rare." Dkt. 742 at 3-4. "[P]laintiffs are not required to produce a 'smoking gun'" particularly at the pleading stage, to satisfy actual knowledge. *Cahaly v. Benistar Prop. Exch. Trust Co., Inc.*, 885 N.E.2d 800, 810 (Mass. 2008).

Even prior to the receipt of meaningful discovery, Plaintiffs have obtained significant additional facts since filing the 2nd CAC and incorporated them into the 5th CAC, including an abundance of smoking guns. For example, the facts as now pled sufficiently establish that BANA, TD Bank and Wells Fargo Bank provided services to TelexFree that went far beyond any rational or accepted definition of "routine" banking activities. Rather, the described services fall squarely within the realm of non-routine banking activities that enabled the Scheme to go undetected, furthered its commission and laundered its proceeds. Specific additional facts also easily satisfy the endorsed *Go-Best* knowledge standard. The new facts and direct evidence objectively establish a compelling inference that BANA, TD Bank and Wells Fargo Bank possessed actual knowledge of TelexFree's fraud and illegality.

Finally, because the new, irrefutable averments in the 5th CAC objectively establish actual knowledge, now even the depository activities alleged in the 2nd CAC must be viewed in a new light, one in which they satisfy the "substantial assistance" element. Critically, this Court held in that same order that "[i]t is well settled that substantial assistance must be evaluated 'in tandem' with the knowledge requirement." Dkt. 742 at 4. As such, the law of this case is that the financial services provided to a scheme must be considered in tandem with the knowledge element, such that even "routine" banking services, when performed with the knowledge that they are aiding and abetting a financial fraud, suffice. Dkt. 742 at 4. That coupling removes the immunity behind which BANA, TD Bank and Wells Fargo Bank seek to hide to prevent being held accountable for performing banking services that enabled the TelexFree Scheme's

34

continued commission against its hapless victims.  Of note, services performed by the payment

processor Defendants found to have constituted substantial assistance were ones ordinarily

performed by them for other non-fraudster clients.

The new facts alleged in the 5th CAC place its civil conspiracy and tortious aiding and

abetting claims squarely within this Court's ruling refusing to dismiss them as against Fidelity

Bank and the Payment Processor Defendants.  The Fidelity Bank order found both the

knowledge and the substantial assistance requirements satisfied by allegations that Fidelity had

opened three accounts in August/September 2013 and that it continued to service those accounts

for nearly a month after it had given "notice to TelexFree that it would be freezing its accounts

based upon purported illegal activities."[35]  Dkt. 597 at 8.  Each of those factors, and much more,

is established through supporting granular detail in the 5th CAC against each of the previously

Dismissed Banks.  BANA, TD Bank, and Wells Fargo Bank all kept accounts for both TelexFree

and its related entities open and operating after giving notice of an impending closure for fraud

and also after the actual closures of accounts.  5th CAC at ¶¶ 1208-10, 1254-72, 1275-76, 1284,

1294-95 (BANA); 1309, 1318, 1341-50, 1390-1409, 1420-21, 1424-27, 1447 (TD Bank); 1637-

40, 1648, 1650, 1653, 1655 (Wells Fargo Bank).  They even opened new accounts thereafter.

5th CAC at ¶¶ 1216-17, 1285, 1299-1300 (BANA); 1351-54, 1356-57, 1360, 1365, 1382-84,

1400-09, 1420-21, 1447 (TD Bank); 1639, 1646 (Wells Fargo Bank).

The payment processor orders also establish the determinative weight given to activities

performed in assistance of the Scheme by the Dismissed Bank Defendants during the critical

---

[35] It also cited to Fidelity Bank's inadequate account opening process in 2013, which would support the presence of liability through a failure to act. *See id.*

time period after June 2013.  *See* Dkt. 600 at 7; 601 at 6; 742 at 4-5.  As described by this Court

in the Allied Wallet order when finding the substantial assistance element met

> Allied Wallet was in the same circumstance as defendants IPS and ProPay who were
> asked to service TelexFree at a time when they were having difficulty obtaining a
> payment processor due to the widespread publication of fraud and the shut-down in
> Brazil.  I find there are sufficient allegations in the FCAC to satisfy the assistance
> requirement.

Dkt. 742 at 4-5.  Like each of those Defendants, BANA, TD Bank and Wells Fargo Bank were

asked to, and did, service TelexFree, by for example opening new accounts, performing

contextually non-routine transfers and writing reference letters, during that time period and

nearly up to its demise in April 2014.[36]  The new facts obtained also reveal that BANA, TD Bank

and Wells Fargo Bank each restricted and thereafter closed one or more TelexFree account for

fraud, but still continued to service and even opened accounts for it thereafter.  Those restrictions

and closures – and the substantial services provided thereafter – suffice not only as non-routine

substantial assistance, but also elevate Plaintiffs' allegations from creating a reasonable inference

of knowledge of the fraud from the "should have known" realm, found pled in the 2nd CAC, to

adequately supporting their actual knowledge.

In addition, to comply with this Court's September 2019 Scheduling Order, Plaintiffs

have filed the opinion of a highly esteemed expert in the finance and banking field, Prof. Patricia

---

[36] For example, on February 19, 2014, Michael Montalvo, Vice President of Wells Fargo, wrote
a letter of reference vouching for Carlos Wanzeler and TelexFree in strong terms: "I am pleased
to confirm that Carlos Wanzeler and Telexfree are a Wells Fargo Bank client. Carlos Wanzeler
and Telexfree have had a great history with Wells Fargo. They have managed their relationship
with Wells Fargo in a consistent and satisfactory manner. I have known Carlos Wanzeler and
Telexfree personally for over a year and find them to be of great character."  Montalvo wrote this
glowing letter of reference for Wanzeler and TelexFree even though on or about January 7, 2014,
Montalvo had personally performed due diligence on Wanzeler and TelexFree and discovered,
*inter alia*, an article discussing the Brazilian shutdown of TelexFree on grounds of being an
"*Esquema Ponzi*." Montalvo included a copy of the article in his Wells Fargo Final Investigation
Summary Report.  *See* Bonsignore Dec., Attachment 7.

McCoy and have retained additional experts.  The depth of work is evidenced in the great factual

detail offered in her reports.  Professor McCoy was able to determine that the services provided

were not routine banking activities and that they were performed with the actual knowledge that

TelexFree was a pyramid scheme.  *See* Bonsignore Dec., Attachments 9-11.

### 2. The new facts in the 5th CAC state an overwhelming claim for tortious aiding and abetting and civil conspiracy against Defendant PwC.

The new facts obtained are equally compelling against Dismissed Defendant PwC.  *See,*

*e.g.*, 5th CAC ¶ 672.d.  Plaintiffs' investigation uncovered PwC acted as a critical member of a

group of professionals, comprised of legal, business and financial experts (the "MLM A Team"),

who were assembled by Attorney Defendant Babener to enable TelexFree and its founders

Merrill and Wanzeler to continue to operate the unlawful Scheme after the Brazilian shutdown in

summer 2013.  Documentary evidence establishes that Babener determined within days of being

retained in August 2013 that TelexFree was operating a massive, illegal financial fraud and

passed that knowledge on to each member of the MLM A Team recruited, including PwC.  Once

retained in or about December 2013 to January 2014, PwC drove the strategy of moving

TelexFree's assets and workings offshore to avoid U.S. authorities and laws including the use of

accounts to conduct TelexFree's continuing unlawful operations in countries with lax financial

fraud enforcement, to shelter funds out of the reach of the United States justice system and to

create foreign shell corporations.  This newly obtained evidence came from Joseph Craft.  *See*

Bonsignore Aff., Attachment 8.  PwC provided the advice to take actions to conceal, and thereby

allow the continued operation and exponential growth of the Scheme, by staving off or otherwise

assisting TelexFree to delay and dodge the investigations by government officials, including

crafting misleading responses to investigations and submitting two sets of "cooked" books.  *Id.*

By the standards set under the law of this case, the new facts alleged, which provide direct evidence that PwC knew of TelexFree's illegality as part of the team created to devise and implement ways to maintain its operations and secret its ill-gotten gains, create a reasonable inference of actual knowledge sufficient to withstand dismissal.  Those facts further satisfy the standards for substantial assistance under the law of this case.  The allegations that PwC proposed and accomplished international expansion to move TelexFree's operations and money beyond the reach of U.S. victims and federal and state regulators and to find banks willing to service TelexFree even though TelexFree was embroiled in legal actions and surrounded by extensive negative publicity more than suffices to support amendment and to state a claim for civil conspiracy and aiding and abetting.

The interests of justice merit both the allowance of amendment as well as reconsideration of the dismissal of the claims against each Dismissed Defendant without leave to amend, if necessary, to include the specific, egregious facts alleged therein.

## CONCLUSION

For the foregoing reasons, and those in Plaintiffs' opening memorandum, Plaintiffs respectfully request that the Court grant their motion to amend, and/or grant Plaintiffs leave to file the proposed 5th CAC (corrected) or, in the alternative, the 5th CAC.

Dated: February 20, 2020

Respectfully submitted,

*/s/ Robert J. Bonsignore*
Robert J. Bonsignore Esq. (NH Bar No. 21241)
Bonsignore Trial Lawyers, PLLC
3771 Meadowcrest Drive
Las Vegas, NV  89121
Telephone:  781-856-7650
Email: rbonsignore@classactions.us
***Plaintiffs' Interim Lead Counsel***

## CERTIFICATE OF SERVICE

I, Robert J. Bonsignore, hereby certify that on this 27th day of February, 2020, I caused the foregoing to be electronically filed with the Clerk of the Court by using the Case Management/Electronic Case Filing (CM/ECF) system, which will send a notice of electronic filing to all parties registered with the CM/ECF system in the above-captioned matter. A copy will be forwarded via first class mail, postage prepaid, to those parties not electronically registered.

*/s/ Robert J. Bonsignore*
Robert J. Bonsignore