UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE:<br><br>TELEXFREE SECURITIES LITIGATION<br><br>**This Document Relates To:**<br><br>**All Cases** | MDL No. 4:14-md-02566-TSH |

### DEFENDANT INTERNATIONAL PAYOUT SYSTEMS, INC.'S OPPOSITION TO PLAINTIFFS' MOTION TO AMEND

Defendant International Payout Systems, Inc. ("IPS") opposes Plaintiffs' Motion to Amend the Fourth Consolidated Amended Complaint ("4CAC"). (Dkt. 983). Plaintiffs' long-delayed proposed amendments concerning IPS lack the requisite good cause for amending a pleading after an ordered deadline. Moreover, those amendments are made in bad faith, futile, and unjustly prejudicial to Defendants, including IPS, and proposed new Defendants, including two IPS officers. IPS therefore respectfully requests that the Court deny Plaintiffs' Motion.

### I. RELEVANT BACKGROUND

On March 31, 2015, Plaintiffs filed a First Consolidated Amended Complaint ("1CAC"), naming IPS[1]—among others—as a defendant. (Dkt. 121). Plaintiffs' claims against IPS consisted of (a) Aiding and Abetting General Laws Chapter 93 §§12 and 69 and Chapter 93A §§2 and 11;

---

[1] In the 1CAC, Plaintiffs alleged that "despite IPS's knowledge of the illegal nature of TelexFree's business activities," IPS took TelexFree on as a "payment processing" customer and maintained that relationship until April 17, 2014 by providing services and assistance to TelexFree. (Dkt. 121 at 170-73). These allegations have remained consistent throughout each of the additional consolidated amended complaints and are again included in the pending proposed consolidated amended complaint.

1

(b) Unjust Enrichment; (c) Civil Conspiracy; and (d) Common Law Aiding and Abetting.[2] Approximately one month later, on April 30, 2015, Plaintiffs filed their Second Consolidated Amended Complaint ("2CAC") (Dkt. 141), which remained the operative complaint until a case-wide stay was lifted and the 4CAC was filed on June 6, 2017. (Dkt. 503).

On January 29, 2019, this Court entered a Memorandum and Order granting IPS's motion to dismiss Plaintiffs' claims of (a) Aiding and Abetting General Laws Chapter 93 §§12 and 69 and Chapter 93A §§2 and 11, and (b) Unjust Enrichment filed with regard to the 2CAC (but substantively the same as the claims in the 4CAC). (Dkts. 173; 601). That left two causes of action pending against IPS: Plaintiffs' claims of (a) Civil Conspiracy, and (b) Common Law Aiding and Abetting.

On September 23, 2019, this Court entered a Scheduling Order setting a deadline of November 29, 2019 for any further amended pleadings. (Dkt. 756). Plaintiffs failed to meet that deadline. Instead, Plaintiffs waited until that date to file—without requisite consent from the other parties or leave from the Court—a Motion to Reconsider and to Permit Amendment. (Dkt. 783). On the same date, without receiving the necessary allowance of the motion or leave to file an amended complaint, Plaintiffs filed a 424-page Fifth Consolidated Amended Complaint ("5CAC-1"). (Dkt. 779). On December 4, 2019—five days after the deadline for filing amended pleadings—Plaintiffs filed a 430-page "corrected" Fifth Consolidated Amended Complaint ("corrected 5CAC-1"), again without a ruling on their motion and without leave to do so. (Dkt. 790). On February 28, 2020, this Court denied Plaintiffs' request to amend the 4CAC citing, inter alia, Plaintiffs' repeated failure to follow various procedural and local rules. (Dkt. 890).

---

[2] Every successfully-filed version of the consolidated amended complaint thus far names IPS as a defendant and presents substantively similar claims against it.

Plaintiffs then filed a Motion for Clarification (Dkt. 943), which was granted insofar as the Court allowed Plaintiffs to file a motion for leave to file a further Fifth Consolidated Amended Complaint ("5CAC-2"). (Dkt. 947). On April 12, 2020, Plaintiffs requested an extension until May 14, 2020 (Dkt. 957), which the Court granted. (Dkt. 961).

Yet again, Plaintiffs did not meet the deadline. Instead, on May 14, 2020, Plaintiffs filed two Motions for Leave to File Excess Pages with supporting memoranda. (Dkts. 978/979). Again without obtaining a response from the Court, Plaintiffs filed their Motion to Amend and accompanying memorandum (with excess pages) on May 19, 2020. (Dkts. 983/984).

Plaintiff's proposed 5CAC-2, which is the subject of their current Motion to Amend, states the same two causes of action against IPS that survived IPS's Motion to Dismiss the 2CAC, Common Law Aiding and Abetting and Civil Conspiracy. The proposed 5CAC-2 also reasserts against IPS Plaintiffs' previously dismissed claim for Unjust Enrichment. Although Plaintiff's proposed 5CAC-2 includes new factual allegations against IPS, (*see, e.g.*, 983-1 at 197 ¶ 872 ("IPS and Yenatska also provided TelexFree with advice on branding and marketing, such as development of an international logo.")), it does not add new causes of action against the company. Instead, the proposed 5CAC-2 would add two IPS officers, Edwin Gonzalez and Natalia Yenatska, as defendants in this case under the same causes of action as those already pending against IPS.

## II. STANDARD OF REVIEW

Although a court "should freely give leave [to amend a complaint] when justice so requires" (Fed. R. Civ. P. 15(a)(2)), leave under Rule 15(a)(2) is not an automatic right and may be denied for numerous reasons including "undue delay in filing the motion, bad faith or dilatory motive, repeated failure to cure deficiencies, undue prejudice to the opposing party, and futility

of amendment." *U.S. ex rel. Gagne v. City of Worcester*, 565 F.3d 40, 48 (1st Cir. 2009) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962) and *United States ex rel. Rost v. Pfizer, Inc.*, 507 F.3d 720, 733–34 (1st Cir. 2007)). "[T]he longer a party waits before filing its motion to amend, the more exacting the standard becomes." *Viscito v. Nat'l Planning Corp.*, No. CV 3:18-30132-MGM, 2019 WL 7578462, at *2 (D. Mass. July 5, 2019) ("Certain milestones, such as *a scheduling order* … may change a court's hospitality towards a motion to amend.") (Emphasis added).

"Once the deadline for amendment set in a scheduling order has passed, 'the liberal rule is replaced by the more demanding good cause standard of Fed. R. Civ. P. 16(b).'" *Id*. (quoting *Steir v. Girl Scouts of the USA*, 383 F.3d 7, 12 (1st Cir. 2004)). "This standard focuses on the diligence (or lack thereof) of the moving party more than it does on any prejudice to the party-opponent." *Steir*, 383 F.3d at 12 (citing *O'Connell v. Hyatt Hotels of P.R.*, 357 F.3d 152, 154–55 (1st Cir. 2004)).[3]

Because this Court's Scheduling Order deadline lapsed before Plaintiffs filed their pending Motion to Amend, the more demanding good cause standard applies to their Motion.[4] Furthermore, D. Mass. Local Rule 15.1 requires that an amendment seeking to add new parties

---

[3] Although Plaintiffs request a modification of the September 23, 2019 Scheduling Order to encompass their current Motion to Amend (Dkt. 984 at 55), as of the date of this filing no such modification has been granted. Even if a modification were allowed, Plaintiffs *still* would not have been timely in filing their current motion to amend. Pursuant to the Court's grant of Plaintiffs' Motion for Extension of Time, the new deadline was May 14, 2020. (Dkts. 957/961). Instead of filing a motion to amend on that date, Plaintiffs filed Motions for Leave to File Excess Pages. (Dkts. 978/979). Without a response from the Court, Plaintiffs filed their Motion to Amend and accompanying memorandum (with excess pages) on May 19, 2020. (Dkts. 983/984).

[4] Plaintiffs note that "Rule 15(a) does not prescribe any time limit within which a party may apply to the court for leave to amend" and argue that Rule 15(a)'s liberal standard should be used, with leave freely given in this case. (Dkt. 984 at 50). Plaintiffs' current motion to amend, however, was filed well after the expiration of the November 29, 2019 deadline for amended pleadings stated in the Court's September 23, 2019 Scheduling Order. (Dkt. 756).

must be sought "as soon as [that] attorney reasonably can be expected to have become aware of the identity of the proposed new party." *Marchand v. Town of Hamilton*, No. CV 09–10433–LTS, 2011 WL 613699, at *2 (D. Mass. Feb. 9, 2011) (citing L.R. 15.1). "Regardless of the context, the longer a plaintiff delays, the more likely the motion to amend will be denied, as protracted delay, with its attendant burdens on the opponent and the court, is itself a sufficient reason for the court to withhold permission to amend." *Steir*, 383 F.3d at 12 (citing *Acosta–Mestre v. Hilton Int'l of P.R., Inc.*, 156 F.3d 49, 52–53 (1st Cir. 1998)); *see also Gagne*, 565 F.3d at 48 (quoting *ACA Fin. Guar. Corp. v. Advest, Inc.*, 512 F.3d 46, 55 (1st Cir. 2008)) (First Circuit holding that "'the district court enjoys significant latitude'" in ruling on motion to amend).

### III. ARGUMENT

#### A. Plaintiffs' Efforts to Add "New" Parties and Allegations Lack Requisite Good Cause

A plaintiff is obliged "to make defendants and proposed defendants aware of the nature of the claims against them *as soon as* [the plaintiff] can reasonably have been expected to become aware of them, so that they may be on notice of the claims made against them in time to defend against them, and so that the Court may resolve the claims in a reasonable period of time." *Marchand*, 2011 WL 613699, at *2 (citing L.R. 15.1; *Steir*, 383 F.3d at 12) (emphasis added). Accordingly, Plaintiffs should have sought an amendment adding allegations and parties immediately following the point at which they learned or could reasonably be expected to have learned the identity of the proposed new parties. *See* L.R. 15.1(a). Plaintiffs simply did not do this, nor can they show good cause for the undue delay.

Plaintiffs argue that they had not, until recently, received sufficient information from which they might identify their now-to-be-added defendants and related allegations. (Dkt. 984 at

5

50-52). This assertion is belied by each of their previous complaints filed over the last five years.[5] Broadly, in each iteration of the consolidated amended complaint, Plaintiffs acknowledge their awareness of additional parties whom they simply choose not to include and "reserve[d] the right," whatever right that may be, "to name some or all of these persons as Defendants at a later date." (*E.g.*, Dkts. 121 at 173 ¶ 979; 141 at 174-75 ¶ 991; 503 at 203 ¶ 1153).

Plaintiffs were—or reasonably should have been—aware of the identity of the proposed new IPS-related parties, officers Edwin Gonzalez and Natalie Yenatska[6], their alleged involvement with TelexFree, and the claims that Plaintiffs now seek to assert against them, as early as the filing of the 1CAC on March 31, 2015. For example, Plaintiffs include in their "[n]ewly-obtained key evidence demonstrating substantial assistance" the allegation that "Gonzales [sic] and IPS released a public statement in October 2013 to *BehindMLM.com* stating that they had 'done a complete due diligence on TelexFree' and 'confirmed the product as compliant with all US laws.'" (Dkt. 984 at 34). That very same article, however, is referenced and quoted in every consolidated amended complaint that has been allowed in this case over the last five years. (*See* Dkts. 121 at 171 ¶ 967; 141 at 172 ¶ 979; 503 at 191-92 ¶ 1096).[7]

Moreover, Plaintiffs' previous 5CAC-1 and corrected 5CAC-1 (filed on November 29, 2019 and December 4, 2019, respectively) both allege that Mr. Gonzalez had "actual knowledge

---

[5] Indeed, in the memorandum supporting their most recent motion to amend, Plaintiffs themselves acknowledge that not all of their "new" allegations are, in fact, new. (Dkt. 984 at 52 ("[M]uch [sic] of the new facts were garnered only relatively recently . . . .")).

[6] The roles of Mr. Gonzalez and Ms. Yenatska at IPS have never been hidden or otherwise obscure. They were officers of IPS throughout the relevant time period and are still to this day.

[7] Furthermore, by Plaintiffs' own allegations, Mr. Gonzalez "was integrally involved and shepherded the [TelexFree application] process." (Dkt. 983-1 at 195 ¶ 861). Someone with that level of alleged involvement would be apparent in the vast majority of communications and documents giving rise to the kind of allegations put forth by Plaintiffs from the outset of this case.

of TelexFree's illegal activities" and that he "contributed in part" to helping TelexFree open an account with Bank of America on February 6, 2016. (Dkts. 779 at 222-23 ¶ 1216, 240 ¶ 1299; 790 at 227 ¶ 1216, 245 ¶ 1299). Hence, at absolute minimum, Plaintiffs were aware of the identity of and their fundamental allegations against Mr. Gonzalez prior to filing their proposed 5CAC-1 and corrected 5-CAC-1.

Similarly, Plaintiffs' contention that the bases for their allegations against Ms. Yenatska are new is thoroughly unavailing. For example, beginning in 2015 with the 1CAC, spanning every successfully-filed additional amended complaint, and included in the proposed 5CAC-2, Plaintiffs alleged "direct knowledge of the shutdown of TelexFree in Brazil and Rwanda, the United Kingdom scam warning against TelexFree, well-publicized accusations of fraud and illegality on the part of TelexFree, and an enormous number of Red Flags and indicia of fraud indicating the fraudulent and illegal nature of TelexFree's operations." 984 at 34-35. (Dkts. 121 at 172 ¶ 973; 141 at 173 ¶ 985; 503 at 192-93 ¶ 1102; 983-1 at 201 ¶ 896). The only difference in this allegation as it appears in each of the four documents is that in the 5CAC-2 Plaintiffs include the two IPS officers' names. It is clear that Plaintiffs were aware of the IPS officers' identities and alleged involvement years before the drafting of the 5CAC-2. At that initial point of awareness, under Local Rule 15.1[8], Plaintiffs were obligated to name Mr. Gonzalez and Ms. Yenatska as defendants. They offer no good cause reason for their failure to do so.[9]

---

[8] Plaintiffs certainly should be aware of this rule, given that their previous Motion to Amend the 4CAC was denied for their failure to adhere to it.

[9] Plaintiffs also point to the influx of new evidence requiring time-consuming processing and a desire to avoid "piecemeal amendments" to explain away their dilatory attempts at amendment. (Dkt. 984 at 21, 57). This contention similarly fails, particularly in the face of Plaintiffs' decision to include more specific allegations against IPS officers in the 5CAC-1 and corrected 5CAC-1, without naming them as defendants.

The fundamental cause of Plaintiffs' decision to omit the IPS officers in previous complaints and include them only now is plainly bad faith. Plaintiffs' undue delay is not simply another example of their inability, or unwillingness, to abide by applicable rules.[10] It is clear from each previous version of the consolidated amended complaint that Plaintiffs were aware of the "new" IPS-related parties and allegations at the time Plaintiffs drafted, respectively, each of those versions. However, on March 2, 2020, this Court denied Plaintiffs' Motion for Reconsideration as to the dismissal of Bank of America, TD Bank, PricewaterhouseCoopers, and Wells Fargo Bank (the "March 2, 2020 Dismissed Defendants"). (Dkt. 898). Only after this Court affirmed the dismissal of these Defendants from the case did Plaintiffs seek to assert the leverage of adding new defendants to the case, including the two IPS officers.[11]

Plaintiffs had every opportunity to add IPS's officers as defendants long before now. Particularly where the good cause standard "focuses on the diligence (or lack thereof) of the moving party more than it does on any prejudice to the party-opponent," (*Steir*, 383 F.3d at 12 (citing *O'Connell*, 357 F.3d at 154–55)), Plaintiffs' failure to move to add the identified IPS parties in a timely manner, coupled with the bad faith underlying their dilatory addition, should result in the denial of Plaintiffs' Motion to Amend.

---

[10] Plaintiffs assert essentially that the Court should simply ignore these rules, arguing—in an effort to lessen the "harsh remedy" of denying Plaintiffs' motion to amend—that other jurisdictions do not have the same local rules. (Dkt. 984 at 57 n.36).

[11] Had Plaintiffs been intent upon including—in *any* of their prior consolidated amended complaints—IPS officers whose identities they were truly unable to ascertain, they should have added John and/or Jane Doe defendants. *See Martínez-Rivera v. Sánchez Ramos*, 498 F.3d 3, 8 (1st Cir. 2007) (internal citations omitted) (a plaintiff may generally "bring suit against a fictitious or unnamed party where a good-faith investigation has failed to reveal the identity of the relevant defendant and there is a reasonable likelihood that discovery will provide that information"). That Plaintiffs did not take even this small step is yet another indication that, while aware of the IPS officers, Plaintiffs simply chose not to include them until it became clear that certain other defendants would not be parties to the case.

8

### B. Plaintiffs' Efforts to Add "New" Parties and Allegations Fail to Meet Even More Permissive Amendment Standards

Even under Rule 15(a)(2), Plaintiffs cannot justify their proposed new complaint. As the First Circuit explained, Rule 15(a)(2)'s more liberal standard "'does not mean . . . that a trial court must mindlessly grant every request for leave to amend.'" *Calderon-Serra v. Wilmington Tr. Co.*, 715 F.3d 14, 19 (1st Cir. 2013) (alteration in original) (quoting *Aponte–Torres v. Univ. of P.R.*, 445 F.3d 50, 58 (1st Cir. 2006)). Even if the higher good cause standard did not apply, Plaintiffs' undue delay, bad faith, and dilatory motive, the undue prejudice to IPS, and the futility of their proposed amendment suffice to defeat their motion to amend. *See U.S. ex rel. Gagne*, 565 F.3d at 48 (internal citations omitted).

#### i. Plaintiffs' Proposed Amendments Are Unduly Delayed and Made in Bad Faith

"Appreciable delay alone, in the absence of good reason for it, is enough to justify denying a motion for leave to amend." *Calderon-Serra*, 715 F.3d at 20-21 (finding denial of motion to amend filed after, inter alia, motions to dismiss were fully briefed and taken under advisement and with no valid reason for delay was not an abuse of discretion). As discussed above, Plaintiffs were—or reasonably should have been—aware of the identity of the proposed IPS-related parties and the related allegations for years prior to their recent attempted addition.

In addition to being dilatory, Plaintiffs' current effort is plainly in bad faith. *See* discussion *supra* Section III.A. Either their undue delay or their bad faith suffices to defeat the motion to amend. Taken together, Plaintiffs' undue delay and bad faith obliterate any proffered justification for that motion.

### ii. Plaintiffs' Untimely Amendment Prejudices IPS

Plaintiffs' bad faith and dilatory addition of new IPS-related allegations and previously identified, long-known IPS-related defendants will also prejudice IPS.[12] To allow Plaintiffs to only now, for their own ends, assert allegations based on information they have long possessed will not only reward behavior that the rules are specifically designed to prevent, but force unnecessary and costly motion practice. This is an extremely inefficient use of IPS's and this Court's resources. For that reason alone, and certainly in combination with the other grounds cited herein, Plaintiffs' proposed amendment may be denied.

### iii. Plaintiffs' Proposed Amendments Relating to Their Unjust Enrichment Claims Against IPS Are Futile

In the context of a motion to amend, when "assessing futility, the district court must apply the standard which applies to motions to dismiss under Fed. R. Civ. P. 12(b)(6)." *Adorno v. Crowley Towing And Transp. Co.*, 443 F.3d 122, 126 (1st Cir. 2006) (citing *Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996)). In this case, Plaintiffs' unjust enrichment claim (Eighth Claim) in the proposed 5CAC-2 was previously dismissed as to IPS, making that portion of the proposed amendment futile. Specifically, on January 29, 2019, this Court entered a Memorandum and Order (Dkt. 601), granting IPS's motion to dismiss (Dkt. 173) a substantively identical claim in the 2CAC.

---

[12] *See, e.g.*, *Nash v. Waddington*, No. C04-5161FDB/KLS, 2006 WL 3203715, at *2 (W.D. Wash. Nov. 1, 2006) ("Permitting an amendment which brings in additional parties at this late date after the parties have already engaged in extensive motions practice will also unduly delay this case and impose an unfair burden on Defendants.").

The Court's prior dismissal of this claim was not based upon insufficient allegations by Plaintiffs.[13] The Court dismissed Plaintiffs' unjust enrichment claim against IPS because to state a claim for unjust enrichment, Plaintiffs were required to demonstrate that they conferred a benefit on IPS, something they could not show.[14] *Id.* at 5.

Although Plaintiffs have tweaked their allegations concerning IPS in their proposed 5CAC-2, nothing in it alleges such a benefit.[15] Even if Plaintiffs are allowed to proceed in this case pursuant to the 5CAC-2, none of their amendments alter the unjust enrichment claim as it relates to IPS. The reasoning that supported dismissal of the claim remains intact and valid. As such, the substantively identical claim laid out in Plaintiffs' proposed 5CAC-2 is futile as to IPS and the amendment should not be allowed.

### IV. <u>CONCLUSION</u>

Plaintiffs' untimely proposed amendments fail to meet the elevated good cause standard necessitated by their undue delay. Those amendments are proposed in bad faith, unjustly prejudice IPS, and are at least in part futile. Furthermore, Plaintiffs' proposal reflects a continued failure to exercise requisite diligence, and indeed, to adhere to the rules Plaintiffs have been repeatedly admonished to follow. For each and all of these reasons, Defendant International

---

[13] Plaintiffs cannot now challenge dismissal of this claim. While Plaintiffs have filed at least two other motions to reconsider dismissal of claims against other defendants (*see, e.g.*, Dkt. 781, 783), they have filed no such motion with respect to IPS. Any objection to dismissal at this late date has been waived.

[14] "Assuming arguendo that [fees paid to IPS and other defendants categorized by Plaintiffs as "payment processors"] were for payment processing services, it was TelexFree, not the Plaintiffs which conferred the alleged benefit on the Defendants. Therefore, only TelexFree would have standing to assert a claim relating to the alleged benefit." (Dkt. 601 at 5) (citation omitted).

[15] Nothing in Plaintiffs' 5CAC-2 alleges a benefit conferred from Plaintiffs to the proposed previously-identified defendants from IPS, making Plaintiffs' claim for unjust enrichment against them just as futile as against IPS.

Payout Systems, Inc., respectfully requests that this Court deny Plaintiffs' Motion to Amend the Fourth Consolidated Amended Complaint.

Dated: July 2, 2020

Respectfully submitted,
International Payout Systems, Inc.,
By its attorneys,

*/s/ Diana E. Van Leeuwen*

Justin P. O'Brien (BBO # 658765)
Anthony E. Fuller (BBO # 633246)
Julia McLetchie (BBO # 671106)
Diana Van Leeuwen (BBO # 703058)
Hogan Lovells US LLP
125 High Street, Suite 2010
Boston, MA 02110
justin.obrien@hoganlovells.com
anthony.fuller@hoganlovells.com
julia.mcletchie@hoganlovells.com
diana.vanleeuwen@hoganlovells.com
(617) 371-1000
(617) 371-1037 (facsimile)

**CERTIFICATE OF SERVICE**

      I hereby certify that on July 2, 2020, I caused the foregoing document to be electronically filed with the Clerk of Court using the Case Management/Electronic Case Filing (CM/ECF) system, which will send a notice of electronic filing to all parties within the CM/ECF system in the above-captioned matter. Paper copies will be sent to those indicated as nonregistered participants.

      */s/ Diana E. Van Leeuwen*
      Diana E. Van Leeuwen