## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____
                                                    )
**IN RE: TELEXFREE SECURITIES**          )
**LITIGATION**                                   )            **CIVIL ACTION**
                                                    )            **NO.  4:14-md-02566-TSH**
                                                    )
                                                    )
_____ )


### ORDER AND MEMORANDUM ON PLAINTIFFS' MOTION TO AMEND (Docket No. 983)

**December 6, 2021**

**HILLMAN, D.J.**

The plaintiffs in the TelexFree multidistrict litigation move to amend their complaint. (Docket No. 983).  They seek to add approximately two dozen new defendants, revive claims against five dismissed defendants, add a new claim with respect to six current defendants, and add a new named plaintiff.  For the following reasons, the Court ***grants in part*** and ***denies in part*** the motion.

### Background

TelexFree was a pyramid scheme that operated from February 2012 to April 2014 and involved approximately two million participants worldwide, nearly a million of whom suffered a net financial loss.  Plaintiffs filed actions in federal district courts across the United States seeking to recover their losses against dozens of defendants, ranging from the operators of the scheme to their advisors, payment processors, and banks.  In October 2014, the Judicial Panel on Multidistrict Litigation joined the actions into a multidistrict litigation and ordered transfer of all actions to the District of Massachusetts for coordinated pretrial proceedings.

In March 2015, the plaintiffs filed their first consolidated complaint. That same month, the Court stayed discovery in favor of criminal proceedings.[1] In April 2015, the plaintiffs filed, as of right, an amended complaint. *See* Fed. R. Civ. P. 15(a)(1). In June 2015, many of the defendants moved to dismiss. In September 2015, the plaintiffs moved to amend to file a third consolidated complaint, an effort to add as defendants a putative class of individuals involved in the scheme who gained, as opposed to lost, money; the Court denied the motion. In April 2017, the plaintiffs moved to amend to file a fourth consolidated complaint to add nineteen new defendants; the Court granted the motion. In January 2019, the Court lifted the stay on discovery and addressed the defendants' motions to dismiss, granting some and denying others.

In September 2019, the Court entered a scheduling order, setting a November 2019 deadline for amended pleadings. On the day amended pleadings were due, the plaintiffs filed a fifth consolidated complaint, adding another nineteen new defendants. Simultaneously, the plaintiffs moved for reconsideration of the dismissal orders of defendants Bank of America, N.A. ("Bank of America"), TD Bank, N.A. ("TD Bank"), Wells Fargo Bank, N.A. ("Wells Fargo Bank"), and PricewaterhouseCoopers, LLP ("PwC"), each of which had been dismissed for failure to state a claim, and defendant Global Payroll Gateway, Inc. ("GPG"), which had been dismissed for lack of personal jurisdiction. The plaintiffs filed a corrected fifth consolidated complaint on December 4, 2019. In March 2020, the Court denied the motion for reconsideration as to defendants Bank of America, TD Bank, Wells Fargo Bank, and PwC. As to defendant GPG, the Court reserved ruling on the motion and granted the plaintiffs an opportunity to conduct jurisdictional discovery.

---

[1] James Merrill and Carlos Wanzeler, the founders of the scheme, were charged with multiple counts of wire fraud. Merrill pleaded guilty; in March 2017, he was sentenced to a six-year term of incarceration. Wanzeler fled the country.

The Court also struck the fifth consolidated complaint, noting plaintiffs' counsel's failure to follow procedural rules.  *See* Local Rule 15.1 (a party moving to amend by adding a new party must serve the new party at least fourteen days in advance of filing the motion).  On April 3, 2020, the plaintiffs moved for clarification of the order, requesting leave to file an additional motion to amend.  The following week, the Court granted the motion, stating that the plaintiffs could move for leave to amend to file a fifth consolidated complaint by April 30, 2020.  The Court later extended the deadline to May 14, 2020.  The plaintiffs filed their motion, which is now before the Court, on May 19, 2020.  As mentioned, the proposed amended complaint seeks, among other things, to add two dozen new defendants, revive claims against dismissed defendants Bank of America, TD Bank, Wells Fargo Bank, PwC, and GPG, and add a new claim with respect to six defendants.

## **Discussion**

### *1. Legal Standard*

Under the Federal Rules of Civil Procedure, a plaintiff may amend her complaint once as of right.  *See* Fed. R. Civ. P. 15(a)(1).  Otherwise, proposed amendments require the defendant's consent or the court's leave.  *See* Fed. R. Civ. P. 15(a)(2).  Courts must freely grant leave to amend unless the amendment "would be futile, or reward, *inter alia*, undue or intended delay."  *See Resolution Trust Corp. v. Gold*, 30 F.3d 251, 253 (1st Cir. 1994); *Northeast Federal Credit Union v. Neves*, 837 F.2d 531, 534 (1st Cir. 1988).  An amendment is futile if (at this stage of litigation) it fails to state a claim upon which relief can be granted.  *See Parker v. Landry*, 935 F.3d 9, 13 (1st Cir. 2019); *Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996).  "Regardless of the context, the longer a plaintiff delays, the more likely the motion to amend will be denied, as protracted delay, with its attendant burdens on the opponent and the court, is itself a sufficient

reason for the court to withhold permission to amend." *Steir v. Girl Scouts of the USA*, 383 F.3d 7, 12 (1st Cir. 2004).

The permissive "freely given" standard gives way to a heightened "good cause" standard when a court enters a scheduling order setting a deadline for motions to amend, and the plaintiff misses that deadline. *See Miceli v. JetBlue Airways Corp.*, 914 F.3d 73, 86 (1st Cir. 2019); Fed. R. Civ. P. 16(b)(4). This heightened standard "preserves the integrity and effectiveness of Rule 16(b) scheduling orders." *O'Connell v. Hyatt Hotels of P.R.*, 357 F.3d 152, 155 (1st Cir. 2004). "The 'good cause' standard focuses on both the conduct of the moving party and the prejudice, if any, to the nonmovant." *Miceli*, 914 F.3d at 86. The moving party's diligence, or lack thereof, is the primary consideration. *Id.* A motion to amend may be denied for a lengthy and unexplained delay, especially where the information supporting the amendment was known, or should have been known, to the moving party earlier. *See id.*; *Cruz v. Bristol-Myers Squibb Co., P.R., Inc.*, 699 F.3d 563, 570 (1st Cir. 2012); *Trans-Spec Trick Serv., Inc. v. Caterpillar Inc.*, 524 F.3d 315, 327 (1st Cir. 2008); *O'Connell*, 357 F.3d at 155-56. A mistake by counsel does not itself establish good cause. *See O'Connell*, 357 F.3d at 155. Ultimately, the decision whether to allow a motion to amend is within the court's discretion. *D'Agostino v. EV3, Inc.*, 802 F.3d 188, 191-92 (1st Cir. 2015) (appellate court deferring "in substantial measure to the trail court's hands-on judgment").

Here, the "freely given" standard applies. While the Court's initial scheduling order set the deadline to file motions to amend by November 29, 2019, the Court later permitted the plaintiffs to file an additional motion to amend by April 30, 2020, which the Court further extended to May 14, 2020. On May 14, 2020, the plaintiffs filed a motion for leave to exceed the page limit on their memorandum in support of their motion to amend, attaching the motion to amend and the proposed complaint. On May 19, 2020, the plaintiffs formally filed their motion to amend. The

4

Court construes the plaintiffs' filings with respect to the instant motion as meeting the applicable deadlines set by the Court.

## 2. New Defendants

### a. Entities Related to Current Defendants

#### i. Estate of Babener

Defendant Jeffrey Babener died in March 2020.  Accordingly, the proposed complaint seeks to replace him with his estate, the Estate of Jeffrey A. Babener.  The Estate argues that the amendment would be futile because the plaintiffs' claims against Babener do not survive his death under Massachusetts law.  (Docket No. 1003 at 1).  The proposed complaint asserts eight claims against the Estate: (1) violations of M. G. L. c. 93, §§ 12 and 69, (2) violations of M. G. L. c. 93A, §§ 2 and 11, (3) civil conspiracy, (4) negligent misrepresentation, (5) violations of M. G. L. c. 110A, § 410(b), (6) fraud, (7) tortious adding and abetting, and (8) unjust enrichment.

The plaintiffs argue that Oregon law, rather than Massachusetts law, applies.  (Docket No. 1065 at 1).  As an initial matter, *see Levin v. Delva Brothers, Inc.*, 459 F.3d 68, 73 (1st Cir. 2006), there is an actual conflict between the substantive law of Oregon and Massachusetts.  In Oregon, all causes of action survive against the personal representative of a deceased defendant.  *See* ORS 115.305.  In Massachusetts, only certain causes of action survive, whether by statute or common law.  *See* M. G. L. c. 228, § 1; *Kraft Power Corp. v. Merrill*, 981 N.E.2d 671, 679 (Mass. 2013).

The proposed complaint, seeking to add Estate of Babener as a party, was filed directly in the multidistrict litigation.[2]  *See Axline v. 3M Co.*, 2018 WL 4300535, at *2 (D. Minn. Sept. 10, 2018).  Although the multidistrict litigation prevented the plaintiffs from filing elsewhere, there is

---

[2] Babener was originally added as a party in this case in 2017 through the fourth consolidated complaint.  (Docket No. 503).

no indication in the complaint that the plaintiffs desired to do so.  *Cf. In re Fresenius Granuflo/NaturaLyte Dialysate Prods. Liab. Litig.*, 76 F. Supp. 3d 294, 304 (D. Mass. 2015). Indeed, the complaint alleges that jurisdiction and venue in Massachusetts is proper.  *See Wahl v. General Elec. Co.*, 786 F.3d 491, 497 (6th Cir. 2015).   Accordingly, the Court will apply Massachusetts choice-of-law principles.  *See In re Volkswagen Audi Warranty Extension Litig.*, 692 F.3d 4, 17 (1st Cir. 2012).

Massachusetts courts apply a "functional approach to choice of law," *Levin*, 459 F.3d at 74 (quoting *Bushkin Assocs., Inc. v. Raytheon Co.*, 473 N.E.2d 662, 668 (Mass. 1985)), guided by the Restatement (Second) of Conflict of Laws (1971), *see McKee v. Cosby*, 874 F.3d 54, 60 (1st Cir. 2017).  Massachusetts courts look to Section 145 of the Restatement for guidance concerning tort actions.  *See Cosme v. Whitin Mach. Works, Inc.*, 632 N.E.2d 832, 834 (Mass. 1994).  Section 145 provides that the law of the state with the most significant relationship to the occurrence of the tort or parties governs.  *See* Restatement (Second) of Conflicts § 145.  Comment d of that section acknowledges, however, that courts are not bound to decide all issues under the local law of a single state.  *See id.*; *see also Lou v. Otis Elevator Co.*, 933 N.E.2d 140. 151 n.27 (Mass. App. Ct. 2010).  Indeed, comment d, specifically addressing the issue of survival, notes that the state of the domicile of the parties ordinarily has a greater interest in the issue of survival than the state where the tortious conduct or injury occurred.  *See* Restatement (Second) of Conflicts § 145, comment d. Similarly, comment c to Section 167, which concerns survival of tort actions generally, acknowledges that, given the "growing realization that all issues in tort need not be governed by a single law," the state of the plaintiff and defendant's domicile usually has "the greatest interest in the issue of survival and . . . its local law should be applied."  *See id.* at § 167, comment c. Massachusetts courts appear to accept the principle that laws of different states may apply to

different issues within a single case.  *See Robidoux v. Muholland*, 642 F.3d 20, 26 (1st Cir. 2011); *Choate, Hall & Stewart v. SCA Servs., Inc.*, 392 N.E.2d 1045, 1049 (Mass. 1979); *Pevoski v. Pevoski*, 358 N.E.2d 416, 417 (Mass. 1976); *Lou*, 933 N.E.2d at 151 n.27.

Here, with respect to the issue of survivability of claims, the Court finds that the state of Oregon holds the most significant relationship, and thus, its law should be applied.  Most importantly, Babener lived, worked, and died in Oregon, and the Estate was created and is administered there.  Although the plaintiffs are domiciled in Massachusetts, the Commonwealth's interest in the non-survival of certain tort actions -- an interest arguably "obscured in antiquity," *Harrison v. Loyal Protective Life Ins. Co.*, 396 N.E.2d 987, 990 (Mass. 1979), which shields estates from liability -- is not furthered when applied to an estate created and administered in Oregon.  *See* Restatement (Second) of Conflicts § 167, Illustration & Reporter's Note. Accordingly, Oregon law applies.  Under Oregon law, the plaintiffs' claims survive Babener's death.  *See* ORS 115.305.  Thus, the motion to amend with respect to Estate of Babener is granted.

### ii.  *AlliedWallet, Inc.*

The proposed complaint seeks to add AlliedWallet, Inc. as a new defendant.  The proposed complaint alleges that AlliedWallet, Inc., together with current defendant Allied Wallet, Ltd., performed essential payment processing services for TelexFree beginning in August 2013, knowing that the scheme was unlawful.  (5CAC at ¶ 845-46).  Without opposition, the Court grants the motion to amend with respect to AlliedWallet, Inc.  *See Minggia v. Worcester County House of Correction*, 2013 WL 357805, at *2 (D. Mass. Jan. 28, 2013).

### b.  *Employees of Current Defendants*

### i.  *Allied Wallet Employees*

The proposed complaint seeks to add as new defendants three employees of current defendant Allied Wallet: Ahmad Khawaja, Mohammad Diab, and Amy Rountree. (5CAC at ¶ 95-98). The proposed complaint alleges that Khawaja, Diab, and Rountree provided payment processing services to TelexFree in April 2014, despite knowledge of the illegal nature of the TelexFree scheme. (*Id.* at ¶¶ 856-57). The proposed complaint also alleges that Diab and Rountree made transfers from TelexFree corporate accounts to private accounts held by TelexFree founders. (*Id.* at ¶ 855).

The plaintiffs maintain that they learned of Khawaja, Diab, and Rountree's specific involvement in the scheme from stipulated orders in an FTC action that were announced in the summer of 2019. (Docket No. 1067 at 33). Khawaja, Diab, and Rountree argue that the allegations in the stipulated orders consist of unproven allegations, not newly discovered evidence; that amendment would be prejudicial because they already have satisfied judgments in the FTC action; and that the plaintiffs misrepresent aspects of the FTC orders. (Docket No. 1004 at 2-3).

Because discovery in this case was stayed from March 2015 until January 2019, and the FTC settlements were not announced until June and July 2019, the plaintiffs credibly assert that they were not aware of these proposed defendants' specific involvement until recently. Although the proposed complaint was not filed until May 2020, the delay between learning of Khawaja, Diab, and Rountree's specific involvement and moving to amend was justified. The plaintiffs informed the Court in March 2019, after the stay was lifted (and before they learned of these proposed defendants' specific involvement), that they planned to file one, substantial amended complaint, rather than numerous piecemeal amendments as new information was received. (Docket No. 715 at 9-10). That course of action, mindful of the Court's time and resources, was prudent.

Khawaja, Diab, and Rountree's arguments to the contrary lack merit.  First, they cite to no authority for the proposition that new evidence must be proven, rather than alleged, to justify amendment of a complaint.  Second, they suffer no *undue* prejudice, *see Pendly v. Komori Printing Machinery Cor., Ltd.*, 1990 WL 17152, at *3 (D.R.I. Feb. 8, 1990), from being subject to liability for different claims from different parties arising out of the same or similar underlying facts. Indeed, they do not assert res judicata from the FTC settlements.  Finally, although they take issue with the plaintiffs' characterization of the FTC orders in their memorandum in support of their motion to amend, the plaintiffs accurately state in their proposed complaint that Khawaja, along with four other entities, agreed to pay over $110 million to settle the FTC action.  (5CAC at ¶ 96). Accordingly, the motion to amend with respect to Khawaja, Diab, and Rountree is granted.

### ii.  IPS Employees

The proposed complaint seeks to add as new defendants two employees of current defendant International Payout Systems, Inc. ("IPS"): Edwin Gonzalez and Natalia Yenatska. (5CAC at ¶¶ 81-82).  The proposed complaint alleges that Gonzalez and Yenatska provided payment processing services to TelexFree, despite knowledge of the scheme's illegality.  (*Id.* at ¶ 896).  According to the proposed complaint, Gonzalez introduced Craft, TelexFree's CFO, to a Bank of America employee, Kevin Staten, regarding opening a new account at the bank.  (*Id.* at ¶ 376).  Gonzalez told Staten that because IPS was handling TelexFree's payment processing, there would be lower financial risk for Bank of America.  (*Id.*).  Gonzalez also helped shift TelexFree's credit card processing oversees and outside the reach of United States regulators.  (*Id.* at ¶¶ 882, 884).  Meanwhile, after an article on a news website accused TelexFree of being a Ponzi scheme, Yenatska volunteered to provide a written response; a public statement issued by IPS later said that IPS had "done a complete due diligence of TelexFree" and "confirmed the product as

compliant with all US laws." (*Id.* at ¶¶ 866, 871).  Yenatska also provided TelexFree with advice on branding and marketing, offering to divert unaccounted-for investor funds for TelexFree branding expenses.  (*Id.* at ¶ 872-74).

Gonzalez and Yenatska argue that under Local Rule 15.1(a), the proposed amendment is late because the plaintiffs should have been aware of their identities years ago.  (Docket No. 1033 at 6-7).  They point to allegations in previous iterations of the complaint, which include mentions of, *inter alia*, the statement issued by IPS in response to the news article accusing TelexFree of being a Ponzi scheme.  (*Id.* at 6).  The plaintiffs contend that, while they previously knew that Gonzalez and Yenatska were officers of IPS, they did not know of their specific involvement in the scheme until the end of 2019 or early 2020, based on interviews with Craft and documents received from other settled defendants and the bankruptcy trustee.  (Docket No. 1067 at 35).  Plaintiffs' counsel avers that the bankruptcy trustee's production in October 2019 was the first time the plaintiffs received IPS documents, and that those documents, along with information from Craft, provided much of the support of the allegations against Gonzalez and Yenatska.  (Docket No. 1068 at ¶ 17).  Craft's affidavits, attached to the motion to amend, demonstrate that the information about Gonzalez's efforts to help TelexFree reopen an account at Bank of America, for example, indeed came from Craft.  (Docket No. 984-6 at ¶¶ 79-84).

The Court finds that the plaintiffs delay in moving to add Gonzalez and Yenatska to the litigation was justified.  Yes, the plaintiffs have long alleged that IPS was involved in the scheme, but discovery was stayed from March 2015 until January 2019.  The Court has no reason to suspect that the plaintiffs should have learned before the stay was lifted that, for example, Yenatska, specifically, volunteered to write the public statement about TelexFree's Ponzi scheme allegations, or that Gonzalez, specifically, helped TelexFree obtain additional financial services, in the United

States and abroad.   Moreover, the plaintiffs' course of action in filing one comprehensive amendment, rather than piecemeal amendments (perhaps in strict compliance with Local Rule 15.1), was prudent, given the complexity of this litigation.   Although the Court struck the plaintiffs' procedurally defective November 2019 complaint, the Court subsequently allowed the plaintiffs to file the instant motion by May 2020.   Finally, adding Gonzalez and Yenatska to the litigation will not prejudice IPS.   While adding parties to the litigation may prolong the litigation, amendment is warranted under the circumstances.   Accordingly, the motion with respect to Gonzalez and Yenatska is granted.

### iii.  Sheffield Group Employees

The proposed complaint seeks to add as new defendants five employees of current defendant The Sheffield Group, Inc. (collectively, "Sheffield Employees").   The Sheffield Employees contend that, under Local Rule 15.1(a) and Fed. R. Civ. P. 15 and 16, the plaintiffs' delay in moving to amend warrants denying the motion.   (Docket No. 1032 at 1-5).   Indeed, the plaintiffs provide little explanation for the delay.   *See Martins v. 3PD, Inc.*, 2013 WL 1320454, at *4 (D. Mass. Mar. 28, 2013).   Plaintiffs' counsel avers only that prior to November 2019, "we did not feel that we knew enough about the Sheffield Employees' individual roles and culpability." (Docket No. 1068 at ¶ 18).   Unlike with the proposed defendant employees of Allied Wallet and IPS (see above), plaintiffs' counsel has not pointed any source of new information, such as a relatively recent settlement or document production, that gives the Court reason to find the plaintiffs' conduct not dilatory.   In fact, the Sheffield Employees posit that the allegations against them are based on communications from Babener, (Docket No. 1032 at 3), which were produced to plaintiffs' counsel in January 2018, (Docket No. 984-4 at ¶ 58).   The plaintiffs' lengthy, unexplained delay in filing the amendment is reason alone to deny the motion.   *See In re*

11

*Lombardo*, 755 F.3d 1, 3-4 (1st Cir. 2014); *United States ex rel. Hagerty v. Cyberonics, Inc.*, 146 F. Supp. 3d 337, 343 (D. Mass. 2015).

Moreover, while the proposed complaint contains specific allegations about two of the employees' (Michael Sheffield and Garvin DeShazer) involvement in the scheme, (5CAC at ¶¶ 1151, 1158, 1160, 1167), it contains little to nothing about the remaining three (Darvene Peruzzini, Debra Stenmoe, and Kenneth Lind).   According to the proposed complaint, Lind discussed TelexFree's legal issues with Babener and others, (*id.* at ¶ 1142), Stenmoe sent an email describing the scope of Sheffield Group's services, (*id.* at ¶ 1153), and Peruzzini was copied on emails with others.   The two claims asserted against Lind, Stenmoe, and Peruzzini -- unjust enrichment and tortious aiding and abetting -- are futile.   *See Parker*, 935 F.3d at 13.   As to unjust enrichment, the proposed complaint does not plausibly allege that the plaintiffs, rather than TelexFree, conferred a benefit on Lind, Stenmoe, or Peruzzini.   *See Metro. Life Ins. Co. v. Cotter*, 984 N.E.2d 835, 850 (Mass. 2013).   As to tortious aiding and abetting, there are no specific allegations that Lind, Stenmoe, or Peruzzini actively participated in or substantially assisted in TelexFree's fraud.   *See Go-Best*, 972 N.E.2d at 438.   This provides additional support for denying the motion as to Lind, Stenmoe, and Peruzzini.   Accordingly, the motion with respect to the Sheffield Employees is denied.

### c.  Entities Related to Dismissed Defendants

#### i.  Banc of America Merchant Services

The proposed complaint seeks to add as a new defendant Banc of America Merchant Services, LLC ("BAMS"), a joint venture between dismissed defendant Bank of America and another corporation. (5CAC at ¶¶ 67-68).  The proposed complaint alleges that in February 2012, TelexFree contacted BAMS for payment processing services.  (*Id.* at ¶¶ 305-06).  BAMS, before

opening an account for TelexFree, reviewed TelexFree's website, which described the scheme's compensation model.  (*Id.* at ¶ 308).  BAMS began providing payment processing services to TelexFree on February 19, 2012.  (*Id.* at ¶ 306).  On May 31, 2012, BAMS suspended the account due to excessive chargebacks.  (*Id.* at ¶ 313).  A BAMS representative contacted TelexFree and requested documentation to explain the high number of chargebacks, transactions in identical amounts, and transactions originating from outside the United States.  (*Id.* at ¶ 314-15).  After TelexFree produced sample invoices, BAMS lifted the suspension.  (*Id.* at ¶¶ 316, 318).  Less than a month later, on June 26, 2012, BAMS notified TelexFree that the chargeback ratio for the account needed to be reduced; otherwise, BAMS "may be compelled to terminate" the account.  (*Id.* at ¶ 319).  BAMS also notified TelexFree that, due to the increased level of risk, it would create a reserve account of funds from TelexFree's deposits.  (*Id.* at ¶ 320).  On July 26, 2012, after the high rate of chargebacks continued, BAMS advised TelexFree that it was suspending the account.  (*Id.* at ¶ 322).  On August 6, 2012, BAMS notified TelexFree that it was terminating the account, effective August 27, 2012.  (*Id.* at ¶ 325).  In February 2013, BAMS allowed TelexFree to transfer the funds from the terminated account to an account at Bank of America.  (*Id.* at ¶ 327).

BAMS argues that the proposed amendment is futile.  (Docket No. 1008 at 13).  The proposed complaint asserts two claims against BAMS: tortious aiding and abetting, and unjust enrichment.  To assert a plausible claim, *see Glassman*, 90 F.3d at 623, for tortious aiding and abetting, the plaintiffs must allege that BAMS had actual knowledge of and actively participated in or substantially assisted the commission of an underlying tort, *see Massachusetts Port Authority v. Turo Inc.*, 166 N.E.3d 972, 981 (Mass. 2021).  The facts must give rise to a strong inference of actual knowledge.  *See Mansor v. JPMorgan Chase Bank, N.A.*, 183 F. Supp. 3d 250, 264 (D. Mass. 2016).

Here, the alleged facts do not support an inference of actual knowledge.  BAMS opened and closed an account for TelexFree in 2012, well before the scheme was shut down in Brazil. Even accepting as true that BAMS reviewed the TelexFree website before opening the account and, after opening the account, expressed concerns over the high volume of chargebacks, BAMS's suspicion or constructive knowledge of fraudulent activity does not equate to actual knowledge. *See Go-Best*, 972 N.E.2d at 432-33; *In re Agape Litig.*, 681 F. Supp. 2d 352, 362 (E.D.N.Y. 2010); *Nathel v. Seigal*, 592 F. Supp. 2d 452, 469 (S.D.N.Y. 2008).

To assert a plausible claim for unjust enrichment, the plaintiffs must allege that BAMS unjustly received a benefit at the plaintiffs' expense.  *See Keller v. O'Brien*, 638 N.E.2d 1026, 1029 (Mass. 1997).  The plaintiffs do not allege what, if any, benefit BAMS received from processing payments for TelexFree, or how that benefit was unjust or at the plaintiffs' expense. Both asserted claims fail to plausibly state a claim; accordingly, the amendment would be futile. The motion to amend with respect to BAMS is denied.

### d.  Employees of Dismissed Defendants

#### i.  Bank of America Employee

The proposed complaint seeks to add Kevin Staten, an employee of dismissed defendant Bank of America, as a new defendant.  (5CAC at ¶ 69).  According to the proposed complaint, Gonzalez (of IPS) introduced Craft, TelexFree's CFO, to Staten regarding opening a TelexFree account in late 2013.  (*Id.* at ¶ 376).  Gonzalez told Staten that the financial risk for Bank of America would be low.  (*Id.*).  Craft then had several conversations with Staten in which they discussed TelexFree being shuttered in Brazil for being a pyramid scheme.  (*Id.* at ¶ 375).  Staten expressed concern that TelexFree's operations were not legal and indicated that he was aware that Bank of America had previously closed TelexFree accounts.  (*Id.* at ¶ 377).  Staten nonetheless

agreed to approve TelexFree's application for an additional account and arranged for it to be opened.  (*Id.* at ¶ 378).

Staten opposes the motion, contending that it is too late, in bad faith, and unduly prejudicial.  (Docket No. 1011 at 1-2, 9).  As evidence of dilatory conduct, Staten points to the plaintiffs' attempted amendments in November and December 2019, both of which identified Staten in factual allegations but failed to name him as a defendant.  (*Id.* at 2-3).  The plaintiffs assert that they did not learn the full extent of Staten's involvement until 2020.  (Docket No. 1067 at 31).  Plaintiffs' counsel avers that it was not until after the November 2019 complaint was filed that Craft revealed Gonzalez's alleged assurances to Staten concerning the risk TelexFree posed to Bank of America, or Staten's role in arranging for the new TelexFree account to be opened. (Docket No. 1068 at ¶ 13).  Indeed, the factual support for adding Staten as a defendant appears to have come from Craft, (Docket No. 984-6 at ¶¶ 70-73, 78, 83-85), information that -- whether acquired before or after the attempted amendments in 2019 -- the plaintiffs could not have used until their settlement with Craft was finalized in September 2019.  (Docket No. 984-4 at ¶ 66). Although the Court had set the original deadline for amended pleadings for November 29, 2019, and the plaintiffs did not name Staten as a defendant in their attempt to meet that deadline, the Court ultimately permitted the plaintiffs to file the instant motion by May 2020.  The Court finds that the instant motion with respect to Staten is not too late or made in bad faith.

Moreover, Staten will not face undue prejudice from being added to the action.  To be sure, Staten will now have to engage in the litigation, but that alone is not unfair prejudice.  *See Pendly*, 1990 WL 17152, at *3.  While the case has been pending for over seven years, discovery has been stayed for most of that time.  Indeed, depositions are yet to begin.  *Cf. Wolf v. Reliance Standard Life Ins. Co.*, 71 F.3d 444, 450 (1st Cir. 1995) (affirming denial of motion to amend where, days

before trial, it would have required parties to conduct additional discovery).  Accordingly, the motion with respect to Staten is granted.

### ii.  TD Bank Employee

The proposed complaint seeks to add Kathryn Ashman, an employee of dismissed defendant TD Bank, as a new defendant.  (5CAC at ¶ 65).[3]  The plaintiffs offer no explanation for why only now, years after filing suit, they seek to add Ashman to the litigation, when they had named her employer as a defendant from the very beginning.  Indeed, the plaintiffs do not indicate when or how they learned of Ashman's alleged involvement, such that the Court could find their conduct not dilatory.  The plaintiffs lengthy, unexplained delay is reason alone to deny the motion. *See Kader v. Sarepta Therapeutics, Inc*., 887 F.3d 48, 61 (1st Cir. 2018); *In re Lombardo*, 755 F.3d at 3; *Hagerty*, 146 F. Supp. 3d at 343.  Thus, the motion with respect to Ashman is denied.

### iii.  Wells Fargo Bank Employee

The proposed complaint seeks to add Michael Montalvo, an employee of dismissed defendant Wells Fargo Bank, as a new defendant.  (5CAC at ¶ 71).  The proposed complaint alleges that in January 2014, Montalvo, after conducting due diligence on TelexFree and one of its founders, learned that TelexFree's Brazilian operations were a pyramid scheme that had been shuttered.  (*Id.* at ¶¶ 433, 451, 458).  The proposed complaint alleges that, nonetheless, in February 2014, Montalvo wrote a letter of recommendation on behalf of TelexFree and its founder to help TelexFree open bank accounts outside the United States and defend itself in an investigation by the Massachusetts Securities Division.  (*Id.* at ¶ 457).  The proposed complaint further alleges that Montalvo helped TelexFree hide assets.  (*Id.* at ¶ 436).

---

[3] The proposed complaint refers to Ashman as Kathryn Coffin.

Montalvo argues that the plaintiffs' motion should be denied because it is too late under Local Rule 15.1(a) and Fed. R. Civ. P. 15, and because the amendment would be futile due to the Court's lack of personal jurisdiction over him. (Docket No. 1019 at 6). As to the delay, the plaintiffs assert that they did not know of the extent of Montalvo's participation in the scheme until they analyzed information received from an October 2019 document production. (Docket No. 1067 at 27). Plaintiffs' counsel avers that the October 2019 production contained emails demonstrating Montalvo's efforts to transfer funds between TelexFree accounts, both inside and outside the United States. (Docket No. 1068 at ¶ 9). While the plaintiffs have had the letter of recommendation Montalvo wrote on behalf of TelexFree since at least April 2018, (Docket No. 1019-2 at 9), the Court finds the plaintiffs' delay in adding Montalvo, based on information more recently received and reviewed, reasonable. Indeed, that the plaintiffs have discovered letters of recommendation written by other Wells Fargo Bank employees, (*See* Docket No. 651-1 at 155), whom they do not seek to add as defendants, is indication that the letter of recommendation is not the sole basis for the plaintiffs' proposed addition of Montalvo.

In any event, a court may deny a motion to amend as futile for lack of personal jurisdiction. *See Spiegel v. Schulmann*, 604 F.3d 72, 78 (2d Cir. 2010); *CR Associates L.P. v. Sparefoot, Inc.*, 2018 WL 988056, at *2 (D. Mass. Feb. 20, 2018); *Theodore v. Hacker Boat Co.*, 2010 WL 1930063, at *2 (D. Mass. May 12, 2010). Montalvo argues that the Court lacks personal jurisdiction over him because he lives in Florida and has never been to Massachusetts. (Docket No. 1019-1 at ¶¶ 1, 7). He avers that he worked at Wells Fargo Bank in Florida and, while doing so, did not solicit any clients in Massachusetts. (*Id.* at ¶ 8). He avers that he did not solicit TelexFree in Massachusetts, and that he did not send any documents related to TelexFree to Massachusetts. (*Id.* at ¶ 10). Contrary to allegations in the proposed complaint, moreover, he

avers that he did not learn of an investigation by the Massachusetts Securities Division until weeks after he prepared the letter of recommendation for TelexFree, and that he did not work closely with current defendant Mauricio Cardenas, an employee of Wells Fargo Advisors, LLC.  (*Id.* at ¶ 9, 11).  Finally, he avers that he received no compensation from Wells Fargo Bank due to anything related to TelexFree.  (*Id.* at ¶ 10).

To survive a motion to dismiss for lack of personal jurisdiction, and thus, for present purposes, to convince the Court that the motion to amend would not be futile, a plaintiff "ordinarily cannot rest upon the pleadings but is obliged to adduce evidence of specific facts" that support jurisdiction.  *Foster-Miller, Inc. v. Babcock & Wilcox Canada*, 46 F.3d 138, 145 (1st Cir. 1995). Here, the plaintiffs do little to respond to Montalvo's assertion of lack of personal jurisdiction; they merely note their disagreement and ask the Court for jurisdictional discovery.  (Docket No. 1067 at 27-28).

A federal court exercising diversity jurisdiction -- even through consolidated multidistrict proceedings -- is the "functional equivalent of a state court sitting in the forum state."  *Mojtabai v. Mojtabai*, 4 F.4th 77, 85 (1st Cir. 2021); *see also In re WellRx Marketing and Sales Practices Litig.*, 2010 WL 3652457, at *1 (D. Mass. Sept. 15, 2010).  Where, as here, a plaintiff files a complaint directly in the multidistrict litigation, the Court's task is to determine whether personal jurisdiction is proper in the court's home state.  *See In re Takata Airbag Products Liab. Litig.*, 396 F. Supp. 3d 1101, 1137 (S.D. Fla. 2019).  Here, beyond federal constitutional requirements, personal jurisdiction must comport with the Massachusetts long-arm statute, M. G. L. c. 223A, § 3, which "imposes specific constraints on the exercise of personal jurisdiction that are not coextensive with the parameters of due process."  *SCVNGR, Inc. v. Punchh, Inc.*, 85 N.E.3d 50,

52 (Mass. 2017).  Indeed, under the Massachusetts long-arm statute, a court may exercise personal

jurisdiction over a defendant only if the action arises from the defendant's:

> (a) transacting any business in this commonwealth;
> (b) contracting to supply services or things in this commonwealth;
> (c) causing tortious injury by an act or omission in this commonwealth;
> (d) causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth; [or]
> (e) having an interest in, using or possessing real property in this commonwealth

M. G. L. c. 223A, § 3.  On this record, the Court lacks personal jurisdiction over Montalvo.  All

of Montalvo's work relative to TelexFree was done in Florida.  The proposed complaint connects

Montalvo to Massachusetts only insofar as it alleges that he wrote a letter of recommendation for

TelexFree to use to defend itself in an investigation in Massachusetts.  Montalvo denies knowing

about the investigation at that time, however, and the plaintiffs point to no specific fact to rebut

this denial.  *See Phillips v. Prairie Eye Center*, 530 F.3d 22, 26 (1st Cir. 2008).  Absent a greater

connection to Massachusetts, the Court lacks personal jurisdiction over him.

Jurisdictional discovery is not warranted.  A plaintiff requesting jurisdictional discovery

must "present facts to the court which show why jurisdiction would be found if discovery were

permitted."  *United States v. Swiss American Bank, Ltd.*, 274 F.3d 610, 626 (1st Cir. 2001).  The

plaintiffs have made no such showing.  Accordingly, their motion to amend with respect to

Montalvo is denied.

### iv.  PwC Employees

The proposed complaint seeks to add Richard Colabella and Jerry Puzey, employees of

dismissed defendant PwC, as new defendants.  (5CAC at ¶¶ 62-63).  The proposed complaint

alleges that TelexFree approached Colabella and Puzey in November 2013 for assistance with

international tax and regulatory matters.  (*Id.* at ¶ 1179).  At that time, Craft discussed with

Colabella that TelexFree had been shuttered in Brazil due to allegations that it was operating a pyramid scheme.  (*Id.* at ¶ 1180).  When TelexFree formally retained PwC in January 2014, Colabella and Puzey were aware that TelexFree sought assistance relocating funds outside the reach of United States regulators.  (*Id.* at ¶ 1185).  Colabella and Puzey recommended shifting funds and operations to countries with lax tax regulations and favorable MLM laws, which TelexFree did.  (*Id.* at ¶ 1187-88, 1195-96).  Colabella and Puzey also worked to limit the information TelexFree shared with Massachusetts regulators.  (*Id.* at ¶ 1209).

Colabella and Puzey argue that the plaintiffs' motion is untimely under Local Rule 15.1 and the Federal Rules of Civil Procedure.  (Docket No. 1007 at 5-6).  They assert that the plaintiffs have known their identities -- and their involvement with TelexFree -- for years.  (*Id.* at 8-11).  For instance, even putting aside information learned from Craft and potentially subject to a confidentiality agreement, the plaintiffs received emails relevant to Colabella and Puzey's involvement with TelexFree from document productions from the bankruptcy trustee in August 2017 and Babener in January 2018.  (*Id.* at 10).

The plaintiffs contend that they did not have sufficient information on Colabella and Puzy to name them in a complaint until the Fall of 2019.  (Docket No. 1067 at 34).  Plaintiffs' counsel avers that information learned from Craft was subject to a confidentiality agreement until September 2019, that PwC's counsel insisted that PwC (and presumably Colabella and Puzey) did nothing more than provide (unacted on) advice on ordinary tax matters, and that additional relevant evidence was received in October 2019.  (Docket No. 1068 at ¶ 16).

The plaintiffs' attempt to justify the delay is unconvincing.  First, the plaintiffs apparently believed that they had sufficient information to name PwC as a defendant from the start.  The second consolidated complaint, filed in April 2015, for example, alleged that PwC provided

TelexFree with tax and financial advice, assistance developing international tax structures, preparation of unlawful 1099 tax forms, and assistance responding to information requests from Massachusetts regulators. (2CAC at ¶ 578-79, 584). The plaintiffs acknowledge that by May 2017, they knew that Colabella and Puzey assisted with 1099 tax forms and provided tax-related advice. (Docket No. 1007-2 at 1). Yet they waited until November 2019 to attempt to add them to the litigation.

Second, the pending motion to dismiss against PwC was not a bar to adding Colabella and Puzey in 2017. Indeed, the plaintiffs were permitted to file their fourth consolidated complaint in June 2017, the stated purpose of which was to add new defendants. The plaintiffs could have named Colabella and Puzey then, based on the same allegations they had lodged against PwC. That the Court ultimately granted PwC's motion to dismiss based on those allegations does not excuse the plaintiffs' responsibility to add parties to the suit in a timely manner.

Third, while additional, relevant information may have become available to the plaintiffs in September and October 2019, the plaintiffs fail to specify which information that was, and how it differed from information learned earlier -- in 2017 and 2018 -- through documents produced from the bankruptcy trustee and Babener. Accordingly, the plaintiffs have not demonstrated that they timely sought to add Colabella and Puzey to the litigation. *See In re Lombardo*, 755 F.3d at 3; *Hagerty*, 146 F. Supp. 3d at 343; *Martins*, 2013 WL 1320454, at \*4; *Bean v. Bank of N.Y. Mellon*, 2012 WL 12055960, at \*3 (D. Mass. Sept. 18, 2012). The plaintiffs' motion with respect to Colabella and Puzey is denied.

### v. GPG Employee

The proposed complaint seeks to add Jayme Amirie, the owner and CEO of dismissed defendant GPG, as a new defendant. (5CAC at ¶ 79). The plaintiffs offer no explanation for why

only now, years after filing suit, they seek to add Amirie to the litigation, when they had named his company as a defendant from the very beginning.  Indeed, the plaintiffs do not indicate when or how they learned of Amirie's alleged involvement, such that the Court could find their conduct not dilatory.  The plaintiffs lengthy, unexplained delay is reason alone to deny the motion.  *See Kader*, 887 F.3d at 61; *In re Lombardo*, 755 F.3d at 3; *Hagerty*, 146 F. Supp. 3d at 343.  Thus, the motion with respect to Amirie is denied.

### e.  Other New Defendants

#### i.  Priority Payout and Telecom Logic

The proposed complaint seeks to add four new defendants who are not directly related to any of the current or dismissed defendants.  The proposed complaint alleges that Priority Payout, Corp. and its owners and operator Thomas Wells provided payment processing services to TelexFree in conjunction with current defendant Allied Wallet from January 2014 through April 2014.  (5CAC at ¶¶ 947-48, 965).  The complaint further alleges that Telecom Logic, LLC and its owner and chief software engineer Ryan Mitchell provided software services critical to the TelexFree scheme.  (*Id.* at ¶ 1212).  Without opposition, the Court grants the motion to amend with respect to Priority Payout, Corp., Thomas Wells, Telecom Logic, LLC, and Ryan Mitchell.  *See Minggia v. Worcester County House of Correction*, 2013 WL 357805, at *2 (D. Mass. Jan. 28, 2013).

#### ii.  PNC

PNC Bank, N.A. ("PNC") argues that it is a new defendant for purposes of this motion. PNC asserts that, although it was named in the fourth consolidated complaint, it was not properly added as a party by that complaint because the plaintiffs (1) did not provide pre-filing notice of

that complaint under Local Rule 15.1(b) and (2) did not timely effectuate service of that complaint under Fed. R. Civ. P. 4.  (Docket No. 1021 at 5).

PNC's argument with respect to Local Rule 15.1(b) is unavailing.  The Court, aware of the plaintiffs' noncompliance with the rule, (Docket No. 501 at 22), allowed the plaintiffs to file the amendment.  *See Crowley v. L.L. Bean, Inc.*, 361 F.3d 22, 25 (1st Cir. 2004) ("[A] district court may forgive a party's violation of a local rule."); *Air Line Pilots Ass'n v. Precision Valley Aviation, Inc.*, 26 F.3d 220, 224 (1st Cir. 1994) ("District courts enjoy broad latitude in administering local rules.").

PNC's argument with respect to Fed. R. Civ. P. 4 similarly lacks force.  While Fed. R. Civ. P. 4(m) requires a plaintiff to serve a defendant within ninety days of filing a complaint, the deadline may be extended for good cause when, *inter alia*, timely service is outside the plaintiff's control.  *See Benjamin v. Grosnick*, 999 F.2d 590, 592 (1st Cir. 1993).  Here, when the Court allowed the plaintiffs to file the fourth consolidated complaint, it ordered the plaintiffs not to serve any pleadings until after the Court lifted the stay.  (Docket No. 495).  Within one month of the Court lifting the stay, the plaintiffs, in February 2019, contacted the Court about issuing summonses.  (Docket No. 853 at ¶¶ 7-8).  The plaintiffs again requested that the Court issue summonses in March 2019 and January 2020.  (Docket No. 715 at 8; Docket No. 853).  The Court has not yet done so.  While, as PNC argues, the plaintiffs could have sought waiver of service from PNC, the Court declines to find that the plaintiffs violated Fed. R. Civ. P. 4(m) due to the Court's own delay.  *See Crispin-Taveras v. Municipality of Carolina*, 647 F.3d 1, 7 (1st Cir. 2011) (a district court may exercise discretion with respect to Fed. R. Civ. P. 4(m)).  Indeed, the Court discerns no prejudice to PNC emanating from the delay in service.  Because the plaintiffs already

named PNC in the fourth consolidated complaint,[4] their motion relative to the proposed fifth consolidated complaint does not seek to name PNC anew.  Accordingly, PNC's opposition to the motion is no bar to the plaintiffs' proposal.

### 3.  Dismissed Defendants

#### a.  Bank of America, TD Bank, Wells Fargo Bank, and PwC

##### i.  Background

Some context is helpful.  This multidistrict litigation was consolidated before the Court in October 2014.  (Docket No. 1).  In March 2015, the Court stayed discovery in favor of parallel criminal proceedings.  (Docket. No. 111).  At the end of March 2015, the plaintiffs filed their first consolidated complaint.  (Docket No. 121).  They amended the complaint in April 2015.  (Docket No. 141).  In June 2015, Bank of America, TD Bank, Wells Fargo Bank, and PwC moved to dismiss for failure to state a claim.  (Docket No. 166, 170-71, 183).  The plaintiffs opposed the motions, defending their complaint as sufficiently pled, but also requesting leave to amend should the motions be allowed.  (Docket No. 234).  Their request to amend, noting the early stage of litigation and stay on discovery, was more than a passing reference.  *Cf. Fisher v. Kadant, Inc.*, 589 F.3d 5050, 509-10 (1st Cir. 2009).  In 2016, the Court stayed all action in the case, pending resolution of certain matters in the TelexFree bankruptcy proceedings.  (Docket Nos. 414, 435).

During the stay, and while the motions to dismiss were pending, the plaintiffs twice moved to amend the complaint, each time to add new defendants, not to substantively change the allegations against defendants with pending motions to dismiss.  (Docket Nos. 252, 473).  The Court allowed one of those amendments.  (Docket No. 495).  In January 2019, the Court lifted the

---

[4] To the extent still necessary, and upon the plaintiffs' request, the Court will issue summonses for the fourth consolidated complaint.

stay and granted the motions to dismiss from Bank of America, TD Bank, and PwC.  (Docket No. 595, 602).  In February 2019, the Court granted the motion to dismiss from Wells Fargo Bank. (Docket No. 611).  The orders did not address the plaintiffs' request to amend.

At a scheduling conference in March 2019, the plaintiffs indicated their intention to file an amended complaint in light of the orders on the motions to dismiss, specifically referencing Bank of America, TD Bank, Wells Fargo Bank, and PwC.  (Docket No. 715 at 9-10, 36).  Plaintiffs' counsel proposed two ways of proceeding: (1) file an amendment quickly based on the dismissal orders, and then, as evidence came in from the stay on discovery being lifted, file piecemeal amendments adding new defendants, or (2) complete a thorough evaluation of the new evidence and "then amend the complaint in one fell swoop."  (*Id.* at 10).  Plaintiffs' counsel expressed a preference for the second option and estimated that it would take less than six months, cautioning that there were factors outside his control.  (*Id.* at 11).  The defendants expressed no objection.

Six months later, in September 2019, the Court issued a scheduling order, setting the deadline for amended pleadings on November 29, 2019.  (Docket No. 756).  On November 29, 2019, the plaintiffs filed a motion to reconsider and permit amendment; they also filed their proposed amendment directly onto the docket.  (Docket Nos. 779, 783).  Less than a week later, on December 4, 2019, the plaintiffs filed a "corrected" amendment, naming additional defendants, again directly onto the docket.  (Docket No. 790).  In March 2020, the Court struck the amendments from the docket and denied the motion to amend, noting that the plaintiffs had failed to follow Local Rule 15.1.  (Docket No. 890).  The Court also denied, without explanation, the plaintiffs' motion to reconsider the dismissal orders relative to Bank of America, TD Bank, Wells Fargo Bank, and PwC.  (Docket No. 898).

On March 27, 2020, the plaintiffs moved for entry of final judgment as to the dismissal orders so that they could seek appellate review.  (Docket No. 941).  Shortly thereafter, on April 4, 2020, the plaintiffs moved for clarification on whether the order denying the November 2019 motion to amend permitted them to file an additional motion to amend, compliant with Local Rule 15.1.  (Docket No. 943).  The Court clarified that the plaintiffs could file an additional motion to amend by May 14, 2020.  (Docket Nos. 947, 961).  The plaintiffs did so, technically on May 19, 2020.  (Docket No. 983).

### ii.  New Factual Allegations

As compared to the second consolidated complaint (the complaint on which the Court's 2019 dismissal orders were based), the proposed complaint alleges substantial new facts.

In the second consolidated complaint, the plaintiffs alleged that Bank of America opened a single deposit account for TelexFree in February 2012, issued two credit cards to TelexFree, and provided depository and credit services to TelexFree through the end of 2013.  (2CAC at ¶¶ 734, 738-39, 744; *see also* Docket No. 602).  The proposed complaint adds, *inter alia*, that Bank of America kept TelexFree's deposit account open despite knowledge that BAMS had terminated TelexFree's merchant account for excessive chargebacks in August 2012, (5CAC at ¶ 326-27), that Bank of America opened new accounts for TelexFree and its founders from July to September 2012, (*id.* at ¶ 349-52), that Bank of America facilitated transfers of tens of millions of dollars between accounts from January to May 2013, (*id.* at ¶ 357-62), and that Bank of America closed several TelexFree associated account in May 2013, only to allow new accounts to be opened, the latest of which was in 2014, (*id.* at ¶ 371, 381).  Indeed, according to the proposed complaint, a senior vice president at Bank of America assisted TelexFree in opening an additional account *after* discussing with TelexFree's CFO that TelexFree had been shuttered in Brazil for being a pyramid

26

scheme, expressing concerns that TelexFree's operations were not legal, and indicating awareness that Bank of America had previously closed TelexFree accounts.  (*Id.* at ¶ 375, 377).

As to TD Bank, the second consolidated complaint alleged that TD Bank opened deposit accounts for TelexFree in September 2012 and maintained them until at least January 2014. (2CAC at ¶¶ 780, 784).  The proposed complaint adds, *inter alia*, that TD Bank began restricting TelexFree's banking activities in May 2013, (5CAC at ¶ 540), that TD Bank representatives discussed with TelexFree in June 2013 concerns regarding the Brazil shutdown, (*id.* at ¶ 543), and that TD Bank closed a TelexFree account in July 2013 for suspicious activity, (*id.* at ¶ 544).  The proposed complaint alleges that, nonetheless, TD Bank continued to allow TelexFree to open new accounts, (*id.* at ¶¶ 545, 557), and subsequently facilitated large fund transfers between accounts to assist TelexFree in obscuring the source and movement of its funds, (*id.* at ¶ 524).  In one instance, TD Bank facilitated the transfer of three million dollars between three accounts within the span of seven minutes.  (*Id.* at ¶ 605).

The second consolidated complaint contained only one specific allegation against Wells Fargo Bank: that the bank, in 2013, maintained accounts on behalf of TelexFree and processed tens of millions of dollars in transactions.  (2CAC at ¶ 713; *see also* Docket No. 611).  The proposed complaint adds, *inter alia*, that Wells Fargo Bank provided banking services to TelexFree from June 2012 to April 2014, (5CAC at ¶ 314), that after the Brazil shutdown, Wells Fargo Bank agreed to open a merchant account for Bank Card Consultants to handle TelexFree transactions, (*id.* at ¶ 418), that in February 2014, Wells Fargo Bank employees wrote letters of recommendation for TelexFree to help TelexFree open offshore accounts, (*id.* at ¶ 435), that Wells Fargo Bank facilitated transfers of tens of millions of dollars overseas, (*id.* at ¶ 444), and that in February and

March 2014, Wells Fargo Bank closed or suspended, but then continued to open and service, various accounts for TelexFree and related entities and individuals, (*id.* at ¶¶ 464-67, 491-92).

As to PwC, the second consolidated complaint alleged that PwC, beginning in January 2014, provided TelexFree with tax and financial advice, assistance developing international tax structures, preparation of unlawful 1099 tax forms, and assistance responding to information requests from Massachusetts regulators.  (2CAC at ¶ 578-79, 584; *see also* Docket No. 595).  The proposed complaint adds, *inter alia*, that PwC was aware that TelexFree had been shuttered in Brazil due to pyramid scheme allegations and that TelexFree had an identical business model in the United States, (5CAC at ¶ 1180), that PwC was aware of unlawful terms in TelexFree's contracts and the fact that TelexFree sold no product and was dependent on new recruits to the scheme, (*id.* at ¶ 1183), that PwC was aware that the purpose of TelexFree's international expansion was to relocate TelexFree operations and money beyond the reach of United States regulators, (*id.* at ¶ 1185), and that PwC recommended that TelexFree open accounts in countries with lax tax regulations and favorable MLM laws, (*id.* at ¶ 1187).

### *iii.  Delay*

The plaintiffs did not unreasonably delay in moving to amend to add these factual allegations.  First, the plaintiffs initially requested that they be given an opportunity to amend the complaint in their opposition to the defendants' motions to dismiss.  (Docket No. 234 at 167-69).  While a plaintiff generally is not entitled to "wait and see" if her complaint passes scrutiny, *see ACA Financial Guaranty Corp. v. Advest, Inc.*, 512 F.3d 46, 57 (1st Cir. 2008), and the practice is discouraged, *see Fire and Police Pension Ass'n of Colorado v. Abiomed, Inc.*, 778 F.3d 228, 247 (1st Cir. 2015), the Court is cognizant of the surrounding circumstances -- namely, that the Court had stayed discovery before the motions to dismiss were filed, and that the Court then stayed all

action while the motions to dismiss were pending, *see Elliot-Lewis v. Abbott Laboratories, Inc.*, 2017 WL 1826627, at *1 (D. Mass. May 5, 2017) ("[T]he context within which the court addresses a request for leave to amend is important."). *Cf. Karak v. Bursaw Oil Corp.*, 288 F.3d 15, 20 (1st Cir. 2002) (plaintiff seeking relief from judgment under Rule 60(b) must offer convincing explanation for why evidence was not proffered earlier).

Second, plaintiffs' counsel avers that many of the new facts alleged in the proposed complaint were derived from evidence recently obtained; in particular, from Craft, who provided information subject to a confidentiality agreement not lifted until September 2019, and from the bankruptcy trustee, who in October 2019 produced transactional data, bank records, and emails related to the banks and PwC. (Docket No. 984-4 at ¶¶ 69-70; Docket No. 1068 at ¶¶ 7-9).

Third, as outlined, within two months of the Court issuing the dismissal orders and lifting the stay, the plaintiffs indicated their intention to amend the complaint with new factual allegations relative to Bank of America, TD Bank, Wells Fargo Bank, and PwC. The plaintiffs proposed waiting to file the amendment until they were able to digest new evidence regarding new defendants. Neither the defendants nor the Court objected to this approach. The Court then set a deadline for amended pleadings by November 2019. The plaintiffs attempted to comply with that deadline but filed a procedurally defective motion. The Court ultimately allowed the plaintiffs to file an additional motion to amend -- this one -- by May 2020. In context, the plaintiffs acted with reasonable diligence in moving to amend.

### iv. Prejudice

Importantly, allowing the plaintiffs' motion will not unfairly prejudice the defendants. Prejudice commonly "takes the form of additional, prolonged discovery and a postponement of trial." *Klunder v. Brown Univ.*, 778 F.3d 24, 34 (1st Cir. 2015). Courts have found prejudice

where "nearly all the case's pre-trail work was complete," *Acosta-Mestre v. Hilton Int'l of P.R., Inc.*, 156 F.3d 49, 52 (1st Cir. 1998), where the court had issued "an all-but-dispositive ruling on cross-motions for summary judgment," *LaRocca v. Borden, Inc.*, 276 F.3d 22, 32 (1st Cir. 2002), and where discovery had ended and the amendment sought to charge a theory "not contemplated by the original complaint," *Hayes v. New England Millwork Distributors, Inc.*, 602 F.2d 15, 20 (1st Cir. 1979). Here, discovery is not yet complete (indeed, depositions have not yet begun), and the amendment (relative to these defendants) simply adds factual support to the plaintiffs' original claims. Contrary to the defendants' contention, this case is not in the final pre-trial stage. (Docket No. 838 at 11). While the amendment will inevitably lead to additional motions practice, which will extend the pretrial litigation for several months, that in and of itself -- especially in the context of this case -- is not unfair prejudice. *See O'Leary v. New Hampshire Boring, Inc.*, 323 F.R.D. 122, 128 (D. Mass. 2018).

### v. Futility

Bank of America, TD Bank, Wells Fargo Bank, and PwC do not directly argue that the amendment would be futile. Nonetheless, the Court notes that the proposed complaint is not clearly futile. *See Barry Aviation, Inc. v. Land O'Lakes Municipal Airport Com'n*, 377 F.3d 682, 687 (7th Cir. 2004) (courts should grant leave to amend unless they are "certain from the face of the complaint that any amendment would be futile"). The proposed complaint alleges that Bank of America, TD Bank, and Wells Fargo Bank continued to service certain TelexFree accounts *after* each bank had suspended or shut down other TelexFree accounts, and *after* each bank learned of TelexFree's legal issues in Brazil. *See Mansor*, 183 F. Supp. 3d at 268. Under Massachusetts law, the provision of routine services may constitute substantial assistance when coupled with actual knowledge of an underlying tort. *See Turo*, 166 N.E.3d at 983. The proposed complaint alleges

that PwC, aware of TelexFree's legal issues and the purpose of its international expansion, advised TelexFree on how to move funds beyond the reach of United States regulators.  These allegations are consistent with the allegations the Court held as sufficiently pled when denying the motions to dismiss from Wells Fargo Advisors, LLC and Fidelity Co-Operative Bank.  (Docket Nos. 597 & 734).  Absent additional argument, the Court believes it would be imprudent to deny the motion to amend as futile.

### vi. Modification

As much as the Court does not wish to condone the plaintiffs' end-run around the Court's denial of their motion for reconsideration, the Court believes that justice requires allowing leave to amend.  Indeed, allowing leave to amend upon an order of dismissal is common.  *See In re Genzyme Corp. Securities Litig.*, 754 F.3d 31, 47 (1st Cir. 2014); *Eastern Food Servs., Inc., v. Pontifical Catholic Univ. Servs. Ass'n, Inc.*, 357 F.3d 1, 8 (1st Cir. 2004); *Araujo v. UGL Unicco-Unicco Operations*, 53 F. Supp. 3d 371, 384 (D. Mass. 2014); *In re A123 Systems, Inc. Securities Litig.*, 930 F. Supp. 2d 278, 286-87 (D. Mass. 2013); *see also Manzarke v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 2034 (9th Cir. 2008); *Torres-Alamo v. Puerto Rico*, 502 F.3d 20, 25-26 (1st Cir. 2007); *Barry Aviation,* 377 F.3d at 687.

Moreover, the defendants understate the Court's authority.  (Docket No. 1030 at 11-12).  First, the dismissal orders are not final.  *See* Fed. R. Civ. P. 54(b); *see also Spiegel v. Trustees of Tufts College*, 843 F.2d 38, 44 (1st Cir. 1988) ("[W]e remark the obvious: notwithstanding the order of dismissal, the action remains pending for trial in the district court as to *all* of the parties.") (emphasis in original).  Where a court "does not designate an order as final under Rule 54(b), it has the power to modify, revise, or even reverse its decision at any time prior to making such designation or properly closing the entire case."  *Willhauck v. Halpin*, 919 F.2d 788, 793 (1st Cir.

1990).  Second, that power, though to be used sparingly, is not subject to the strictures of Fed. R. Civ. P. 59(e).  *See Nieves-Luciano v. Hernandez-Torres*, 397 F.3d 1, 4 (1st Cir. 2005); *see also Cabral v. Brennan*, 853 F.3d 763, 766 & n.3 (5th Cir. 2017).  A court may reconsider an interlocutory decision dismissing portions of a complaint as "justice requires."  *Greene*, 764 F.2d at 22-23; *see also Austin v. Kroger Texas, L.P.*, 864 F.3d 326, 336 (5th Cir. 2017); *Cobell v. Jewell*, 802 F.3d 12, 25-26 (D.C. Cir. 2015); *Raytheon Constructors, Inc. v. Asarco, Inc.*, 368 F.3d 1214, 1217 (10th Cir. 2003); *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1472 (4th Cir. 1991).

Given the circumstances of this case, the Court believes it would be unjust to finally dismiss Bank of America, TD Bank, Wells Fargo Bank, and PwC for failure to state a claim without providing the plaintiffs an opportunity to substantively update their pleadings.  Accordingly, to the extent necessary, the Court modifies the 2019 dismissal orders to state that they are with leave to amend.  The plaintiffs' motion to amend as to Bank of America, TD Bank, Wells Fargo Bank, and PwC is granted.

### b. GPG

In January 2019, the Court dismissed GPG for lack of personal jurisdiction.  (Docket No. 598).  GPG moved for reconsideration in November 2019.  (Docket No. 781).  The Court reserved ruling on the motion, allowing GPG sixty days to conduct jurisdictional discovery.  (Docket No. 889).   The proposed complaint, with allegations of personal jurisdiction in Arizona and Massachusetts, includes GPG as a defendant.  (5CAC at ¶¶ 729-51).  GPG opposes the motion, arguing that personal jurisdiction is not proper in either locale because, *inter alia*, GPG was never served with an Arizona complaint, *see Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999), and GPG's alleged contacts with Massachusetts remain insufficient.

(Docket No. 1034 at 12, 24-27).  The plaintiffs ask the court to allow the motion to amend without deciding the jurisdictional issue.  (Docket No. 1071).  While the plaintiffs have submitted affidavits describing contacts between GPG and Arizona and Massachusetts, they make no legal argument regarding how those contacts establish jurisdiction -- even though the Court previously dismissed GPG for lack of personal jurisdiction, and even though GPG presently opposes the motion to amend on those grounds.  The plaintiffs bear the burden of establishing the Court's jurisdiction.  *See Hannon v. Beard*, 524 F.3d 275, 279 (1st Cir. 2008).  Because they have not done so, GPG remains dismissed from the case.  The motion to amend with respect to GPG is denied.

### 4. New Claims

The proposed complaint seeks to add a civil conspiracy claim with respect to six current defendants: Vantage Payments, LLC ("Vantage Payments"), Allied Wallet, Ltd., Bank Card Consultants, Inc. ("Bank Card Consultants"), John Yurick, Wells Fargo Advisors, LLC ("Wells Fargo Advisors"), and Mauricio Cardenas.  A motion to amend may be denied where the moving party offers no valid explanation for the delay.  *See Mulder v. Kohl's Dept. Stores, Inc.*, 865 F.3d 17, 21 (1st Cir. 2017); *Nikitine v. Wilmington Trust Co.*, 715 F.3d 388, 391 (1st Cir. 2013).  The fourth consolidated complaint, filed in June 2017, alleged that Cardenas helped Wanzeler and TelexFree hide and launder illicit funds.  (4CAC at ¶¶ 1121-22).  The complaint went so far as to call Cardenas a "co-conspirator," (*id.* at ¶ 1123), acting as an agent and employee of Wells Fargo Advisors, (*id.* at ¶ 1137).  The complaint also alleged that Vantage Payments and Allied Wallet, Ltd. acted in concert with TelexFree to, *inter alia*, further the unlawful pyramid scheme (*id.* at ¶¶ 1069, 1084), and that Bank Card Consultants and Yurick provided substantial assistance and encouragement to TelexFree despite knowledge of its illegality, (*id.* at ¶¶ 1114, 1117).  Indeed, the complaint alleged that each of these defendants were liable for tortious aiding and abetting, a claim

33

involving a similar though not identical showing of proof.  *See Edmands*, 136 N.E.3d at 395. Although the plaintiffs point to new evidence demonstrating that some of these defendants were more involved in the scheme than initially alleged, they do not explain why they could not have added this conspiracy claim years ago.  *See Jenkins v. Boston Housing Court*, 350 F. Supp. 3d 1, 4 (D. Mass. 2018).  Accordingly, the motion to amend to add the conspiracy claim with respect to Vantage Payments, Allied Wallet, Ltd., Bank Card Consultants, Yurick, Wells Fargo Advisors, and Cardenas is denied.

### 5.  Name Plaintiffs

The proposed complaint adds Anthony Cellucci as a named plaintiff.  (5CAC at ¶ 32).  No defendant objects.  The motion to amend with respect to adding Anthony Cellucci as a named plaintiff is granted.  *See Yan v. ReWalk Robotics Ltd.*, 973 F.3d 22, 38 (1st Cir. 2020).

## Conclusion

For the reasons stated, the motion is ***granted in part*** and ***denied in part***.  The motion is granted as to the addition of: Estate of Babener; AlliedWallet, Inc.; Ahmad Khawaja; Mohammad Diab; Amy Rountree; Edwin Gonzalez; Natalia Yenatska; Kevin Staten; Priority Payout; Thomas Wells; Telecom Logic; and Ryan Mitchell.  The motion is further granted as to the new allegations against: Bank of America; TD Bank; Wells Fargo Bank; and PwC.  The motion is denied as to the addition of: Michael Sheffield; Garvin DeShazer; Darvene Peruzzini; Debra Stenmore; Kenneth Lind; Banc of America Merchant Services; Kathryn Ashman; Michael Montalvo; Richard Colabella; Jerry Puzey; Jayme Amirie; and GPG.  The motion is further denied as to the proposed conspiracy claim against: Vantage Payments; Allied Wallet, Ltd.; Bank Card Consultants; John Yurick; Wells Fargo Advisors; and Mauricio Cardenas.

The plaintiffs shall file (directly on the docket) an updated complaint consistent with this order by December 31, 2021.


**SO ORDERED**

_/s/ Timothy S. Hillman_
**TIMOTHY S. HILLMAN**
**DISTRICT JUDGE**
