UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE TELEXFREE SECURITIES LITIGATION<br><br>This Document Relates To: All Actions | CIVIL ACTION NO.<br>4:14-MD-02566-TSH |

**NON-PARTY PNC BANK, N.A.'S OPPOSITION
TO PLAINTIFFS' MOTION TO COMPEL DISCOVERY**

Non-party PNC Bank, N.A. ("PNC") respectfully opposes Plaintiffs' Motion to Compel Discovery (Dkt. Nos. 1584–85), which concerns a third-party subpoena issued to PNC pursuant to Fed. R. Civ. P. 45. The Motion should be denied because Plaintiffs concede that their subpoena is targeted at mining for information to fuel future clams against PNC, not information relevant to, or needed for, the prosecution of Plaintiffs' pending claims against the remaining defendants.

The Court dismissed PNC from this action with prejudice after five years and Plaintiffs' multiple failed attempts to plead viable claims. Plaintiffs urged the Court to reconsider that dismissal, arguing, among other things, that they should get to take discovery of PNC despite their inability to meet their pleading burden. The Court correctly denied that motion for reconsideration, consistent with prevailing First Circuit authority that requires a plausible factual predicate to warrant any further proceedings or discovery. Plaintiffs, however, refuse to take no for an answer. They are now blatantly misusing Rule 45 to end-run the Court's decisions and launch a fishing expedition for information that they think — incorrectly — will give them ammunition for a revived or new pleading against PNC. This is prohibited under well-established First Circuit authority.

Having conceded their improper objective, Plaintiffs also fail to demonstrate the relevance of the requested information. Plaintiffs' subpoena sought the collection and production of virtually every document in PNC's business records that relates in any way to PNC's business relationship or communications with TelexFree and more than 150 third-party entities or individuals. With the exception of bank statements for two TelexFree accounts, which PNC has already produced, Plaintiffs have not offered any cogent explanation for how any of the requested documents could conceivably be relevant to the pending claims against the remaining defendants. Instead, Plaintiffs want PNC to blindly undertake an extensive collection of electronically stored information ("ESI"), using extremely broad and unjustified parameters, on the off-chance that something *might* exist that *might* be relevant. This is quintessential disproportionality.

Plaintiffs are misusing Rule 45 and have not met their burden. The Motion should be denied.

## BACKGROUND

On August 31, 2022, the Court dismissed all claims against PNC with prejudice. Dkt. No. 1418. The Court correctly held that, despite their multiple attempts to adequately plead claims against PNC,[1] Plaintiffs had not plausibly alleged that PNC had actual knowledge of the TelexFree fraud. *Id.* at 16. Ignoring the Court's careful attention to distinguishing Plaintiffs' allegations against PNC from those pled against other remaining defendants, Plaintiffs filed a motion for reconsideration challenging the Court's decision as "manifest error." Dkt. Nos. 1438–39. The Court denied that motion on January 13, 2023. Dkt. No. 1519.

Undeterred, Plaintiffs served a Rule 45 subpoena on PNC that was essentially

---

[1] *See* Dkt. No. 1476, PNC's Opposition to Plaintiffs' Motion for Reconsideration, at 2–3 (discussing Plaintiffs' numerous opportunities to plead plausible claims against PNC).

indistinguishable from full-blown party discovery.  Dkt. No. 1585-1.[2]  The subpoena sought 22 expansive categories of information, implicating virtually every document in PNC's business records that relates in any way to PNC's business relationship or communications with TelexFree and more than 150 third-party entities or individuals.  *Id.*

On February 24, 2023, PNC responded to the subpoena in a 17-page letter explaining its concern that the subpoena was a misguided fishing expedition.  Dkt. No. 1585-3 at 1.  In the letter, PNC provided specific, detailed objections to each of Plaintiffs' 22 requests, but also invited Plaintiffs to narrow their requests and explain what information, if any, would (or could) be relevant to their prosecution of claims against the remaining defendants.  *Id.* at 2–16.[3]  Specifically, PNC stated: "If there is a particular document or category of documents that you believe PNC possesses, is not otherwise available from the parties, and as to which you can articulate the relevance to the aiding and abetting claims pending against the remaining defendants, please identify such document(s) so that we may consider producing them to you by agreement or otherwise."  *Id.* at 17.

Plaintiffs did not respond to PNC's objections or invitation for two months and, when they did, they still failed to identify documents that they believe PNC has in its possession that are relevant and not already the subject of party discovery.  Dkt. No. 1585-4.  The Parties then engaged in two meet-and-confers on May 10 and 24, 2023, and narrowed their dispute to two issues.

---

[2] The subpoena was originally dated January 9, 2023, but was improperly completed and not served to the best of PNC's knowledge.  Plaintiffs corrected the subpoena and PNC's counsel accepted service on January 25, 2023.  *See* Dkt. No. 1585-2 at 2 (counsel for PNC identifying correct PNC entity name).  The substance of the January 9 and January 25 versions of the subpoena is the same.

[3] Plaintiffs' contention that PNC's objections were "boilerplate" (Memorandum at 6, n.4) is not accurate.  To the contrary, PNC's objections were detailed and specific.  Dkt. No. 1585-3.  Because the entire subpoena was overbroad and Plaintiffs failed to identify any relevant requested information, PNC raised many objections multiple times.  The repetition of proper, detailed objections, however, does not make them "boilerplate."

3

First, Plaintiffs specifically requested that PNC produce bank statements for two accounts held by TelexFree Financial, Inc., and explained that they needed complete Telexfree financial information to map the course of TelexFree funds for the purposes of their proposed damages model as to the remaining defendants. While PNC does not fully understand or agree with Plaintiffs' proposed use of the statements, because Plaintiffs had at least articulated a possibly relevant basis for the request, PNC agreed to produce the statements and has done so. Dkt. No. 1585-6 at 2.

Second, Plaintiffs purported to "narrow" the remainder of their expansive subpoena requests by requesting that PNC engage in the discovery of ESI pursuant to a proposed set of search criteria. Dkt. No. 1585-6 at 2; *see also* Dkt. No. 1585-5, Plaintiffs' Proposed Search Terms to PNC Bank ("Plaintiffs' Proposed Search Criteria") at 6–7. Specifically, Plaintiffs proposed that PNC collect, process, and review all email data for eight custodians over a two-year time frame, applying 30 different search terms. *Id.* As detailed below, Plaintiffs were unable during the parties' meet-and-confers to explain the reasoning behind any of the proposed parameters, let alone how PNC communications (to the extent they exist) are relevant to the claims against the remaining defendants. *Id.* Plaintiffs and PNC were unable to resolve this dispute, which is now before the Court.

## STANDARD OF REVIEW

"A subpoena issued to a non-party pursuant to Rule 45 is subject to Rule 26(b)'s overriding relevance requirement" and "[t]he burden of establishing the relevance of the requested information is on the subpoenaing party." *Smith v. Turbocombustor Tech., Inc.*, 338 F.R.D. 174, 176 (D. Mass. 2021) (quoting *E.E.O.C. v. Texas Roadhouse, Inc.*, 303 F.R.D. 1, 2 (D. Mass. 2014)); *see Viscito v. Nat'l Plan. Corp.*, No. CV 3:18-30132-MGM, 2020 WL 4274721, at *2 (D. Mass. July 24, 2020) ("The subpoenaing party has the burden of establishing

4

that the requested information is relevant to its claims or defenses.") (internal quotation marks omitted). In addition to substantiating the relevance of any information sought under Rule 45, a subpoenaing party must "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). And as the First Circuit has recognized, "concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs." *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998); *see Cascade Yarns, Inc. v. Knitting Fever, Inc.*, 755 F.3d 55, 59 (1st Cir. 2014) (same); *see also Rockstar Consortium US LP v. Google Inc.*, No. 14-91322-FDS, 2015 WL 5972422, at *4 (D. Mass. Oct. 14, 2015) ("Rule 45 provides special protections for non-parties that receive subpoenas.").

## ARGUMENT

Plaintiffs' Motion should be denied for three reasons. <u>First</u>, Plaintiffs improperly seek expansive discovery from non-party PNC not to gather documents relevant to pending claims, but to fish for information to manufacture future claims against PNC. <u>Second</u>, Plaintiffs have failed to satisfy their burden of demonstrating that the requested discovery is relevant to pending claims against remaining defendants. <u>Third</u>, even if Plaintiffs could show relevance, the burden associated with the requested discovery is undue and disproportionate to the needs of the case.

**I.     PLAINTIFFS ARE ON A FISHING EXPEDITION TO REVIVE CLAIMS AGAINST PNC THAT HAVE BEEN DISMISSED WITH PREJUDICE**

Plaintiffs expressly concede in their Motion to Compel that the information sought by their subpoena is targeted at exploring <u>*PNC's*</u> alleged conduct, not the conduct of TelexFree or any remaining defendants in this case:

> It is certainly not inconceivable that first-time discovery of PNC's documents may well shed light on the critical questions surrounding <u>*PNC's conduct*</u> in helping TelexFree, particularly *<u>what did PNC know, when did it know it, and what did PNC</u>* do at this critical time in the TelexFree Ponzi scheme to substantially assist

5

> TelexFree to perpetuate its fraudulent scheme. To allow PNC to continue to skate free of producing its documents for the first time <u>risks allowing PNC to continue to evade scrutiny of its conduct</u> during this critical time in the TelexFree Ponzi scheme.

Memorandum at 6–7 (emphasis added). The subpoena requests themselves underscore this motivation. Request No. 15, for instance, seeks "[a]ll Documents evidencing any actual or attempted investigation or verification You conducted relative to any allegations that TelexFree was engaged in an illegal activity or otherwise constituted a pyramid or Ponzi scheme." Dkt. No. 1585-1 at 31. And Request No. 17 seeks "[a]ll Documents generated or completed in the course of any Account monitoring, transaction monitoring, or activity monitoring of TelexFree […] including any Red Flag alert, Red Flag warning, fraud alert, AML alert, fraud warning, reports, notes, memoranda, worksheets, electronic worksheets, forms, electronic forms, checklists, photographs, video recordings, and results." *Id.* at 32. These requests are targeted squarely at PNC's conduct and knowledge of the Telexfree scheme — they have zero connection to the pending claims against the remaining defendants. And when asked to articulate the relevance, Plaintiffs' counsel could not do so, repeatedly stating only that they "don't know what they don't know." This is the epitome of a fishing expedition and is prohibited by prevailing authority.

The U.S. Supreme Court has held that "it is proper to deny discovery of matter that is relevant only to claims or defenses that have been stricken[.]" *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352 (1978). Further, "a court is not required to blind itself to the purpose for which a party seeks information" and "when the purpose of a discovery request is to gather information for use in proceedings other than the pending suit, discovery properly is denied." *Id.* at 352, n.17. In other words, Plaintiffs cannot use a third-party subpoena to fish for information that they believe may help them somehow revive their dismissed claims, or otherwise sue PNC

in some future lawsuit. *See Andrich v. Ryan*, No. CV-16-02734-PHX-GMS (JZB), 2017 WL 11424013, at *8 (D. Ariz. Dec. 11, 2017) ("Plaintiff does not allege that the information he now seeks . . . is relevant to his current claims, which have been sufficiently pleaded. Instead, at the hearing, Plaintiff candidly stated that many of his interrogatories were directed at discovering information to aid him in filing a third amended complaint. Such discovery is not permissible.").

Despite the clear authority, Plaintiffs unapologetically concede their true motivation, emphasizing in their Motion that, while the claims against PNC were dismissed, such dismissal "was done with no discovery of PNC's documents." Memorandum at 6. As the First Circuit has explained, however, "the price of entry, even to discovery, is for the plaintiff to allege a *factual* predicate concrete enough to warrant further proceedings." *DM Res., Inc. v. Coll. of Am. Pathologists*, 170 F.3d 53, 55 (1st Cir. 1999) (emphasis in original); *see Parker v. Landry*, 935 F.3d 9, 18–19 (1st Cir. 2019) (affirming denial of plaintiff's request for discovery as the proposed amended complaint did not "set forth facts sufficient to create a reasonable expectation that discovery would be anything more than a shot in the dark"); *Artuso v. Vertex Pharm., Inc.*, 637 F.3d 1, 8 (1st Cir. 2011) (holding that "a plaintiff whose complaint does not state an actionable claim has no license to embark on a fishing expedition in an effort to discover a cause of action"); *see also* Dkt. No. 1476, PNC's Opposition to Motion for Reconsideration, at 9–12. Here, Plaintiffs failed at multiple turns to meet their pleading burden, the Court dismissed PNC from this action with prejudice, and Plaintiffs are accordingly not entitled to seek discovery from PNC as if it were still a party.[4]

Plaintiffs are misusing Rule 45. Their subpoena has nothing to do with the pending

---

[4] Plaintiffs' argument concerning a lack of discovery from PNC is not new. In their unsuccessful motion for reconsideration, Plaintiffs' devoted several pages of their brief to highlighting the fact that they had not taken discovery of PNC. Dkt. No. 1439 at 16–18.

7

claims or remaining defendants and Plaintiffs cannot use Rule 45 to get discovery that the Court has held they are not entitled to take. *See, e.g.*, *Cascade Yarns*, 755 F.3d at 58, 60 (affirming order denying plaintiff's motion to enforce subpoena where the plaintiff's underlying claims had already been dismissed); *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998) ("[Plaintiff's] first argument—that the requested documents could have been used as evidence to show that [defendant] could not attempt to collect from supplemental cardholders—is baseless. That claim was dismissed by the district court because it was outside the pleadings."); *Tequila Centinela, S.A. de C.V. v. Bacardi & Co.*, 242 F.R.D. 1, 8–9, 13 (D.D.C. 2007) (denying motion to compel responses to discovery requests that could only be construed as relating to issues that had been dismissed from the case).

## II. PLAINTIFFS HAVE NOT MET THEIR BURDEN TO DEMONSTRATE THE RELEVANCE OF THE REQUESTED INFORMATION

Since Plaintiffs have conceded that their objective is to target PNC for future proceedings, it is no surprise that Plaintiffs have failed to satisfy their burden to substantiate the relevance of the information *to the pending claims against the remaining defendants in this action*. Indeed, Plaintiffs offer nothing more than supposition that the extensive ESI collection and search they are requesting may yield "unquestionably relevant information" that will "easily satisfy the necessary relevancy standard," "help provide context," and "allow Plaintiffs to develop their case." Memorandum at 5–6. These conclusory assertions are not accompanied by any actual explanation as to how or why the proposed collection and search is expected to yield relevant information. And as such, they are not sufficient to compel a non-party to provide discovery. *See, e.g.*, *Duong v. Groundhog Enterprises, Inc.*, No. 2:19-CV-01333-DMG-MAA, 2020 WL 2041939, at *8 (C.D. Cal. Feb. 28, 2020) (finding that "generalized and conclusory statements as to the relevance of [discovery] requests" did not establish that a Rule 45 subpoena

sought "relevant, discoverable information"); *AngioScore, Inc. v. TriReme Med., Inc.*, No. 12-CV-03393-YGR JSC, 2014 WL 6706873, at *3 (N.D. Cal. Nov. 25, 2014) ("Defendants' conclusory statements regarding the relevance of the documents sought fail to satisfy their burden to demonstrate relevance."); *Bank of Am. Corp. v. Centrify Corp.*, No. 3:11-MC-135-RJC-DCK, 2011 WL 5127741, at *3 (W.D.N.C. Oct. 28, 2011) (quashing subpoena where the subpoenaing party argued "in conclusory fashion" that the discovery sought was "clearly relevant").[5]

The specifics of Plaintiffs' proposed ESI search criteria further illustrate the lack of relevance:

**Plaintiffs' Proposed Date Range.** Plaintiffs propose that PNC should have to collect, process, and search two years of email data, from January 1, 2013 to December 31, 2014. Memorandum at 2; Plaintiffs' Proposed Search Criteria at 6. Yet, as alleged in Plaintiffs' Fifth Consolidated Amended Complaint (the "5CAC"), the relevant PNC bank accounts were only open for five months—from December 2013 to April 2014. 5CAC ¶¶ 61, 653, 674, 677. In an attempt to justify their overly broad date range, Plaintiffs speculate that "[p]resumably communications between PNC and TelexFree that led to the opening of the accounts began sometime earlier in 2013." Memorandum at 2. Plaintiffs offer no facts or reasoning, however, to suggest that PNC had any communications with TelexFree before the accounts were opened at all, let alone that communications began a full year earlier. Moreover, Plaintiffs provide zero explanation for why they need communications at all, let alone communications that pre-date opening and post-date closure of the relevant accounts. Plaintiffs are not entitled to an overly

---

[5] Plaintiffs also claim the requested information will "assist in building [a] damages model." Memorandum at 5–6. But this was the basis for Plaintiffs' request for the bank statements, not communications. PNC has already provided the bank statements.

broad date range merely because they believe there is some "risk of missing relevant information." *See* Memorandum at 2–3, fn. 3.

**Plaintiffs' Proposed Custodians.**  Plaintiffs propose eight custodians, which they assert are "PNC employees that had responsibility in connection with the two TelexFree bank accounts that were maintained at PNC or were individuals who had a role with TelexFree's relationship with PNC." *Id.* at 2, 5; Plaintiffs' Proposed Search Criteria at 6.  But, apart from this high-level assertion, Plaintiffs fail to provide any details or specifics regarding why they believe the custodians are relevant to pending claims against remaining defendants.  Among other missing details, Plaintiffs make no effort to explain each individual custodian's role or responsibilities, whether they believe some custodians are more relevant than others, the types of responsive information they expect to reside with each custodian, or whether the custodians' communications could be obtained from a less burdensome source.  Plaintiffs cannot pick eight PNC employee names out of thin air, offer no explanation as to why Plaintiffs believe they will have relevant information, and demand that PNC undertake the collection, processing, and search of two years of their email data (from a decade ago) — all to satisfy some unarticulated hunch.

**Plaintiffs' Proposed Search Terms.**  Plaintiffs' proposed search terms emphasize their real motivation to hunt for information for future use against PNC.  Specifically, Plaintiffs propose that PNC search for all emails containing 30 indiscriminate terms that contain no subject matter restrictions and are instead merely a lengthy list of entities and individuals that Plaintiffs believe were somehow involved with the TelexFree scheme.  Memorandum at 5.  Plaintiffs have not explained how these emails, if they exist, will inform the pending claims in this action and their kitchen-sink approach is improper.

With respect to searching the names of TelexFree entities or principals, PNC emails with

those entities or individuals cannot conceivably assist Plaintiffs in prosecuting their aiding and abetting claims against *other defendants*. The elements of an aiding and abetting claim turn on *that defendant's* knowledge of the TelexFree fraud and *that defendant's* substantial assistance in the fraud. There is no reasonable expectation — and Plaintiffs have articulated none — that any emails between PNC and TelexFree entities or principals would or could implicate the knowledge or actions of other remaining defendants. And to the extent that Plaintiffs contend that they need PNC communications to establish the underlying TelexFree fraud, such a contention is both disingenuous and meritless. Plaintiffs have taken extensive discovery concerning TelexFree over the course of many years and the nature of the underlying fraud is no longer materially in dispute. *See*, *e.g.*, Dkt. No. 1574 at I(a)(2) (reflecting Plaintiffs' express admission in their response to Bank of America's Statement of Undisputed Material Facts that TelexFree was a "billion-dollar pyramid scheme" and confirming that fact as *undisputed*).

Plaintiffs have also failed to explain how a blanket search for the names of remaining defendants may give rise to relevant information. PNC, of course, has business relationships with and services accounts for many entities and individuals — completely unrelated to TelexFree, this action, or the pending claims. As such, Plaintiffs' request that PNC search for any and all emails with a laundry list of defendants, with no subject matter restriction whatsoever, is untenable. If, for example and as Plaintiffs contend, PNC has business relationships with certain of the payment processors that remain defendants in the action, one would expect that PNC may have documents and emails with those entities that have absolutely nothing to do with TelexFree or the pending claims. Plaintiffs' failure to even attempt to properly scope their terms amplifies their conceded focus, which is to fish for information to use against PNC, not to supplement discovery concerning the pending claims in this case.

Courts reject proposed search terms just like these because, by their broad and

11

indiscriminate nature, they yield irrelevant results, i.e. mishits.  *See D.S. v. Clark Cnty. Sch. Dist.*, No. 2:22-CV-00246-JCM-NJK, 2023 WL 3584256, at *2 (D. Nev. May 22, 2023) ("…search terms must be narrowly tailored to particular issues and [] 'indiscriminate terms, such as a defendant's name, are inappropriate unless combined with narrowing criteria that sufficiently reduce the risk of overproduction.'") (quoting *Est. of Mann v. Cnty. of Stanislaus*, No. 1:21-CV-01098-AWI-SKO, 2022 WL 4029571, at *2 (E.D. Cal. Sept. 2, 2022)); *SiOnyx, LLC v. Hamamatsu Photonics K.K.*, No. CV 1:15-13488-FDS, 2017 WL 8233268, at *1 (D. Mass. Oct. 12, 2017) (discovery plan that "expressly state[d] that indiscriminate terms, such as the producing party's name, are inappropriate unless combined with narrowing search criteria that sufficiently reduce the risk of overproduction") (internal quotation marks omitted).  Coupled with the excessive time frame and randomly selected custodians proposed, Plaintiffs' requested ESI search fails to satisfy Rule 26's relevance and proportionality requirements, and Plaintiffs should not be permitted to engage in a fishing expedition through decade-old PNC emails.  *See Coro, Inc. v. F.T.C.*, 338 F.2d 149, 153 (1st Cir. 1964) ("[Subpoenas] are not licenses for extended fishing expeditions in waters of unknown productivity in the vague hope of 'catching the odd one.'"); *Douglas v. EF Educ. First Int'l, Ltd.*, No. 20-CV-11740-DJC, 2023 WL 3481479, at *3–4 (D. Mass. May 10, 2023) (denying motion to compel and issuing protective order where the plaintiff had "not shown that the [non-party] bank records [were] relevant").[6]

### III. PLAINTIFFS' PROPOSED SEARCH CRITERIA WOULD IMPOSE AN UNDUE AND DISPROPORTIONATE BURDEN

"In determining whether a subpoena imposes an 'undue burden' on a non-party, courts

---

[6] Plaintiffs argue that one term ("OCBC") relates to a money transfer that was sent from a TelexFree account at PNC to the personal account of one of the defendants. *See* Memorandum at 5 (citing 5CAC ¶ 659).  But PNC has already provided the bank statements that would reflect that transaction, if it occurred.  Plaintiffs do not explain why they expect that communications concerning a single money transfer would exist and, even if they do, how they are relevant to the pending claims against the remaining defendants.

12

consider "(1) the relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; (6) the burden imposed; and (7) the expense and inconvenience to the non-party.'" *Rockstar Consortium US LP*, 2015 WL 5972422, at 4 (quoting *LSI Corp. v. Vizio, Inc.*, No. 12-MC-91068-DJC, 2012 WL 1926924, at *3 (D. Mass. May 24, 2012)). Each of these factors, which are addressed in turn below, demonstrates that Plaintiffs' proposed search criteria is unduly burdensome.[7]

**Factor 1 – "The relevance of the information requested."** As explained in detail above, PNC was dismissed from the action with prejudice and Plaintiffs have failed to demonstrate that the requested discovery is relevant to any pending claims against remaining defendants. *See supra* Sections I and II.

**Factor 2 – "The need of the party for the documents."** Although Plaintiffs vaguely suggest that they would use the requested discovery to "develop their case" and "assist in building [a] damages model" (Memorandum at 6), Plaintiffs do not explain how they would use the information or why other available discovery is insufficient for their purposes. As is readily apparent from Plaintiffs' 1277-paragraph 5CAC, Plaintiffs already have access to a significant amount of documentary evidence and, in fact, have admitted to such access. *See* Dkt. No. 1439 at 16–17 (acknowledging that "the Bankruptcy Trustee produced thousands of pages of internal account records relating to TelexFree bank accounts" and describing the "documents in this case" as "voluminous"). To the extent Plaintiffs believe they need further evidence, Plaintiffs have not articulated why obtaining discovery from the remaining party defendants, which are a

---

[7] Despite relying on *Rockstar Consortium US LP*, Plaintiffs fail to address the undue burden factors discussed therein. Memorandum at 4 (quoting *Rockstar Consortium US LP*). As detailed herein by PNC, doing so demonstrates that Plaintiffs' Motion should be denied.

13

more appropriate source of information, is insufficient for proving claims against those same defendants. *See Cusumano*, 162 F.3d at 717 ("Although discovery is by definition invasive, parties to a law suit must accept its travails as a natural concomitant of modern civil litigation. Non-parties have a different set of expectations."); Fed. R. Civ. P. 26(b)(2)(C) ("On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that . . . the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive.").[8]

**Factor 3 – "The breadth of the document request."** Plaintiffs' propose a broad search of PNC emails using a two year time frame, eight custodians, and 30 search terms. Dkt. No. 1585 at 6–7. Due to the expansive nature of the search terms (e.g., "TelexFree" is one of the proposed terms), Plaintiffs are effectively seeking to compel a non-party to search sixteen years' worth of emails (two years multiplied by eight custodians) for every single communication that could conceivably relate to TelexFree and dozens of other entities and individuals. *See supra* Section II. This type of search is inappropriate because it is not well-tailored to the needs of the case. *Cardionet, LLC v. Infobionic, Inc.*, No. 1:17-CV-10445-IT, 2021 WL 2827380, at *2–3 (D. Mass. July 6, 2021) (denying motion to compel seeking non-party emails and "caution[ing] that it was atypical to have enormous email requests from third parties and that any such request would have to be well-tailored to the needs of the case") (internal quotation marks omitted).

**Factor 4 – "The time period covered by the request."** As discussed above, Plaintiffs' proposed date range of January 1, 2013 to December 31, 2014 is overly broad. *See Supra* Section II. Plaintiffs seek two years' worth of emails, despite the fact that the relevant PNC bank

---

[8] PNC communications with remaining defendants, for example, can be obtained from those defendants.

accounts were only open for a few months.  Unsupported speculation that relevant documents may exist is not a sufficient basis for Plaintiffs' proposed time period.  *See Enargy Power (Shenzhen) Co. v. Xiaolong Wang*, No. CIV.A. 13-11348-DJC, 2014 WL 4687784, at *3 (D. Mass. Sept. 17, 2014) (finding that "the time period referenced in the subpoena—2007 to the present—[was] overly broad" because the defendant "did not begin working at [the plaintiff] until 2008").

**Factor 5 – "The particularity with which the party describes the requested documents."**  In contrast to the bank statements that Plaintiffs specifically requested with supporting explanation and that PNC has produced, the Motion to Compel does not target any specific, identifiable documents.  Instead, Plaintiffs propose a broad search of PNC communications untethered to the claims or defenses at issue in the underlying litigation.  The subpoena, and the instant Motion, are devoid of particularity.

**Factors 6 and 7 – "The burden imposed" and "the expense and inconvenience to the non-party."**  Because Plaintiffs have conceded their improper objectives and have failed to offer *any* support for the relevance of the requested information, any burden on PNC is unsubstantiated.  But Plaintiffs do not just propose any burden — they propose a burden on PNC that would necessarily involve a substantial amount of resources, both in time and expense.  Specifically, because the requested emails are approximately a decade old, they are no longer stored on PNC's live email environment and would need to be retrieved from PNC's email archive.  *See* Declaration of Emily Dimond, filed herewith ("Dimond Decl.") ¶ 4.  Exporting information from the archive takes longer than exporting information from the live environment, and is both more expensive and requires several additional steps.  *Id.*  Based on Plaintiffs' proposed two-year time period and the number of custodians, as well as PNC's past experience in similar matters, PNC estimates that retrieving and processing the data alone would cost tens of

15

thousands of dollars. *Id.* ¶ 5. That figure (i) could increase given the archived nature of the data and PNC's inability to predict the data volume; and (ii) does not include the cost of any actual review and analysis of the search hits which, while it cannot be estimated without knowing the volume, is likely to be multiples of the retrieval and collection cost.[9] *Id.* ¶¶ 5–6.

Balancing all of the factors, Plaintiffs' proposed search presents a burden that will cost PNC tens of thousands of dollars, at a minimum, on top of the significant expense PNC has already incurred to address Plaintiffs' misused Rule 45 subpoena. Any further burden is substantially disproportional to any demonstrated need and the Motion to Compel should be denied. *See Heidelberg Ams., Inc. v. Tokyo Kikai Seisakusho, Ltd.*, 333 F.3d 38, 41–42 (1st Cir.2003) (upholding district court order quashing subpoena directed to non-party where there was imbalance between the need for the subpoena and the burden sought to be placed on the non-party); *Enargy Power (Shenzhen) Co.*, 2014 WL 4687784, at *3 (quashing an "overly broad" Rule 45 subpoena).

## CONCLUSION

WHEREFORE, PNC respectfully requests that the Court (1) deny Plaintiffs' Motion to Compel Discovery; and (2) grant any such other relief as the Court deems just and necessary.

---

[9] Plaintiffs argue that "PNC has done no search of custodian's records and has no idea what sort of results such searches would yield." Memorandum at 6, n.4. This argument, however, overlooks the fact that PNC would need to incur substantial cost — tens of thousands of dollars — to retrieve and collect the data to get those results in the first place. Dimond Decl. ¶¶ 3–6. That burden is not justified.

                                                Respectfully submitted,

                                                */s/ Jennifer J. Nagle*
                                                Jennifer J. Nagle (BBO #669325)
                                                jennifer.nagle@klgates.com
                                                Neil T. Smith (BBO #651157)
                                                neil.smith@klgates.com
                                                Michael R. Creta (BBO #693340)
                                                michael.creta@klgates.com
                                                K&L GATES LLP
                                                State Street Financial Center
                                                One Lincoln Street
                                                Boston, Massachusetts 02111
                                                Telephone: (617) 261-3100
                                                Fax: (617) 261-3175

                                                *Counsel for Non-Party PNC Bank, N.A.*

Date: June 13, 2023

**CERTIFICATE OF SERVICE**

  I, Jennifer J. Nagle, hereby certify that the foregoing document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on June 13, 2023.

                */s/ Jennifer J. Nagle*
                Jennifer J Nagle