UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | ) | |
|---|---|---|
| **IN RE: TELEXFREE SECURITIES LITIGATION** | ) ) ) ) ) ) | CIVIL ACTION NO. 4:14-02566-TSH |

### ORDER AND MEMORANDUM ON DEFENDANT BANA'S MOTIONS FOR SUMMARY JUDMGENT AND TO STRIKE (Docket Nos. 1543 & 1619)

6/27/2023

**HILLMAN, S.D.J.**

This multi-district litigation involves dozens of defendants who allegedly aided and abetted a fraudulent pyramid scheme run by TelexFree. Defendant Bank of America, N.A. ("BANA") moves for summary judgment, (Docket No. 1543), and to strike (Docket No. 1619). For the reasons below, BANA's motion to strike is ***denied*** and its motion for summary judgment is ***granted***.

### Background

The factual background is taken from the parties' undisputed material facts except where noted. "A party opposing the motion shall include a concise statement of the material facts of record as to which it is contended that there exists a genuine issue to be tried, *with page references to affidavits, depositions and other documentation*." Local Rule 56.1 (emphasis added). Plaintiffs have submitted a concise statement, but have simply written "Denied" after statements of BANA without referring to where in the record the genuine issues exist. "Material facts of record set forth in the statement . . . will be deemed for purposes of the motion to be admitted by opposing parties unless controverted by the statement required to be served by

opposing parties." *Id.* This Court deems all statements admitted for failure to abide by local rules where plaintiffs fail to make references to the record. *Cf. Cában Hernández v. Philip Morris USA, Inc.*, 486 F.3d 1, 7-8 (1st Cir. 2007).

BANA has moved to strike exhibits offered by the plaintiffs in support of their opposition to the summary judgment motion, to strike the plaintiff's counter-statement of material facts, and for this Court to assess sanctions (Docket No. 1619). Plaintiffs have failed to comply with local rules in opposing BANA's statement of material facts and there does appear to be merit to BANA's argument that plaintiffs have—at the very least—played fast and loose with the record in an attempt to create fact disputes where none exist. For instance, the plaintiffs deny that an initial check was tendered to the IRS and argue that further discovery is required before they are prepared to admit or deny BANA's allegations regarding whether the check was denied. (1574, at ¶¶ 27-28). However, in their opposition brief plaintiffs reference those allegations as true. (Docket No. 1573, at 13). Although this Court declines to sanction plaintiffs, it puts them on notice that future rules violations will not be tolerated. This aspect of the motion is *denied*. As discussed below, in this order this Court does not consider the plaintiffs' exhibits which are used to support claims not pleaded in the complaint nor does it consider the portions of the counter-statement of material facts that rested on those exhibits. Those aspects of the motion are *denied as moot*.

The plaintiffs' counter-statement of material facts is not in strict compliance with the Local Rules. *Cf. Lippman v. Town of Grafton*, 594 F. Supp. 3d 134, 140 n. 2 (D. Mass. 2022). However, insofar as it is based on BANA's own exhibits supporting its statement of material facts, (Docket No. 1575, ¶¶ 1-4, 7-26), this Court considers it. Unlike the other portions of the plaintiffs' statement of material facts, which are not in any obvious opposition to BANA's

2

statement of material facts, these paragraphs dispute BANA's contention that the $30 million wire at the heart of this motion is "accounted" for. Furthermore, there is no dispute about the authenticity of those documents. This portion of BANA's motion to strike is *denied*.

The plaintiffs bring this action on behalf of themselves and a putative class[1] of victims of a Ponzi scheme perpetrated by TelexFree. As alleged in the plaintiffs' Fifth Consolidated Amended Complaint ("5CAC"), those who "invested" in TelexFree ostensibly did so to sell Voice over Internet Protocol calling plans. However, the plans were "impossible to sell," and TelexFree would buy back unsold plans for more than three times the amount the investor paid for them so long as the investor posted advertisements for TelexFree online every day. In January 2013, Brazilian investigators launched an investigation into TelexFree that led to an injunction in June 2013 that effectively ended business operations in that country. In 2013, various enforcement agencies in the United States began investigations into TelexFree and on March 9, 2014, TelexFree announced that investors would have to actually sell plans to make money. Thereafter, the scheme rapidly unraveled as investors made over $150 million worth of withdrawal requests and on April 14, 2014 TelexFree filed for bankruptcy. The scheme allegedly relied on a host of third-party actors, including payment processors, various professionals, and banks. The actors most relevant to this order are International Payout Systems ("IPS"), a payment processor and co-defendant and BANA, a bank and co-defendant.

As alleged in the 5CAC, IPS and BANA had business relationships with TelexFree in 2012. BANA closed its TelexFree accounts in May of 2013, but maintained accounts with IPS. In late 2013, Gonzalez, an agent of IPS, met with Staten, an agent of BANA, and persuaded him to reopen an account for TelexFree by assuring him that IPS would handle the payments and

---

[1] This suit is still in the pre-certification phase.

3

there would be fewer indicia of fraud going forward. Staten agreed, despite worrying that TelexFree's business model was not legal. That account was open three days, the full balance was returned and no other credits or debits were made. On March 17, 2014, IPS initiated a wire transfer in the amount of $30 million from its account at BANA to a TelexFree account at Wells Fargo ("Account 8506"). There were no specific allegations in the complaint as to where the $30 million ended up.

The theory of liability for most of the third parties—and the only one for BANA—is that they "aided and abetted" the primary tortfeasors in defrauding investors. In Massachusetts, an aiding and abetting claim requires actual knowledge and substantial assistance. BANA was named in the first consolidated complaint as a defendant in 2015, was dismissed in 2019, and was successfully renamed in the Fifth Consolidated Amended Complaint (5CAC) in 2021. BANA moved to dismiss the claims against it, but this Court denied its motion, as well as its motion for reconsideration. (Docket Nos. 1418, 1515). This Court held:

> [It is plausible] that [BANA] had actual knowledge that TelexFree was operating a fraudulent scheme by late 2013. By then, not only had TelexFree been shut down in Brazil, but [BANA] had closed TelexFree accounts due to suspicious activity and openly informed TelexFree that it was concerned that TelexFree was operating illegally . . . On March 17, 2014, it is plausible that [BANA] knew that TelexFree was operating a fraudulent pyramid scheme, that IPS was processing payments for the fraudulent scheme, and that the transfer from IPS to a TelexFree account at Wells Fargo Bank would further the scheme. TelexFree had been shut down in Brazil, [BANA] had previously closed TelexFree accounts, and [BANA] was concerned that TelexFree was operating illegally. Gonzalez had told Staten that IPS was processing payments for TelexFree . . . Here, it is at least plausible that the $30 million transfer enabled TelexFree insiders to abscond with investor funds, such as funds invested by plaintiffs, as the scheme unraveled.

(Docket No. 1418, at 11-14). In deciding the motion to dismiss and the motion to reconsider this Court found substantial assistance plausible *only* in the wire transfer of $30 million. (Docket No. 1418, at 13-14); (Docket No. 1515, at 4-7). Earlier actions by BANA that might have amounted

4

to substantial assistance were performed prior to it receiving actual knowledge (as alleged in the complaint).

Since then, discovery has revealed that when the $30 million was wired to Account 8506 on March 17, 2014 there was approximately $3 million in the account. On March 24, 2014, TelexFree wrote a check to pay the IRS for approximately $16 million in income taxes.[2] The proceeds of this check, via the bankruptcy trustee's actions to recover the money from the IRS, were eventually returned to the victims (minus a bad check fee). On April 3 and April 11, 2014, cashier's checks for the remaining balance of Account 8506 were withdrawn and the cashier's checks were seized by federal authorities and, on June 17, 2019, the proceeds were wired to the bankruptcy estate. Collectively, the cashier's checks and the check to the IRS amounted to approximately $32 million—greater than the $30 million wire. In addition, the record reveals there were approximately $1 million in debits from Account 8506 after March 17, 2014. These included payments to law firms, tax authorities, and dozens of assorted companies and individuals. As discussed below, there is no plausible allegation that any of those entities are TelexFree insiders.

## **Standard of Review**

Under Federal Rule of Civil Procedure 56(a), a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." An issue is "genuine" when a reasonable factfinder could resolve it in favor of the nonmoving party. *Morris v. Gov't Dev. Bank of P.R.*, 27 F.3d 746, 748 (1st Cir. 1994). A fact is "material" when it may affect the outcome of the suit. *Id*. When ruling on a motion for summary judgment, "the court must view the facts in the light most

---

[2] An earlier check did not go through, which was drawn on March 19, 2014.

favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Scanlon v. Dep't of Army*, 277 F.3d 598, 600 (1st Cir. 2002) (citation omitted).

BANA brings this motion for summary judgment before the close of discovery—indeed, there is a pending motion to compel discovery against it. Accordingly, plaintiffs have invoked Federal Rule of Civil Procedure 56(d) (formerly Rule 56(f)) to defer or deny the motion pending additional discovery. *See Emigrant Residential LLC v. Pinti*, 37 F.4th 717, 724 (1st Cir. 2022) (the precedents concerning Rule 56(f) are still binding on Courts construing Rule 56(d) despite minor textual changes). "[T]he crucial inquiry under Rule 56(d) is whether the movant has had a full and fair opportunity to conduct discovery needed to mount an effective opposition to a summary judgment motion." *Id.* A party demonstrates this by providing the court with a statement:

> that (i) explains his or her current inability to adduce the facts essential to filing an opposition, (ii) provides a plausible basis for believing that the sought-after facts can be assembled within a reasonable time, and (iii) indicates how those facts would influence the outcome of the pending summary judgment motion.

*Vélez v. Awning Windows, Inc.*, 375 F.3d 35, 40 (1st Cir. 2004).[3] District Courts have "considerable discretion" in considering the factors and may excuse or relax one or more of them, or alternately deny the motion if one fails based on the circumstances of the case. *Pinti*, 37 F.4th at 725 (citations omitted). "[D]istrict courts should construe motions that invoke the rule

---

[3] The First Circuit has seemingly grafted a five-prong standard onto that three-prong standard, finding that a district court should consider "authoritativeness, timeliness, good cause, utility, and materiality." *Pinti*, 37 F.4th at 725 (citing *Resolution Tr. Corp. v. N. Bridge Assocs.*, 22 F.3d 1198, 1203 (1st Cir. 1994)). The first two steps, authoritativeness and timeliness, concern the character and timing of the plaintiffs' statement, whereas the remaining three standards—identical in substance to the three factors in *Vélez*—concern the content of the statement. Here, there is no question the affidavit offered by the plaintiffs is authoritative nor is there any argument it was untimely. Therefore, this Court limits itself to the three prongs announced in *Vélez*.

generously, holding parties to the rule's spirit rather than its letter." *Resolution Tr. Corp. v. N. Bridge Assocs.*, 22 F.3d 1198, 1203 (1st Cir. 1994).

## **Analysis**

BANA, for the purposes of this motion, does not argue it lacked actual knowledge. Instead, it argues that its actions caused no harm and that, if it did, its actions were not a "substantial factor" in furthering the fraud that harmed the plaintiffs.

### *1. Causation and the Substantial Factor Doctrine*

Throughout their briefs, the parties refer to "proximate" cause. However, their arguments address both "factual" and "proximate" cause. In Massachusetts, [4] as the Supreme Judicial Court has recently held, [5] there is a clear distinction between "factual" cause and "proximate" cause. *Doull v. Foster*, 487 Mass. 1, 16-17 163 N.E.3d 976, 990 (2021). Factual cause is a "but for" test. *Id.* Although this Court has not had an opportunity to address factual causation in this litigation, it finds that without factual causation, there can be no liability. *Id.* at 11, 986 ("Tort law has long made this causal connection a prerequisite for imposing liability."). That said, the threshold for factual cause is low; there are always multiple causes of any harm and "most will not be of significance for tort law." *Id.* at 12, 987 (citing Restatement (Third) § 26 comment c).

---

[4] The parties assume Massachusetts law applies, at least for the purposes of this motion.

[5] In older cases, the First Circuit has held that "proximate cause" requires (1) foreseeability (2) but-for causation and (3) that the defendant's actions were a substantial factor in causing the harm. *Jorgensen v. Mass. Port Auth.*, 905 F.2d 515, 522-23 (1st Cir. 1990). After *Doull*, this formulation is no longer correct. Although *Doull* post-dated the filing in this case, in Massachusetts "decisional law is generally applied retroactively, unless doing so would fail to protect the reasonable expectations of parties." *Shapiro v. City of Worcester*, 464 Mass. 261, 268, 982 N.E.2d 516, 523 (2013). To determine retroactivity, courts consider "(1) whether a new principle has been established whose resolution was not clearly foreshadowed; (2) whether retroactive application will further the rule; and (3) whether inequitable results, or injustice or hardships, will be avoided by a holding of nonretroactivity." *Id.* Factor (1) favors using the "substantial factor" test because the "the substantial factor test is a familiar standard in Massachusetts." *Doull*, 487 Mass. at 19, 163 N.E. 991. But retrospective application will further the rule, which prevents confusion between legal and factual causation, and there are no "inequitable results" in aiding and abetting cases because the substantial factor test still applies as a separate component of the liability standard. Therefore, the principle announced in *Doull* will apply.

Furthermore, there is no requirement that the defendant be the "but for" cause of all, or even most, of the plaintiff's harm.

"[P]roximate cause is 'based on considerations of policy and pragmatic judgment.'" *Id.* at 8, 983 (citing *Kent v. Commonwealth*, 437 Mass. 312, 320-21, 771 N.E.2d 770, 777 (2002)). That analysis turns on the "reasonable foreseeability of the harm." *Jupin v. Kask*, 447 Mass. 141, 147, 849 N.E.2d 829, 836 (2006) (citation omitted). This Court has found that such a test is "embedded" in the substantial assistance prong of the aiding and abetting standard. (Docket No. 1418, at 14). Plaintiffs argue that proximate cause in aiding and abetting cases is satisfied by a finding that the defendant's actions were a "substantial factor in the [tortfeasor's] ability to perpetrate" the fraud. *Mass. Port Auth. v. Turo Inc.*, 487 Mass. 235, 244, 166 N.E.3d 972, 981-82 (2021). *Turo* never discusses causation and the substantial factor test is not a replacement for the standard foreseeability analysis. Instead, the substantial factor test is a separate and additional requirement for aiding and abetting claims.

To summarize, to satisfy the substantial assistance prong, the harm must have been a but for cause of the harm (factual cause), it must have been a reasonably foreseeable result of the defendant's actions (proximate cause) and it must have been a substantial factor in helping the principal tortfeasor's ability to further the fraud.

2. The Harm

The parties agree that the harm in question is the plaintiffs' failure to receive the "pre-March 9, 2014 return on investment" that were promised them. (5CAC, at ¶¶ 32-33). But they disagree on the precise theory of liability that survived the motion to dismiss and how it must be proven. The plaintiffs, as discussed below, make a variety of legally untenable claims. Those claims can neither defeat summary judgment nor can they be the basis for a Rule 56(d) motion

because no amount of discovery can "breath[] life" into those claims. *Resolution Tr. Corp.*, 22 F.3d at 1207.

BANA argues that this Court held that "[p]laintiffs plausibly alleged that TelexFree's founders absconded with the $30 million." (Docket No. 1615, at 9). This Court held that "it is at least plausible that the $30 million transfer *enabled* TelexFree insiders to abscond with investor funds, such as funds invested by plaintiffs, as the scheme unraveled." (Docket No. 1418, at 14) (emphasis added). However, in their opposition to the summary judgment motion, the plaintiffs seem to abandon an "abscond" theory, positing that they "have never alleged or argued that the TelexFree insiders absconded with any money." (Docket No. 1573, at 1 n. 2); *contra* (Docket No. 1457, at 19) ("The Court's conclusion that the 5CAC plausibly alleges that BANA's facilitation of this transfer substantially aided TelexFree in absconding with victim funds is plainly correct and BANA's arguments that the money was entirely recovered are baseless"); *see also* (5CAC, at ¶¶ 13, 17, 292, 506) (allegations that TelexFree "insiders" absconded with victim's funds). Instead, plaintiffs now argue that "BANA facilitated the ability to collect money from the victims and used it to perpetuate the scheme." (Docket No. 1573, at 1-2 n. 2).

Contrary to the plaintiffs' argument, this is not a simple problem with "verb choice." This Court held—in contrast to the rulings made with regard to other defendants—that "it is at least plausible that the $30 million transfer enabled TelexFree insiders to abscond with investor funds, such as funds invested by plaintiffs, *as the scheme unraveled*." (Docket No. 1418, at 14) (emphasis added). On March 9, 2014—prior to the transfer at issue—TelexFree announced that its promoters would have to sell their plans in order to make money. Indeed, in plaintiffs' complaint they allege that their harm is in not realizing the "pre-March 9, 2014 return on investment" that was promised to them. (5CAC, at ¶¶ 32-33). It is not that after March 9, 2014,

9

TelexFree and its associates ceased to engage in fraud, but the nature of the fraud shifted. Prior to that date, the fraud consisted of enticing new investors to put their money into the scheme, ensuring that any withdrawals of older investors could be covered and money could be siphoned off into the tortfeasors' personal accounts. After that date, there were no new investors in the Ponzi scheme.[6] Instead, as this Court found, TelexFree continued the fraud by attempting to prevent pre-March 9, 2014 customers from receiving their promised returns, in part by absconding with the existing funds. The plaintiffs fail to articulate how the March 17, 2014 wire "facilitated the ability to *collect* money from the victims" (emphasis added), where they concede their harm is limited to returns on pre-March 9, 2014 investments. Therefore, this Court proceeds on the assumption the only relevant harm alleged was the insiders absconding with funds.

The plaintiffs' other arguments do not fare well. They argue that all transactions to Ponzi schemes are presumptively fraudulent, obviating a causation analysis. *See, e.g.*, *In re Petters Co., Inc.*, 557 B.R. 711, 729 n. 26 (Bankr. D. Minn. 2016). That rule is inapplicable because it creates a presumption of "fraudulent intent" in fraudulent transfer cases—it has nothing to do with causation. *In re Petters Co., Inc.*, 495 B.R. 887, 907 (Bankr. D. Minn. 2013), *as amended* (Aug. 30, 2013). This action is not an attempt to "clawback" the $30 million. *Contra id.*; *see also In re DBSI Inc.*, 593 B.R. 795, 800 (Bankr. D. Idaho 2018); *In re Geltzer*, 502 B.R. 760, 763 (Bankr. S.D.N.Y. 2013); *Carney v. Lopez*, 933 F.Supp.2d 365, 370-71 (D. Conn. 2013); *In re Pearlman*, 478 B.R. 448, 449-50 (Bankr. M.D. Fla. 2012); *In re World Vision Entm't, Inc.*, 275 B.R. 641, 644-45 (Bankr. M.D. Fla. 2002). It is an attempt to establish the $30 million wire aided and abetted the primary fraud. Those are completely distinct legal questions and the presumption

---

[6] Some small number of people might have bought TelexFree products after March 9, 2014, but there is no allegation that *their* payments facilitated the fraud.

does not apply.[7] And to the extent a related doctrine might apply in the aiding and abetting context, it would apply to *active* Ponzi schemes on the theory that the new money allows the fraud to pay off older investors, creating the illusion of a viable enterprise. The transaction here, as discussed in detail above, occurred after the Ponzi scheme stopped accepting new investors.

Plaintiffs also argue that payments to Ponzi schemes should not be traced in a causation analysis. *S.E.C. v. Byers*, 637 F.Supp.2d 166, 176-77 (S.D.N.Y. 2009) (collecting cases). But the cases cited do not concern whether someone is *liable* for a Ponzi scheme, but the amount of money that should be *disgorged*. That equity compels that the hardship be shared equally with those who lost their initial investment, *Donell v. Kowell*, 533 F.3d 762, 779–80 (9th Cir. 2008), does not compel the finding that someone who did not further the Ponzi scheme be held liable for its harms.

Plaintiffs spend a good portion of their briefing and Rule 56(d) affidavit under the mistaken assumption that BANA is arguing that it can only be liable for $30 million in damages. BANA is arguing that the $30 million did not *cause harm* or *further the fraud*. Those are legally distinct propositions. For instance, plaintiffs argue that BANA is "liable" for more than the $30 million wire given that aiding and abetting liability leads to joint and several liability and therefore this Court should not only focus on the wire. Likewise, the plaintiffs argue that the defendant's exact damages cannot be known at this time. Without passing judgment on extent of BANA's possible liability, these arguments put the cart before the horse. BANA is only liable *at all* if the $30 million wire caused harm. Thus, these arguments cannot defeat summary judgment.

---

[7] Also, in order to show that the Ponzi scheme presumption applies, a party must demonstrate that the transfer is made "in furtherance of the scheme." *In re Peters Co., Inc.*, 495 B.R. at 907. That is at issue in this summary judgment motion: whether the $30 million transfer furthered the scheme. Thus, it offers no end-run around that fundamental question.

Plaintiffs argue that even if BANA could prove the money was *eventually* recovered, the plaintiffs' lack of access to the $30 million for a significant period—here, years—constitutes a cognizable harm. *See, e.g.*, *Van v. LLR, Inc.*, 61 F.4th 1053, 1063-1064 (9th Cir. 2023). It is far from clear that BANA's actions caused the delay of the recovery of *this money*.[8] Again, the allegation is that $30 million was wired from an IPS account at BANA to a TelexFree account at Wells Fargo (Account 8506). This Court found that influx of cash could enable TelexFree insiders to abscond with investor money. But if not for the $30 million wire, the $30 million would—presumably—still be held by IPS. In any case, even if the money would have been recovered from the IPS account, there is no allegation it would have been recovered more quickly. In addition to failing factual causation, proximate cause fails as well. Plaintiffs seek to hold BANA liable for the delay caused by bankruptcy proceedings and the federal investigation, but those are precisely the types of superseding causes that break proximate causation.[9] Finally, the delay caused by federal investigations and the bankruptcy proceedings cannot satisfy the substantial factor test. The purpose of the substantial factor test is to ensure that liability in the aiding and abetting context is not boundless. *Cf. In re Chiquita Brands Int'l, Inc.*, 284 F. Supp. 3d 1284, 1306, n. 19, 1313-14 (S.D. Fla. 2018) (noting the importance of a "substantial factor" test to prevent boundless liability under a statute that functionally creates aiding and abetting liability). Even if the payments, somehow, led to a delay in recovery, that delay was the result of non-defendants, not the primary tortfeasors' attempts to further the fraud. This also forecloses plaintiffs' arguments that they only need to show a "few cents" flowed to the scheme. They must

---

[8] The plaintiffs do not argue that the wire delayed the receipt of other money TelexFree held, with the exception of the deficient argument regarding Greenberg Traurig discussed below.
[9] Because of these new facts, the plaintiffs' assertions that this Court has "already rejected" BANA's proximate cause arguments borders on incoherent.

12

show the wire was a *substantial factor* in TelexFree insiders' ability to abscond with victim funds.

This weakens most of plaintiffs' arguments concerning the potential destination of $30 million wire. The plaintiffs are correct that BANA cannot disclaim responsibility for the debits from that account merely because there was $3 million in the Account 8506 prior to the wire, and the subsequent debits (approximately $1 million) were less than the $3 million in the account prior to the wire. Once the money is comingled, a precise tracing analysis is impossible. But the plaintiffs must show that the debits were a substantial factor in the insiders' ability to abscond with funds (or satisfy the requirements of Rule 56(d) to defer summary judgment).

3. The Destination of the Wire's Proceeds

The plaintiffs do not carefully separate their standard opposition to summary judgment and their Rule 56(d) arguments in discussing the proceeds of the wire. Although this Court "hold[s] parties to the rule's spirit rather than its letter," *Resolution Trust Corp.*, 22 F.3d at 1203, the plaintiffs make almost no specific representations about future discovery in their opposition brief; they merely make conclusory statements that discovery is not complete. That is insufficient to invoke Rule 56(d). *Id.* at 1207. Instead, plaintiffs mostly rely on their separately filed affidavit to invoke Rule 56(d), discussed separately below. Therefore, with one exception, this Court analyzes the arguments about the proceeds of the wire under the ordinary summary judgment standard. *See* (Docket No. 1573, at 19) ("As Plaintiffs have argued herein, a simple examination of the account records for Wells Fargo Account #8506 provides enough basis to deny the summary judgment motion as presented by BANA"). This is not just because a party must invoke Rule 56(d) to enjoy its protections. *Nieves-Romero v. United States*, 715 F.3d 375, 381

(1st Cir. 2013). It is because without an argument as to what discovery would support the theory the plaintiffs put forward, this Court cannot analyze whether further discovery is warranted.

### a. Rule 56(a)

Plaintiffs argue that some of the proceeds of the wire were used to pay the law firm Greenberg Traurig, which TelexFree enlisted to respond to state investigations of its practices in 2014. BANA argues that this theory of liability was not pleaded in the complaint. However, unlike the other theories discussed below, this Court found it plausible that the $30 million wire "enabled" insiders to abscond with investors' promised pre-March 9, 2014 returns. The theory that the wire was used to delay the recovery of plaintiffs' funds is consistent with that order. There is no requirement that the money "absconded" with is the $30 million in the wire. BANA also argues that Greenberg Traurig is not a defendant. However, that is not dispositive.

Regardless, under the ordinary summary judgment standard the plaintiffs' argument fails. The plaintiffs' only argument in support of their theory that the payment to Greenberg Traurig furthered the fraud is a reference to their complaint. References to pleadings alone are insufficient to defeat summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (a party opposing summary judgment must "go beyond the pleadings"). None of the exhibits put forward by the plaintiffs regarding Greenberg Traurig establish that its representation led to a delay in recovery by the victims—they only establish the fact of representation. This also defeats their cursory allegation that the payment to the California Franchise Tax Board furthered the fraud—an argument the plaintiffs spend no time explaining.[10] Indeed, the plaintiffs' opposition

---

[10] To be clear, this Court is not holding that either theory is inherently implausible. The Court is holding that the plaintiffs have failed to abide by black-letter law in providing anything other than "the mere pleadings themselves" to support their theory. *Celotex*, 477 U.S. at 324. The voluminous exhibits the plaintiffs attach do nothing to support *these* theories—instead, they all support *new* theories not pleaded in the complaint.

brief reads more like an opposition to a motion to dismiss than an opposition to summary judgment. Because the plaintiffs themselves disclaimed reliance on Rule 56(d) for most of those arguments, the Court cannot offer them that escape valve.

### b. Rule 56(d)

There are additional debits[11] from Account 8506 and plaintiffs argue that they "have not yet had the opportunity to take depositions, but it certainly appears that the names of the individuals and entities on the other wire transfers and checks are likely TelexFree insiders." (Docket No. 1573, at 13). This conclusory observation cannot defeat summary judgment, as BANA points out. However, the reference to depositions is sufficient—barely—to invoke Rule 56(d). Therefore, this Court must consider whether depositions of those people who received money would justify deferring a ruling on summary judgment: (1) whether there is justification for the plaintiffs' lack of discovery (2) whether it is plausible that discovery will lead to the information plaintiffs claim it will, and (3) whether such information is material to the pending motion. *Vélez*, 375 F.3d at 40. To be clear, the plaintiffs do not argue that these payments may have furthered the fraud in any way other than directly lining the pockets of TelexFree insiders.

The time for depositions has not yet arrived, so plaintiffs have satisfied (1). However, it is not plausible, based on the plaintiffs' representations, that material information is forthcoming. BANA argues that:

> plaintiffs have known the payees' identities for years, but never subpoenaed them for testimony, nor did Plaintiffs include *any* of the payees among the *150+* individuals and entities whom plaintiffs identified as directly or indirectly related to TelexFree in the broad discovery requests they served on BANA. And Plaintiffs certainly never suggested in their 1,277-paragraph complaint that any of these payees was a TelexFree entity or insider, or otherwise associated with TelexFree in any way. Plaintiffs' own actions refute their current representation to

---

[11] The plaintiffs also reference credits to Account 8506. This Court does not understand how the identity of those creditors has any relation to BANA's possible liability. Account 8506 is not in BANA's control and whether or not other entities credited money into it is irrelevant to the instant motion.

15

> the Court that these individuals possess "essential" evidence or are "likely TelexFree insiders."

(Docket No. 1615, at 5) (citations omitted). For most of the payees, BANA is correct: while paper discovery is pending, the fact that these entities are completely absent from the plaintiffs' requests is telling, especially where significant discovery concerning the "core" TelexFree entities has already occurred. Some of the more substantial debits went to entities, such as Liga Telecom Inc. and Idt Domestic Telecom Inc., that are identified in the complaint as companies that TelexFree insiders like Oliviera made payments to. *See, e.g.*, (5CAC, at ¶ 499). And Oliviera herself received a de minimis payment from the account after the wire. However, default entry has been granted against Oliviera, (Docket No. 1646), and Liga Telecom and Idt Domestic Telecom appear to be creditors of TelexFree. (Docket No. 1547-11, at 124, 994). This, combined with the lack of interest in these entities during paper discovery, leads this Court to conclude it is not plausible that the plaintiffs would discover that these recipients are "TelexFree insiders." Indeed, it is completely unclear to this Court what the plaintiffs' plans for discovery are—the plaintiffs never actually aver they plan to depose any of the entities who received payments. This argument is advanced in a single paragraph. The bulk of the plaintiffs' briefing either consists of legal arguments, discussed above, that attempt end-runs around any requirement that they prove the alleged actions actually furthered the fraud in question, or of an attempt to constructively amend their complaint by relying on theories not adequately pleaded (or pleaded at all) in their complaint, discussed below. Again, the plaintiffs simultaneously argue in their opposition brief that they never argued that insiders absconded with funds, that their allegations are that BANA facilitated the collection of new funds, and that discovery will reveal that TelexFree insiders absconded with funds. Accordingly, this Court exercises its considerable discretion under Rule

56(d), finding that it is not plausible that the plaintiffs will discover what they say they will—that any of these entities are TelexFree insiders.

### 4. New Theories

Plaintiffs argue both in their opposition to summary judgment and their Rule 56(d) affidavit that theories they failed to plead or which failed at the pleading stage might be proven with additional discovery, notably that other transactions from the BANA account not mentioned in the complaint constitute substantial assistance on BANA's part and that future discovery will lead to evidence of more transactions. The First Circuit is clear:

> Plaintiffs may not raise new and unadvertised theories of liability for the first time in opposition to a motion for summary judgment. Allowing a plaintiff to proceed on new, unpled theories after the close of discovery would prejudice defendants, *who would have focused their discovery efforts on the theories actually pled*.

*Miranda-Rivera v. Toledo-Davila*, 813 F.3d 64, 76 (1st Cir. 2016) (citation omitted) (emphasis added). Theories not raised in the complaint cannot be used to defeat summary judgment. As discussed above, the plaintiffs do not need to catalogue every way that an act of assistance furthered the fraud in their complaint—it only needs to be plausible, at the motion to dismiss stage, that it could. But the plaintiffs must actually plead the act that constitutes substantial assistance. As to the Rule 56(d) affidavit, discovery has not closed, but the holding of *Miranda-Rivera* still applies. Defendants are entitled to focus discovery on the "the theories actually pled." Plaintiffs have put forward no argument, either in their summary judgment motion or their motion to compel, (Docket No. 1541), that would justify discovery on issues not pleaded in their complaint. *Cf. Bonner v. Triple-S Mgmt. Corp.*, 68 F.4th 677, 685-86 (1st Cir. 2023) (highlighting the distinction between information related to the "subject matter" of the complaint, which requires good cause on the part of the plaintiff, and information related to the "claims or defenses," which only needs to be relevant and not overly burdensome on the

defendant); *see also* (Docket No. 1643) (denying motion to compel against non-party where the plaintiffs only argument was that discovery would lead to evidence supporting dismissed claims). Furthermore, plaintiffs have not sought leave to amend the complaint nor even suggested they might.[12] To the extent the plaintiffs are arguing *failed* pleadings can be the basis for a rule 56(d) deferral, their argument that no allegations from the complaint were "stricken" even if they were dismissed is without merit.

     5. *Rule 56(d) Affidavit*

The arguments put forward in the Rule 56(d) affidavit fail on plausibility and materiality grounds. *Vélez*, 375 F.3d at 40. The plaintiffs aver that they have not had an opportunity to conduct discovery on actual knowledge, including the relationship between BANA and IPS and the relationship between BANA and Banc of America Merchant Services, a non-party. That is immaterial; if plaintiffs cannot prove substantial assistance, one of the necessary prongs of aiding and abetting liability, they cannot "breath[] life" into their claims. *Resolution Tr. Corp.*, 22 F.3d at 1207. The plaintiffs also argue they have not had a chance to depose the bankruptcy trustee or any witnesses, but fail to specify *at all* what they hope to find that might defeat summary judgment, nor do they identify, other than the bankruptcy trustee, who they plan to depose. This Court will not speculate as to what material information the plaintiffs might find from such depositions. Finally, plaintiffs argue that:

> an expert opinion will be able to establish that a financial institution that aids and abets a Ponzi scheme is jointly and severally liable for all damages that are created by the scheme after the financial institution's act of substantial assistance in facilitating a transaction, regardless of whether the funds associated with that particular transaction are subsequently recovered after the total collapse of the Ponzi scheme.

---

[12] BANA argues that the information in question was already available or held by plaintiffs. Although this Court does not find it necessary to take a position on that argument, such an amendment would be difficult to justify if the information they base these new theories of liability on were already in their possession prior to filing the operative complaint.

(Docket No. 1576, ¶ 15). Expert opinions on legal conclusions—like liability—are generally not allowed. *Nieves-Villanueva v. Soto-Rivera*, 133 F.3d 92, 99 (1st Cir. 1997). Regardless, the plaintiffs' argument again puts the cart before the horse: they claim the expert will testify that "a financial institution *that aids and abets a Ponzi scheme* is jointly and severally liable" (emphasis added). But what they need to prove to defer summary judgment is a discovery plan that will lead to evidence supporting its allegation that BANA "aid[ed] and abet[ed] a Ponzi scheme." Instead, the plaintiffs seem to think they have already prevailed on that issue and that the only issue left for summary judgment is damages. Their Rule 56(d) affidavit does not provide sufficient grounds for this Court to defer a summary judgment ruling.

## Conclusion

BANA has advanced a cramped view of both this Court's orders denying its motion to dismiss and motion for reconsideration as well as its obligations in discovery. This Court's order should not be read by the other parties in this litigation as a vindication of those arguments. Furthermore, BANA's liability rested on a single transaction, made after March 9, 2014, creating a very narrow theory of plausible liability.[13] For the reasons above, the motion to strike is ***denied*** and the motion for summary judgment is ***granted***.

**SO ORDERED**

*/s/ Timothy S. Hillman*
**TIMOTHY S. HILLMAN**
**SENIOR DISTRICT JUDGE**

---

[13] In contrast to the vast majority of co-defendants, against whom the continuing provision of services prior to March 9, 2014 was plausibly alleged.