**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **IN RE: TELEXFREE SECURITIES LITIGATION** | |
| | **MDL No. 4:14-md-2566-TSH** |
| **This Document Relates to:** **ALL CASES** | (Leave to file granted 9/1/23 (Dkt. 1721)) |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION**
**FOR PRELIMINARY APPROVAL OF SETTLEMENT**

**I.      INTRODUCTION**

Plaintiffs have reached settlements and now seek this Court's approval. Plaintiffs and Defendants Ryan Mitchell ("Mitchell") and Telecom Logic (Telecom Logic") (together "Mitchell/Telecom Logic Defendants") have reached a settlement. (the "Mitchell/Telecom Settlement") (*See* Attachment A - Bonsignore Declaration ("Bonsignore Decl."), Exhibit 1, Mitchell/Telecom Settlement Agreement). The Mitchell Settlement includes a payment of $25,000.00 to Plaintiffs. (*See id.* ¶¶11(a)).

This settlement also includes an obligation for Mr. Mitchell and Telecom Logic to provide ongoing cooperation relating to TelexFree's Telecom and IT systems that directly supported Telexfree's operations and all other relevant information that Mr. Mitchell possesses. (Bonsignore Decl., Exhibit 1, Mitchell/Telecom Settlement Agreement ¶¶ 14-35).

Plaintiffs have also reached a settlement (the "IPS Settlement") with Defendants International Payout Systems, Eddie Gonzalez, and Natalia Yenatska. ("IPS Defendants") (*See* Bonsignore Decl., Exhibit 2, IPS Settlement Agreement). In exchange for their release, the IPS Defendants yesterday provided a signed declaration addressing topics of significant import to this action and have agreed to provide the additional cooperation essential to unraveling a noteworthy segment of TelexFree's labyrinth like financial fraud. The IPS Defendants have also agreed to pay

1

Plaintiffs $500,000.00. (*Id*. ¶ 10). The IPS Defendants have committed to provide essential, ongoing cooperation relating to TelexFree's dealings with financial institutions that TelexFree authorized it to carry out essential pay processing transactions for TelexFree between October 2013 and March 2014 estimated to be approximately $200 million dollars on an expedited basis and have already unraveled approximately $50 million in previously obfuscated transaction. (*See* Exhibit 2 to Bonsignore Decl., IPS Settlement Agreement ¶¶ 13-15).

Plaintiffs have also reached a settlement with TD Bank N.A., ("TD Bank"). TD Bank will pay ninety-five million dollars ($95,000,000.00) and provide ongoing cooperation with Plaintiffs as set forth in the Settlement Agreement. (*See* Bonsignore Decl., Exhibit 3, TD Bank Settlement Agreement). The settlement with TD Bank ("TD Bank Settlement") was reached as a result of, among other things, Plaintiffs' successful efforts to file amended claims against TD Bank and other financial institutions which provided critical services to TelexFree, (Dkt. 1176), the denial of TD Bank's motion to dismiss the Fifth Consolidated Amended Complaint. (Dkt. 1418), the exchange of discovery by the TD Bank and the Putative Class Representatives, TD Bank's cooperative and forthcoming approach to Plaintiffs extensive discovery requests**,** the exceptional work put in by Plaintiffs' TD Bank Team in quickly reviewing evidence and applying it to well settled law in a persuasive manner, and the necessary participation of a preeminent JAMS mediator with Pyramid/Ponzi scheme experience and deep understanding of financial fraud-based class actions.

Plaintiffs and TD Bank laid the groundwork for this settlement by exchanging discovery in near record time. This exchange was accomplished by experienced lawyers who performed their duties at an exceptionally high level.  Moreover, during Plaintiffs' comprehensive review, coding, evaluation and analysis of TD Bank's discovery responses and voluminous document productions, Plaintiffs made use of expert consultants to assist them in fully analyzing TD Bank's liability and

damages exposure. Plaintiffs' TD Bank Team included experienced litigators, trial lawyers, class action counsel, document analysis and review lawyers, retired Federal judges, and preeminent Federal procedure and appellate counsel.

The TD Bank Settlement was also facilitated through the service of Robert Meyers of JAMS, a preeminent mediator with extensive experience and renowned expertise in securities and Ponzi schemes.

These settlements were reached less than a year after this Court's ruling on Plaintiffs' Motion to Amend the complaint to bring back in previously dismissed Defendants and its denial of those defendants' subsequent motions to dismiss.

Plaintiffs' Motion for Preliminary Approval should be granted in whole because each of the requirements set forth in Federal Rule of Civil Procedure 23 is satisfied as to *each* proposed settlement: (1) the representation by the class representatives and class counsels has been adequate; (2) the settlement negotiations were done fairly and at arm's length; (3) the relief provided under the settlement (including the terms of any proposed award of attorney fees) is adequate; and (4) the treatment of class members relative to one another is equitable. *See* Fed. R. Civ. P. 23(e)(2).

Happily, this motion plows no new ground regarding settlement approval: Plaintiffs seek entry of orders that are substantially identical to orders previously issued by the Court when granting approval to settlements with Base Commerce, LLC (Dkt. 1057), Synovus Bank (Dkt. 1057), and Joseph Craft (Dkt. 1058). Aside from acknowledgement of the hard work of Plaintiffs' TD Bank team, the requested orders are also substantially identical to those issued in connection with settlements for John Merrill and Fidelity Co-Operative Bank. (Dkt. 1112).

Plaintiffs' Motion for Preliminary Approval and to appoint Settlement Class Counsel and Class Representatives is supported as to the proposed settlements only by TD Bank, Ryan Mitchell, Telecom Logic, International Payout Systems, Eddie Gonzalez, and Natalia Yenatska.

More specifically, Plaintiffs seek orders preliminarily approving each settlement[1], provisionally certifying each settlement class, approving the joint form and manner of notice to the settlement class, appointing counsel, and class representatives for the settlement class, establishing a joint schedule for final approval, and staying the litigation with respect to each Settling Defendant through to the final approval hearing. Plaintiffs are working with their class notice and claims processing professional and will submit a plan of distribution for this Court's review following Final Approval.

Plaintiffs also request that the Court adopt the proposed schedule for Plaintiffs' application for attorneys' fees and expenses and for incentive awards.

## II.    STATEMENT OF RELEVANT FACTS

## A.  ADEQUACY OF COUNSEL AND CLASS REPRESENTATIVES

### a.  Procedural History

In mid-April 2014, TelexFree, LLC, TelexFree, Inc., and TelexFree Financial, Inc. declared bankruptcy. Thereafter, in June 2014, Waldemara Martin retained interim lead counsel who filed the first civil action against TelexFree. Other complaints followed in various district courts across the country alleging an illegal pyramid/Ponzi scheme. (*See* Bonsignore Decl. ¶ 12). In October 2014, the Judicial Panel on Multidistrict Litigation issued a Transfer Order in *In re TelexFree Securities Litigation* (MDL No. 2566) transferring all actions to this Court. (*See* Dkt. 1).

---

[1] The Mitchell/Telecom Logic Defendants, the IPS Defendants and TD Bank are referred to as the "Settling Defendants".

On December 12, 2014, the Department of Justice ("DOJ") filed a motion seeking a stay of all discovery pending resolution of its criminal cases against TelexFree's founders Carlos Wanzeler and James Merrill. (Dkt. 62). On March 10, 2015, this Court granted the DOJ's motion and stayed all discovery. (Dkt. 111). That stay was supplemented by a blanket stay of all proceedings on March 2, 2016, "staying all further action in this case until further notice" and directing Plaintiffs and their counsel to "take no further action" of any kind "until the stay is lifted by the Court." (Dkt. 414). That stay remained in effect until January 29, 2019. (*See* Dkt. 606). During those four years, Plaintiffs were barred from obtaining formal discovery from Defendants. (*See* Dkts. 435, 606). A further partial stay of discovery was entered on April 9, 2020.[2] (Dkt. 950).

On January 29, 2019, the Court granted TD Bank's motion to dismiss all claims alleged against it. (See Dkt. 602).

In April 2020, the Court permitted Plaintiffs to seek leave to file a Fifth Consolidated Amended Complaint ("5CAC"). (Dkt. 947). Plaintiffs filed their motion for leave to further amend their complaint on May 19, 2020. (Dkt. 983). The Court granted the Plaintiffs leave to file the 5CAC on December 6, 2021. (Dkt. 1176). The 5CAC alleged claims against TD Bank for Aiding and Abetting and Unjust Enrichment.[3] (*See* Dkt. 1186).

TD Bank filed a new Motion to Dismiss in March 2022. (Dkt. 1303). That motion, along with fourteen other motions to dismiss, were fully briefed and subsequently resolved via an

---

[2] The MDL proceedings have essentially operated under three consolidated complaints: The Second Consolidated Amended Complaint, filed on April 30, 2015 (Dkt. 141); the Fourth Consolidated Amended Complaint, filed on June 6, 2017 (Dkt. 503); and the Fifth Consolidated Amended Complaint (Dkt. 1186).

[3] This Court had previously dismissed Plaintiffs' claims for unjust enrichment. Plaintiffs repleaded their claim against TD Bank for unjust enrichment solely to preserve their ability to seek appellate review. (*See* Dkt. 984 at 40–41).

omnibus ruling on August 31, 2022. (Dkt. 1418). The Court denied TD Bank's motion to dismiss Plaintiffs' claim for Aiding and Abetting the TelexFree Fraud. (*See id.* at 19).

Written discovery initially commenced in late 2019 against the then-remaining defendants and was ordered to be completed by February 28, 2020. (Dkt. 756). Pursuant to this Court's scheduling order, no depositions of fact witnesses were allowed pending entry of orders resolving any Motion to Dismiss that may be filed against the 5CAC, which effectively informally stayed discovery. (Dkt. 950). As set forth above, after Plaintiffs filed its Motion to Amend and the 5CAC and the Motions to Dismiss were resolved, discovery picked up again in November 2022 and was ordered to be completed by March 31, 2023 (Dkt. 1480), the deadline of which was later extended to June 30, 2023 (Dkt. 1509) and then to July 21, 2023 (Dkt. 1657). Plaintiffs timely complied and served their responses to the Defendants' written discovery on January 13, 2023. The parties jointly requested a further extension to the completion of written discovery on March 31, 2023, thereby extending the deadline for the substantial completion of document discovery to June 30, 2023. (Dkts. 1539, 1540).

Certain Defendants again did not meet their discovery obligations. Plaintiffs filed Motions to Compel Discovery against: (1) Bank of America on April 4, 2023 (Dkt. 1541); (2) International Payout Systems on May 4, 2023 (Dkt. 1564); (3) Katia Wanzeler on May 26, 2023; (4) Gerald P. Nehra and Gerald P. Nehra Attorney at Law, PLLC on May 26, 2023, and May 30, 2023 (Dkts. 1582, 1586); (5) PNC Bank on May 30, 2023 (Dkt. 1584); (6) Wells Fargo Bank on June 2, 2023 (Dkt. 1591); (7) Vantage Payments and Dustin Sparman on June 26, 2023 (Dkt. 1668); (8) Wells Fargo Bank on July 21, 2023 (Dkt. 1692); and (9) ProPay on July 21, 2023 (Dkt. 1694).

TD Bank did comply within the expedited schedule ordered by this Court (Dkts. 1539, 1540). (*See* Bonsignore Decl. ¶¶ 51-55)**.** TD Bank and Plaintiffs' counsel worked through all

discovery issues and disputes in a forthcoming and expedited basis. (Bonsignore Decl. ¶ 53)**.** TD Bank also carried out targeted searches for items requested by Plaintiffs which allowed Plaintiffs to receive sufficient information to consult with their experts and otherwise engage in settlement negotiations. (Bonsignore Decl. ¶ 54).

Ryan Mitchell and Telecom Logic were added as Defendants in the 5CAC and have thus far not obstructed Plaintiffs' discovery requests. (*See* Bonsignore Decl. ¶¶ 6, 59-60).

The IPS Defendants filed three motions to dismiss (Dkts. 173, 1305, 1490). On January 29, 2019, the Court granted IPS's motion to dismiss Plaintiffs' claims for statutory aiding-abetting and unjust enrichment while denying IPS's motion to dismiss Plaintiffs' claims for civil conspiracy and common law aiding-abetting. (Dkt. 601). On August 31, 2022, after Plaintiffs had filed the Fifth Consolidated Amended Complaint, the Court again granted IPS's motion to dismiss Plaintiffs' claim of unjust enrichment.[4] (Dkt. 1418 at 22). On January 13, 2023, The Court denied the motion to dismiss filed by Eddie Gonzalez and Natalia Yenatska. (Dkt. 1519).[5] International Payout Systems did not timely respond to Plaintiffs' discovery. Plaintiffs filed a motion to compel on May 4, 2023. (Dkt. 1564). On June 5, 2023, this Court entered an order compelling International Payout Systems to "conduct good faith searches for the materials listed and produce them as soon as possible." (Dkt. 1596).

**b. Prior Settlements**

On March 8, 2020, the Court granted preliminary approval for Plaintiffs' settlements with Defendants Base Commerce, Synovus Bank, Joseph Craft, Craft Financial Services, and other

---

[4] IPS did not move to dismiss Plaintiffs' claims against IPS for civil conspiracy and common law aiding-abetting.

[5]

assorted parties. (Dkt. 948). Final approval of those settlements was granted on July 28, 2020. (Dkts. 1057, 1058).

On November 6, 2020, the Court granted preliminary approval for Plaintiffs' settlements with Defendants Fidelity Co-Operative Bank and John Merrill. (Dkt. 1096). Fidelity provided discrete financial services for TelexFree for roughly four months and processed about $22.5 million dollars in transactions. Plaintiffs settled with Fidelity Bank and its President, John Merrill, for $22.5 million dollars (*See* Dkt. 1056-5). Final approval of this settlement was granted on February 26, 2021. (Dkt. 1112).

**c. Informal Discovery.**

On August 9, 2017, the TelexFree bankruptcy trustee ("Trustee") produced a narrow and limited set of documents to Plaintiffs. (Bonsignore Decl. ¶ 25). The Trustee refused to produce the bulk of the documents he possessed on the grounds that they were subject to a confidentiality agreement. (*See id.* at ¶ 26). On May 26, 2017, this Court allowed Plaintiffs' motion to serve a subpoena upon the Trustee. (Dkt. 494). On June 22, 2017, certain Defendants filed a Motion to Quash with respect to Plaintiffs' subpoena upon the TelexFree Trustee. (Dkt. 507). On September 23, 2019, this Court denied Defendants' Motion to Quash. (Dkt. 752).

On September 6, 2019, Plaintiffs entered into a settlement agreement with former TelexFree CFO Joseph Craft. (Bonsignore Decl. ¶ 27). Mr. Craft's insights and firsthand knowledge provided Plaintiffs with new evidence, facilitated Plaintiffs' diligent efforts to assemble the evidence they already possessed, and provided Plaintiffs with critical context about the relationships and roles of various parties associated with TelexFree. (*Id.*; Dkt. 763-1, Ex. 1).

On October 11, 2019, the Trustee produced 98,000 images. (Bonsignore Decl. ¶ 30). The Trustee's production did not include metadata or a detailed accounting of the contents of the

production. Nonetheless, Plaintiffs' counsel reviewed, coded, and second level reviewed the materials and worked with a new cooperating witness – Mr. Craft. That production was subsequently provided to defense counsel. (Bonsignore Decl. ¶ 31). The documents produced by the Trustee were later re-requested from the original producing parties. (*Id*.)

### d.  Formal Discovery Exchanged with Defendants

During the course of this litigation, Plaintiffs received approximately 1,171,789 pages of documents received from various Defendants and third parties. The file size of these documents ranged from 104.1 MB to 10.1 GB, the largest files of which took an extensive amount of time to review and analyze. Additionally, Plaintiffs reviewed and produced 136,903 documents comprised of 757,540 pages, including 7,892 Excel spreadsheets and 126,736 PDF, email, image and Word documents. (Bonsignore Decl. ¶ 73).

### e.  Formal Discovery Exchanged with Settling Defendants

Prior to formal mediation, Plaintiffs and the Settling Defendant TD Bank exchanged interrogatories and requests for production. (Bonsignore Decl. ¶ 51). In the space of three months, Plaintiffs received, coded, and analyzed approximately 50,000 pages of documents from Settling Defendant TD Bank as well as 26,483 pages of documents relating to TD Bank from the Bankruptcy Trustee. These documents included densely populated account statements, as well as account opening documents, fraud and anti-money-laundering policies, training materials, deposit slips, check images, and internal communications from over a dozen custodians. (*Id*.)

Prior to formal mediation with TD Bank, Plaintiffs carried out first, second, and third-level reviews of productions from TD Bank and other defendants. (Bonsignore Decl. ¶ 73). Because the operation of a Ponzi scheme and its ability to maintain its operation is dependent and concomitant on the assistance of multiple financial service providers and professionals at once, reference to and

analysis of the temporally related involvement and conduct of other defendants was essential to Plaintiffs analysis. Plaintiffs fully sequenced TD Bank's contacts with the TelexFree scheme and tracked the knowledge concerning TelexFree across TD Bank's various departments. With the benefit of their Ponzi scheme expert, banking experts, Big Data expert, and independent judicial advisor, Plaintiffs translated that factual knowledge into an assessment of TD Bank's potential liability across a range of litigation scenarios.

Ryan Mitchell has produced 8,575 documents and has otherwise cooperated during litigation. Most recently is working to retrieve electronic files. (Bonsignore Decl. ¶¶ 59-60).

On June 5, 2023, this Court entered an order compelling International Payout Systems to "conduct good faith searches for the materials listed and produce them as soon as possible." (Dkt. 1596). This order jumpstarted a new round of settlement negotiations. Plaintiffs then pressed IPS on two separate and distinct fronts – litigation in furtherance of this Court's order and settlement. Plaintiffs had hoped to include the IPS defendants into this settlement package but were unable to come to terms. Motions for sanctions relating to the IPS Defendants failure to satisfy this Court's order compelling them to conduct good faith searches and produce. Following this Court's order on the Motion to Compel, International Payout Systems produced nearly 6,000 pages of additional documents, including bank statements covering critical time period of Telexfree transactions, many of which quite surprisingly were not produced by Defendant Bank of America in its document productions. (Bonsignore Decl. ¶ 64). Moreover, Plaintiffs also performed first, second and third level reviews of over 30,000 pages of documents previously produced by International Payout Systems. (Bonsignore Decl. ¶ 73).

### III.    THE TERMS OF THE SETTLEMENT

As described above, the parties have entered into written agreements setting forth the terms of their settlement. (Bonsignore Decl., Ex. 1, 2 and 3) ("Settlement Agreements").

Defendants Ryan Mitchell and Telecom Logic have agreed to a cash settlement of twenty-five thousand dollars ($25,000.00) that will be paid into an escrow account established for the benefit of the class members. (*See* Exhibit 1 to Bonsignore Decl., Mitchell/Telecom Logic Settlement Agreement ¶¶ 11(a)). The Mitchell/Telecom Logic Settlement requires essential ongoing cooperation relating to TelexFree's Telecom and IT systems that directly supported Telexfree's operations and any other TelexFree-related matters where the Mitchell Defendants possess relevant information. (*Id*. ¶¶ 14-35). Ryan Mitchell has already met with Plaintiffs and continues to offer cooperation.

Subject to Court approval and direction, the proceeds of the Mitchell/Telecom Logic Settlement, plus accrued interest, will be used to (1) make a distribution to settlement class members in accordance with a proposed allocation plan (*see id*. ¶¶ 12-13); (2) pay class counsel's attorneys' fees, costs and expenses as awarded by the Court and incentive awards to class representatives (*Id*. ¶ 56); and (3) pay taxes on any interest earned on the escrow account (*Id*. ¶ 13(f).).

The IPS Defendants have agreed to a cash settlement of five hundred thousand dollars ($500,000.00) that will be paid into an escrow account established for the benefit of the class members. (*See* Exhibit 2 to Bonsignore Decl., IPS Settlement Agreement ¶¶ 10-11). The IPS Defendants are also obliged to provide ongoing cooperation to Plaintiffs, particularly with regards to TelexFree transactions that were routed through banks, payment processors, and other financial institutions. (*Id*. ¶¶ 13-15). IPS has information on roughly $200 million in transactions that were

ordered or processed by a number of banks, payment processors, and other financial institutions.

Subject to Court approval and direction, the proceeds of the IPS settlement, plus accrued interest, will be used to (1) make a distribution to settlement class members in accordance with a proposed allocation plan (*Id*. ¶ 38); (2) pay notice costs and costs incurred in settlement administration, (up to a maximum of $100,000) (*Id*. ¶ 12(d)); (3) pay class counsel's attorneys' fees, costs and expenses as awarded by the Court and incentive awards to class representatives (*Id.*); and (4) pay taxes on any interest earned on the escrow account (*Id*. ¶ 12(g)).

TD Bank has agreed to a cash settlement of ninety-five million dollars ($95,000,000.00) that will be paid into an escrow account established for the benefit of the class members.[6] ("TD Bank Settlement") (*See* Exhibit 3 to Bonsignore Decl., TD Bank Settlement Agreement ¶¶ 10-12). TD Bank is also obliged to the ongoing cooperation Plaintiffs requested of them. (*Id*. at ¶¶ 14-19).

As to the TD Bank settlement, subject to Court approval and direction, the proceeds of the settlement, plus accrued interest, will be used to (1) make a distribution to settlement class members in accordance with a proposed allocation plan (*See* Exhibit 3 to Bonsignore Decl., TD Bank Settlement Agreement ¶ 42); (2) pay notice costs and costs incurred in settlement administration, (up to a maximum of $500,000) (*Id.* ¶ 13(d)); (3) pay class counsel's attorneys' fees, costs and expenses as awarded by the Court and incentive awards to class representatives (*Id*. ¶¶ 43); and (4) pay taxes on any interest earned on the escrow account (*Id*. ¶ 13(g)).

In return for the settlement payment and cooperation, Plaintiffs and members of the

---

[6] The release of claims against TD Bank includes TD Bank's past, present, and future employees, officers, directors, corporators, heirs, trusts, trustees, executors, estates, administrators, beneficiaries, distributees, foundations, agents, fiduciaries, partners, partnerships, joint ventures, member firms, limited liability companies, corporations, parents, subsidiaries, divisions, affiliates, associated entities, principals, managing directors, members, managers, predecessors, predecessors-in-interest, successors, successors-in-interest, assigns, advisors, consultants, brokers, dealers, lenders, attorneys, representatives, accountants, insurers, co-insurers, reinsurers, associates, and their related parties.

settlement class will relinquish any claims they have against the Settling Defendants relating to TelexFree, including claims that were or could have been brought in this litigation. (*See* Exhibit 1 to Bonsignore Decl., Mitchell/Telecom Logic Settlement Agreement ¶¶ 36, 39; *see* Exhibit 2 to Bonsignore Decl., IPS Settlement Agreement ¶¶ 21-22; *see* Exhibit 3 to Bonsignore Decl., TD Bank Settlement Agreement ¶¶ 21-23).

The Settlement Agreements becomes final upon (1) the Court's approval pursuant to Rule 23(e) and entry of a final judgment of dismissal with prejudice, (2) the Court's issuance of a bar order consistent with the terms set forth in the Settlement Agreement, and (3) the expiration of the time for appeal or, if any appeal is taken, the affirmance of the approval and judgment with no further possibility of appeal. (Exhibit 1 to Bonsignore Decl., Mitchell/Telecom Logic Settlement Agreement ¶ 46; Exhibit 2 to Bonsignore Decl., IPS Settlement Agreement ¶ 29); Exhibit 3 to Bonsignore Decl., TD Bank Settlement ¶ 31).

Plaintiffs' Motion for Preliminary Approval should be granted in whole because each of the requirements set forth in Federal Rule of Civil Procedure 23 is satisfied as to *each* proposed settlement: (1) the representation by the class representatives and class counsels has been adequate; (2) the settlement negotiations were done fairly and at arm's length; (3) the relief provided under the settlement (including the terms of any proposed award of attorney fees) is adequate; and (4) the treatment of class members relative to one another is equitable. *See* Fed. R. Civ. P. 23(e)(2).

With this motion, Plaintiffs seek entry of orders that are substantially identical to orders issued by the Court when granting approval to settlements with Base Commerce, LLC (Dkt. 1057), Synovus Bank (Dkt. 1057), and Joseph Craft (Dkt. 1058). The requested orders are also substantially identical to those issued in connection with settlements for John Merrill and Fidelity Co-Operative Bank. (Dkt. 1112).

More specifically, Plaintiffs seek orders preliminarily approving each settlement, provisionally certifying each settlement class, approving the joint form and manner of notice to the settlement class, appointing counsel and class representatives for the settlement class, establishing a joint schedule for final approval, and staying the litigation with respect to each Settling Defendant through to the final approval hearing.

Plaintiffs are working with their class notice and claims processing professional and will later submit a plan of distribution for this honorable court's review.

Plaintiffs' Motion for Preliminary Approval and to appoint Settlement Class Counsel and Class Representatives is supported as to the proposed settlements only by TD Bank and Ryan Mitchell, International Payout Systems, Eddie Gonzalez, Natalia Yenatska.

Plaintiffs also request that the Court adopt the proposed schedule for Plaintiffs' application for attorneys' fees and expenses and for incentive awards.

## IV.    ARGUMENT

Class actions may only be settled with the Court's approval. Fed. R. Civ. P. 23(e). Before notice of a settlement may be given to the class, the court must find that "giving notice is justified by the parties' showing that the court will likely be able to (1) approve the proposal under Rule 23(e)(2); and (2) certify the class for purposes of judgment on the proposal." *Id.* at (e)(1)(B). The Settlement Agreements before the Court meet these requirements.

**A.  The Settlements Warrant Preliminary Approval Pursuant to Rule 23(e)(2).**

Rule 23(e)(2) requires that, where a settlement would bind class members, "the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether":

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

14

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;
(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
(iii) the terms of any proposed award of attorney's fees, including timing of payment; and
(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). "The central concern in reviewing a proposed class-action settlement is that it be fair, reasonable, and adequate." Advisory Committee Notes to 2018 Amendments to Fed. R. Civ. P. 23. "The goal of this amendment is not to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." *Id.*

"Settlement agreements enjoy great favor with the courts as a preferred alternative to costly, time-consuming litigation." *Fid. & Guar. Ins. Co. v. Star Equip. Corp.*, 541 F.3d 1, 5 (1st Cir. 2008). Approval of a class action settlement under Fed. R. Civ. P. 23(e) involves a two-step process. First, counsel submits the proposed terms of settlement and the court makes a preliminary fairness evaluation. *See Federal Judicial Center, Manual for Complex Litigation* §21.632 (4th ed. 2004) (hereafter "*Manual*"). *See also* 4 *Newberg on Class Actions* §13:10 (6th ed. 2023) (endorsing a multi-step process). In this preliminary evaluation of a proposed settlement, the court determines only whether the settlement has "obvious deficiencies" or whether "it is in the range of fair, reasonable, and adequate. *In re M3Power Razor Sys. Mktg. & Sales Prac. Litig.*, 270 F.R.D. 45, 52 (D. Mass. 2010) (citing *Manual* §21.632). In this Circuit and elsewhere, settlements of class actions are favored. *See In re Lupron Mktg. & Sales Practices Litig.*, 228 F.R.D. 75, 88 (D. Mass. 2005) (citing *City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996)).

"At the preliminary approval stage, the Court need not make a final determination regarding the fairness, reasonableness and adequateness of a proposed settlement; rather the Court need only determine whether it falls within the range of possible approval." *In re Puerto Rican Cabotage Antitrust Litig.*, 269 F.R.D. 125, 140 (D. Mass. 2010) (citations omitted). "Ultimately, the more fully informed examination required for final approval will occur in connection with the Final Fairness Hearing, where arguments for and against the proposed settlement will be presented after notice and an opportunity to consider any response provided by the potential Class Members." *In re M3 Power Razor Sys.*, supra, 270 F.R.D. at 62.

**1.    The Class Representative and Class Counsel Adequately Represented the Class.**

As with the previous MDL 2566 settlements, the class representatives and class counsel have adequately represented the class. When evaluating adequate representation under Rule 23(e)(2)(A), "the focus at this point is on the actual performance of counsel acting on behalf of the class." Advisory Committee Notes to 2018 Amendments to Fed. R. Civ. P. 23. Class counsel and the proposed class representatives have zealously represented the class and will continue to do so.

Class representatives have been of great assistance and helpful through many twists and turns. (Bonsignore Decl. ¶¶ 76, 79). Class counsel has zealously represented the class and addressed the particular challenges of this litigation. (Bonsignore Decl. ¶¶ 66-79).

Under Rule 23, a class certification order and substituting class representatives may be accomplished by way of amendment at any time prior to a decision on the merits. Fed. R. Civ. P. 23(c)(1); see *Robinson v. Sheriff of Cook County,* 167 F.3d 1155, 1158 (7th Cir. 1999); Newberg on Class Actions §§2:8, 2:17 (5th ed. 2014). Even in circumstances where a class representative's claims have been lacking—for example, their claim has become moot—courts have permitted substitution of a new class representative. *In re Thornburgh,* 869 F.2d 1503, 1509–1510 (D.C. Cir. 1989) (citing Newberg on Class Actions) (internal citations omitted); see also *Goodman v.*

16

*Schlesinger,* 584 F.2d 1325, 1332-1333 (4th Cir. 1978) (if class action becomes "headless" with prior class representative being unable to continue, court permits other persons to be added to serve as class representatives). This not atypically occurs at the time of class action settlements and recognition of the matter as a class action.

Here, the named Plaintiffs have been extremely helpful and in communication with class counsel. They have each been disclosed to the Defendants beginning in Plaintiffs' initial disclosures and repeatedly been included in Plaintiff's discovery responses since. Plaintiffs have agreed to treat theses Plaintiffs as parties with regard to responses to Defendants' discovery.

As the Court is well-aware, MDL 2566 *In re TelexFree Securities Litigation* is not a run-of-the-mill case. (Bonsignore Decl. ¶ 19). This case involves a massive and complex fraud perpetrated by an array of individuals and corporate entities against almost a million victims. (*Id.*). The participants and co-conspirators and aiders and abettors also went to great lengths to conceal and obscure their fraud at every opportunity. As one of Plaintiffs' experts, Professor Patricia McCoy, initially made clear, white-collar crime of this nature is difficult to detect and involves highly complex analysis and was aided here by sophisticated Defendants. (Bonsignore Decl. ¶ 22). In addition, the relevant banking laws and regulations are complex and labyrinthine. (Bonsignore Decl. ¶ 23). The relevant case law indicates that direct evidence will seldom (if ever) be available to plaintiffs. (*See* Dkt. 742 at 4; *see also* Bonsignore Decl. ¶ 24).

Notably, the TD Bank settlement was made possible roughly ten (10) months after this Court granted Plaintiffs' request to bring TD Bank back into the litigation and because Plaintiffs and TD Bank fully and cooperatively exchanged (and scrutinized) discovery in a forthcoming manner, and because seasoned and experienced lawyers performed their duties at an exceptionally high level. Following the lifting of the stay, TD Bank responded to discovery in a timely and

ethical manner. The parties had multiple discovery disputes, all of which were resolved without court intervention. Moreover, during Plaintiffs full and focused review and analysis of TD Bank's discovery responses, Plaintiffs made use of experts to assist them in fully analyzing TD Bank's potential liability and damages exposure. The parties also retained the service of Robert Meyers, a preeminent mediator with expertise in securities and Ponzi schemes. The many obstacles overcome by class counsel and the class representative in reaching this settlement are not the only consideration that supports a finding that the adequacy requirement is satisfied here. The TD Bank Settlement came only after Plaintiffs and TD Bank exchanged discovery. (Bonsignore Decl. ¶¶ 51-55). In addition, Plaintiffs carried out independent investigations and retained experts for consultation on a variety of key issues. The experts include a Ponzi scheme expert, banking practices experts, a Big Data analyst, and a forensic accountant. (Bonsignore Decl. ¶¶ 57, 67-72). Plaintiffs' counsel was well-informed about the strengths and weaknesses of their case when the Settlement was negotiated. (Bonsignore Decl. ¶¶ 56-58, 67-72)

In addition to the above executive summary of activity specifically related to TD Bank, class counsel's representation of the class to date has included (1) filing and amending complaints as facts were discovered; (2) opposing motions to dismiss and motions for reconsideration filed by numerous Defendants; (3) investigating and analyzing facts outside any formal discovery process to inform and guide the litigation, including reviewing and coding tens of millions of documents; (4) retaining and consulting experts in the fields of banking, payment processing, legal malpractice, accounting, and economics to guide and inform the litigation and for motion practice and trial preparation purposes; (5) participating in formal mediation and informal negotiations with the Trustee; (6) pursuing ongoing settlement possibilities with counsel to reach strong results for the class; and (7) reviewing testimony and other evidence. (Bonsignore Decl. ¶ 73).

As to IPS, Plaintiffs have diligently served and responded to discovery. When IPS did not timely serve responses to Plaintiffs' discovery, Plaintiffs filed a motion to compel. (Dkt. 1564). The Court granted the motion to compel on June 5, 2023. (Dkt. 1596). Subsequently, Plaintiffs pursued a two-track approach of discovery demands and settlement negotiations with IPS. The result was a very detailed proffer under oath and a firm obligation for ongoing cooperation.

As to Ryan Mitchell and Telecom Logic, the Mitchell/Telecom Logic Settlement also incorporates a firm obligation for the defendants to provide ongoing cooperation. (Bonsignore Decl., Exhibit 1, Mitchell/Telecom Settlement Agreement ¶¶ 14-35). Mr. Mitchell has already met with Plaintiffs and begun to provide information valuable to Plaintiffs' claims. (Bonsignore Decl., Exhibit 1, Mitchell/Telecom Settlement Agreement ¶¶ 59-60)

Class counsel's work on behalf of the class will be more fully presented in their proposed Motion for Attorneys' Fees, Costs, and Class Representative Incentive Awards.

In short, the proposed class representative and class counsel have adequately represented the class to date and satisfy the requirements of Rule 23(e)(2)(A).

## 2. The Settlement Agreements Are the Result of Protracted, Arm's-Length Negotiations.

The settlements are the product of good faith, arm's-length negotiations among experienced and especially well-informed counsel. (Bonsignore Decl. ¶¶ 81-101, 104-114, 117-130).

As to TD Bank, the parties also retained the service of Robert Meyers, a preeminent mediator with expertise in securities and Ponzi schemes. (Bonsignore Decl. ¶ 85). In addition to informal exchanges, the parties submitted multiple rounds of briefing prior to an extensive arm's length in-person mediation session. (Bonsignore Decl. ¶¶ 87-90). Each party vigorously represented their clients and the mediation ended with no agreement in place.

The dogged efforts of Robert Meyer, however, continued and eventually an agreement was reached. (Bonsignore Decl. ¶ 96-99). Even after the mediator was able to facilitate an agreement in principle between the parties, it took many other exchanges to hammer out the details of the TD Bank Settlement Agreement. (*Id*.).

Plaintiffs issued a detailed settlement demand with supporting facts and evidence. (Bonsignore Decl. ¶¶ 88-89). The parties also engaged in sustained settlement discussions while continuing to work through lingering issues relating to discovery. (*See* Bonsignore Decl., ¶¶ 81-84).

Eventually, the parties agreed that the services of a professional mediator would be required. (Bonsignore Decl. ¶¶ 85). After vetting and considering multiple options, the parties engaged the services of Robert Meyer, a JAMS mediator with extensive experience with disputes involving complex white-collar financial matters, securities litigation, and pyramid schemes. (*See id*; *see also* Exhibit 10 to Bonsignore Decl., General Biography of Robert Meyer, Esq., JAMS Mediator and Arbitrator). Courts within this Circuit have found that the presence of an independent mediator provides significant evidence that negotiations were conducted at arm's-length. *See Rolland v. Cellucci*, 191 F.R.D. 3, 6 (D. Mass. 2000) (determining that the parties' engagement of an independent mediator was significant to a finding of arms-length negotiating); *Scovil v. FedEx Ground Package Sys.*, No. 1-10-CV-515, 2014 WL1057079 at *4 (D. Me. Mar. 14, 2014) (same).

Despite multiple rounds of mediation statements and weeks of preliminary negotiations, the parties were unable to reach an agreement in their initial mediation session. (Bonsignore Decl. ¶¶ 94-95). However, with the assistance and encouragement of Mr. Meyer, negotiations continued without interruption. (*See* Bonsignore Decl. ¶¶ 96-97). Following the establishment of an agreement-in-principle on the major points, Plaintiffs' counsel and counsel for TD Bank steadily

worked their way through the remaining details in order to finalize the comprehensive terms of the TD Bank Settlement Agreement. (Bonsignore Decl. ¶¶ 98-99).

As to Ryan Mitchell and Telecom Logic, Plaintiffs engaged in several settlement discussions with Mr. Mitchell and Telecom Logic to ascertain his specific knowledge of Telexfree's Telecom and IT components that directly supported Telexfree's operations and other relevant information that Mr. Mitchell possesses. (Bonsignore Decl. ¶¶ 104, 113). Mr. Mitchell has met with Plaintiffs' experts to impart his knowledge of Telexfree's client software, the databases, network and related servers and has agreed to ongoing cooperation relating to Telexfree's aforementioned systems and any other Telexfree-related matters where Defendants Mitchell/Telecom possess relevant information. (Bonsignore Decl. ¶¶ 109, 112, 114). Such cooperation is critical to increasing Plaintiffs' understanding of Telexfree's Telecom and IT systems and the data contained therein. (Bonsignore Decl. ¶ 105, 109).

As to the IPS Defendants, the Plaintiffs have aggressively pursued their claims. For example, as referenced above, Plaintiffs' Counsels have engaged in multiple rounds of discovery disputes with IPS ultimately resulting in this Court issuing an order compelling them to comply. Similarly, Plaintiffs' Counsels have engaged in multiple rounds of negotiations regarding the extent of the cooperation to be offered by the IPS Defendants, the appropriate discount for such cooperation when calculating a settlement payment, and the ability of the IPS Defendants to pay a significant judgment. (Bonsignore Decl. ¶¶ 128-129). Plaintiffs' counsel walked away from settlement multiple times, only recently agreeing to the terms of the settlement and only after the IPS Defendants were able to demonstrate that they could provide critical documents that were previously withheld in discovery by dismissed defendant Bank of America, N.A., provide the necessary context for those withheld documents, and provide information about how the IPS

Defendants provided a software platform for other banks and payment processors to provide services to TelexFree. (Bonsignore Decl. ¶ 129).

### 3.  The Relief Provided for the Class Is Adequate and Supports Approval.

The consideration for the TD Bank Settlement is well within the range of adequacy. As noted, TD Bank, which processed fewer than $47,000,000 in TelexFree-related deposits, will pay the putative settlement class ninety-five million dollars ($95,000,000.00). (Exhibit 3 to Bonsignore Decl., TD Bank Settlement Agreement ¶ 10). This is a substantial sum that provides a material benefit to the putative class. The settlement amount is also reasonable given the inevitable risks, expense, and delay of further litigation. Plaintiffs argued for a settlement that is more than twice the forty-seven ($47) million dollars of TelexFree-related deposits processed by the Settling Defendant on the basis that the law imposes joint and several liability on aiders and abettors. The TD Bank Settlement is fair, reasonable, and adequate as required by Federal Rule of Civil Procedure 23.

Additionally, TD Bank has committed to provide cooperation in connection with Plaintiffs' continued prosecution of the class claims to the extent set forth in the Settlement Agreement. (*Id*. ¶¶ 14-19).

As to the Ryan Mitchell/Telecom Logic Defendants, Ryan Mitchell has met with Plaintiffs and essentially provided an oral proffer. The Mitchell/Telecom Logic Settlement requires significant and essential ongoing cooperation relating to TelexFree's Telecom and IT systems that directly supported Telexfree's operations. (*See* Exhibit 1 to Bonsignore Decl., Mitchell/Telecom Logic Settlement Agreement ¶¶ 14-35). Mitchell will also tender to the class a monetary sum of $25,000. (*Id*. ¶ 11(a)). Ryan Mitchell had no insurance that would have provided compensation to the class and the sum paid is out of pocket.

Under the proposed terms of the IPS Defendants Settlement, IPS is obligated to pay $500,000.00. (*See* Exhibit 2 to Bonsignore Decl., IPS Settlement Agreement ¶ 9). A key factor in determining the value of this payment is that the IPS Defendants have no insurance and do not possess sufficient assets and receivables to satisfy a significant judgment. (Bonsignore Decl. ¶¶ 126-127). Instead, the IPS Defendants will provide value to Plaintiffs by providing explanations and context for an extensive labyrinth of account statements and transaction records that Plaintiffs and their experts were unable to decipher. Additionally, the IPS Defendants have committed to providing detailed information about communications between upper management at Bank of America, N.A., and IPS concerning IPS's use of Bank of America accounts to process transactions for TelexFree in 2013. (*Id*. ¶¶ 129-130). The IPS Defendants have also agreed to provide their most knowledgeable member, employee, or agent to serve as an expert on the payment processing industry. (*Id*. ¶ 130). The IPS Settlement Agreement also incorporates a broad obligation for the IPS Settlement Defendants to provide ongoing cooperation during the pendency of MDL 2566. (Exhibit 3 to Bonsignore Decl., TD Bank Settlement Agreement ¶¶ 13-15).

The IPS Defendants' documents presented as a largely unintelligible labyrinth of accounts and transactions. In addition to advising as to the frequency, subjects and details of communications between BANA upper management and AML department level personnel, IPS's response to the Plaintiffs' demand that they tender a proffer provided facts, context and background to certain accounts and transactions that were otherwise undecipherable. (Bonsignore Decl. ¶¶ 123-125, 128-129). They also agreed to put up their most knowledgeable person to serve as an expert on the Pay Processing Industry and to sit for interviews before the instant settlement is approved. (*Id*. ¶ 130). Importantly, International Payout Systems, Eddie Gonzalez, and Natalia Yenatska, who have no insurance and have insufficient assets and receivables to satisfy a

judgment, agreed to a broad ongoing obligation of cooperation. (Bonsignore Decl. ¶ 126; *see also* Exhibit 3 to Bonsignore Decl., TD Bank Settlement Agreement ¶¶ 13-15).

Cooperation is a recognized benefit during class action litigation, and it is particularly valuable in the present setting where most of the Defendants are still actively litigating the case. *See In re Domestic Airline Travel Antitrust Litig.*, 378 F. Supp. 3d 10, 18–20 (D.D.C. 2019) (crediting Settlement Class Counsel's decision to "weigh the value of [Defendant's cooperation] in going forward and then look at what amount monetarily would make sense in conjunction with what [they] considered the value of cooperation."); *In re Processed Egg Products*, 284 F.R.D. at 303–05 (recognizing value of cooperation "in light of the risks in proceeding . . . against the remaining Defendants" and granting final approval of settlement with no monetary recovery); *In re New Motor Vehicles Canadian Export Antitrust Litig.*, MDL No. 1532, 2011 WL 1398485, at *3 n.17 (D. Me. Apr. 13, 2011) (recognizing the "important value" of defendants' "promised cooperation in discovery during the ongoing litigation.") *supplemented by subsequent order at* 800 F. Supp. 2d 328 (Aug. 1, 2011).

Finally, courts recognize that "frequently, the plaintiff gives a break to the first settling defendants, puts some money in the bank, and aims for a higher judgment against non-settling defendants." *TMTV, Corp. v. Mass Productions, Inc.*, 645 F.3d 464, 472 (1st Cir. 2011).

The Settling Defendants' conduct will remain in the litigation as a potential basis for liability and damages against non-settling Defendants and any joint and several liability claims. (Exhibit 1 to Bonsignore Decl., Mitchell/Telecom Logic Settlement Agreement ¶64; Exhibit 2 to Bonsignore Decl., IPS Defendants Settlement Agreement ¶ 52); (Exhibit 3 to Bonsignore Decl., TD Bank Settlement Agreement ¶ 56).

The value of the TD Bank settlement is further increased by its potential to serve as an

"ice-breaker" with regard to the "Tier One" MDL 2566 Defendants. *See In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 643 (E.D. Pa. 2003) (a "settlement has significant value as an 'ice-breaker' settlement—[when] it is the first settlement in the litigation—and should increase the likelihood of future settlements."). While TD Bank is not the first financial institution to settle with Plaintiffs, the first settlement involved a much smaller financial institution (Fidelity Bank) whose president (John Merrill) was the brother of one of TelexFree's leaders (James Merrill). Furthermore, this settlement is over four times as large as the Fidelity Bank settlement in absolute terms and twice as large relative to the amount of TelexFree-related transactions processed by the settling defendant. Thus, the TD Bank Settlement will increase the likelihood of future settlements to an even greater degree than the previously approved settlement with Fidelity Bank and John Merrill.

The nature and value of Mitchell/Telecom Logic Defendants has been described above.

The nature and value of the IPS Defendants has been described above.

**Risk, Expense and Delay of Trial and Appeal:** The risks, delay and expense of further litigation also support the conclusion that the Settlements are within the range of adequacy. There is no doubt that complex class action litigation is time-consuming, expensive, and fraught with the risk of failure at various stages. *See, e.g.*, *In re Tyco Intern., Ltd. Multidistrict Litigation*, 535 F. Supp. 2d 249, 260–61 (D.N.H. 2007) (finding that the risk, complexity, expense, and duration of litigation all weighed in favor of approving a settlement given the risks at summary judgment, trial, and appeal); *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 72 (D. Mass. 2005) (finding that the complexity, expense, and likely duration of the litigation favored approval of the settlement due to an anticipated "battle of various experts" at trial and a likely appeal); *Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324, 344–45 (D. Mass. 2015) (finding that difficulties associated with

plaintiffs' legal theory and calculation of damages weighed in favor of approving settlement). This litigation is no exception.

First, while Plaintiffs believe they have a strong case and would prevail at trial, there are substantial litigation risks. TD Bank is represented by able, experienced, and preeminent counsel who have the skills and determination to present a vigorous defense. As in every case, there is a risk of loss at trial (or before), in which case the class would receive nothing. Defendants Bank of America, North America, PricewaterhouseCoopers and PNC Bank, all of which were named in the FCAC, have already been dismissed. Second, there is no doubt that litigating this matter through trial will result in substantial – potentially years of – delay as well as significant expense. Memories grow stale and evidence disappears. And all of this is to say nothing of the pendency of complex, not-appellate-tested, issues relating to the required elements of a Ponzi-scheme complaint that have been the subject of years of motion to dismiss practice in this Court.

The Mitchell/Telecom Logic Defendants involvement with TelexFree was largely on the IT/technical side.  While Plaintiffs believe they have a strong case and would prevail at trial, there are substantial litigation risks. The Mitchell/Telecom Logic Defendants are represented by able, experienced, counsel who have the skills and determination to present a vigorous defense. As in every case, there is a risk of loss at trial (or before), in which case the class would receive nothing. Moreover, Mitchell and Telecom Logic are in context, essentially assetless and the cooperation they offer exponentially exceeds any sum they would be able to pay.  There is no doubt that litigating this matter through trial will result in substantial – potentially years of – delay as well as significant expense. Plaintiffs have weighed all factors and concluded that the cooperation offered now, is worth much more than anything they may or could obtain in the future.

IPS has been represented by counsel, who zealously represented their clients. On multiple

occasions, Plaintiffs' counsel walked away from the negotiations or sent ultimatums. The negotiations were extended and vigorous. Plaintiffs vigorously pursued discovery filed motions to compel and noticed the deposition of the corporation. In response Plaintiffs received new productions of documents and significant new evidence.

**Effectiveness of Any Proposed Method of Distribution:** As with the previous settlements, Plaintiffs propose that any distribution to the class be made on a *pro rata* basis in line with each class member's respective losses following a claims process. Pro rata allocation has been approved in numerous class action settlements. *See, e.g., Jean-Pierre v. J&L Cable TC Services, Inc.,* 538 F. Supp. 3d 208, 213 (D. Mass. 2021); *Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324, 334 (D. Mass. 2015), *aff'd* 809 F.3d 78 (1st Cir.); *In re Lupron Mktg. & Sales Prac. Litig.,* 228 F.R.D. 75, 87 (D. Mass. 2005). The plan of allocation will be informed by the ultimate size of the settlement fund and will be submitted to the Court for approval. (*See* Exhibit 1 to Bonsignore Decl., Mitchell/Telecom Logic Settlement Agreement ¶¶ 12-13; Exhibit 2 to Bonsignore Decl., IPS Defendants Settlement Agreement ¶ 38; Exhibit 3 to Bonsignore Decl., TD Bank Settlement Agreement ¶ 42). Moreover, some of the settlement funds may be used to defray future class-wide expenses and thus provide a real and tangible benefit to the class. Class members will have the opportunity to comment on or object to the proposed allocation.

Plaintiffs previously delayed a distribution of settlement funds to the putative class members. The express goal was to minimize the administrative expenses associated with distributing funds in light of the cash value of the settlement, the costs involved in any claims process, and the class size. That time will finally come following the approval of these settlements.

**The Proposed Award of Attorney's Fees Is Appropriate and Fair:** Plaintiffs ask that the Court establish a briefing schedule for attorneys' fees, costs, and incentive awards pursuant to

Rule 23(h). As will be detailed in the motion, the proposed attorneys' fees award amounting to one-third of the settlement fund is appropriate and fair in light of the work done over the last nine (9) years on behalf of the class and the results achieved. It is less than the accumulated lodestar in this long running litigation. However, the amount of fees and expenses awarded will be within the Court's discretion. Consistent with the Court's preliminary approval order with regard to the first settlements, Plaintiffs propose that their motion for attorneys' fees, costs and incentive awards be filed and posted to the settlement website on the same schedule as the final approval briefing.

**There Are No Other Agreements Required to be Identified Under Rule 23(e)(3):** Pursuant to Rule 23(e)(3), "[t]he parties seeking approval must file a statement identifying any agreement made in connection with the proposal." The Settlement Agreements detail the agreement reached between the parties. There are no other agreements connected with them. (Bonsignore Decl. ¶¶ 103, 116, 132).

**4.    The Settlement Agreements Treat Class Members Equitably.**

The Settlement Agreements treat class members equitably. No class member is favored over any other under the terms of the Agreements and there are no proposed subclasses. Incentive awards are appropriate in class action litigation and do not render a settlement inequitable. Any plan of distribution will apply objective terms, such as *pro rata* weighting, to distribute funds in accordance with class members' respective losses suffered.

**B.    The Court Should Provisionally Certify the Settlement Class, Appoint Plaintiff Cellucci and the Other Named Class Representatives, and Appoint Plaintiffs' Counsel as Settlement Class Counsel.**

When asked to certify a class, "[a] district court must conduct a rigorous analysis of the prerequisites established by Rule 23." *Smilow v. Sw. Bell Mobile Sys., Inc.,* 323 F.3d 32, 38 (1st Cir. 2003) (citation omitted). When conducting this analysis, "the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether

28

the requirements of Rule 23 are met." *Waste Mgt. Holdings, Inc. v. Mowbray,* 208 F.3d 288, 298 (1st Cir. 2000) (citation omitted). The district court should "give heightened scrutiny to the requirements of Rule 23 in order to protect absent class members." *In re Lupron Mktg. & Sales Prac. Litig.,* 228 F.R.D. 75, 88 (D. Mass. 2005) (citing *Amchem,* 521 U.S. at 620). "This cautionary approach notwithstanding, the law favors class action settlements." *Id.* (citing *City P'ship Co. v. Atl. Acquisition Ltd. P'ship,* 100 F.3d 1041, 1043 (1st Cir. 1996)).

Here, the Settlement Agreements contemplate certification of a settlement class consisting of all persons worldwide who purchased TelexFree AdCentral or AdCentral Family packages and suffered a Net Loss during the period from January 1, 2012, to April 16, 2014. Net Loss is defined as the class member having invested more funds than they withdrew. (Exhibit 1 to Bonsignore Decl., Mitchell/Telecom Logic Settlement Agreement ¶ 6 n. 3; Exhibit 2 to Bonsignore Decl., IPS Defendants Settlement Agreement ¶ 7; Exhibit 3 to Bonsignore Decl., TD Bank Settlement Agreement ¶ 5). This proposed class is identical to the one this Court has already preliminarily approved. (*See* Dkt. 1056). It also tracks the TelexFree victims paid by the Trustee in Bankruptcy.

**1.    The Proposed Class Satisfies All Rule 23(a) Requirements.**

As with the previous settlements, the proposed settlement class meets all the Rule 23(a) requirements for certification: numerosity, commonality, typicality, and adequacy of representation. (*Cf.* Dkt. 924).

**a.    The settlement class is sufficiently numerous.**

Before certifying a class, the court must be satisfied that "the class is so numerous that joinder of all members is impracticable[.]" Fed. R. Civ. P. 23(a)(1). "No minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has

been met." *García-Rubiera v. Calderón*, 570 F.3d 443, 460 (1st Cir. 2009) (quoting *Stewart v. Abraham*, 275 F.3d 220, 226–27 (3d Cir. 2001)). After considering other factors "such as the geographic location of the proposed class members, and nature of the action, and matters of judicial economy," *In re Nexium (Esomeprazole) Antitrust Litig.,* 296 F.R.D. 47, 52 (D. Mass. 2013), courts have been willing to certify even smaller classes. *See In re Nexium*, 296 F.R.D. at 53 (certifying a class of twenty-four or twenty-nine members); *In re Prograf Antitrust Litig.*, No 1:11-cv-10344, 2013 WL 2395083, at *1 (D. Mass. Apr. 23, 2013) (certifying a class of twenty-five members); *In Re Citigroup, Inc. Capital Accumulation Plan Litig.*, No. 00cv11912, 2010 WL 9067986, at *8–10 (D. Mass. Jan. 6, 2010), *aff'd*, 652 F.3d 88 (1st Cir. 2011) (certifying a class of twenty members).

Here, the settlement class easily satisfies the numerosity requirement because it includes hundreds of thousands of people who lost money through the TelexFree scheme. Joinder of all class members is not just impracticable, but impossible.

**b. The settlement class members' claims share common questions of law and fact.**

The commonality requirement is met when "there are questions of law or fact common to the class[.]" Fed. R. Civ. P. at 23(a)(2). "While at least one common issue of fact or law at the core of the action must shape the class, Rule 23(a) does not require that every class member share every factual and legal predicate of the action." *In re Lupron,* 228 F.R.D. at 88. "The threshold of commonality is not a difficult one to meet." *In re Relafen Antitrust Litig.,* 231 F.R.D. 52, 69 (D. Mass. 2005). "A question is common if it is 'capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Parent/Professional Advocacy League v. City of Springfield, Mass.*, 934 F.3d 13, 28 (1st Cir. 2019).

As with the previous settlements, the settlement class members' claims share numerous

common questions of law and fact. These common questions include, for example, whether TelexFree operated an unlawful business model and scheme; whether the named defendants aided and abetted TelexFree in its operation of an unlawful business model and scheme; and the measure of class-wide damages. Although some variations between class members may exist, it is beyond dispute that common core questions of fact and law lie at the heart of this litigation and satisfy the requirements of Rule 23(a)(2).

### c.  The claims of the class representatives satisfy the typicality requirement.

A class representative meets the typicality requirement if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The representative plaintiff satisfies the typicality requirement when its injuries arise from the same events or course of conduct as do the injuries of the class and when plaintiff's claims and those of the class are based on the same legal theory." *In re Credit Suisse–AOL Sec. Litig.,* 253 F.R.D. 17, 23 (D. Mass. 2008). The purpose of the typicality requirement is "to align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals." *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions,* 148 F.3d 283, 311 (3d Cir. 1998), *cert. denied*, 525 U.S. 1114 (1999). "Rule 23(a)(3), however, does not require that the representative plaintiff's claims be identical to those of absent class members." *In re Credit Suisse,* 253 F.R.D. at 23.

Plaintiffs maintain that each of the Plaintiffs' injuries arise from the same course of uniform conduct as the absent class members and share the same legal theories for recovery. Each paid money to purchase a TelexFree package, was similarly defrauded by the TelexFree scheme and suffered an economic net loss. The proposed class representatives' claims are typical of all members' claims.

### d.  The class representative and chosen counsel adequately represent the class.

The final prong of Rule 23(a) requires that the proposed class representatives "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The moving party must show first that the interests of the representative party will not conflict with the interests of any of the class members, and second, that counsel chosen by the representative party is qualified, experienced and able to vigorously conduct the proposed litigation." *Andrews v. Bechtel Power Corp.,* 780 F.2d 124, 130 (1st Cir. 1985), *cert. denied*, 476 U.S. 1172 (1986).

The proposed class representative's interests and objectives do not conflict with those of the absent class members. Every class member shares the interest of establishing liability against all parties responsible for the class members' losses and recovering as much of those losses as possible. Each proposed class representative has devoted substantial time and effort to this litigation, subjected themselves to the public by lending their name and effort to the pursuit of the putative class claims and not refused one request to assist. They have also repeatedly answered questions relating to their participation, looked for responsive documents and evaluated considerations presented by Class Counsel.

Plaintiffs' counsels share these goals and are a group of diverse, experienced attorneys who have, and will continue to, pursue this action to its conclusion to maximize class recovery.[7] They have worked without compensation, have advanced considerable funds, and have vigorously prosecuted the case on behalf of the victims of the TelexFree fraud without any guarantee they would be reimbursed or paid for their work.

### 2. The Proposed Settlement Class Meets All Rule 23(b)(3) Requirements.

In addition to satisfying all Rule 23(a) elements, the parties in a class action must show

---

[7] Plaintiffs' counsels provided individual and/or firm resumes when applying to be appointed interim class counsel near the MDL's outset (Dkt. 21). In support of their fee application they will supplement and submit updated individual and/or firm resumes.

that the proposed class meets the requirements of at least one of the Rule 23(b) prongs. A court may certify a class pursuant to Rule 23(b)(3) when "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). As with the settlement classes this Court has already certified, the proposed settlement class here satisfies the requirements of Rule 23(b)(3).

### a. Common questions of law and fact predominate over any individual questions.

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem,* 521 U.S. at 623. Even if some individual issues arise in the course of litigation, "Rule 23(b)(3) requires merely that common issues predominate, not that all issues be common to the class." *In re M3 Power Razor System Marketing & Sales Prac. Litig.*, 270 F.R.D. 45, 56 (D. Mass. 2010) (quoting *Smilow,* 323 F.3d at 39). Indeed, "[p]redominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws." *Amchem*, 521 U.S. at 625. As outlined above, Plaintiffs maintain that the common core of factual and legal questions shared by Plaintiffs and all class members easily predominates over any potential individual differences.

### b. A class action is the superior procedural vehicle to fairly and efficiently adjudicate class members' claims.

Certification under Rule 23(b)(3) also requires "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). A non-exhaustive list of factors courts should consider include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

*Id.* at 23(b)(3)(A)–(D).

"The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action." *Amchem*, 521 U.S. at 617. In this case, with hundreds of thousands of potential plaintiffs, most of whom have relatively small individual claims, a class action is the only realistic mechanism for the courts to address these claims. First, the lack of any other filed cases suggests that class members have little (or no) interest in individually controlling their claims. Furthermore, "individual litigation would be grossly inefficient as the parties, witnesses, and courts would be forced to endure duplicative litigation. Individual litigation would be costly, time consuming, and could potentially result in inconsistent judgments." *George Lussier Enterprises, Inc. v. Subaru of New England, Inc.*, No. Civ. 99-109-B, 2001 WL 920060, at *6 (D.N.H. Aug. 3, 2001). Second, the JPML consolidated the actions seeking redress for members' losses from the TelexFree scheme nationwide before this Court. Finally, any potential case management difficulties are not implicated by this settlement-only class certification as "the proposal is that there be no trial." *Amchem*, 521 U.S. at 620. Accordingly, Plaintiffs request an order conditionally certifying the proposed settlement class. [8]

**C.  The Proposed Form and Manner of Notice Comply with Rule 23.**

The proposed form and manner of notice to the class here tracks the settlements already approved by the Court with regard to the first set of settlements (except for the description of the particulars (e.g., name of Defendant, amount of the Settlement, etc).

---

[8] Plaintiffs note that their request for conditional certification of a proposed settlement class is for purposes of this settlement only and is without prejudice to, or waiver of, the rights of any non-settling defendant to contest certification of any non-settlement class proposed in this Action.

Rule 23(e)(1)(B) requires that the court direct notice of a proposed class action settlement "in a reasonable manner to all class members who would be bound by the proposal[.]" Notably, Rule 23(c)(2)(B) makes clear that notice "may be by . . . electronic means[.]"

"Individual notice of class proceedings is not meant to guarantee that every member entitled to individual notice receives such notice, but it is the court's duty to ensure that the notice ordered is reasonably calculated to reach the absent class members." *Reppert v. Marvin Lumber & Cedar Co., Inc.*, 359 F.3d 53, 56 (1st Cir. 2004) (citation and internal quotation marks omitted). Plaintiffs have retained one of the most reputable class notice firms in the United States – A.B. Data. Ltd. ("A.B. Data"). A.B. Data has administered hundreds of class action cases involving billions of dollars in total settlements. (*See* Attachment B - Declaration of Eric Schachter ("Schachter Decl.")).

Plaintiffs also propose that the Notice, along with the Settlement Agreement, be posted to a website accessible to class members. (*See* Schachter Decl. ¶ 11). The Amendments to Rule 23 specifically identify email as an appropriate means of notice.[9] A.B. Data has confirmed that under the circumstances, notice by email to members of the settlement class is the best and most cost-effective form of notice. (*See* Schachter Decl. ¶ 13). It therefore meets the requirements of Rule 23 of the Federal Rules of Civil Procedure and satisfies the due process rights of the class members in that digital means of providing notice by email is the best notice practicable under the circumstances.

---

[9] Notice by electronic means is now specifically mentioned in Rule 23(c)(2) as an appropriate means of providing notice to the class, assuming the proposed class has sufficient access to the internet. This amendment is consistent with the trend of society and the courts to use electronic communications rather than traditional first-class mail.

TelexFree was largely an e-commerce and web-based fraud. TelexFree almost exclusively conducted its business via the internet and communicated with the proposed settlement class through electronic communications, making electronic notice particularly appropriate in this case. The Trustee has provided electronic notice for bankruptcy proceedings on multiple occasions and has provided Class Counsel with a clean and thoroughly vetted list of email addresses for hundreds of thousands of potential class members. (Bonsignore Decl. ¶ 135). As such, the reasonable efforts in this case include prior communication efforts undertaken by the Trustee to an identical set of victims. Notice via email is consistent with the requirements of Rule 23 and is a material term of the Settlement Agreements. *See, e.g., In re Sony PS3 "Other OS" Litigation*, No. 10-cv-1811, 2017 WL 5598726, at *3 (N.D. Cal. Nov. 21, 2017) (approving notice plan consisting of email notice to class, publication on settlement website, and publication of notice in agreed online publications). (Exhibit 1 to Bonsignore Decl., Mitchell Telecom Logic Settlement Agreement ¶ 45(c)); Exhibit 2 to Bonsignore Decl., IPS Settlement Agreement ¶ 28(c)); Exhibit 3 to Bonsignore Decl., TD Bank Settlement Agreement ¶¶ 34–39). As noted, this is identical to the Notice program previously approved by this Court. (*See* Dkt. 924). In addition, Plaintiffs shall provide notice to the class in multiple languages.  The notice provider shall offer translations of the Notice in the emails and on the settlement website. Furthermore, translations through prerecorded information and live operators have been incorporated into the notice process in an abundance of caution.  The enhanced Notice program greatly exceeds industry standards and satisfies due process. (*See* Schachter Decl. ¶¶ 7-13; *see also* Bonsignore Decl. ¶¶ 138-140).

Rule 23(c)(2)(B) also sets forth the requirements for the form of the notice to the class:

[t]he notice must clearly and concisely state in plain, easily understood language:

> (i)   the nature of the action;
> (ii)  the definition of the class certified;
> (iii) the class claims, issues, or defenses;

    (iv)  that a class member may enter an appearance through an attorney if the member so desires;
    (v)   that the court will exclude from the class any member who requests exclusion;
    (vi)  the time and manner for requesting exclusion; and
    (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Plaintiffs request that the Court approve the draft notice attached hereto as Attachment C (Proposed Class Notice) (the "Notice"). The Notice explains the nature of the action and the class claims, issues, and defenses. (Notice at 3–4; Schachter Decl. ¶ 7). It defines the certified class and explains that a class member may enter an appearance through their own attorney if they wish. (Notice at 4-6; Schachter Decl. ¶ 7). It also explains that the court will exclude from the class any member who requests exclusion, details the process and deadlines to request exclusion, and explains the binding effect of a class judgment on members should they chose to remain in the class. (Notice at 5–6; Schachter Decl. ¶¶ 7, 12). It explains that Plaintiffs will seek attorneys' fees and states the maximum amount they will request, which will be one-third of the settlement fund or $31,666,667.00. (Notice at 8). It also sets forth that costs and an incentive award of $10,000 to the proposed settlement class representatives will also be requested. (*Id.*) The Notice explains that the fee application will be filed and posted to the settlement website by a specific date and that class members may comment on or object to the fee application. (*Id.*)

**D.  Request to Set Final Fairness Hearing and Related Deadlines.**

      Plaintiffs ask the Court to establish the following dates and deadlines related to the settlement approval process:

| Event | Proposed Date/Deadline |
|---|---|
| Deadline to send notice via e-mail and publish on website; activation of telephone information system. | 30 days after entry of Preliminary Approval Order |
| Last day for Plaintiffs to file motion for attorneys' fees, costs, and class representative incentive awards. | 45 days after entry of Preliminary Approval Order |

| Event | Proposed Date/Deadline |
|---|---|
| Deadline to request exclusion from the settlement classes, object to settlement, object to Plaintiffs' application for an award of attorneys' fees and expenses and incentive awards, and/or file a notice of intention to appear at fairness hearing. | 70 days after entry of the Preliminary Approval Order and 30 days after the publication of Notice |
| Deadline for Plaintiffs to provide a list of requests for exclusion to the Settling Defendants. | 75 days after entry of Preliminary Approval Order and 5 days after Exclusion Deadline |
| Deadline for Settling Defendants to exercise right to withdraw from Settlement Agreement if opt-outs exceed 300 or more of the Settlement Class Members or any number of Settlement Class Member alleging a Net Loss of $2,500,000.00 or more. | 80 days after entry of Preliminary Approval Order and 14 days after receiving the Requests for Exclusion from the Settlement |
| Last day to file memorandum in support of final approval of settlement, reply brief in support of Plaintiffs' application for an award of attorneys' fees and expenses and incentive awards. | 80 days after entry of Preliminary Approval Order and 35 days before the Hearing on Final Approval |
| **Final Fairness Hearing** | 110 days after entry of Preliminary Approval Order and 30 days after the filing of the papers supporting Final Approval |

**E.  Request for Stay of Settling Defendants' Obligations Pending Final Approval Hearing.**

If approved, the settlement will resolve all class claims against Settling Defendant TD Bank, the Mitchell/Telecom Logic Defendants, and the IPS Defendants. To avoid unnecessary expense and prevent the parties and counsel from devoting further time to these claims, Plaintiffs have requested a stay related to Settling Defendant TD Bank, the Mitchell/Telecom Logic Defendants, and the IPS Defendants, through the Final Fairness Hearing. Should the Court deny final settlement approval, Plaintiffs ask the Court to immediately lift this stay and provide time for Plaintiffs and Settling Defendants to complete discovery.

## CONCLUSION

WHEREFORE, Plaintiffs respectfully request orders: (1) preliminarily approving the Settlement Agreement; (2) provisionally certifying the settlement class and appointing Plaintiff

Anthony Cellucci as settlement class representative and Plaintiffs' counsel as class counsel; (3) approving the proposed form and method of notice; (4) establishing dates for the final approval hearing and all related deadlines; (5) setting a briefing schedule for Plaintiffs' motion for attorneys' fees, costs and incentive awards; (6) approving the administrative means for claimants to appeal their award if they are dissatisfied; and (7) staying the litigation with respect to the Settling Defendant through the Final Approval hearing.

Dated: September 1, 2023

Respectfully submitted,
TELEXFREE CLASS PLAINTIFFS
By their attorneys,

*/s/ Robert J. Bonsignore*
Robert J. Bonsignore Esq. (BBO No. 547880)
(NH Bar No 21241)
INTERIM LEAD
Melanie Porter (CA253500)
MDL 2566 Interim Lead Counsel
Bonsignore Trial Lawyers, PLLC
23 Forest Street
Medford, MA  02155
Telephone:  781-350-0000
Cell:  781-354-1800
Fax: (702) 983-8673
Email: rbonsignore@classactions.us
Email: melanie@classactions.us

*Plaintiffs' Counsel:*

Hon. Steven W. Rhodes (ret.) Esq.
1610 Arborview Blvd.
Ann Arbor, MI 48103
rhodessw@comcast.net

James Wagstaffe, Esq.
WVBR LAW FIRM
100 Pine Street, Suite 225
San Francisco, California 94111
Telephone: (415) 357-8900
Email: wagstaffe@wvbrlaw.com

J. Gerard Stranch, IV, Esq.
Michael Stewart, Esq.
Kyle C. Mallinak, Esq.
STRANCH, JENNINGS & GARVEY PLLC
223 Rosa L. Parks Avenue, Suite 200
Nashville, Tennessee 37203
Telephone: (615) 254-8801
Email: gstranch@stranchlaw.com
Email: mstewart@stranchlaw.com
Email: kmallinak@stranchlaw.com

Geoff Rushing, Esq.
R. Alexander Saveri, Esq.
Saveri & Saveri, Inc.
706 Sansome Street
San Francisco, CA  94111
Telephone:  415-217-6810
E-mail:  rick@saveri.com

D. Michael Noonan, Esq.
Shaheen & Gordon, P.A.
353 Central Ave., 2nd Floor
P.O. Box 977
Dover, NH 03821
Telephone:  603-749-5000
Email:  mnoonan@shaheengordon.com
Fax:  603-749-1838

Ronald A. Dardeno, Esq.
Law Offices of Frank N. Dardeno
424 Broadway
Somerville, MA  02145
Telephone:  617-666-2600
Email:  rdardeno@dardeno.com

**CERTIFICATE OF SERVICE**

I, Robert J. Bonsignore, hereby certify that on this 1st day of September, 2023, I caused the foregoing to be electronically filed with the Clerk of the Court by using the Case Management/Electronic Case Filing (CM/ECF) system, which will send a notice of electronic filing to all parties registered with the CM/ECF system in the above-captioned matter. A copy will be forwarded via first class mail, postage prepaid, to those parties not electronically registered.

/s/ Robert J. Bonsignore
Robert J. Bonsignore