UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | ) | |
|---|---|---|
| **IN RE: TELEXFREE SECURITIES** | ) | |
| **LITIGATION** | ) | **CIVIL ACTION** |
| | ) | **NO. 4:14-02566-TSH** |
| | ) | |
| | ) | |

### ORDER AND MEMORANDUM ON PLAINTIFFS' MOTION TO COMPEL (Docket No. 1692)

9/5/2023

**HILLMAN, S.D.J.**

This multi-district litigation involves dozens of defendants who allegedly aided and abetted a fraudulent pyramid scheme run by TelexFree. The plaintiffs move to compel additional discovery from defendant Wells Fargo Bank N.A. ("Wells Fargo"). (Docket No. 1692). For the reasons below, the motion is ***granted*** in part and ***denied*** in part.

### Background

In its motion to dismiss, Wells Fargo contested whether plaintiffs adequately alleged a primary fraud in its motion to dismiss, rather than the allegations that it aided and abetted said fraud. (Docket No. 1418, at 5-7). The complaint alleges that certain Wells Fargo employees (as well as employees of a related entity, Wells Fargo Advisors) were intimately involved in the TelexFree fraud and that Wells Fargo is vicariously liable for their actions. It further alleges that Wells Fargo had actual knowledge that TelexFree was fraudulent via its internal review mechanisms and the public reporting on TelexFree, but continued to provide services to TelexFree and its agents. (Fifth Amended Consolidated Complaint, at ¶¶ 314-504).

The plaintiffs and Wells Fargo have been engaged in discovery for nearly a year. In June, plaintiffs filed a motion to compel which this Court denied, largely for failure to abide by local rules and mootness. (Docket No. 1658). On the final day of document discovery, plaintiffs filed this motion. (Docket No. 1692).

## Standard of Review

To justify a motion to compel, the information sought must be: "(1) not privileged; (2) relevant to the claim or defense of any party; and (3) proportional to the needs of the case." *Smith v. Turbocombustor Tech., Inc.*, 338 F.R.D. 174, 176 (D. Mass. 2021) (citation omitted). Throughout their brief, plaintiffs seek broad relief, and initially describe their motion as seeking to compel Wells Fargo "to fully respond to Plaintiffs' First Set of Interrogatories No. 7 and First Set of Requests for Production of Documents Nos. 4, 9, 10, and 81." (Docket No. 1693, at 1). Wells Fargo spends most of its brief opposing this broad relief. However, Local Rule 37.1(b)(5) requires a party filing a motion to compel discovery to describe "the moving party's position as to each contested issue, with supporting legal authority, which statement shall be set forth separately immediately following each contested item." In accordance with this rule, at the end of each section, plaintiffs make a specific request. With one exception, relating to relevancy in multi-party cases, the Court responds to these specific requests and does not address any broader relief not specifically requested.

## Analysis

### 1. Relevancy in Multi-Party Cases

The parties dispute the scope of Federal Rule of Civil Procedure Rule 26 as it applies to multi-party cases where one defendant may have information that is relevant to a claim or defense the plaintiff has against a different defendant. Wells Fargo takes the position that such

2

information is not relevant. That is incorrect. Rule 26 clearly states that "any nonprivileged matter that is relevant to *any party's* claim or defense" is discoverable (emphasis added). Especially in complex, multi-party cases like this one, it is conceivable one defendant may have information relevant to a plaintiff's claim against a different defendant. *Cf. Fruit Growers Co-op. v. Cal. Pie & Baking Co.*, 3 F.R.D. 206, 208 (E.D.N.Y. 1942). That information is relevant under Rule 26 and subject to discovery.

That said, this Court would not generally compel discovery when the plaintiffs can obtain relevant information with greater ease from the party against whom they have a claim. Relevancy is measured by *live* claims, as this Court has repeatedly reminded the plaintiffs. For instance, the plaintiffs settled all claims against Base Commerce and it was dismissed from this litigation. (Docket No. 1059). Therefore, claims against Base Commerce are not grounds for discovery against Wells Fargo. Claims against other, active defendants might be. With these caveats in mind, if Wells Fargo has withheld any documents discovered in its internal searches by relying on this legally erroneous position, it shall disclose them immediately.

2. Document Retention Policies

Plaintiffs request this Court to "compel [Wells Fargo] to provide responses to Plaintiffs Request Nos. 9 and 10 and Interrogatory No. 7, given that the pre-litigation destruction or loss of relevant documents related to TelexFree has now been confirmed." (Docket No. 1693, at 14). The basis of this request are letters the plaintiffs received from another defendant, ProPay, in 2020,[1] which were sent from Visa to a Wells Fargo employee in April, May, June, and July 2013 "regarding TelexFree's violation of Visa's chargeback rules and related communications."

---

[1] Plaintiffs failed to reveal their existence to Wells Fargo until April 26, 2023. (Docket No. 1704, at 17). The reason for this delay is unclear. However, the delay is not relevant to the substance of this motion.

3

(Docket No. 1704, at 16). At the time the plaintiffs filed their motion to compel, Wells Fargo was unable to locate the letters. However, Wells Fargo argues it has now found the "repository" with the relevant documents and will, shortly, forward the Visa letters to plaintiffs along with other relevant documents. Therefore, there has been no spoilation or destruction of evidence.

Because Request Nos. 9 and 10 and Interrogatory No. 7 deal with the policies for retaining evidence, plaintiffs' argument falls flat. The issue is not that Wells Fargo did not retain the evidence, but that its search methodology was deficient. Since plaintiffs do not make any specific requests with regard to the adequacy of the searches, this Court will not guess at the relief the plaintiffs' request and *denies* this aspect of their motion. However, the deficiency of Wells Fargo's search methodology does bear on the plaintiffs' request for more custodians, discussed below. Therefore, this Court will review those arguments.

Wells Fargo defends its search methodology, arguing that "nothing in Plaintiffs allegations or [Wells Fargo's] investigation of TelexFree's bank accounts at Wells Fargo indicated any connection to Ms. Flanagan" (the employee who was sent the letters) and "these documents have no direct connection to Plaintiffs' allegations against [Wells Fargo]." (Docket No. 1704, at 17). That is, Wells Fargo argues they are not relevant. Again, relevancy is measured by any claim in the litigation, not merely claims between the parties. And a letter to a Wells Fargo employee informing them that TelexFree was violating chargeback rules four months in a row is relevant to the current litigation. The plaintiffs' complaint alleges, generally, that Wells Fargo's internal review mechanisms revealed that TelexFree was fraudulent. Although this Court has chastised plaintiffs in the past for attempting to constructively amend their complaint, "[p]leadings must be construed so as to do justice." Fed. R. Civ. Proc. Rule 8(e). The plaintiffs were not, as Wells Fargo seems to suggest, required to name the specific person who interacted

4

with the internal review mechanism that allegedly caused Wells Fargo, at least in part, to acquire actual knowledge of the fraudulent nature of TelexFree.

The nature of Wells Fargo's discovery of the letters is also concerning. While Wells Fargo could not find the letters between May and July of 2023, Wells Fargo reveals in its memorandum that "on August 1, as part of its ongoing efforts to locate documents to respond to Plaintiffs' demands, [Wells Fargo] informed its counsel that it had located an additional repository of documents . . . [Wells Fargo] has determined that the Visa Letters for May, June, and July 2013 are included in this data, *along with a small number of other TelexFree-related materials*." (Docket No. 1704, at 16) (emphasis added). The Court is not aware of the nature of these materials beyond this brief description, but they would have never been revealed had plaintiffs not confronted Wells Fargo with the Visa letters. Furthermore, while the Court understands that Wells Fargo is a national organization, it is also concerned that it took three months for it to find a specific letter addressed to a specific Wells Fargo employee on a specific date. Thus, this Court finds that the plaintiffs have credibly alleged shortcomings with Wells Fargo's search methodology.

3. Custodians[2]

Wells Fargo limited its searches for documents to certain "custodians," a common and understandable approach given its size. The plaintiffs request that "this Court compel [Wells Fargo] to work in good faith with Plaintiffs to search additional custodians who interacted with or worked on matters related to TelexFree, without the limitations outlined in [Wells Fargo's] July 18th letter." (Docket No. 1693, at 10). In that letter, Wells Fargo took the position that, "[t]o the extent Plaintiffs identify a particular individual that [they] believe would have unique

---

[2] Although the plaintiffs refer to this section as "Search Terms and Custodians," they never identify a deficiency in Wells Fargo's search terms.

5

information or knowledge, however, we are willing to consider the possibility of searching that individual's documents for responsive information." (Docket No. 1693-16, at 3).

Wells Fargo argues that quibbling about custodians should occur at the start of discovery and late requests to add custodians are unduly burdensome. That is generally correct. *See, e.g.*, *Maquet Cardiovascular LLC v. Abiomed, Inc.*, 627 F. Supp. 3d 54, 59 (D. Mass. 2022); *Bucceri v. Cumberland Farms, Inc.*, No. 15-cv-13955-IT, 2020 WL 58428, at *7 (D. Mass. Jan. 6, 2020); *MedIdea, L.L.C. v. DePuy Orthopaedics, Inc.*, No. 17-cv-11172-LTS, 2018 WL 4039359, at *4 (D. Mass. Aug. 23, 2018). But there is no hard-and-fast rule against additional searches of additional custodians, even later in discovery. *See, e.g.*, *Creative Machining & Molding Corp. v. CRC Polymer Sys., Inc.*, No. 17-cv-30043-MAP, 2018 WL 1440320, at *3 (D. Mass. Mar. 22, 2018); *Trs. of Bos. Univ. v. Everlight Elecs. Co., Ltd.*, No. 12-cv-11935-PBS, 2015 WL 13679781, at *3 (D. Mass. Apr. 29, 2015). Whether to compel late searches is a question of "proportionality," and to some extent turns on the reason the request is late. Here, both parties contributed to the last-minute nature of this request.

Wells Fargo's initial production of documents occurred on February 20, 2023. (Docket No. 1693, at 3). Plaintiffs sent responses on March 20 and March 21, 2023, which do not mention custodians. (Docket Nos. 1693-6; 1693-7). Since then, the parties have been in near constant discussions concerning discovery. At a June 16 meet-and-confer Wells Fargo agreed to provide a list of custodians it was using in searches. (Docket No. 1693, at 3). This discussion, memorialized in a June 29 letter, (Docket No. 1693-8, at 5), seems to have been the first time the issue of custodians was raised, late in the discovery process. At the time of the June 16, 2023 meet-and-confer paper discovery was set to end on June 30, 2023, though the plaintiffs had a pending request to push back the deadlines, (Docket No. 1613), which this Court partially

6

granted, (Docket No. 1657). However, it occurred significantly before Wells Fargo dates it, on July 7. (Docket No. 1704, at 3).

Wells Fargo provided the list of thirty-six custodians on July 18, which "overlapped" with the plaintiffs' preferred list to some unknown degree. (Docket No. 1693-16). Wells Fargo does not explain why it took thirty-two days for it to provide a list of the custodians it was using for searches.[3] Thus, this Court does not fully credit Wells Fargo's argument that plaintiffs are responsible for the last-minute request for additional custodians.

This Court also does not credit Wells Fargo's argument that additional custodians are unlikely to reveal relevant information. As discussed above, Wells Fargo's search methodology missed relevant information and Wells Fargo has advanced a cramped view of relevancy. Nor does Wells Fargo explain, especially given the relevant documents unearthed in the new repository, why additional custodians are "unlikely to yield any new information that Plaintiffs do not have." (Docket No. 1704, at 7). Indeed, Wells Fargo's memorandum simply states that it "developed a robust set of search terms and custodians." (*Id.*).

However, plaintiffs' request of conferring to add some indeterminate number of new custodians seems likely to create another discovery dispute before this Court. In light of the end of document discovery, plaintiffs' own role in not promptly bringing up the issue of custodians, and to prevent additional motions to compel, the plaintiffs may identify six additional custodians and Wells Fargo shall run searches using the search terms used for the other custodians. The date ranges for the searches will be from January 1, 2012 through December 31, 2014.

---

[3] This Court does not appreciate Wells Fargo's linguistic sleight of hand in dating its responses: "[Wells Fargo] conferred with Plaintiffs within five days of Plaintiffs' request for custodians and terms, and it provided both lists to Plaintiffs six days later." (Docket No. 1704, at 3). An unwary reader might think Wells Fargo provided "both lists" within six days of the "initial" letter, but in fact Wells Fargo responded eleven days after the initial letter—and a full thirty-two days after agreeing to provide a list of custodians in the meet-and-confer on June 16.

### 4. Date Ranges

The plaintiffs request this Court "compel [Wells Fargo] to disclose to Plaintiffs the dates for which it conducted its searches related to each Request." To the extent it has not already done so, Wells Fargo shall disclose those dates to the plaintiffs. *Cf.* (Docket No. 1704, at 9).

### 5. Financial Institutions

Plaintiffs request that "this Court compel [Wells Fargo] to expand the date range of its search for documents responsive to Request No. 81 to January 1, 2012 through December 31, 2014, and include additional custodians who may have been involved in communications with ProPay and other financial institutions." This Court finds this request satisfied by the grant of six additional custodians above.

### 6. Organizational Chart

Wells Fargo has stated that there are no available organizational charts for the time period when TelexFree operated because the "human resources management software" that tracked the reporting structures of employees in 2013 and 2014 "tracked real-time reporting structures, and [Wells Fargo] does not have the ability to generate the kind of historical organizational chart that Plaintiffs now seek." Plaintiffs request that "this Court compel [Wells Fargo] to explain in detail what efforts were made to locate documents detailing the organizational structure of [Wells Fargo] during the 2012 to 2014 timeframe, and to further search for such documents." (Docket No. 1693, at 15). Wells Fargo shall explain in detail what efforts were made to locate documents detailing the organizational structure of Wells Fargo during the 2012 to 2014 timeframe. This Court will not order Wells Fargo to search for documents that no longer exist.

Much of the briefing concerns whether Wells Fargo's proposed "narrative" of the organization during the relevant time period will be an adequate replacement for the

organizational chart plaintiffs seek (and which no longer exists). That is not at issue in the request the plaintiffs made, therefore the Court does not address it. Likewise, any issues of spoilation are not properly before the Court at this time.

### 7. Privilege Log

Wells Fargo has provided a privilege log; thus, that aspect of the plaintiffs' motion is moot.

### Conclusion

For the reasons above, the plaintiffs' motion to compel is **_granted_** in part and **_denied_** in part. Wells Fargo shall disclose any materials it discovered in its searches but withheld on the erroneous legal position that relevance under Rule 26 does not extend to any live claims against other parties in this litigation. The plaintiffs shall expeditiously name six custodians and Wells Fargo shall run searches with the search terms used for the previous searches with a date range of January 1, 2012 through December 31, 2014. To the extent it has not already done so, Wells Fargo shall disclose the date ranges of previous searches to the plaintiff. Finally, Wells Fargo shall explain in detail what efforts were made to locate documents detailing the organizational structure of Wells Fargo during the 2012 to 2014 timeframe.

**SO ORDERED**

*/s/ Timothy S. Hillman*
**TIMOTHY S. HILLMAN**
**SENIOR DISTRICT JUDGE**