UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: TELEXFREE SECURITIES LITIGATION | ) ) ) |
| ------------------------------------------------------ | ) ) |
| This Document Relates to: | ) ) ) | MDL No. 4:14-md-2566-NMG
| ALL CASES | ) |

MEMORANDUM AND ORDER CONCERNING PLAINTIFFS' MOTION TO COMPEL
PRODUCTION OF DOCUMENTS FROM DEFENDANT WELL FARGO ADVISORS, LC
(Dkt. No. 1980)

I. Introduction

This multi-district litigation involves dozens of defendants who allegedly aided and abetted a fraudulent pyramid scheme run by TelexFree. The case was stayed for several years during the pendency of a related federal prosecution. On January 29, 2019, the Honorable Timothy Hillman, who was presiding over the case, lifted the stay of discovery (Dkt. No. 606), and, following a status conference with the parties, on September 23, 2019, entered a pretrial scheduling order, setting deadlines for the exchange of initial disclosures, the filing of motions for leave to amend pleadings, and service of written discovery requests. The case is complex, and deadlines in the initial scheduling order were extended on multiple occasions by Judge Hillman and by his successor, the Honorable Nathaniel M. Gorton. Ultimately, Judge Hillman set a July 21, 2023 deadline for the substantial completion of document discovery (Dkt. No. 1657), and Judge Gorton set a May 31, 2024 deadline for completion of fact depositions (Dkt. No. 2017). Now before the court is the plaintiffs' ("Plaintiffs") motion to compel the production of documents by defendant Wells Fargo Advisors, LLC ("WFA"). For the reasons set forth below, Plaintiffs' motion is granted in part and denied in part.

1

II.       <u>Relevant Background</u>

Plaintiffs took the deposition of Ruth Vitale on February 13, 2024 (Dkt. No. 1981-2 at 1). At the relevant time (early 2014), Ms. Vitale was employed by WFA as a compliance manager in WFA's Wealth Brokerage Services (Dkt. No. 1981-2 at 6). On or around March 17, 2014, WFA's legal department and Ms. Vitale's supervisor, Otha Jones, assigned Ms. Vitale to investigate a potential violation of WFA's Code of Conduct by financial advisor Mauricio Cardenas, who is also a defendant in this action (Dkt. No. 1981-2 at 9, 14; Dkt. No. 2119 (filed under under seal with leave of court)). The purpose of Ms. Vitale's investigation was to determine whether Mr. Cardenas had committed any type of policy or legal violation or a breach of trust by opening brokerage accounts for known TelexFree associates and servicing the accounts after being told to cease providing financial services for the account holders (Dkt. No. 1981-2 at 13, 16; Dkt. No. 2119 at 7). At the conclusion of the investigation, Ms. Vitale compiled a document called a matter summary ("Matter Summary").[1] The Matter Summary identifies "Legal" as the referring team and includes a list of what is described as supporting documentation (Dkt. No. 2119 at 2, 6). The Matter Summary identified the participants in the investigation as Ms. Vitale; Lori Lucas, an employee from human resources; Shea Hicks, an employee in WFA's legal department; an individual from the WFA line of business for the relevant geographical region; and Shaula Swindell, an employee of Wells Fargo Bank, N.A. ("WFB"), who was separately assigned to conduct an investigation into TelexFree's banking activity with WFB (Dkt. No. 1981-2 at 12-13).

---

[1]The document filed under seal at docket entry 2119 as Exhibit 3 to Plaintiffs' motion to compel is the Matter Summary. Although WFA produced the Matter Summary with supporting documentation, Plaintiffs did not file the supporting documentation as part of their Exhibit 3. This omission has complicated the court's review of Plaintiffs' motion to compel.

2

WFA produced Ms. Vitale's Matter Summary with most of the supporting documentation. The supporting documentation was described in the Matter Summary as a Timeline Email, Interview Notes, TelexFree Emails from ZL (including LexisNexis report, AML Risk Review, wire requests, LTR prepared by Business Banker, statements from outside institutions, and TelexFree financials), Uninvest Emails from ZL, Uninvest account list provided by AML and Legal, and Vasconcelos Brokerage Statements (Dkt. No. 2119 at 6). Ms. Vitale was asked to prepare the timeline email for senior management (Dkt. No. 1981-2 at 32). ZL was a company system from which Ms. Vitale could pull historical emails. Ms. Vitale's access to archived emails was limited to emails to or from employees of Wealth Brokerage Services and WFA. She could not retrieve emails of a WFB employee unless that bank employee had communicated by email with a WFA employee. Ms. Vitale did not select the documents included in the supporting documentation section of the Matter Summary. A fair inference from Ms. Vitale's deposition testimony is that WFA's legal department was either responsible for, or had a role in, selecting the supporting documents that were attached to the Matter Summary (Dkt. No. 1981-2 at 22-23). WFA did not produce Ms. Vitale's interview notes, which were included in the documentation supporting the Matter Summary, based on claims of attorney-client privilege and work product protection (Dkt. No. 1997 at 2).

Ms. Vitale kept an electronic file of documents that included documents related to her investigation into Mr. Cardenas. The only documents in her electronic file were those that were relevant to the investigation (Dkt. No. 1981-2 at 23). She testified that "there may have been emails [she] received that were not relevant to the review" and were not included in the supporting documents attached to the Matter Summary (Dkt. No. 1981-2 at 23). WFA did not produce Ms. Vitale's electronic file as an identified or identifiable group of documents (Dkt. No.

1981-2 at 52). According to counsel for WFA, following Ms. Vitale's deposition, he was able to identify the TelexFree-related emails in Ms. Vitale's electronic file and compare them to the compilation of emails in the supporting documentation attached to the Matter Summary. WFA's counsel has represented that the emails in Ms. Vitale's electronic file, including their attachments, are included in the supporting documentation attached to the Matter Summary, although they are not in all instances in identical form because some emails in Ms. Vitale's electronic file appear in the form of email threads rather than as stand-alone emails and the electronic file included one email with no content forwarding other emails that are included in the supporting documents (Dkt. No. 1998 at 2, ¶¶ 10-12).

Ms. Vitale conducted some eight interviews in connection with the investigation into Mr. Cardenas's three TelexFree-related brokerage accounts. She took her own notes at these interviews (Dkt. No. 1981-2 at 18; Dkt. No. 2119 at 3). Mr. Hicks, from WFA's legal department, attended all of these interviews. Ms. Swindell attended the subset of interviews with individuals who were employed by WFB (Dkt. No. 1981-2 at 12).

### III.  Analysis

#### a. Timeliness

As an initial matter, the court declines to find that Plaintiffs' motion is untimely. "[D]istrict courts may place limitations on the timing of discovery and related motions by virtue of their 'broad discretion in pretrial management matters.'" *Netherlands Ins. Co. v. HP, Inc.*, 648 F. Supp. 3d 271, 273 (D. Mass. 2022) (quoting *Curet-Velazquez v. ACEMLA de Puerto Rico, Inc.*, 656 F.3d 47, 54 (1st Cir. 2011); citing *Faigin v. Kelly*, 184 F.3d 67, 84 (1st Cir. 1999)). WFA represents in its opposition, without contradiction by Plaintiffs, that it completed its production of documents by October 8, 2020 (Dkt. No. 1997 at 2). While Plaintiffs' complaint

4

about WFA's claim of privilege and work product protection as to Ms. Vitale's interview notes could perhaps have been raised around the time WFA completed its production of documents, it is difficult to see how Plaintiffs' counsel could have anticipated in advance of Ms. Vitale's deposition that she would testify that she kept an electronically stored file of documents related to her investigation of Mr. Cardenas that had not been identified as such in WFA's production. In the circumstances, the court deems it appropriate to address the merits of the parties' dispute.

      b.  Ms. Vitale's electronic file

Fed. R. Civ. P. 34(b)(2)(E)(i) provides that "[a] party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request."  "The producing party may elect whether to produce the documents as they are kept in the usual course of business or to label and organize them."  *Echavarria v. Roach*, Civil Action No. 16-cv-11118-ADB, 2018 WL 6788528, at *1 (D. Mass. Dec. 26, 2018) (citing *Enargy Power (Shenzhen) Co. v. Wang*, No. CIV.A 13-11348-DJC, 2014 WL 4687542, at *3 (D. Mass. Sept. 17, 2014)).  "If a party elects to produce documents as they are kept in the ordinary course of business, that party bears the burden of showing that the natural organization of the documents makes finding critical documents reasonably possible."  *Id.*  Plaintiffs have not contended that WFA failed to produce documents as they were kept in the usual course of WFA's business, nor has it contended that the documents were not produced in a searchable form.  *See Lemoine v. W.B. Mason Co., Inc.*, Case No. 20-cv-924-PB, 2021 WL 6973802, at *1 (D.N.H. Dec. 6, 2021) (finding that the defendants' document production satisfied Fed. R. Civ. P. 34(b)(2)(E)(i) where the production contained searchable documents and metadata allowing more detailed identification of emails).  WFA produced the Matter Summary with the supporting documentation.  The supporting documentation included emails that were also in Ms. Vitale's

5

electronic file to the extent those emails were related to TelexFree. So far as the court is able to determine, WFA's production complied with these aspects of the discovery rules. Nonetheless, Plaintiffs have identified a deficiency in WFA's production that warrants relief.

In *Theidon v. Harvard Univ.*, 314 F.R.D. 333, 337 (D. Mass. 2016), the court approved a discovery proposal by Harvard University to deduplicate its production of emails. Harvard relied on Fed. R. Civ. P. 26(b)(2)(C), "which instructs a court to limit the 'extent of discovery' if it determines that the discovery sought 'is unreasonably cumulative or duplicative.'" *Id.* In the *Theidon* case, however, Harvard agreed to produce duplicates that the plaintiff identified as relevant to her case if the plaintiff requested that Harvard do so. *Id.* Moreover, this court's local rules provide that "[a] draft or a non-identical copy is a separate document." L.R. 26.5(c)(2).

WFA admits that not all of the TelexFree-related emails in Ms. Vitale's electronic file are in the same form as are emails with the same content that were produced in the Matter Summary's supporting documentation (Dkt. No. 1998 at 2-3, ¶¶ 11-12). Further, Plaintiffs point out in their reply brief that WFA's counsel has limited his representations concerning the TelexFree-related contents of Ms. Vitale's electronic file to emails (Dkt. No. 2006-1 at 3-4). While it is true that Ms. Vitale testified that there might have been emails she received that were not relevant to the investigation and that were omitted from the supporting documents and agreed with Plaintiffs' counsel when he asked whether, to identify information she had discarded, he would have to look at her emails (Dkt. No. 1981-2 at 23), the declaration of WFA's attorney does not rule out the possibility that there were TelexFree-related documents in Ms. Vitale's electronic file in a format other than email that WFA did not produce.

Because the court finds that Plaintiffs have shown that Ms. Vitale's electronic file plainly included some documents responsive to Plaintiffs' document production requests that WFA did

not produce because, at the least, the electronic file included emails that were not exact duplicates of documents that WFA did produce, WFA is ordered to produce all TelexFree-related documents in Ms. Vitale's electronic file with sequential Bates numbers, accompanied by a declaration from WFA's counsel that WFA has produced all TelexFree-related documents in Ms. Vitale electronic file.

      The court is not persuaded that Plaintiffs are entitled to reopen Ms. Vitale's deposition. First, Ms. Vitale was a forthcoming witness. To the extent her recall and explanations about the documents that were compiled and documents that she reviewed during the investigation was not always crystal clear, Ms. Vitale was testifying about an investigation she conducted some ten years prior to her deposition. It is generally acknowledged that "[s]taying discovery [as occurred in this case] … entail[s] the risk of losing evidence through … fading memories." *S.E.C. v. K2 Unlimited, Inc.*, 15 F. Supp. 3d 158, 160 (D. Mass. 2014). Plaintiffs have shown only minor shortcomings in WFA's document production, and they have not shown that they were prejudiced in their ability to examine Ms. Vitale or that her recall would improve, or her testimony change if her deposition was reopened. Second, Plaintiffs have not shown that Ms. Vitale was a key decisionmaker in WFA's investigation into Mr. Cardenas's activities as a financial advisor. Finally, to the extent Plaintiffs complain that Ms. Vitale could not verify the contents or authenticity of the documents attached to the Matter Summary because she did not assemble those documents (Dkt. No. 2), that is not WFA's fault. So far as appears from the transcript, Ms. Vitale did not testify as a Rule 30(b)(6) witness concerning WFA's investigation into Mr. Cardenas, and she could only testify to what she knew. Furthermore, Ms. Vitale testified that she reviewed the supporting documents attached to the Matter Summary. That she may not have selected the supporting documents did not preclude her from testifying – as she did

– that she reviewed and relied on these documents in preparing the Matter Summary (Dkt. No. 1981-2 at 8, 10, 23). For these reasons, Plaintiffs have not shown that re-opening Ms. Vitale's deposition would be proportional to their need for discovery in this case.

    c. Ms. Vitale's interview notes

"[C]laims of privilege in federal courts are governed by the 'common law – as interpreted by United States courts in the light of reason and experience.'" *In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 757 (D.C. Cir. 2014) (quoting Fed. R. Evid. 501). "'The attorney-client privilege … protects communications made between an attorney and a client for the sake of obtaining legal advice' and 'extends to communications made to a representative of the attorney for the sake of obtaining the attorney's advice.'" *Smith v. Jefferson Pilot Fin. Ins. Co.*, 245 F.R.D. 45, 47 (D. Mass. 2007) (alteration in original) (quoting *City of Worcester v. HCA Mgmt. Co., Inc.*, 839 F. Supp. 86, 88 (D. Mass. 1993)). It is black letter law that the privilege applies to corporations, and "'exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice.'" *In re Kellogg Brown & Root*, 756 F.3d at 757 (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 390 (1981)); *see also Kinzer v. Whole Foods Market, Inc.*, Civil Action No. 20-cv-11358-ADB, 2022 WL 355777, at *1 (D. Mass. Feb. 7, 2022) (citing *In re Prograf Antitrust Litig.*, No. 1:11-md-02240-RWZ, 2013 WL 1868227, at *2 (D. Mass. May 3, 2013); *RFF Family P'ship, LP v. Burns & Levinson, LLP*, 991 N.E.2d 1066, 1071 (Mass. 2013)).

"The work product doctrine, codified by Rule 26(b)(3) of the Federal Rules of Civil Procedure, provides that items prepared in anticipation of litigation are generally protected from discovery by an opposing party." *In re Linerboard Antitrust Litig.*, 237 F.R.D. 373, 381 (E.D. Pa. 2006) (citing Fed. R. Civ. P. 26(b)(3)). "[O]nly work done in anticipation of or for trial … is

8

protected." *U.S. ex rel. Wollman v. Mass. Gen. Hosp., Inc.*, 475 F. Supp. 3d 45, 61 (D. Mass. 2020). "Rule 26(b)(3) establishes two tiers of protection. Fact work product is discoverable only upon a showing of 'substantial need' and by demonstrating that one cannot otherwise obtain the 'substantial equivalent' of such materials without undue 'hardship.'" *In re Linerboard Antitrust Litig.*, 237 F.R.D. at 381 (quoting Fed. R. Civ. P. 26(b)(3)). "'Core' or 'opinion' work product, which consists of 'mental impressions, conclusions, opinions, or legal theories of an attorney,' is afforded almost absolute protection." *Id.* (quoting *In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 663 (3d Cir. 2003)). "[T]he rendering of business or technical advice unrelated to any legal issues" is not protected by the attorney-client privilege or the work product doctrine. *United States v. Windsor Capital Corp.*, 524 F. Supp. 2d 74, 81 (D. Mass. 2007) (citing *Pacamor Bearings, Inc. v. Minebea Co. Ltd.*, 918 F. Supp. 491, 510-11 (D.N.H. 1996)). Nonetheless, as long as the communication is primarily or predominantly of a legal character, the privilege is not lost merely because it also dealt with matters that might more fairly be characterized as business matters. *See id.* (quoting *City of Springfield v. Rexnord Corp.*, 196 F.R.D. 7, 9 (D. Mass. 2000)). "'In the context of an organization's internal investigation, if one of the significant purposes of the internal investigation was to obtain or provide legal advice, the privilege will apply.'" *United States ex. rel. Wollman*, 475 F. Supp. 3d at 63 (quoting *In re Kellogg Brown & Root*, 756 F.3d at 760). "Contemporaneous evidence is the most compelling in determining the purpose for [conducting a corporate investigation]." *Id.* at 64 (citing *Cavallaro v. United States*, 284 F.3d 236, 248 (1st Cir. 2002)).

  The Matter Summary substantiates that WFA's Cardenas investigation was conducted to determine whether WFA might be exposed to legal liability based on Mr. Cardenas's activities. WFA knew that Mr. Cardenas was managing three brokerage accounts for individuals connected

9

to TelexFree, and that some individuals associated with TelexFree had been linked to possible money laundering and a Ponzi scheme and were being investigated by the S.E.C. (Dkt. No. 2119 at 2). "The communications at issue were made by [WFA] employees to counsel for [WFA] acting as such" for purposes of advising senior management about WFA's potential legal exposure based on Cardenas's activities. *Upjohn Co.*, 449 U.S. at 394. WFA's legal department directed Ms. Vitale to conduct a compliance audit, provided her with relevant background information, reviewed all of her research and participated in the interviews with WFA and WBA employees. Ms. Vitale's notes reflecting communications between herself, Mr. Hicks and employees with factual knowledge possible relevant to Mr. Cardenas's activities and compliance with legal and regulatory obligations are protected by the attorney-client privilege. *See id.* at 397; *In re Kellogg Brown & Root*, 756 F.3d at 760 (communications made in the course of an internal investigation conducted pursuant to a compliance program are protected by the attorney-client privilege when the purpose of the investigation is to provide legal advice); *Sec. & Exchange Comm'n v. Navellier & Assocs., Inc.*, CIVIL ACTION NO. 17-11633-DJC, 2108 WL 6727057, at *3 ("This court does not dispute that the privilege applies to internal investigations conducted by company lawyers or non-lawyer, company employees at the direction of company lawyers to ensure compliance with the law.").

    Ms. Vitale's notes are also protected by the work product doctrine. The work product doctrine, when applicable, protects a broad range of materials including "interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs …." *Hickman v. Taylor*, 329 U.S. 495, 511 (1947). WFA's attorney was an active participant in the interviews of WFA and WBA employees about which Ms. Vitale took notes. Interview notes are likely to disclose an attorney's mental impressions and legal theories because those notes will disclose the

attorney's areas of inquiry and focus.  *See Judicial Watch, Inc. v. United States Dept. of Justice*, 118 F. Supp. 3d 266, 272 (D.D.C. 2015) (noting that "in the context of work product, an attorney's discussion of factual matters may reveal his or her tactical or strategic thoughts") (collecting cases).  Plaintiffs have not contested that Ms. Vitale's notes were made in anticipation of litigation.  Their argument appears to be that WFA involved its legal department in Ms. Vitale's investigation so that it could withhold facts by invoking the attorney-client privilege and the work product doctrine.  A party is entitled to discovery of fact work product only when it "shows that it has substantial need for the material to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means."  Fed. R. Civ. P. 26(b)(3)(A)(ii).  Plaintiffs were free to ask Ms. Vitale for the facts she discovered during her investigation.  She answered all such questions to the best of her recollection and ability.  Plaintiffs have not shown that they have a substantial need for interview notes that are appropriately protected by the attorney-client privilege and the work product doctrine.  So much of Plaintiffs' motion as seeks to compel the production of Ms. Vitale's interview notes is denied.

IV.    Conclusion

For the foregoing reasons, Plaintiffs' motion to compel (Dkt. No. 1980) is granted in part and denied in part as set forth herein.  Wells Fargo Advisors will produce copies of the TelexFree-related documents in Ms. Vitale's electronic file by no later than December 13, 2024.  No fees or costs to either party.

It is so ordered.

Dated:  November 20, 2024                                   Katherine A. Robertson
                                                            KATHERINE A. ROBERTOSN
                                                            U.S. MAGISTRATE JUDGE