## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: TELEXFREE SECURITIES LITIGATION | MDL No. 4:14-md-2566-NMG |
| This Document Relates To: ALL CASES | |

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' RENEWED MOTION TO COMPEL AND FOR SPOILATION SANCTIONS DIRECTED TO DEFENDANTS ALLIEDWALLET, INC., AHMAD KHAWAJA AND MOHAMMAD DIAB

### I.   INTRODUCTION

Plaintiffs bring this renewed Motion to Compel and for Spoilation Sanctions against Defendants AlliedWallet, Inc. ("AWI"), Ahmad Khawaja ("Khawaja"), and Mohammad Diab ("Diab") (collectively "the AWI Defendants" or "Defendants") seeking Defendants' production of all relevant documents responsive to Plaintiffs' First Set of Requests for Production of Documents ("Requests"), as well as supplemental and properly signed answers to Plaintiffs' Interrogatories.[1]

Allied Wallet processed at least $86 million for TelexFree as part of its Ponzi/pyramid scheme from approximately August of 2013 to April of 2014. Plaintiffs requested highly relevant documents relating to role the AWI Defendants, and their affiliated company, Allied Wallet Ltd ("AWL") (collectively "Allied Wallet"), played in that scheme. Nonetheless, Defendants' chose, through its most recent production, to willfully provide only 2,970 Bates numbered documents and to not allow Plaintiffs to retain access to potentially 1,300 relevant documents from the first

---

[1] This Court is very familiar with the underlying facts of this dispute as set forth in Plaintiffs' Motion to Compel Directed to the AWI Defendants ("the Original Motion") (Dkt. No. 1837), Memorandum in Support (Dkt. No. 1838) and Reply Brief (Dkts. No. 1984 at Exhibit A). Rather than repeat these facts, Plaintiffs incorporate them by reference.

1

production.[2] Through its second production, Defendants again chose to willfully not produce a single document that Allied Wallet controlled, possessed and transferred to, Fintech Int'l, LLC ("Fintech"), an alleged third party. Despite Plaintiffs' Original Motion, the Magistrate Judge's related ruling, and Plaintiffs' counsel's repeated subsequent efforts to meet-and-confer to resolve the issues, Defendants continue to engage in gamesmanship, assert that the bulk of the relevant materials are in the possession, custody and control of a U.K. bankruptcy liquidation receiver for AWL who denies this or otherwise no longer in their possession or control. They have not presented any formal documentation to support their counsels generalized position. In reality, the remaining documents, if not in the direct possession of Defendants themselves, are in the possession of Fintech—*a company the Magistrate Judge has already found is controlled by Defendant Khawaja.* (Dkt. No. 2123, p. 3) Alternatively, Defendants failed to preserve the documents as requited despite the years of related litigation and spoiled "on point" evidence.

In denying without prejudice Plaintiffs' Original Motion, the Magistrate Judge required any renewed Motion to: (1) "identify the categories of documents they claim have not been produced," (2) "explain their importance to Plaintiffs' ability to recover from these Defendants," and (3) "explain with specificity the efforts they have made to resolve their discovery dispute …."[3] (*Id*., p. 7) Plaintiffs have complied with the Court's directions. This Court should thus grant their

---

[2] Plaintiffs understand the parties have reached agreement as to previously produced documents. To wit -Plaintiffs may access all originally produced relevant documents that are "not obviously attorney-client privileged" or junk. Plaintiffs are in the process of determining exactly which documents from the first production fall under this category. Plaintiffs anticipate jointly presenting a related order to this Court and await Defendants related communication.

[3] Since this Court's Opinion and Order denying Plaintiffs Original Motion, Plaintiffs have continued to work with Defendants to resolve these discovery issues. There has not been a satisfactory resolution to the Fintech or British receiver held related documents. During a meet and confer the Defendants withdrew their attempt to claw back their entire June 2nd production but did not send a promised confirmatory email. Should this agreement be honored, Plaintiffs will no longer be required to seek a full and complete privilege log of the already produced documents. Moreover, if a dispute as to privilege remains, this dispute must be submitted to the Court for resolution as it is Plaintiff's position that Defendants waived any claim of privilege as a result of their voluntary production. However, at this time and in light of Plaintiffs understand the parties have reached agreement, the issue of a full and complete privilege log is believed to be moot.

Renewed Motion, compel Defendants to produce all relevant documents, supplement their Interrogatory Answers, and sit for depositions or sanction Defendants for their discovery abuses.

## II.    STATEMENT OF FACTS

### A.    <u>AWI And AWL Are Closely-Affiliated Companies That "*Both*" Serviced TelexFree</u>

In denying without prejudice Plaintiffs' Original Motion, the Magistrate Judge relied on Defendants' representations that AWL—rather than AWI—provided services to TelexFree:

> Through counsel, the AWI Defendants represent in their opposition to Plaintiffs' motion to compel *that AWI did not provide payment processing services to TelexFree.* According to the AWI Defendants, Allied Wallet, Ltd. ("AWL"), a company whose principal place of business was the United Kingdom and that was also operated by Khajawa, provided payment processing services for TelexFree for a limited time (Dkt. No.1856 at 1-2). Plaintiffs do not dispute that AWL – rather than AWI – was responsible for processing TelexFree transactions (Dkt. No. 1837 at 1). The AWI Defendants' initial document production response represented that AWL was in receivership in the United Kingdom and that the AWI Defendants did not have possession, custody, or control of AWL's documents (Dkt. No. 1838-4 at 2). (Dkt. No. 2123, p. 2; emphasis added)

That representation was false. Unbeknownst to Plaintiffs at the time of the Original Motion, the August 26, 2013 TelexFree-Allied Wallet contract *specifically included both AWI and AWL*:

> Allied Wallet Ltd., a company incorporated in England and Wales under registration number 05832811, the registered office of which is 1 Northumberland Avenue, Trafalgar Square, London WC2N 5BW, United Kingdom *[acting through its branch office Allied Wallet Inc. at 9000 Sunset Boulevard, Suite 820, West Hollywood, CA 90069, United States of American ("Allied Wallet")* ...." (Exhibit 1, emphasis added)

Further, all the employees of AWI and AWL used the same email address domain—for example, Khawaja@alliedwallet.com—with no differentiation between AWL and AWI. AWI and AWL thus functioned as essentially one "Allied Wallet," providing at least $86 million of pay processing services for TelexFree's Ponzi/pyramid scheme from August 26, 2013 to April of 2014. (Dkt No. 1186, at ¶70) But whether considered one and the same, or separate entities, Plaintiffs are entitled to the full complement of relevant documents possessed by "AWI" and/or "AWL."

**B.**    **Defendant Khawaja Controls Relevant Documents Held By AWL Via Fintech**

As described in the Original Motion, and in what the Magistrate accurately described as a "wild goose chase," Defendants falsely pointed Plaintiffs to AWL's UK Liquidator to obtain relevant documents from AWL. (Dkt No. 2123, p. 3) But as the evidence makes clear, AWL's documents were in the possession, custody and control of Fintech as late as 2022 or 2023. (Dkt. No. 1838, at Exs. 6, 7 and 8) And as this Court has already found, "*Plaintiffs have persuasively argued that Fintech is controlled by Khawaja*." (Dkt No. 2123, p. 3; emphasis added) Therefore, the AWL documents were in Fintech's possession and under Khawaja's control when Plaintiffs first served their Requests on Defendants on December 21, 2022. (Dkt. No. 1838, at Ex. 3)

Notably, Defendants still deny they have any custody or control over these documents and, as a result, have not produced them. During a meet-and-confer, Defendants maintained that Khawaja had no relationship with Fintech and/or Stephen Hill—a Khawaja business associate, former managing director at AlliedWallet, and an agent for Fintech. Defendants never rebutted the three-page discussion of evidence of their control of Fintech in the Original Motion. (Dkt. No. 1837, pp. 9-11) Adding to that evidence, *the Defendants produced a privilege log containing 2023 emails to Stephen Hill which they claim are subject to attorney-client privilege without support*. (Exhibit 2, at lines 9324 and 9326) Plaintiffs request those documents be produced and that Defendants' belated and insufficient claim of privilege be deemed waived.

**C.**    **AWL Has Already Admitted That It Possesses Highly Relevant Documents**

Prior to filing for bankruptcy in the U.K., AWL was named as a Defendant here in 2014. (Dkt No. 141) In its Initial Disclosures filed on December 4, 2019, AWL indicated that it currently had in its possession, custody, or control documents related to eight topics: "(a) Documents concerning *Allied agreements with TelexFree*; (b) Documents concerning *Allied underwriting due*

*diligence regarding TelexFree*; (c) Allied *email communications regarding TelexFree*; (d) *Allied TelexFree company summary transactional data*; (e) *Allied TelexFree customer transaction and information documents*; (f) Documents reflecting *TelexFree credit card transactions made by TelexFree*; (g) Documents reflecting *accounts created by TelexFree*; and (h) Documents reflecting *payment made to SEC and FTC relating to TelexFree and Plaintiffs in the sought after class*." (Dkt. No. 789; emphasis added). AWL also identified Defendants Khawaja and Diab as potential witnesses with information on: "*Merchant Accounts and Processing Relationship with TelexFree, Payment to SEC and FTC relating TelexFree Processing*." (*Id.*) Those documents and related information are highly relevant.

Indeed, the Magistrate Judge found that:

Plaintiffs' document requests were directed to the AWI Defendants and requested the production of documents responsive to 104 separate requests (Dkt. No. 1838-3)....

*Plaintiffs' document production requests to the AWI Defendants were drafted sufficiently broadly that they encompassed AWL documents. The definition of "Your," included "any organization or entity which the responding Defendant(s) manages or controls" (Dkt. No. 1838-3 at 19), thereby extending to AWL because it was controlled by Khawaja. A number of Plaintiffs' specific document requests sought core AWL business documents related to TelexFree. The AWI Defendants have not argued, at least to this court that AWL's documents are irrelevant to the dispute at hand. Indeed, they purported to direct Plaintiff to the liquidator for purposes of obtaining such documents, and in their opposition to Plaintiffs' motion to compel, the AWI Defendants did not suggest that their substitute production would not include AWL documents.* (Dkt. No. 2123, at pp. 2 and 5, emphasis added)

Nonetheless, Defendants have never produced the AWL documents in Fintech's possession. Defendants claimed in the November 27, 2024 telephone call that, despite all the evidence to the contrary, they have *"no knowledge of or control over Fintech"*. This is Defendants' sole justification for not producing any of AWL's documents that were in Fintech's possession.

**D.**    **Plaintiffs Have Exhausted The Meet-And-Confer Process**[4]

On January 19, 2024, Defendants' attorney sent an email to Plaintiffs' counsel stating, for the first time, that their June 2, 2023 document production "contained numerous attorney/client communications that were mistakenly produced" and that they wanted to claw back this entire production. (Exhibit 3)[5] This email came more than *seven months* after the June 2 production and confirms that Defendants failed to take seriously their discovery obligations until *after* Plaintiffs' Original Motion was filed.

On January 22, 2024, Plaintiffs responded to Defendants' email, explaining that – rather than claw back all of the documents – the proper procedure was for Defendants "to provide an overlay by your vendor for all of the documents that need to be clawed back and a cross-reference for any documents you are reproducing with the bates number that were previously produced. Your vendor should know how to accomplish this." (Exhibit 4) The parties had at least one subsequent phone call and exchanged other emails seeking to resolve the issues, including the need for a privilege log with a means to identify the allegedly privileged documents as they were not Bates stamped. On January 29, 2024, Defendants produced a privilege log while acknowledging they used generic terms so there "may be a few false hits." (Exhibit 2)

On February 2, 2024 – more than one month after the Original Motion – Defendants finally provided a link to the replacement production consisting of 2,970 documents. (Exhibit 5)[6]

After having time to review the Magistrate Judge's November 8, 2024 Order and the documents that had been produced by Defendants to determine more specifically what was being

---

[4] Plaintiffs incorporate by reference the discussion of the meet-and-confer process contained in the Original Motion. (Dkt. 1837, pp. 4-12) Plaintiffs are now supplementing with the additional meet and confer activity.

[5] The June 2nd production included approximately 170,000 documents or 1 million pages, 95% of which Defendants acknowledge were irrelevant. The replacement production only contained 2,970 Bates numbered documents. Of this replacement production, it did not include 1,300 of the relevant documents that had previously been produced.

[6] The second Bates number production really only consisted of 2,373 documents. The first production only contained 135,172 unique documents and when using the search term, TelexFree, there were only 1,147 hits.

improperly clawed back and what was still missing from Defendants' productions, on November 20, 2024, Plaintiffs sent a letter requesting a Local Rule 37.1 call take place and offered early dates. (Exhibit 6) Plaintiffs raised numerous questions concerning Defendants' document productions and detailed numerous deficiencies. (*Id.*) Plaintiffs also attached as Exhibit B a list of 43 exemplary documents that were originally produced on June 2, 2023, which were **not** produced on February 2, 2024. Plaintiffs demanded that Defendants provide: (1) documents responsive to the Requests; (2) a privilege log; (3) updated responses to the Requests; (4) updated and signed Interrogatory Answers; and (5) a quantification of the TelexFree documents previously produced and those now being produced by Defendants. (*Id.*) Defendants never responded to this letter.

On November 24, 2024, Plaintiffs' counsel sent a follow-up email. (Exhibit 7) Plaintiffs' counsel noted that they were disappointed that Defendants had ignored their previous request for a meet-and-confer and further explained their concerns about Defendants' clawing back of relevant, previously-produced documents related to TelexFree; their failure to produce a sufficient privilege log; and their failure to supplement their Interrogatory Answers.[7] (*Id.*) Plaintiffs again requested availability in the next week for a meet and confer telephone call. (*Id.*)

Further heeding the Magistrate Judge's prior directive, on November 26, 2024, Plaintiffs sent an additional meet-and-confer letter and attached an exhibit with three columns: (1) category of documents; (2) types of documents in that category; and (3) the justification and or relevancy of these documents to Plaintiffs' claim. (Exhibit 8, at Ex. 2) Plaintiffs maintained that these documents should have been produced in the previous productions, as the type of documents generally existing in payment processor files like Allied Wallet, but they were not produced. (*Id.*)

---

[7] Todd Gordon responded on November 24, 2024 that he had not "ignored" the November 20th correspondence but had been out of town. (Exhibit 9) However, as Plaintiffs' counsel replied, that did not explain why his brother, Stephen Gordon, had not responded. (*Id.*)

Upon receipt of the November 26 letter, Defendants' counsel Todd Gordon stated that he may not be able to speak in any detail as to the issues raised in the letter and suggested that the call be rescheduled for the next week as he would be out for the holiday on Thursday and Friday. (Exhibit 9)[8] Plaintiffs' counsel responded to the request to reschedule to the next week as follows:

> The list is intended to place a spotlight on the basic categories of documents Allied Wallet should possess and produce. Given the initial misinformation you provided us, the wild goose chase you sent us on, your absence last week, and the timing of our class certification brief, to the extent it is necessary we formally request you to carve out time for Friday for a follow up meet and confer if you deem that one is necessary.  Let's see how tomorrow goes. (*Id.*)

The Parties then participated in a meet and confer telephone call on November 27, 2024. During the call, Plaintiffs' counsel expressed frustration that they had been directed to the UK Liquidator as having possession of AWL's documents, but these documents were in the possession of Fintech– an entity under Khwaja's the control. Plaintiffs' counsel also stated that there were still obviously relevant documents that have not been produced and seemingly, based on Defendants' representations that they had no access to the Fintech documents, they no longer existed such that spoilation of evidence had occurred. Plaintiffs' counsel noted the chart of 39 categories of relevant documents with an explanation of their relevancy that had not been produced. (Exhibit 8, at Ex. 2) Plaintiffs' counsel also wanted an explanation as to why approximately 1,300 relevant documents mentioning TelexFree, which were contained in the first document production (without Bates numbers), were *not* produced in the second production. Plaintiffs' counsel reiterated that they had provided Defendants with a list of 43 examples of such relevant documents not contained in the second production. (Exhibit 6, at Ex. B) Plaintiffs' counsel requested that Defendants provide a letter acknowledging their agreement that Plaintiffs could use

---

[8]  There was no claim that Stephan Gordon was unable to be prepared for the call in the afternoon of the next day, even though Stephan Gordon did participate in the call.

all previously produced documents that were not privileged and to again ask their client where the Fintech documents were located.

During this call, Defendants' counsel explained that rather than review for privilege the approximately 1 million pages in their original production – 95% of which were not relevant – they decided to claw back this entire production and produce a "new" much more targeted production. In doing so, Defendants' counsel effectively admitted the first production was a data dump, that they had not taken the time prior to that production to review the documents for privilege or engage in targeted searches responsive to Plaintiffs' Requests. In response to Plaintiffs' concerns regarding the Fintech documents, Defendants' counsel maintained that their clients have *no knowledge of or control over Fintech*; they do not know where the documents in Fintech's possession are located; they believed that the AWL documents were in the possession of the UK Liquidator; that they have no additional documents to produce; and Khawaja does not have a relationship with Stephen Hill, who was a witness for the government against Defendants.[9]

On November 27, 2024, Plaintiffs' counsel sent Defendants' counsel a letter summarizing the meet-and-confer call that occurred earlier that day. In pertinent part, this letter confirmed:

5.   We have agreed that Plaintiffs will be able to search the original document production and use all non-privileged and "non junk" documents from the first production.….

8.   Plaintiffs will run by you any documents that we plan to use that may possibly be privileged.

9.   Plaintiffs agreed that this arrangement puts an end to all disputes relating to documents already produced.

10.  I made clear in a direct and non-pejorative fashion that I do not accept and do not believe your clients position that they simply no longer have documents that Plaintiffs have specifically targeted, that are directly relevant to this matter, would be used as further proof against your client and others to establish actual knowledge and substantial assistance, and are routinely kept in Allied Wallet's Financial Services/Pay processing space.

---

[9]  Defendants were in possession or control of the Fintech AWL documents as late as 2022 or 2023 based upon the UK Liquidator's reports. (Dkt No. 1838 at Exhibits 6, 7 and 8) Defendants' privilege log also establishes that Defendants were still in contact with Stephen Hill, Fintech's agent, as late as 2023. (Exhibit 2, at lines 9324 and 9326)

11.   We requested you go back to your clients and make clear to them that we intend to seek the most severe sanctions because we believe they engaged in spoilation.

12.   We seek the records/documents identified in the list attached to my second email requesting a LR 37.1 conference and request your clients obtain them from all sources – immediately.

13.   We requested your clients supplement their formal response to Plaintiffs first and second Requests for Production to reflect the above.

14.   We requested your clients supplement their formal response to Plaintiffs Interrogatories to reflect the above and that they be properly executed.

15.   It is our understanding that the motion relating to your [clients'] depositions remain pending while the Court addresses the above. I remain however happy to discuss a mutually agreeable date[s] at any time. (Exhibit 10)

To date, Defendants' counsel has not responded in writing to Plaintiffs' meet-and-confer correspondence, nor provided the written representations requested during the meet-and-confer – in particular, an acknowledgement of Plaintiffs' ability to use the previously produced non-privileged documents from the first non-Bates numbered production or a sworn confirmation that Khawaja has no knowledge of Fintech or the AWL documents in Fintech's possession. The Defendants did not request any additional time to confer. Plaintiffs have thus exhausted the meet-and-confer process—unfortunately without complete success—thus necessitating this Motion.

**E.     Plaintiffs Have Provided Defendants With a List of the Categories of Documents That Have Not Been Produced.**

Per the Magistrate Judge's directive, on November 26, 2024, Plaintiffs provided Defendants with a list of 39 specific categories of documents that are normally maintained by payment processors like Allied Wallet. (Exhibit 8, at Ex. 2) The vast majority, if not all, of these documents were not produced in either the first or second productions by AWI. Defendants claim they do not have access to the AWL documents in the possession of Fintech and have no more documents to produce. Defendants admitted that only approximately 5% of the first production contained relevant documents. They produced 2,970 Bates numbered documents in the second production. Allied Wallet serviced TelexFree for eight months and processed *at least $86 million*

*in transactions for TelexFree*. (Dkt. No. 1186, ¶70) AWL also represented that it possessed documents relevant to at least eight subject matters in its Initial Disclosures (Dkt. No. 789) and numerous AWL documents remained in Fintech's possession based upon the UK Liquidators' Reports. (Dkt. NO. 1838, at Exs. 6, 7 and 8) Defendants were obligated to preserve substantially more relevant documents than they have produced.

**F.    Plaintiffs Have Explained To Defendants The Relevancy Of The Missing Documents.**

As described above, on November 26, 2024, Plaintiffs provided Defendants with a list of 39 categories of relevant documents that should be in Defendants' possession. (Exhibit 8, at Ex. 2) In the third column for each category, Plaintiffs set forth the relevancy of these documents, all typically kept in the ordinary course of a payment processing business such as Allied Wallet:

1.    **Account Opening Related Documents** – Prior to opening any financial account, contracts must be entered into among and between the Merchant Bank, the Pay Processors and Visa/Mastercard. Applications must be completed, Know Your Customer ("KYC") follow up investigations must be conducted, and account operating permissions must be approved and memorialized. These documents include important evidence such as the business type category, the maximum dollars to be transacted monthly/yearly, and the average transaction amount. (*See* Exhibit 8, at Ex. 2, there are ten document types in five Categories, in particular Account Adjudication, document types 1-6; Related Business Entities, type 35; Originally Produced but Clawed Back Documents, type 36; Produced but Corrupted Documents, type 37; and Corporate Minutes, type 38)

2.    **Account Monitoring Related Documents** – Once an account is opened, every financial account must be monitored to ensure the KYC account operating permissions (including the maximum dollars transacted monthly/yearly, the average transaction amounts, charge back

limitations, other indicia of suspected financial fraud or money laundering, and conformation of business type) on at least a monthly basis. Foreign transactions trigger additional monitoring requirements. (*See* Exhibit 8, at Ex. 2, there are 27 Document Types in seven Categories, in particular Account Monitoring, document types 7-19; Card Network Communications, types 24-26; Sponsorship Information, types 27-33; Related Business Entities, type 35; Originally Produced but Clawed Back Documents, type 36; Produced but Corrupted Documents, type 37; and Corporate Minutes, type 38.)

      **3.**    **Account Reporting Related Documents** – Once an account is opened reports must be generated for every financial account. Reconciliation for each Merchant Reserve Account, fees and profit per account are generated daily. Other reports such as the account statements themselves, charge back reports, and reports that enumerate the number of times the KYC account operating permissions (maximum dollars transacted, average transaction amount, charge back limitations, other indicia of suspected financial fraud or money laundering) are exceeded and conformation of business type are generated at least monthly. Each pay processor must generate reports to their merchant bank (and where applicable for each sponsored processor) and agendas for monthly conferences are created. When excesses occur or other indicia of financial fraud or money laundering is suspected, Anti Money Laundering reports are generated, upper management and the AML department become involved. Foreign transactions trigger additional reports. (Exhibit 8, at Ex. 2, there are 15 Document Types in eight Categories, in particular, Chargebacks, types 20-21; Sponsorship Information, types 27-33; Sales, type 34; Related Business Entities, type 35; Originally Produced but Clawed Back Documents, type 36; Produced but Corrupted Documents, type 37; Corporate Minutes, type 38; and Corporate Books and Records, type 39)

      **4.**    **Account Closing Related Documents** – Prior to closing, or recommending the

closure of any financial account, KYC follow up and reports, ALM reports and occasionally, MATCH reports, are generated. (Exhibit 8, at Ex. 2, there are six Document Types in six Categories, in particular, Account Closure, document types 22-23; Related Business Entities, type 35; Originally Produced but Clawed Back Documents, type 36; Produced but Corrupted Documents, type 37; and Corporate Minutes, type 38)

These documents are at the core of Defendants' knowledge of and participation in the TelexFree scheme. They are directly relevant to Plaintiffs' claims and Defendants should possess them. If they do not, Defendants have failed to preserve evidence and sanctions should be imposed.

## III.    ARGUMENT

### A.    <u>Applicable Standards Of Review</u>

#### 1.    The Standard of Review for Motion to Compel

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that, "[u]nless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case …. Information within this scope of discovery need not be admissible in evidence to be discoverable." "[B]ecause discovery itself is designed to help define and clarify the issues, the limits set forth in Rule 26 must be construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Green v. Cosby*, 152 F. Supp. 3d 31, 34 (D.Mass. 2015) (internal quotation omitted). The party seeking information in discovery has the burden of showing its relevance. *See, e.g., Cont'l W. Ins. Co. v. Opechee Constr. Corp*., Civil No. 15-cv-006-JD, 2016 WL 1642626, at *1 (internal citation omitted); see also *Whittingham v. Amherst Coll.*, 164 F.R.D. 124, 127 (D. Mass. 1995). *Conversely, "[w]hen a party resists the production of evidence, it 'bears the burden of establishing*

*lack of relevancy or undue burden***.'"** *Autoridad de Carreteras y Transportacion v. Transcore Atl., Inc.*, 319 F.R.D. 422, 427 (D.P.R. 2016) (internal quotation omitted).

### 2. The Standard for Spoliation Sanctions

Litigants have a duty to preserve documents and other materials – including electronically stored information ("ESI") – that may be relevant to ongoing or potential future litigation. *Guzman v. Jones,* 804 F.3d 707, 713 (5th Cir. 2015); *Gordon v. Dreamworks Animation SKG, Inc.,* 935 F. Supp.2d 306, 313-14 (D. Mass. 2013); Fed. R. Civ. P. 37(e). This duty to preserve arises, at the latest, when a lawsuit is filed, *see Turner v. United States,* 736 F.3d 274, 282 (4th Cir. 2013), but the obligation may predate the filing of a suit "when a party reasonably should know that the evidence may be relevant to anticipated litigation," *Silvestri v. GMC,* 271 F.3d 583, 591 (4th Cir. 2001); *see also Gordon,* 935 F. Supp.2d at 313; Fed. R. Civ. P. 37(e), advisory committee's notes on 2015 amendments ("Many court decisions hold that potential litigants have a duty to preserve relevant information when litigation is reasonably foreseeable. The duty to preserve evidence may also be triggered "by a reasonably foreseeable [government] investigation." *Gerlich v. United States Dept. of Justice*, 711 F.3d 161, 171 (D.C. Cir. 2012); *see also United States v. Johnson*, 122 F. Supp.3d 272, 344 (M.D.N.C. 2015).

Once this duty has arisen, a party engages in spoliation by "intentional[ly], negligent[ly], or malicious[ly]" destroying or failing to preserve relevant evidence. *Townsend v. American Insulated Panel Co.*, 174 F.R.D. 1, 4 (D. Mass. 1997); *see also Gomez v. Stop & Shop Supermarket Co.*, 670 F.3d 395, 399 (1st Cir. 2012) ("[T]he party urging that spoliation has occurred must show that there is evidence that has been spoiled (i.e., destroyed or not preserved)."); *United States v. Walker*, 974 F.3d 193, 208 (2d Cir. 2020) (defining spoliation as "the destruction or significant alteration of evidence, or failure to preserve property for another's use as evidence in pending or

reasonably foreseeable litigation" (internal quotation marks and citation omitted)). To secure a remedy for spoliation of evidence, the moving party "must show at a bare minimum that the opposing party had notice of a potential claim and of the relevance to that claim of the destroyed evidence." *Gomez*, 670 F.3d at 399. Likewise, redressable spoliation occurs where "electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e).

As explained in *Trull v. Volkswagen of Am., Inc.*, 187 F.3d 88 (1st Cir. 1999), *certified question answered*, 145 N.H. 259, 761 A.2d 477 (2000): "'[B]ad faith is not essential. If such evidence is mishandled through carelessness, and the other side is prejudiced, we think that the district court is entitled to consider imposing sanctions, including exclusion of the evidence.... Although deterrence may play a role, the primary aim is remedial, at least absent willful destruction.' Fairness to the opposing party therefore plays a substantial role in determining the proper response to a spoliation motion, and punishment for egregious conduct is not the sole rationale for the most severe sanction of exclusion." *Id.* at 95, quoting *Sacramona v. Bridgestone/Firestone, Inc.,* 106 F.3d 444, 447, 446 (1st Cir. 1997).

Upon finding that a party has engaged in spoliation of evidence, a court may choose from a variety of sanctions and remedial measures. For example, the court may permit the trier of fact to draw an adverse inference from the loss or destruction of relevant materials, and to take "the fact of [a] document's nonproduction or destruction as evidence that the party which has prevented production did so out of the well-founded fear that the contents would harm him." *Nation-Wide Check Corp. v. Forest Hills Distributors, Inc.*, 692 F.2d 214, 217 (1st Cir. 1982). "This permissive negative inference springs from the commonsense notion that a party who destroys a document (or

permits it to be destroyed) when facing litigation, knowing the document's relevancy to issues in the case, may well do so out of a sense that the document's contents hurt his position." *Testa v. Wal-Mart Stores,* 144 F.3d 173, 177 (1st Cir. 1998). In addition, if a party fails to preserve ESI in violation of Fed. R. Civ. P. 37(e), the court ordinarily "may order measures no greater than necessary to cure the prejudice" caused by this loss of information, Fed. R. Civ. P. 37(e)(1), but may award further relief – including (i) a presumption "that the lost information was unfavorable to the party," (ii) an instruction that the jury "may or must presume the information was unfavorable to the party," or (iii) dismissal or entry of a default judgment – upon "finding that the party acted with the intent to deprive another party of the information's use in the litigation," Fed. R. Civ. P. 37(e)(2)(A)-(C). In general, "[s]poliation sanctions serve to rectify any prejudice the non-offending party may have suffered as a result of the loss of evidence and to deter any future conduct, particularly deliberate conduct, leading to such loss of evidence." *Gordon,* 935 F. Supp.2d at 314 (internal quotation marks and footnote with citation omitted).

**B.    Plaintiffs Are Entitled To The Production Of These Relevant Documents**

This Court denied the Original Motion subject to Plaintiffs establishing three things: (1) "identify the categories of documents they claim have not been produced," (2) "explain their importance to Plaintiffs' ability to recover from these Defendants," and (3) "explain with specificity the efforts they have made to resolve their discovery dispute without court intervention …." Plaintiffs have accomplished all the tasks required by this Court as described in Sections II C through F above. As a result, this Court should grant Plaintiffs' Renewed Motion to Compel.

**C.    Plaintiffs Are Entitled To Sanctions For The Destruction Of These Documents**

Defendants' duty to preserve documents arose in 2014 – when AWL was first served with the Complaint. AWL's documents were under the control of AWL's attorney – David Steiner as

16

set forth in its Initial Disclosures in 2019 (Dkt. No. 789) or in the possession and control of Fintech in 2021-2023 (Dkt. No. 1837, at Exhibits 6, 7 and 8). Thus, at the time Plaintiffs served their Requests for Production, these documents were under AWL's possession and control. Nonetheless, Defendants deny having possession or control of these AWL documents and, as a result, have refused or failed to produce them in response to Plaintiffs' Requests.

As explained in *Fireman's Fund Ins. Co. v. Bradford-White Corp.*, No. CIV.A. 12-10509-NMG, 2014 WL 1515266, at *3 (D. Mass. Apr. 15, 2014), citing *McGuire v. Acufex Microsurgical, Inc.,* 175 F.R.D. 149, 156 (D.Mass. 1997), the factors to be considered in determining the appropriate sanction for the spoliation of evidence include: (1) whether the adverse party was prejudiced by the destruction of evidence; (2) whether the prejudice can be cured; (3) the practical importance of the evidence; (4) whether the destruction was in good or bad faith; and (5) the potential for abuse if the evidence is not excluded or the party is not otherwise sanctioned. Here, all these factors weigh in favor of Plaintiffs and the imposition of severe and meaningful sanctions.

*First*, the documents go to the heart of AlliedWallet's role in $86 million in TelexFree transactions. Plaintiffs have explained the relevancy of these documents (*see* Exhibit 8, at Ex. 2) and Plaintiffs have obviously been prejudiced if Defendants failed to preserve them. Defendants admit that the AWL Documents are relevant to Plaintiffs' claims, noting as much in Defendant AWL's Initial Disclosure (Dkt. No. 789) and having never disputed their relevance (Dkt No. 2123, p. 5).

*Second*, as Defendants have admitted that they no longer have possession of these highly relevant documents, it does not seem possible that Plaintiffs' prejudice can be cured. This is particularly true as this case is almost ten years old and the memories of Defendants' employees will likely have faded over this time. Moreover, Defendants Khawaja and Diab are not available

to provide oral testimony in lieu of these documents. Both Khawaja and Diab have stated they intended to plead the Fifth Amendment at any deposition and Khawaja has fled the United States.

*Third*, the documents are of practical importance as contemporaneous evidence of Defendants' actual knowledge of the fraud, either through direct or circumstantial evidence, and the extent that Defendants substantially assisted TelexFree—two key elements of Plaintiffs' claim.

*Fourth*, the destruction of these documents was clearly in bad faith. Defendants have offered no justification whatsoever for their destruction or any reason why they are no longer in Defendants' possession, custody or control.  In fact, the evidence is overwhelming that Defendants have misrepresented their connection to Fintech and their ability to have produced these documents in 2022 and 2023.

*Fifth*, there is great potential abuse of the discovery system if Defendants are allowed to have destroyed these critical documents without any sanction for their willful conduct.

At bottom, Defendants have yet to offer any explanation, innocent or otherwise, for their apparent failure to retain the AWL documents at Fintech that were in Allied Wallet's possession, custody and control as late as 2023 and their refusal to produce them. The destruction was of a seemingly substantial trove of highly relevant AWL documents. The limited record to date already provides strong indicia that Defendants acted deliberately or, at a minimum, with gross negligence in destroying relevant documents and that they did so with ample notice of the importance of these materials to Plaintiffs' claims, and that Plaintiffs have been severely prejudiced as a result. Pursuant to these five factors, Plaintiffs are entitled to sanctions from Defendants as a result of their spoliation of highly relevant evidence – the contemporaneous documents of Allied Wallet. Plaintiffs request a hearing on the appropriate sanctions, but believe, at a minimum, there should be a default judgment entered against Defendants or a presumption that Defendants acted with

actual knowledge and engaged in substantial assistance.

**D.**    **Defendants Must Verify Their Discovery Responses And Sit For Depositions.**

Defendants have also failed to properly verify their discovery responses. Defendants must provide supplemental answers to Plaintiffs' Requests and Interrogatory Answers, given Defendants' withdrawal of the majority of the previously produced documents, the supplemental production of new documents; and the discovery of a new document repository maintained by Fintech that Defendants deny, even to this day, ever possessing, including their obligation to individually sign off on their Interrogatory Answers.

Defendants should also be required to sit for their previously noticed depositions. These depositions were unilaterally cancelled based upon Defendants' second Motion for a Protective Order (Dkt. No. 1808), which was denied (Dkt. No. 1954). At that time, the Court stated that: "In view of the plaintiffs' pending motion to compel the production of documents directed to these [defendants] (Dkt. No. 1837), it is *premature* to address the location and means of taking any deposition of defendant Ahmad Khawaja." (Dkt. No. 1954; emphasis added.) As the Original Motion effectively remains outstanding based upon this Court's denial without prejudice, the parties have not proceeded with the depositions as they would still be premature. After a final ruling on this Renewed Motion, Defendants should be made to sit for depositions.

### REQUEST FOR ORAL ARGUMENT

Plaintiffs request a hearing as they believe that oral argument may assist the Court.

### RULE 37.1 CERTIFICATION

The undersigned hereby certifies that the requirements of Local Rule 37.1 have been met.

### CONCLUSION

For the reasons set forth, Plaintiffs respectfully request that this Court grant Plaintiffs' Renewed Motion to Compel and for Spoilation Sanctions by ordering Defendants to comply with their discovery obligations on a date certain set by the Court by requiring Defendants to:

A.    Produce all documents belonging to Alllied Wallet, including those documents previously transferred to Fintech or, in the alternative, find that Defendants have engaged in spoliation and award Plaintiffs sanctions under Fed. R. Civ. P. 37(e);

B.    Require Defendants to provide supplemental answers to Plaintiffs' Requests for Production of Documents and Interrogatories, including properly signed Interrogatory Answers by each Defendant; and

C.    Provide any other relief this Court deems is necessary and just including setting a related hearing.

Dated: December 6, 2024

Respectfully submitted,

BONSIGNORE TRIAL LAWYERS, PLLC

By: */s/ Robert J. Bonsignore*
Robert J. Bonsignore, Esq. (BBO #547880)
Helen Glynn, Esq.
23 Forest St.
Medford, Massachusetts 02155
Mobile: (781) 354-1800
Office: (781) 350-0000
Facsimile: (702) 983-8673
Email: rbonsignore@classactions.us

***Plaintiffs' Interim Lead Counsel***

THE MILLER LAW FIRM, P.C.
E. Powell Miller, Esq. (MI #P39487)*
Ann L. Miller, Esq. (MI #P43578)*
950 W. University Dr., Ste. 300
Rochester, Michigan 48307
Telephone: (248) 841-2200

Email: epm@millerlawpc.com
Email: mln@millerlawpc.com

STEVEN RHODES CONSULTING, LLC
Steven Rhodes, Esq. (MI #P19394)**
1610 Arborview Boulevard
Ann Arbor, MI 48103
Telephone: (734) 646-7406
Email: rhodessw@comcast.net

ADAMSKI MOROSKI MADDEN
CUMBERLAND & GREEN LLP
James Wagstaffe, Esq. (CA #95535)*
6633 Bay Laurel Place
Avila Beach, CA 93424
Telephone: (805) 543-0990
Email: wagstaffe@ammcglaw.com

***Other Plaintiffs' Counsel***

*\* admitted pro hac vice*
*\*\* pro hac vice pending or to be filed*

## CERTIFICATE OF SERVICE

I, Robert J. Bonsignore, hereby certify that on this 6th Day of December, 2024, I caused the foregoing to be electronically filed with the Clerk of the Court by using the Case Management/Electronic Case Filing (CM/ECF) system, which will send a notice of electronic filing to all parties registered with the CM/ECF system in the above-captioned matter. A copy will be forwarded via first class mail, postage prepaid, to those parties not electronically registered.

*/s/ Robert J. Bonsignore*
Robert J. Bonsignore