UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: TELEXFREE SECURITIES LITIGATION | MDL No. 4:14-md-2566-NMG |
| This Document Relates To:  All Actions | Judge Nathaniel M. Gorton |

MEMORANDUM AND ORDER CONCERNING PLAINTIFF'S MOTION FOR SANCTIONS IN LIGHT OF DEFENDANT PROPAY'S ADMITTED SPOLIATION OF EVIDENCE
(Dkt. No. 2229)

I. Introduction

"This multi-district litigation ("MDL") arises from the meltdown of a sprawling, hybrid Ponzi-pyramid scheme operated by TelexFree, LLC, TelexFree, Inc. and TelexFree Financial, Inc. (collectively, 'TelexFree')." *In re: TelexFree Secs. Litig.*, 777 F. Supp. 3d 47, 49-50 (D. Mass. 2025). On April 8, 2025, the presiding District Judge denied the motion of named plaintiff Anthony Cellucci ("Plaintiff") for class certification. *Id.* at 60. On April 22, 2025, Plaintiff filed an interlocutory appeal from the denial of class certification. *In Re: TelexFree Securities Litig.*, No. 25-8011 (1st Cir. Apr. 22, 2025). As of the date of this order, there has been no activity of any significance on the appeal docket. Pending before the court is Plaintiff's motion seeking sanctions against defendant ProPay, Inc. ("ProPay") for spoliation of evidence, referred to this session by the presiding District Judge. Plaintiff seeks the sanction of entry of judgment in its favor. Such a sanction is not warranted. For the reasons set forth below, Plaintiff's motion is granted in part and referred to the presiding District Judge for consideration, at the appropriate juncture, of the sanction, if any, to be imposed for negligent spoliation of evidence.

II. Relevant Factual Background

a. ProPay's Commercial Relationship with TelexFree

1

ProPay describes itself as a payment processor that facilitates a merchant's ability to accept electronic payments (Dkt. No. 2262 at 3). According to ProPay, it began providing payment processing services to TelexFree in September 2012 (Dkt. No. 2262 at 4). TelexFree elected to cease using ProPay's services in June 2013. In August of 2013, when TelexFree requested that ProPay resume processing TelexFree transactions, ProPay declined to do so (Dkt. No. 2262 at 5). ProPay did not process any new transactions for TelexFree after June 2013 (Dkt. No. 2262 at 5), although it continued to process chargebacks, which were disputes about charges that ProPay had processed prior to June 2013.

      b.  Institution of ProPay's Litigation Hold

Beginning in or around February and continuing through April 2014, ProPay was served with a series of subpoenas from federal and state regulators, including the Securities and Exchange Commission ("SEC"), the United States Department of Justice ("DOJ"), and the Commonwealth of Massachusetts Securities Division ("MSD"), seeking information from ProPay concerning ProPay's relationship and communications with TelexFree (Dkt. No. 2262 at 6; Dkt. No. 2262-4 (DOJ subpoena); Dkt. No. 2262-5 (MSD subpoena); Dkt. No. 2262-6 (SEC subpoena) (collectively, "Government Subpoenas"). Ian Forrest became legal counsel for ProPay in 2013 and was responsible for responding to the Government Subpoenas (Dkt. No. 2230-1 at 11, 13). Forrest consulted with the general counsel's office of TSYS, ProPay's parent corporation, and with ProPay's senior management, identifying twenty-two (22) custodians of relevant records, then gathered responsive documents related to TelexFree in ProPay's possession. Forrest gathered documents from ProPay's credit and underwriting team, which were mainly in paper form, and scanned those records for production. He obtained ProPay's transactional history for TelexFree, which was stored in ProPay's proprietary software system

2

and was exportable to an Excel file. He also reviewed email communications among the identified record custodians, including internal communications and those between ProPay and TelexFree employees and identified and preserved the emails he believed were responsive to the Government Subpoenas (Dkt. No. 2230-1 at 25-26, 29, 30).

      As a further response to the Government Subpoenas, Forrest directed ProPay's IT department to place a litigation hold on the email accounts of the twenty-two identified ProPay custodians of relevant records and on TelexFree information on ProPay network drives (Dkt. No. 2230-1 at 25). Forrest informed ProPay's IT department that the company needed to preserve all email accounts for the twenty-two individuals on the litigation hold list (Dkt. No. 2230-1 at 36). In ensuing years, he reminded IT to maintain the litigation holds related to TelexFree (Dkt. No. 2230-1 at 49). Forrest is not aware of any instance when any individual attempted to delete material subject to ProPay's TelexFree litigation hold (Dkt. No. 2230-1 at 34-35). Until August 24, 2024, Forrest believed that his directives concerning the preservation of ProPay's TelexFree-related records had been complied with and that all ProPay communications with and about TelexFree were protected by a litigation hold (Dkt. No. 2230-1 at 44).

      Forrest kept an electronically stored copy of the information he gathered in 2014 to produce to the governmental entities investigating TelexFree operations (Dkt. No. 2230-1 at 37), provided a copy of the electronic file to the TSYS legal office, ensured production in response to the Government Subpoenas, and provided a copy of the material to ProPay's outside counsel (Dkt. No. 2230-1 at 30-31, 81). Forrest did not initiate a new litigation hold when he was notified about civil cases filed by individuals against TelexFree seeking recovery based on their participation in TelexFree's Ponzi-pyramid scheme. He believed the initial hold was sufficient because it was a blanket hold covering everything in ProPay's possession having to do with

TelexFree, including ProPay's internal interactions concerning TelexFree, transactional document related to the relationship between ProPay and TelexFree, and communications between ProPay and TelexFree (Dkt. No. 2230-1 at 31, 32).

      c. Non-expert Discovery

The instant multidistrict matter, opened in this court on October 22, 2014, was stayed for several years during the pendency of a related federal prosecution of TelexFree principals (Dkt. No. 111). The TelexFree matter was initially assigned to the Honorable Timothy Hillman. On January 29, 2019, Judge Hillman lifted the stay of discovery (Dkt. No. 606), and, following a status conference with the parties, on September 23, 2019, entered a pretrial scheduling order, setting deadlines for the exchange of initial disclosures, the filing of motions for leave to amend pleadings, and service of written discovery requests.[1]

ProPay represents that Plaintiff served discovery requests on ProPay in December 2019. ProPay served objections and responded to Plaintiff's discovery requests, and, by April 2020, produced to Plaintiff all of the information that ProPay had produced to the SEC, the DOJ, and the MSD in or around 2014 (Dkt. No. 2262 at 7). At Plaintiff's request, ProPay made the same production – in the form of electronic downloads – three times. On July 21, 2023, Plaintiff filed a motion to compel ProPay to produce additional documents focused primarily on communications between ProPay and Wells Fargo Bank or Wells Fargo Advisors (collectively, "Wells Fargo") (Dkt. No. 1695). Judge Hillman denied the motion on the ground that Plaintiff

---

[1] Deadlines in the initial scheduling order were extended on multiple occasions (e.g., Dkt. Nos. 1449; 1509; 1540; 1657). On April 3, 2023, Judge Hillman entered a revised scheduling order providing, *inter alia*, that document discovery was to be substantially completed by June 30, 2023 (Dkt. No. 1540). On June 20, 2023, he entered an order extending the deadlines in docket entry 1540 by twenty-one (21) days, establishing July 21, 2023, as the deadline by which document discovery was to be substantially completed (Dkt. No. 1657).

4

had not shown that ProPay was withholding documents. The order was without prejudice to ProPay's continuing efforts to supplement its document production (Dkt. No. 1719).

In December 2023, the case was reassigned to District Judge Nathaniel M. Gorton, who extended the deadline for completion of non-expert discovery to May 31, 2024 so the parties could complete depositions (Dkt. No. 2017). The docket shows that discovery generally has been hard fought on numerous fronts. While there were further disputes about the scope of discovery Plaintiff sought from ProPay after Plaintiff filed his motion to compel (Dkt. Nos. 1906, 2062, 2076), the parties were able to negotiate resolutions to those disputes without rulings from the court, with the exception of the scope of the deposition ordered by the court related to Plaintiff's assertion of spoliation by ProPay (Dkt. No. 2186). Plaintiff deposed three key ProPay employees in February 2024 (Dkt. No. 2103-9; Dkt. No. 2262 at 8; Dkt. No. 2262-7; Dkt. No. 2262-8). Plaintiff noticed and issued a subpoena for the deposition of former ProPay employee Drew Petersen before non-expert discovery closed, but did not serve the subpoena or attempt to take Petersen's deposition before May 31, 2024 (Dkt. No. 2262 at 8).

        d.   ProPay's Loss of ESI Subject to its Litigation Hold

In the course of negotiating the scope of Plaintiff's Rule 30(b)(6) deposition of ProPay, ProPay offered to make Petersen available for deposition. In connection with this offer, ProPay's counsel asked to review Petersen's information retained pursuant to the litigation hold initiated by Forrest in early 2014. When counsel reviewed Petersen's email file, it was apparent that the email backup only went back to 2015 (Dkt. No. 2109-1 at 3, ¶ 9). On August 14, 2024, ProPay's litigation counsel disclosed to Plaintiff that ProPay did not have access to Petersen's emails sent

or received prior to 2015. ProPay's attorney told Plaintiff that ProPay's attorneys were continuing to investigate the matter (Dkt. No. 2103-2 at 4, ¶ 8).[2]

On September 26, 2024, Plaintiff filed his Emergency Motion to Compel Discovery Regarding ProPay's Spoliation of Evidence (Dkt. No. 2102). After further briefing, the court held a December 2, 2024 hearing on Plaintiff's motion (Dkt. No. 2144), at which the court granted in part Plaintiff's motion for discovery regarding ProPay's loss of evidence and ordered the parties to confer about the scope of a Rule 30(b)(6) deposition of a ProPay representative or representatives who could testify concerning the circumstances of the missing information (Dkt. No. 2145). When the parties were unable to agree, after a further hearing, the court entered an order setting out the topics to be covered at the deposition and set a schedule for the parties to brief Plaintiff's anticipated spoliation motion (Dkt. Nos. 2184, 2186).

Forrest, testifying as ProPay's representative, stated that ProPay learned that it had failed to retain information relevant to its work for TelexFree in August 2024 when litigation counsel was unable to locate information that was relevant to the litigation (Dkt. No. 2230-1 at 44). Forrest testified that after it was determined that relevant information could not be retrieved, an IT technician pulled files from an exchange database and ascertained that records from prior to 2015 for custodians whose files should have remained subject to a litigation hold were missing. The loss of records was not consistent. For some individuals there were some records; in Petersen's case there were either no records or next to no records (Dkt. No. 2230-1 at 46-47). Forrest stated that ProPay was not able to determine definitively why information was missing. The IT department's conclusion was that the loss of evidence most likely occurred because ProPay's IT department did not properly implement the litigation hold in Outlook on a ProPay

---

[2] Plaintiff deposed Petersen on November 5, 2024 (Dkt. No. 2262-1).

exchange server at the inception of the hold in 2014 (Dkt. No. 2230-1 at 48, 53, 83). Forrest could not identify with any certainty the information ProPay lost (Dkt. No. 2230-1 at 43, 55).

    III.    <u>Discussion</u>

        a.  Applicable Law

"[S]poliation is the intentional, negligent, or malicious destruction of relevant evidence." *Townsend v. Am. Insulated Panel Co.*, 174 F.R.D. 1, 4 (D. Mass. 1997). "To support an inference of spoliation, 'the party urging that spoliation has occurred must show that there is evidence that has been spoiled (i.e., destroyed or not preserved[,] ….'" *Walsh v. Tara Constr., Inc.*, Civil Action No. 19-10369-LTS, 2021 WL 12094222, at *3 (D. Mass. June 7, 2021) (alteration in original) (quoting *Gomez v. Stop & Shop Supermarket Co.*, 670 F.3d 395, 399 (1st Cir. 2012)).

Fed. R. Civ. P. 37(e) ("Rule 37(e)"), which was formerly Fed. R. Civ. P. 37(f), and was substantially revised in 2015, governs claims of spoliation of electronically stored information ("ESI").[3] Rule 37(e) provides, in pertinent part, as follows:

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>     (1) upon finding prejudice to another party from loss of the information,
>         may order measures no greater than necessary to cure the prejudice; or
>     (2) only upon finding that the party acted with the intent to deprive
>         another party of the information's use in the litigation, may:
>             (A) presume that the lost information was unfavorable to the party;

---

[3] The order adopting the 2015 revisions to Rule 37(e) provided that the revised rule was effective as of December 1, 2015, and should be applied in cases filed after the effective date of the revisions and to pending proceedings unless its application would be unjust or impracticable. *See Wai Feng Trading Co. Ltd v. Quick Fitting, Inc.*, C.A. No. 13-33WES Consolidated with C.A. No. 13-56WES, 2019 WL 118412, at *4 (D.R.I. Jan. 7, 2019). This case was filed in 2014. Neither party has alluded to the question of whether the amended version of Rule 37(e) should apply. Because discovery did not commence in earnest until 2019, some three to four years after the effective date of the amendment, the court finds it appropriate to apply the amended version of Rule 37(e) to these proceedings. *See id.*

>
> (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
>
> (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e); *see McLaughlin v. Lenovo Global Tech. (United States), Inc.*, 682 F. Supp. 3d 149, 162-63 (D. Mass. 2023). "Rule 37(e) applies only if the party in the possession of the lost ESI failed to take 'reasonable steps' to preserve the information and the information could not have been restored or replaced through additional discovery." *Walsh*, 2021 WL 12094222, at *4 (citing *Wai Feng Trading Co. Ltd*, 2019 WL 118412, at *5). "If the movant establishes that a party failed to take reasonable steps to preserve ESI after a duty to preserve arose and that the information cannot be restored or replaced through additional discovery, the court's next inquiry is whether the loss of the ESI has caused prejudice …." *Id.* Rule 37 "does not specify which party bears the burden on the issue of prejudice. Rather, it gives the court discretion to determine prejudice based on the particular facts before it." *Europe v. Equinox Holdings, Inc.*, 592 F. Supp. 3d 167, 175 (S.D.N.Y. 2022); *see also Hefter Impact Techs., LLC v. Sport Maska, Inc.*, Civil Action No. 15-13290-FDS, 2017 WL 3317413, at *6 (D. Mass. Aug. 3, 2017) ("the Court has 'discretion to determine how best to assess prejudice in [a] particular case'") (quoting Fed. R. Civ. P. 37(e) advisory committee's notes to 2015 amendment). "Amended Rule 37 rejects that negligently destroying ESI satisfies the culpable state of mind that warrants 'severe spoliation sanctions[.]'" *Europe*, 592 F. Supp. 3d at 175 (quoting Fed. R. Civ. P. 37(e) advisory committee's notes to 2015 amendment). "'The intent requirement in Fed. R. Civ. P. 37(e)(2) is "stringent" – it must be based on more than just negligence or even gross negligence in producing or preserving ESI.'" *Walsh*, 2021 WL 12094222, at *4 (quoting *Wai Feng Trading Co. Ltd*, 2019 WL 118412, at *7). "A party seeking sanctions under subsection (e)(2) bears the burden to show by clear and convincing evidence that the alleged spoliator acted with the intent

8

to deprive the movant of information for use in the litigation." *Europe*, 592 F. Supp. 3d at 175 (citing *Karsch v. Blink Health Ltd.*, 17-CV-3880 (VM)(BCM), 2019 WL 2708125, at *21 (S.D.N.Y. June 20, 2019); *Lokai Holdings LLC v. Twin Tiger USA LLC*, 15cv9363 (ALC)(DF), 2018 WL 1512055, at *8 (S.D.N.Y. Mar. 12, 2018)); *Walsh*, 2021 WL 12094222, at *4. "[T]he intent contemplated by Rule 37 is not merely the intent to perform an act that destroys ESI but rather the intent to actually deprive another party of evidence." *Leidig v. Buzzfeed, Inc.*, 16 Civ. 542 (VM)(GWG), 2017 WL 6512353, at *11 (S.D.N.Y. Dec. 19, 2017).

      b. Analysis

           1. Plaintiff has established spoliation of ESI.

It is undisputed that ProPay failed to preserve ESI that should have been preserved as long as this matter remains pending. While ProPay argues that Plaintiff has failed to establish spoliation because ProPay, through Forrest, took reasonable steps to preserve ESI, that contention is not persuasive. First, "it is well established that a party may be liable for spoliation even if the destruction of evidence was due to negligence." *McLaughlin*, 682 F. Supp. 3d at 163 (citing *Trull v. Volkswagen of Am., Inc.*, 187 F.3d 88, 95 (1st Cir. 1999)). While Forrest may have taken reasonable steps, the question is whether ProPay as a company took reasonable steps to preserve relevant ESI. "'In applying the requirement of "reasonable steps," courts must be mindful that "perfection in preserving all relevant electronically stored information is often impossible," as well as that this factor requires consideration of the litigation sophistication of the party in possession of the ESI …." *Walsh*, 2021 WL 12094222, at *4 (quoting *Wai Feng Trading Co. Ltd*, 2019 WL 118412, at *5). As a sophisticated on-line payment processor, ProPay is poorly positioned to argue that its IT department could not reasonably have been expected to institute a routine litigation hold in 2014. The court finds that the failure of ProPay's IT

9

department to establish an effective litigation hold at Forrest's direction arose from its failure to exercise reasonable care in performing a legally required task and was, therefore, an act of negligence. *See, e.g., Szulik v. State St. Bank & Trust Co.*, 935 F. Supp. 2d 240, 269 (D. Mass. 2013) (defining negligence as a failure to satisfy a duty to exercise reasonable care).

Second, the court is not persuaded, on the record before it, that the documents that Forrest provided to outside counsel, and which were produced to Plaintiff as ProPay's document production (Dkt. No. 2262 at 12), encompassed the universe of ESI that should have been produced to Plaintiff and if not initially produced, at least preserved for purposes of this litigation. ProPay represents that, in responding to the Government Subpoenas, Forrest collected all communications that the twenty-two identified custodians had with anyone from TelexFree (Dkt. No. 2262 at 6-7). That may have been sufficient for purposes of responding to the Government Subpoenas. So far as appears from ProPay's submission to the court, however, the information Forrest retained and provided to outside counsel did not include communications concerning TelexFree that the custodians had with individuals affiliated with organizations other than TelexFree, including, for example, the Wells Fargo entities. The court infers that the hold described by Forrest would have preserved ProPay's communications about TelexFree with individuals who were not affiliated with TelexFree, but ProPay has not represented that such communications were included in its production to Plaintiff, and such communications, to the extent they existed, may have been lost as a result of ProPay's negligent failure to institute a proper litigation hold.

> 2. The court cannot determine the extent of the lost evidence or the extent to which the information ProPay failed to preserve is available from other sources.

"The content of lost evidence can never be proven to a certainty." *NuVasive, Inc. v. Day*, Civil Action No. 19-10800-DJC, Civil Action No. 19-10995-DJC, 2021 WL 9059745, at * 8 (D. Mass. Aug. 23, 2021). Here, the court cannot determine with certainty the extent or content of the information that ProPay failed to preserve or whether the information is available from other sources.

On the question of the extent of ProPay's lost information, Plaintiff argues that he has established that ProPay failed to produce documents bearing on ProPay's actual knowledge of the TelexFree fraud, its communications with others, including Wells Fargo, concerning TelexFree's fraudulent conduct, Visa's listing of TelexFree on its excessive chargeback reports, ProPay's due diligence before it accepted TelexFree as a client, and Wells Fargo and ProPay's decisions to accept TelexFree as a client and, subsequently, terminate the relationship (Dkt. No. 2230). These claims of lost information ignore that Plaintiff deposed the ProPay employees who had knowledge about ProPay's business relationship with TelexFree and was able to question them about the documents they created and saved and what they know about ProPay's relationship with TelexFree (Dkt. No. 2262 at 8; Dkt. No. 2262-1), that Plaintiff has offered the court no reason to believe that Wells Fargo failed to meet its discovery obligations which would have included information concerning its communications with ProPay about TelexFree; and that Plaintiff obtained extensive TelexFree data, including emails, from the Bankruptcy Trustee (Dkt. No. 2262 at 16, n.4). Thus, even if ProPay failed to produce some ESI related to some topics Plaintiff has identified, the court infers that much of the information was produced by employees or other sources outside of ProPay. Plaintiff has not established that all (or even most) of the information he claims was lost by ProPay "is unavailable in any other location." *Walsh*, 2021 WL 12094222, at *5.

To the extent Plaintiff relies on the supplemental declaration of Kenneth Musante as claimed proof of the extent of the loss of ProPay ESI (Dkt. No. 2230 at 14-15; Dkt. No. 2230-3), the court is unpersuaded.  For example, Musante's assertions that ProPay lost TC40 and SAFE reports and cardholder correspondence from cardholders about chargebacks are contradicted by the direct denial from the former President of Propay that ProPay ever had TC40 and SAFE reports (Dkt. No. 2103-1 at 11, ¶ 25) and Forrest's credible testimony that ProPay did not interact directly with cardholders (Dkt. No. 2230-1 at 41-42).  Even if ProPay lost ESI reflecting communications with Wells Fargo entities, that information was available from and produced by another source, i.e., the Wells Fargo entities.  It is possible that ProPay lost internal communications concerning TelexFree that have not been produced, but Musante's assertions that there must have been internal communications on specific topics – that would demonstrate ProPay's knowledge of fraud by TelexFree – "rest[] on pure speculation about the existence of these [documents].  Case law is clear, however, that 'speculative assertions as to the existence of documents do not suffice to sustain a motion for spoliation of evidence.'" *Dilworth v. Goldberg*, 3 F. Supp. 3d 198, 202 (S.D.N.Y. 2014) (quoting *Tri-County Motors, Inc. v. Am. Suzuki Motor Corp.*, 494 F. Supp. 2d 161, 188 (E.D.N.Y 2007)).[4]

---

[4] The court rejects Plaintiff's claim that ProPay is bound in some way by Forrest's statement that he "was not going to object to anything he [saw]" on a list of documents created by Musante that Plaintiff introduced as exhibit 4 at Forrest's deposition (Dkt. No. 2230 at 15).  Forrest testified that he had not seen the document (exhibit 4) prior to his deposition (Dkt. No. 2230-1 at 22-23).  He was not, therefore, prepared to testify concerning its contents.  Plaintiff did not ask Forrest a clear question as to whether he accepted that the list represented ESI lost by ProPay and Forrest's comment is ambiguous.  Moreover, when the parties were unable to agree on the scope of Plaintiff's Rule 30(b)(6) deposition of ProPay related to spoliation, the court resolved the dispute by considering the parties' competing proposals and entering an order setting out the topics to be addressed at the deposition (Dkt. No. 2186).  Where Exhibit 4 at Forrest's deposition was outside of the scope of the deposition topics set by the court, ProPay properly objected on this basis to questions about the exhibit.  *See Stevens v. Safeway Inc.*, Case No. CV 05-1988 MMM (SHx), 2006 WL 8563416, at *10 n.47 (C.D. Cal. Dec. 14, 2006).  In short, Plaintiff's list of documents

In summary, on the record before it, the court cannot determine the scope of ProPay's loss of ESI, nor can it determine with any certainty whether the missing information or its equivalent was available from and has been produced by other sources. It is certain, however, and the court finds, that ProPay failed to preserve ESI responsive to Plaintiff's discovery requests throughout the pendency of this case because of the failure of its litigation hold and that ESI was lost before ProPay produced its responses to Plaintiff's document production requests.

3.   The showing of prejudice is absent or not compelling.

Whether Plaintiff has been prejudiced by ProPay's loss of ESI presents an unusual question because of the posture of the case. On March 28, 2025, when Plaintiff filed his motion for sanctions based on ProPay's spoliation of evidence, Plaintiff's Motion for Class Certification and Appointment of Class Counsel was pending (Dkt. No. 2155). Accordingly, Plaintiff could reasonably advance contentions on behalf of all putative class members. Some two weeks later, on April 8, 2025, Judge Gorton denied Plaintiff's motion for class certification (Dkt. No. 2236). ProPay represents that Plaintiff, the sole plaintiff named in the consolidated class action complaint, and the individual before the court in this proceeding claiming that he was damaged by TelexFree's pyramid/Ponzi scheme, first made payments to TelexFree in October or November 2013 (Dkt. No. 2262 at 2021).[5] ProPay ceased processing new transactions for TelexFree in April 2013. Thus, ProPay contends, Plaintiff cannot show that ProPay aided and

---

generated by Musante was not on the list of topics for the Rule 30(b)(6) deposition, ProPay was not obligated to prepare Forrest to respond to questions about the list, and Forrest's responses to Plaintiff's questions about deposition exhibit 4 were not binding on ProPay. *Id.*

[5] The exhibit from which ProPay represents this information is drawn is a blank placeholder on the docket (Dkt No. 2157-2). So far as the court was able to determine, the document was never filed under seal or in redacted form on the docket. The court therefore relies on ProPay's representation about the timing of Plaintiff's participation in the TelexFree Ponzi-pyramid scheme.

abetted TelexFree's fraudulent conduct while Plaintiff was a participant in TelexFree's Ponzi-pyramid scheme and cannot show that ProPay's actions, including its failure to preserve ESI, caused him any harm (Dkt. No. 2262 at 19-21).  In the circumstances, "[i]t is far from clear that [Plaintiff] suffered any prejudice due to [ProPay's failure to preserve evidence]." *Hefter Impact Techs., LLC*, 2017 WL 3317413, at *8.

Even as to the larger group of individual plaintiffs in the actions consolidated for pretrial purposes in this MDL proceeding (who may or may not have claims against ProPay), the showing of prejudice is far from compelling.  According to Plaintiff, he has amassed evidence of TelexFree's extraordinarily problematic practices when and after ProPay accepted TelexFree as a customer.  Plaintiff has the records of the high number of problematic TelexFree transactions giving rise to chargebacks that ProPay was processing.  In Musante, he has an expert in industry standards apparently prepared to testify that ProPay's transaction processing activity was necessary to TelexFree's ability to sustain its fraudulent Ponzi-pyramid scheme and that ProPay's experiences with TelexFree were sufficient to establish knowledge of fraud.  *Cf. Sihler v. Glob. E-Trading, LLC*, Case No. 8:23-cv-1450-VMC-LSG, 2025 WL 1425400, at *4-6 (M.D. Fla. May 16, 2025) (discussing Musante's proposed expert testimony in a RICO case concerning banking and credit card processing and denying a motion in limine to exclude Musante's testimony).  In mitigation of ProPay's failure to preserve ESI, Plaintiff deposed the key ProPay employees with relevant knowledge about all aspects of ProPay's relationship with TelexFree.  *See In re Delta/AirTran Baggage Fee Antitrust Litig.*, 770 F. Supp. 2d 1299, 1311 (N.D. Ga. 2011) (stating that any prejudice that might have been suffered by plaintiffs from a loss of documents was mitigated by the fact that they deposed the employees with relevant knowledge).  Plaintiff's claim that the lost ESI would have included internal communications among these ProPay

employees admitting knowledge of fraud is wholly speculative. To the extent ProPay's communications with Wells Fargo entities might have included discussions about fraud on TelexFree's part, Wells Fargo's production would have included such communications. For these reasons, the court finds that Plaintiff's claims of prejudice from spoliation as to the wider group of plaintiffs are not compelling. Further, because, as is set forth below, the evidence does not show that ProPay intentionally set out to deprive Plaintiff of evidence, there is no basis for a presumption that ProPay's lost ESI would have been favorable to Plaintiff. *See Matter of in re Skanska USA Civil Se. Inc.*, 340 F.R.D. 180, 187 (N.D. Fla. 2021) (noting that courts have held that destroyed evidence may be deemed crucial if the information was destroyed in bad faith). Nonetheless, leaving aside the timing issue related to Plaintiff's claims, the court rejects ProPay's argument that individual plaintiffs have not suffered any prejudice attributable to its failure to preserve evidence. Forrest admitted that ProPay cannot identify the information it failed to preserve, and it is possible that ProPay lost some evidence that might have strengthened Plaintiff's contention that ProPay knew TelexFree was a fraudulent enterprise at a point in time relevant to the claims of some individual plaintiffs. As to these individuals (and this court has no way to determine who they are), there is a sufficient risk of prejudice that the court finds that the element of prejudice is satisfied.

> 4. Plaintiff has not shown that ProPay acted with the intent of depriving Plaintiff of relevant information.

"Amended Rule 37 rejects that negligently destroying ESI satisfies the culpable state of mind that warrants 'severe spoliation sanctions[.]'" *Europe*, 592 F. Supp. 3d at 175 (quoting *World Trade Ctrs. Ass'n v. Port Auth. of N.Y & N.J.*, 15 Civ. 7411 (LTS) (RWL), 2018 WL 1989616, at *10 (S.D.N.Y. Apr. 2, 2018), *rec. adopted*, 2018 WL 1989556 (Apr. 25, 2018)). First, Plaintiff cannot prove that ProPay's failure to preserve ESI was directed at depriving

15

Plaintiff (or any other individual plaintiffs) of access to evidence. According to the evidence before the court, ProPay failed to institute an effective litigation hold in 2014 when ProPay was gathering documents to respond to the Government Subpoenas. Nothing in the record before the court shows that Forrest or any other ProPay employee knew that ProPay would face any claims from individuals based on ProPay's work for TelexFree when ProPay was served with and responded to the Government Subpoenas. Plaintiff has not established by any evidence, let alone clear and convincing evidence, that ProPay actually intended to deprive him – or any other plaintiff – of ESI, whether inculpatory or not, where the record before the court shows that ProPay's failure to preserve ESI preceded the filing of the individual plaintiffs' claims. *See Leidig*, 2017 WL 6512353, at *11. Second, moving forward in time, Plaintiff has pointed to no evidence tending to show that the steps Forrest took to gather and preserve ESI in response to the Government Subpoenas were unreasonable. While Plaintiff complains that Forrest did not institute a separate hold related to the MDL, he has not pointed to any omission in the steps Forrest took when he initiated ProPay's TelexFree litigation hold from which the court could infer an intent to deprive the plaintiffs of access to information relevant to the claims asserted in the cases assigned to this multidistrict proceeding. *See In re Ethicon, Inc. Pelvic Repair Sys. Prod. Liability Litig.*, 299 F.R.D. 502, 520-21 (S.D.W. Va. 2014) (stating that, while the evidence showed that a disconnect between employees, managers, and the IT department likely resulted in the loss of evidence, the evidence did not support a finding of a willful or intentional deletion of evidence). Third, Forrest testified that he was not aware of anyone destroying ESI that should have been subject to the litigation hold and Plaintiff, who bears the burden of proof on intentional destruction of ESI, has not pointed to any evidence to contradict this testimony. *See*

16

*Europe*, 592 F. Supp. 3d at 175. His speculation that it *might* have been done is very far from clear and convincing evidence that it *was* done.

The court acknowledges Plaintiff's point that ProPay has proffered shifting explanations about when and why it failed to meet its obligation to preserve relevant evidence (Dkt. No. 2230 at 19-20). On the other hand, the record shows that ProPay promptly notified Plaintiff when it discovered that it had lost evidence (Dkt. No. 2103-13). Further, the record shows that ProPay has made changes to its IT resources since Forrest directed that a litigation hold be instituted, and that determining the reason and the timing of the loss of evidence has posed difficulties. In any event, the question here is whether ProPay deliberately destroyed or failed to preserve evidence with the intent of depriving Plaintiff of access to relevant information. *Leidig*, 2017 WL 6512353, at *11; Fed. R. Civ. P. 37(e)(2). On this point, the record is clear: Plaintiff has not elicited any evidence showing, or giving rise to a reasonable inference, that ProPay deliberately destroyed evidence with the intent of depriving any of the plaintiffs of access to relevant information.

5. Summary and recommended remedies.

The presiding District Judge has agreed that this court should make findings about whether ProPay committed spoliation by failing to preserve relevant evidence after the duty to preserve evidence arose, and whether ProPay acted with the intent to deprive the plaintiffs of relevant evidence and reserve for the presiding District Judge the decision about sanctions, if any, to be imposed. Because the court's findings preclude the entry of judgment against ProPay that Plaintiff seeks, this order denies such relief. The court has further addressed a range of sanctions that the court might impose for a negligent failure to preserve ESI.

In summary, this court finds that ProPay failed to take reasonable steps to preserve relevant evidence after the duty to preserve arose. *See Walsh*, 2021 WL 12094222, at *3-4. The extent of lost ESI and whether the information it contained has been made available from other sources cannot be ascertained, at least on the record before the court, nor can the extent of prejudice, if any, to individual plaintiffs. Plaintiff has not shown that ProPay lost evidence relevant to his claims because ProPay was no longer processing payments when he invested the TelexFree Ponzi-pyramid scheme. The court further finds that Plaintiff has not shown that ProPay intended to deprive any plaintiff of relevant evidence or destroyed evidence in bad faith. *See* Fed. R. Civ. P. 37(e)(2).

As to possible remedies for ProPay's loss of ESI, Plaintiff asks the court to enter judgment in his favor and award him costs along with any other relief the court deems appropriate (Dkt. No. 2229 at 1, 20). "For lost ESI … the starting point for the Court's analysis must be Fed. R. Civ. P. 37(e) as amended in 2015, which addresses the failure to preserve ESI." *Wai Feng Trading Co. Ltd*, 2019 WL 118412, at *4. "In our Circuit, cases dealing with spoliation are clear that the most extreme sanction – dismissal/default judgment – should not be deployed except in the most egregious circumstances." *Boudreau v. Petit*, C.A. No. 17-301MSM, 2025 WL 553975, at *3 (D.R.I. Feb. 19, 2025) (collecting cases). Under Rule 37(e)(2), the relief Plaintiff seeks is not available to him because he has not shown by clear and convincing evidence that ProPay failed to preserve relevant evidence with the intent of depriving any plaintiff of access to information relevant to his or her claims. Nor would he be entitled to a mandatory adverse inference instruction in any future proceeding. *See Sharp v. Hylas Yachts, LLC*, 872 F.3d 31, 42 (1st Cir. 2017) (sanctions of dismissal or mandatory adverse inference instruction usually only make sense where the evidence permits a finding of intentional or bad

faith destruction of evidence); *Sanchez v. Nat'l Passenger R.R. Corp.*, Civil Action No. 20-30004-MGM, 2021 WL 11702517, at *6 (D. Mass. June 14, 2021) (same as to adverse inference).

If prejudice is found for a negligent or grossly negligent failure to preserve ESI, Rule 37(e) authorizes the court to employ measures "no greater than necessary to cure the prejudice[.]" Fed. R. Civ. P. 37(e)(1). "[T]he remedy for spoliation should be based on the prejudice to the other party and must be closely calibrated to what is necessary to address the harm." *Wai Feng Trading Co. Ltd*, 2019 WL 118412, at *8 (citing *Trull*, 187 F.3d at 95-96). These measures may "include prohibiting the party that failed to preserve from putting on certain evidence, permitting the parties to present evidence or argument to the jury regarding the loss of ESI or giving the jury instructions to assist in its evaluation of such evidence or argument." *Boudreau*, 2025 WL 553975, at *2 (citing Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment). The court also might consider drawing an appropriate inference at the summary judgment stage or explaining the circumstances of lost evidence to a jury. *See Boudreau v. Shaw's Supermarkets, Inc.*, Civil No. 2:17-cv-259-DBH, 2019 WL 3242051, at *4 (D. Me. July 18, 2019), *aff'd* 955 F.3d 225 (1st Cir. 2020). "[A] district court has broad discretion in choosing an appropriate sanction …." *Sharp*, 872 F.3d at 42.

IV. <u>Conclusion</u>

For the foregoing reasons, Plaintiff's Motion for Sanctions in Light of Defendant ProPay's Admitted Spoliation of Evidence (Dkt. No. 2229) is granted in part and denied in part. The extent of sanctions to be imposed, if any, is left to the discretion of the presiding District Judge at the appropriate time.

It is so ordered.

Dated:  August 15, 2025                      <u>Katherine A. Robertson</u>
                                             KATHERINE A. ROBERTSON
                                             UNITED STATES MAGISTRATE JUDGE