UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE: | ) | For cases: |
| TELEXFREE SECURITIES LITIGATION | ) | 4:14-cv-40138-NMG |
| | ) | 1:14-cv-12825-NMG |
| | ) | 4:14-cv-40095-NMG |
| | ) | 4:14-cv-40093-NMG |
| | ) | 4:14-cv-40154-NMG |
| | ) | 4:14-cv-40156-NMG |
| | ) | 4:14-cv-40144-NMG |
| | ) | 1:14-cv-12437-NMG |
| | ) | 1:14-cv-12058-NMG |
| | ) | 4:15-cv-40028-NMG |
| | ) | 4:15-cv-13614-NMG |
| | ) | 4:16-cv-40004-NMG |
| | ) | 4:16-cv-40018-NMG |
| | ) | 4:22-cv-40018-NMG |
| | ) | 4:22-cv-40100-NMG |
| | ) | 4:23-cv-10304-NMG |

BEFORE THE HONORABLE NATHANIEL M. GORTON
UNITED STATES DISTRICT JUDGE
Status Conference

John Joseph Moakley United States Courthouse
Courtroom No. 4
One Courthouse Way
Boston, Massachusetts 02210

February 19, 2026
11:12 a.m.

Kristin M. Kelley, RPR, CRR
Official Court Reporter
John Joseph Moakley United States Courthouse
One Courthouse Way, Room 3209
Boston, Massachusetts 02210
E-mail: kmob929@gmail.com

APPEARANCES:

Robert J. Bonsignore
Bonsignore, LLC
193 Plummer Hill Road
Belmont, NH 03220
781-856-7650
rbonsignore@classactions.us
for Plaintiffs.

Gregg M. Fishbein
Lockridge Grindal Nauen P.L.L.P.
Suite 2200
100 Washington Avenue South
Suite 2200
Minneapolis, MN 55401
612-339-6900
gmfishbein@locklaw.com
for Plaintiffs.

Ronald A. Dardeno
Law Offices of Frank N. Dardeno LLP
424 Broadway
Somerville, MA 02145
617-666-2601
rdardeno@dardeno.com
for Plaintiffs.

Peter A. Barile, III
Lowey Dannenberg, P.C.
44 South Broadway
Suite 1100
White Plains, NY 10601
914-997-0500
pbarile@lowey.com
for Plaintiffs.

Ronald P. Passatempo
Law Office of Ronald Passatempo
200 Broadway
Ste 102
Lynnfield, MA 01940
781-596-3100
ron@passatempolaw.com
for Defendant Rita Dos Santos.

APPEARANCES (Cont'd):

Adam K. Doerr
Emma T. Kutteh
Robinson, Bradshaw & Hinson
101 North Tryon Street
Suite 1900
Charlotte, NC 28246
704-377-8114
ADoerr@robinsonbradshaw.com
Ekutteh@robinsonbradshaw.com
for Wells Fargo defendants.

Gary L. Crandell
Law Office of Gary L. Crandell
1587 S. Krameria Street
Denver, CO 80224
303-359-3930
gcrandellpc@gmail.com
for Vantage Payments, LLC.

David B. Chaffin
White and Williams, LLP
Suite 1930
101 Arch Street
Boston, MA 02110
330-728-3436
chaffind@whiteandwilliams.com
for Defendants Cardenas and Montalvo.

Peter S. Brooks
Law Offices of Peter S. Brooks
186 Plunkton Rd,
Apt 21A
Warren, VT 05674
617-460-2829
peter@psbrookslaw.com
for Defendant Merrill.

APPEARANCES (Cont'd):

Douglas S. Brooks
Libby Hoopes Brooks & Mulvey, P.C.
260 Franklin Street
Suite 1920
Boston, MA 02110
617-338-9300
dbrooks@lhbmlegal.com
for Propay, Inc.

Richard A. Westfall (via Zoom)
Westfall Law, LLC
5842 W Marquette Drive
Denver, CO 80235
720-904-6022
rwestfall@westfall.law
for Vantage Payments, LLC.

P R O C E E D I N G S

THE CLERK: All rise.

(The Honorable Court entered.)

THE CLERK: Thank you. You may be seated.

This is Multidistrict Agency No. 14-02566, In re: Telexfree Securities Litigation.

Would counsel please introduce themselves for the record.

MR. CHAFFIN: Good morning, your Honor. David Chaffin for defendants Michael Montalvo and Mauricio Cardenas.

THE COURT: Mr. Chaffin, good morning.

MR. DOERR: Good morning. Adam Doerr for the Wells Fargo defendants.

MS. KUTTEH: Good morning, your Honor. Emma Kutteh for the Wells Fargo defendants.

THE COURT: Mr. Doerr and Miss Kutteh.

MR. D. BROOKS: Good morning, your Honor. Doug Brooks for Propay.

THE COURT: Mr. Brooks, good morning.

MR. P. BROOKS: Good morning, your Honor. Peter Brooks for James Merrill.

THE COURT: Peter Brooks. All right. Good morning to you.

MR. CRANDELL: Good morning, your Honor. Gary Crandell for Vantage Payments.

THE COURT: Mr. Crandell.

MS. BONSIGNORE: Good morning --

MR. WESTFALL: Good morning, your Honor.

THE COURT: I'm sorry. Mr. Westfall is appearing by Zoom. Good morning to you.

MR. WESTFALL: Good morning, your Honor. Thank you for letting me participate remotely.

THE COURT: Yes.

MS. BONSIGNORE: Good morning, your Honor. Robert Bonsignore for the plaintiffs.

THE COURT: Mr. Bonsignore.

MR. FISHBEIN: Good morning, your Honor. Greg Fishbein for the plaintiffs.

THE COURT: Mr. Fishbein.

MR. BARILE: Good morning. Peter Barile for the plaintiffs.

THE COURT: Mr. Barile, good morning to you.

MR. DARDENO: Good morning, your Honor. Ronald Dardeno for the plaintiffs as well.

THE COURT: Mr. Dardeno. All right.

MR. PASSATEMPO: Ronald Passatempo.

THE COURT: Good morning.

We are here for a status conference in this multidistrict litigation, which I gave notice to counsel after entering an omnibus order back earlier this month. Since then

we have had a filing of a motion -- first of all, a brief in response to my request of plaintiffs' counsel for further explanation in support of his motion for reimbursement of attorneys' expenses and we had a motion filed on behalf of the Defendant Merrill for clarification and for reconsideration of the motion to enforce settlement agreements.

So there are several balls in the air. What I'm going to do first is acknowledge the explanation that was given to me by Attorney Bonsignore in response to my request for further explanation in support of his request for reimbursement, at least interim reimbursement of expenses. That explanation is complete and I am, therefore, going to allow the motion for that payment of interim expenses.

The second matter that we need to address is Mr. Merrill's motion for reconsideration and/or clarification of the Court's ruling in the omnibus order.

The Court finds that, based on the facts presented by the defendant Merrill, the plaintiffs did not assent to the terms of the agreement which he attempts to enforce and that is the reason for the denial of the motion.

Mr. Bonsignore, do you wish to address that motion in any further extent at this point?

MS. BONSIGNORE: No, your Honor.

THE COURT: I'll hear then briefly from Mr. Brooks on behalf of the Defendant Merrill.

MR. P. BROOKS: Thank you, your Honor. I think you know from the original submission of our motion to enforce that agreement that plaintiffs' counsel on two occasions, by email and by text, asserted that he was prepared and would sign the settlement agreement. It was on that basis that we sought enforcement since there was mutual assent to the terms of that settlement agreement.

THE COURT: When an attorney says he's prepared to sign something, is that the equivalent of a signed agreement?

MR. P. BROOKS: If it induces reliance by the other party, if you say I will sign this if you do. Mr. Merrill signed the agreement, returned it to counsel and counsel never signed it and refused to sign it.

THE COURT: Mr. Bonsignore?

MS. BONSIGNORE: Yes, your Honor. There were conditions in between that he did not meet. Additionally, there was great gaps in time. So that lapsed.

We attempted and are still willing to work with Mr. Merrill and settle with him. In fact, I reached out to Mr. Brooks over the last two days that we spoke. The fact is if he can't remember anything and can't accept what's in writing even, then there's no point in settling. I thought --

THE COURT: You're talking about Mr. Merrill or Mr. Brooks?

MS. BONSIGNORE: Mr. Merrill on this one, yes. So I

11:17
11:17
11:18
11:18
11:19

thought he was worried about criminal implications for what he did, even though it's passed. I have no explanation why some of these witnesses can't acknowledge what's the contents of their emails.

Point here is there were gaps in between. He didn't fulfill the agreement that we reached and we put everything else all in the papers that are in front of you.

THE COURT: Mr. Brooks, I'll give one final shot.

MR. P. BROOKS: It's a little bit of cart before the horse. Mr. Merrill was ready to perform the terms of the agreement, asked counsel on several occasions to please sign it and return it and then it could be implemented. Counsel never did.

So it's not that Mr. Merrill failed to perform. It's that when counsel didn't sign the agreement that he agreed to sign, Mr. Merrill did not perform the obligations because it had been repudiated by plaintiffs' counsel.

THE COURT: All right. The Court confirms its ruling. There was no meeting of the minds, at least as far as the Court can decipher. Therefore, the motion stands denied.

We need to turn to other matters however.

I guess the most important -- well, there is one other. Mr. Passatempo is in the courtroom. I asked for an explanation as to why he submitted artificial intelligence in his docket number, I think it was 2299, without proofreading.

MR. PASSATEMPO: Thank you, your Honor. May I approach?

THE COURT: What do you have to approach with?

MR. PASSATEMPO: I have a memorandum. I have my list of the corrected citations. I have my MCLE course that I got accredited for, an AI course I took. And I have my Bar review, my Bar outstanding for the last 30 years.

THE COURT: You can submit that but I want an oral explanation in addition.

MR. PASSATEMPO: Absolutely.

THE COURT: Yes.

MR. PASSATEMPO: Your Honor, first of all, I stand here extremely embarrassed in front of this Court and in front of my brothers and sister. Over the last 30 years I've had an impeccable record. I've never had any disciplinary complaints. I never had Rule 11 motions against me. I've never had any judicial reprimands. I built a 30-year career on outstanding integrity and I stand by that.

I acknowledge the mistakes. I take full responsibility for those mistakes. Over the past several years I've transitioned my practice to real estate. Again, this is no excuse, your Honor. Over the last few years never had any reason for AI. When I used AI, I didn't know the magnitude of how it really performs and I relied on it to my detriment.

Since that time again, and since your ruling on

Friday, I went ahead and I got educated. Even though I won't be doing litigation any longer, I wanted to make sure I announced to the Court I fully understand what happened. I went ahead and made sure the Court knows that the citations I passed in were all reviewed again and any corrections to correct the file. Even though it has no impact on the result, I want to make sure the Court acknowledges I know that this is serious and I wanted to make sure.

Your Honor, this is an isolated event. I've never been in front of this Court or any court for any kind of wrongdoing. I apologize to this Court for anything and to my defense counsel for any unwarranted extra work or anything that they had to do. It was never deceitful from the beginning.

THE COURT: All right. Thank you, Mr. Passatempo.

Does defense counsel wish to respond?

MR. WESTFALL: Your Honor, I worked on the briefs on behalf --

THE COURT: I'm sorry. This is Mr. Westfall?

MR. WESTFALL: Yes, your Honor.

THE COURT: Go ahead.

MR. WESTFALL: Your Honor, I worked -- we have nothing further to add, your Honor.

THE COURT: All right. Thank you. I will take the matter under advisement.

We then need to proceed --

MR. PASSATEMPO: Thank you, your Honor.

THE COURT: -- with the status of the Rule 23(f) petition that has been filed in the Court of Appeals. I believe it was filed in April. Is that right, Mr. Bonsignore?

11:22 MS. BONSIGNORE: Yes, your Honor.

THE COURT: Have you or defendants heard anything or inquired as to the status of this matter?

MS. BONSIGNORE: We have not heard anything, your Honor.

11:22 THE COURT: Is it your understanding that the petition for leave to appeal is still under consideration or is it the actual appeal itself that's under consideration?

MS. BONSIGNORE: I don't want to guess. If I was asked to guess, if I was pressed to guess, I would have to say 11:22 that it would be the expedited ruling. I've tracked some other instances of such requests. They have not responded too quickly. However, this seems to be inexplicable I guess.

THE COURT: Now, defendants submitted a 30-page memorandum, I believe, one of the defendants. I'm not sure 11:23 which one. Have defendants done any follow-up on trying to determine what the status of the appeal is?

MR. DOERR: Yes.

THE COURT: This would be Mr. Doerr?

MR. DOERR: Yes, your Honor.

11:23 Our understanding is the petition is still pending

11:23 with the First Circuit. We did look at other petitions that have been filed and how long it took to obtain a ruling. Most of them were faster than this, to be sure, but some of them did take quite a while. The *Nightingale* case that your Honor handled had a petition that was filed, I believe, in February of last year. Ours was in April. I think the ruling denying that petition came back to this Court late last fall. So I don't think we're sort of outside that range of time.

THE COURT: So if it was equal time, we should have 11:24 heard on this one.

MR. DOERR: Yes. It's surprising that it's taking this long. In the past when the First Circuit has made these decisions, they just issue a one-page order with one-page explanation. I don't understand why it's taking this long.

11:24 THE COURT: I suppose it's not worth speculating as to what is going to happen.

If the denial of certification is affirmed, what is the next step in this case and how do we get from here to resolution of this multidistrict litigation? Do defense 11:25 counsel wish to address that first? Mr. Doerr?

MR. DOERR: When we argued the class certification motion before you, your Honor, which was I believe a year and a day ago today, plaintiffs' counsel said that this case did not make sense to litigate on the basis of an individual claim and 11:25 cited that as a reason for class certification.

In their papers to the First Circuit, they made a similar representation that the 21,450 claimed in the named plaintiff do not warrant the cost alone of standalone litigation. So my view is if the petition were to be denied or the Court were to grant the petition and then affirm this Court's denial of class certification on an appeal, what would be remaining would be administrative matters to wrap up the case, including the question of the distribution of the funds that the plaintiffs have received in prior settlements.

11:26 THE COURT: You agree with that, Mr. Bonsignore?

MS. BONSIGNORE: No. In part, I do. First, we feel that we have -- I think all this goes towards what can we do to wrap the case up. If plaintiffs go in admitting defeat and indicating that there's no fight left in us, we'll have less leverage than we have now.

So, in the first place, I believe that we have, we believe that we have a good chance of reversing the opinion on a class settlement, class certification. Secondly, the economics are what they are. That's the reality of it.

11:26 So, on the one hand, we have a claim that's not worth a lot of money but, on the other hand, we have a client that we have to discuss this with. I am not prepared to give a statement as to what position he will take or what position we would take in response to his position.

11:27 A lot of the work that was done is in the box, they

say, or in the can. The expert depositions are videotaped. If the class cert. is denied, the language might come back, it's speculation, it might come back asking us to tweak the class definition. There's many cases out there where reconsideration of class certification was requested based upon an adjusted class definition.

11:27

So we are very interested moving on, from what I'm required to say, moving on to the practical realities here. We're very interested in trying to resolve this matter.

11:28 THE COURT: As I understand it, there are currently three pending actions. Am I right? At least that's what the judicial panel on Multidistrict Litigation reported.

MS. BONSIGNORE: Maybe -- there was one case that wasn't consolidated properly when it got to the First Circuit, when it came here. It was just never joined within this MDL and no one knows why or how that happened. So I'm aware of two, but I'm not aware of a third.

11:28

THE COURT: Defendants?

MR. CHAFFIN: I'm aware of two, your Honor, the *Montalvo* case --

11:28

THE COURT: Maybe the judicial panel has it wrong.

MR. CHAFFIN: I don't know about a third.

THE COURT: Were those cases part of the initial reference from the judicial panel or are they actions that were begun in this district?

11:29

MR. DOERR: Your Honor, I believe the three cases that's showing up in the statistics from the judicial panel are this matter, number one, the *Montalvo* matter that Mr. Chaffin mentioned, number two, and then the Arizona action, number three, although they don't report by case names. That would be my best guess.

THE COURT: Okay.

MS. BONSIGNORE: So, your Honor, moving on, we are very interested in settling. What settles cases of this magnitude and this nature is uncertainty. So there's still quite a bit of uncertainty surrounding this litigation.

THE COURT: What will be the uncertainty if, and I use that term lightly, if the ruling on denial of certification of the class is upheld? What's the uncertainty at that stage?

MS. BONSIGNORE: Well, the uncertainty there involves pennies.

THE COURT: Involves what?

MS. BONSIGNORE: It involves pennies. It involves still trying to zealously represent the client and what ground we can gain. So instead of a recovery that would benefit, greatly benefit all of the class members, the victims, we would be reduced to litigation costs, leveraging the cost of trying the case to get pennies more. It's illogical.

But I represent a person, Mr. Cellucci, and I'm not allowed to guess what he would say and I can't say what I would

recommend to him. So the numbers speak for themselves is all I'm allowed to say. I'm in a very hard spot here when you put that question out there.

THE COURT: I'm not asking you to reveal attorney-client privileged matters, of course.

MS. BONSIGNORE: Right.

THE COURT: But I'm asking you as an attorney what the position of the plaintiff would be in the event that the application is denied or the motion that goes up is upheld.

MS. BONSIGNORE: At that point, Mr. Cellucci would be the only client. We would have two choices, to try to recover his money or somehow come up with a new class definition. It's never too late to redefine the class. So that's what we would be left to do.

THE COURT: Defendants wish to address that issue any further?

MR. DOERR: No, your Honor.

THE COURT: Yes?

MS. BONSIGNORE: I just want to -- what I understood the question was is if the appeals court took the matter and denied class certification.

THE COURT: Yes.

MS. BONSIGNORE: Okay.

MR. CHAFFIN: If I may, your Honor.

THE COURT: Mr. Chaffin?

MS. BONSIGNORE: One more thing I'd just like to point out. We would have the right to appeal the other decisions in the case also.

THE COURT: I understand.

11:32 Mr. Chaffin?

MR. CHAFFIN: I'm sorry, but that wouldn't change the class issue. There would still be one plaintiff. Maybe change the defendants.

Your Honor, I'm sorry, but it was represented to the 11:32 First Circuit, and to you during the class certification argument, that if the Circuit denied, this case was over. They wrote, to try to get their appeal, simply but indisputably stated the $21,450 claim on named plaintiff Anthony Cellucci does not warrant litigation against financial giants with vast 11:32 resources like Wells Fargo and Propay. By the way, my clients don't have vast resources.

Under *Waste Management*, therefore, this petition should be granted on this ground alone. That petition is pending before the First Circuit, your Honor, that this would 11:33 be over, if the petition is denied or class certification is denied. Same thing was said to you during oral argument.

My client's case, Mr. Montalvo, which they never sought to consolidate, which has made some things a little bit quirky in this case, is still pending out there, also 11:33 Mr. Cellucci. He's also chasing the other defendants in the

other case for $21,450, which actually isn't that much anymore because he's recovered in the bankruptcy, he's recovered -- probably he will recover if money is ever distributed in the settlements that have already occurred in this case, maybe
11:33 $10,000, maybe not even $10,000 in this case, your Honor. They should be held to this. If it's over, it's over.

I get very nervous when I hear the word "leverage". He's attempting to use leverage with the defendants. What does that mean, your Honor?

11:33 MS. BONSIGNORE: Your Honor, I agree with the numbers. I tried to dance the fine line there. I can't give a definitive answer for my client until I talk to him.

As far as the rest of it goes, it's extraneous and I won't take up the Court's time other than to say I don't agree
11:34 with it.

THE COURT: All right. The matter -- the motion to stay the case, I believe that was docket No. 2239, was allowed. So the case is stayed pending the decision of the First Circuit Court of Appeals.

11:34 Is there anything else that needs to come to my attention today at this status conference that would be helpful toward final resolution? Mr. Bonsignore?

MS. BONSIGNORE: Yes, your Honor. Two matters.

First, there's the motion for spoliation against
11:34 Allied Wallet that has not been ruled on. It was referred to

Magistrate Judge Robertson. She spoke about it on several occasions but never ruled on it. So that's out there.

The second thing --

THE COURT: I thought I ruled on that in my omnibus ruling, did I not? That was docket No. 2281. The memorandum and order of Magistrate Judge Robertson was docket 2273. I accepted and adopted that recommendation and plaintiffs' motion for sanctions against the defendant Propay. That 2229 was allowed. And Propay was sanctioned in the amount of $10,000, spoliation of evidence.

MS. BONSIGNORE: Yes, your Honor. That was Propay. There was a separate matter that you referred to Judge Robertson regarding defendants Allied Wallet, Ahmad Khawaja and Mohammad Diab. So that is a separate motion. That was never heard, never argued.

Now that Judge Robertson retired, it's just sitting in Springfield. I cited to that in my --

THE COURT: I'm unaware of that motion. Are defendants aware of it?

MS. BONSIGNORE: They're not here.

THE COURT: Allied Wallet. Okay. All right. Well, I will look into that and inquire. That's something that's gone off my radar screen. Perhaps you could help by filing with the Court what you believe is undecided so that we can look at it again.

MS. BONSIGNORE: Yes, your Honor. I will do that.

The second matter is that the Court asked everyone to appear to see what we could do with regard to bring closure and settlement. We have reached out, as we understood the Court wanted us to do, to the defendants. We have recommended private mediation. We have suggested the name of a very preeminent mediator, a retired Article III judge. That's what we have done. We prepared little papers here and there.

THE COURT: I imagine the response is we have to wait and see what the First Circuit does.

MS. BONSIGNORE: The response was worse than that, yeah. There was not a lot of traction there.

THE COURT: I must say I'm not surprised. I would think that would be the logical thing that anyone would do, would be to wait to see what the First Circuit Court of Appeals does. We all are subject to that. We will wait to see what they do, hopefully, sooner rather than later.

I commend counsel to consult with one another as soon as that decision is made, and we will, of course, readdress all of these issues at that point. You can expect a fairly prompt status conference after that decision comes down whenever it is.

MS. BONSIGNORE: Thank you, your Honor.

THE COURT: Do defendants have anything else to add at this time?

MR. WESTFALL: Your Honor, Richard Westfall.

THE COURT: Yes, Mr. Westfall.

MR. WESTFALL: Yes, sir. Some representations made in Mr. Bonsignore's filing last night suggested we are in the case. We are not a remaining defendant. The Court has ruled. The Court has granted us summary judgment. The only outstanding matter was the attorneys' fees issue. The Court has ruled on that. The time for appeal on the grounds of summary judgment is long since passed. We are no longer a remaining defendant. I'm happy to file another paper with the Court to set the record straight to correct the misrepresentations that were made last night.

THE COURT: And you represent Vantage, is that correct?

MR. WESTFALL: Yes, your Honor. I represent Vantage Payments and Dustin Sparman.

THE COURT: Okay. You're free to file any papers you want, understanding that the case has been stayed at least temporarily. Okay?

MR. WESTFALL: Just want to make sure it's clear we're no longer a remaining defendant, your Honor.

THE COURT: Okay. Anything else from any of the other defendants?

All right, counsel. If anything comes up that gives you information as to the status of the appeal, the Court would

appreciate being kept informed, otherwise we will stand adjourned until the next time.

THE CLERK: All rise. The Court is in recess.

(The Honorable Court exited.)

11:40 (Adjourned, 11:40 a.m.)

C E R T I F I C A T E

UNITED STATES DISTRICT COURT )
DISTRICT OF MASSACHUSETTS )

I, Kristin M. Kelley, certify that the foregoing is a correct transcript from the record of proceedings taken February 19, 2026 in the above-entitled matter to the best of my skill and ability.

/s/ Kristin M. Kelley                    March 19, 2026

Kristin M. Kelley, RPR, CRR                    Date
Official Court Reporter